**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES LECLERC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:26-CV-07715 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| RED BULL NORTH AMERICA, INC.; | ) | Magistrate Judge Karyn L. Bass Ehler |
| OGLETREE, DEAKINS, NASH, SMOAK & | ) | |
| STEWART, P.C.; KIM BROOKS; and | ) | |
| JUAN CASTAÑEDA, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT OGLETREE'S**
**<u>MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Plaintiff Charles Leclerc ("Leclerc") filed a four-count Complaint against his former employer, Red Bull North America, Inc. ("Red Bull"), and its lawyers: (i) its former counsel, the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree"); (ii) its retained outside counsel Juan C. Castañeda ("Castañeda"); and (iii) its in-house counsel Kim Brooks ("Brooks"). His lawsuit arises out of and complains of conduct in an arbitration pending between Leclerc and Red Bull. Leclerc filed the suit after the arbitrator partially denied one of his discovery motions. Ogletree represented Red Bull in that arbitration. Leclerc attacks the arbitrator's discovery ruling and seeks, from this Court, what the arbitrator denied. *See* Compl. § VI(D) Prayer for Relief, Injunctive Relief. Leclerc's litigation tactics are inappropriate and vexatious. The proper way to object to an interim arbitration order is to move to reconsider, not to sue opposing counsel.

Unsurprisingly, controlling law bars Leclerc's claims against Ogletree. They are defective on numerous levels, any one of which warrants dismissal. Among such fatal defects are the following: (i) the Court lacks subject matter jurisdiction; (ii) Leclerc's claims are barred by

Illinois's absolute litigation privilege; and (iii) Leclerc otherwise fails to state claims for fraud (count I), conspiracy (count II), or intentional infliction of emotional distress (count IV) claims.[1] His claims against Ogletree are incurable, so the Court should dismiss them with prejudice.

## FACTUAL SUMMARY[2]

Leclerc is a former Red Bull employee. Compl. ¶ 31. Red Bull hired him in January 2021 and terminated him in July 2022. *Id.* ¶ 32. In July 2024, Leclerc initiated an arbitration against Red Bull at JAMS f/k/a Judicial Arbitration and Mediation Services, Inc., pursuant to an arbitration agreement. *Id.* ¶¶ 71, 75, 76. The JAMS Employment Arbitration Rules and Procedures are attached here as Exhibit 1.[3] In the arbitration, Leclerc is litigating his claim that Red Bull's stated reason for terminating him was a pretext and that he was terminated due to his resistance to Red Bull's COVID-19 vaccine mandate. *Id.* ¶¶ 1, 43, 111. Ogletree represented Red Bull in the arbitration until June 22, 2026, when Greenberg Traurig substituted. *Id.* ¶¶ 33, 76, 109. Leclerc's allegations about Ogletree concern only its conduct representing Red Bull in the arbitration. The arbitration remains pending. *Id.* ¶ 3.

Leclerc complains about Ogletree's conduct relating to discovery in the arbitration, specifically its production of a document that he claims has an authenticity problem. On September 9, 2025, Ogletree produced a so-called "static PDF" of the engagement letter between Red Bull

---

[1] Leclerc did not name Ogletree as a defendant in count III (negligent spoliation).

[2] Ogletree assumes the truth of the well-pleaded allegations of fact in the Complaint.

[3] When evaluating a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference." *Smykla v. Molinaroli*, 85 F.4th 1228, 1234 (7th Cir. 2023) (citation omitted). The Complaint incorporates the JAMS Employment Arbitration Rules and Procedures by reference. Compl. ¶ 76 (attempting to create fact dispute regarding absolute litigation privilege by citing these rules to argue that the arbitration is not a quasi-judicial proceeding). Exhibit 1 was downloaded from the JAMS website (https://www.jamsadr.com/rules-employment-arbitration) on August 27, 2026.

and Castañeda (the "Agreement"), rather than the Adobe Sign certified package of the Agreement, and falsely claimed that the static PDF was the genuine Agreement. *Id.* ¶¶ 82, 112. The static PDF version "lacked the digital certificate, tamper-evident seal, and crypto-graphic proof of authenticity that a genuine Adobe Sign certified package would contain." *Id.* ¶ 1. Leclerc claims that Red Bull engaged Castañeda to create a pretext to terminate him and that the Adobe Sign certified package of the Agreement would support his claim. *Id.* ¶ 123. After Ogletree produced the Agreement in the arbitration, Leclerc "immediately challenged the authenticity of the Purported Agreement, identifying the absence of the digital certificate" and that he "demanded authentication via direct transmission of the genuine Adobe Sign certified package from Adobe Inc." *Id.* ¶ 85.

After briefing and argument, the arbitrator ruled against Leclerc on his motion to compel authentication of the Agreement via Adobe Sign. *Id.* ¶¶ 87, 90. He ordered Red Bull to "provide a written certification that the Agreement previously produced is authentic, accurate, and complete." *Id.* ¶ 92. And he denied Leclerc's "request for authentication via direct transmission from Adobe Sign, including metadata and digital certificate transmitted directly to the parties." *Id.* During that hearing, Ogletree stated, (i) "we're [Red Bull] not even in possession of the Adobe records because it [the Agreement] was signed by our in-house counsel [Brooks] at the request of the outside attorney [Castañeda]. It was a letter that was sent from the outside attorney [Castañeda] to our in-house counsel [Brooks] that she then Docusigned;" and (ii) "the way it was structured, it's an agreement that was sent to us [Red Bull] that we [Red Bull] signed. In all likelihood, any Docusign records [would be] in the possession of the outside law firm [Castañeda]." *Id.* ¶ 94. Ogletree never retracted the May 12, 2026 statements prior to being replaced by Greenberg Traurig as Red Bull's counsel in the arbitration. *Id.* ¶¶ 98, 109.

## LEGAL STANDARD

Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court considers well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (as to facial challenges under Rule 12(b)(6)); *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (as to Rule 12(b)(6)).

To survive dismissal, a complaint's well-pleaded facts must provide the defendants with fair notice of each claim's basis and be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A] court need not accept legal conclusions or 'threadbare recitals' supported by 'conclusory statements.'" *Multi-Color Corp. v. Cuny*, No. 25-CV-3948, 2025 WL 3158169, at *1 (N.D. Ill. Nov. 12, 2025) (citing *Iqbal*, 556 U.S. at 678).

## ARGUMENT

The Court should dismiss all three claims against Ogletree because (i) the Court lacks subject matter jurisdiction; (ii) Illinois's absolute litigation privilege forecloses each claim; and (iii) Leclerc fails to state a tort claim against Ogletree under Illinois law.

### I. The Court Lacks Subject Matter Jurisdiction Over Leclerc's Claims.

Ogletree adopts the Illinois Human Rights Act preemption, Federal Arbitration Act, and standing arguments in Section III of Brooks and Castañeda's Memorandum in Support of their Motion to Dismiss and Section II of Red Bull's Memorandum in Support of Its Motion to Dismiss, which apply equally to Leclerc's claims against Ogletree.

## II. <u>Illinois's Absolute Litigation Privilege Bars Leclerc's Claims Against Ogletree.</u>

Leclerc's claims against Ogletree rest entirely on Ogletree's conduct as litigation counsel for Red Bull in the still-pending arbitration. Illinois's absolute litigation privilege immunizes Ogletree from any claims Leclerc can bring pertaining to such representation.[4]

Illinois's absolute litigation privilege is "more expansive than the Restatement's" and protects attorneys from civil liability based on actions and "communications made before, during, and after legal proceedings" when the conduct "pertain[s] to proposed or pending legal proceedings." *Am. Backflow & Fire Prevention, Inc. v. Hincks*, --- N.E.3d ---, 2025 IL App (2d) 250023, ¶ 24 ("*Hincks*"); *Scarpelli v. McDermott Will & Emery LLP*, 117 N.E.3d 238, 246, 2018 IL App (1st) 170874, ¶ 19; *O'Callaghan v. Satherlie*, 36 N.E.3d 999, 1010, 2015 IL App (1st) 142152, ¶ 31. Numerous district courts have recognized and applied Illinois' absolute litigation privilege to dismiss claims against attorneys. *See, e.g., Motykie v. Motykie*, No. 23-CV-1779, 2025 WL 2160719, at *5-6 (N.D. Ill. July 30, 2025) (applying Illinois's absolute litigation privilege to dismiss state law claims, including conspiracy and intentional infliction of emotional distress); *Creation Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 698 (N.D. Ill. 2022) ("The attorney litigation privilege is, by its terms, absolute."); *Kaminski v. Roadway Express, Inc.*, No. 94-C-4425, 1995 WL 88918, at *6 (N.D. Ill. Mar. 2, 1995) (statements made in arbitration proceeding were "absolutely privileged and thereby not actionable").

The "pertinency" requirement of the privilege, which applies to actions and communications that pertain to legal proceedings ,"is not strictly construed," and any doubts about

---

[4] Illinois's litigation privilege is the binding substantive law to be applied. This Court has jurisdiction over Leclerc's Illinois tort claims under 28 U.S.C. § 1332 (diversity jurisdiction). *Vill. of Schaumburg v. Permasteelisa N. Am. Corp.*, No. 24-1168, 2026 WL 2409840, at *2 (7th Cir. Aug. 18, 2026) ("[I]n cases under the diversity jurisdiction, federal rules and practices govern conduct of the litigation while state law governs substance.")

pertinency "must be resolved in favor of finding the communication pertinent to the litigation." *Hincks*, --- N.E.3d ---, 2025 IL App (2d) 250023, ¶ 24 (cleaned up). "[T]he privilege can be applied to statements or actions related to the subject controversy *and* those not confined to specific issues related to the litigation." *Id.* (emphasis in original) (cleaned up). The doctrine protects attorneys from liability "even at the expense of uncompensated harm to the plaintiff." *Id.* (quoting *O'Callaghan*, 36 N.E.3d 999, 1008, 2015 IL App (1st) 142152, ¶ 25).

Legal proceedings to which the absolute privilege applies include formal judicial proceedings and "quasi-judicial proceedings," such as private arbitration. *Hincks*, --- N.E.3d ---, 2025 IL App (2d) 250023, ¶¶ 25, 28 (citing *Bushell v. Caterpillar, Inc.*, 683 N.E.2d 1286, 1289, 291 Ill. App. 3d 559, 563 (3d Dist. 1997) ("A majority of jurisdictions that have addressed this issue now hold that the absolute immunity applies to grievance and arbitration hearings.")); *Kaminski*, No. 94-C-4425, 1995 WL 88918, at *6 ("The arbitration proceeding in the present case was clearly quasi-judicial.") Leclerc, however, tries to dodge the privilege by alleging: "whether this specific JAMS arbitration should be treated as a quasi-judicial proceeding for privilege purposes—given the relaxed formalities, the non-lawyer representation, and the Arbitrator's own characterization—should not be resolved against Plaintiff at the pleading stage." Compl. ¶ 23(c).

His feint fails. There is no genuine fact question regarding whether his pending JAMS arbitration against Red Bull is quasi-judicial. Leclerc and Red Bull agreed that his disputes would be resolved through an arbitral process that provides for discovery and a trial, rather than through the judicial process. Some procedures may differ, but arbitration remains a form of litigation. Conduct of litigation counsel in an arbitration is, therefore, subject to the absolute litigation privilege as a matter of controlling Illinois law, as set forth in *Hincks*, *Bushell*, and *Kaminski*.

The relevant analysis to determine if a proceeding is a quasi-judicial proceeding was recently reaffirmed by the Illinois Appellate Court in *Hincks*:

> Courts evaluate whether a body is quasi-judicial based on the presence of six powers:
>
> > (1) the power to exercise judgment and discretion; (2) the power to hear and determine or to ascertain facts and decide; (3) the power to make binding orders and judgments; (4) the power to affect the personal or property rights of private persons; (5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and (6) the power to enforce decisions or impose penalties.
>
> A quasi-judicial body need not possess all six powers; however, the more powers it possesses, the more likely the body is acting in a quasi-judicial manner.

--- N.E.3d ---, 2025 IL App (2d) 250023, ¶ 25 (quoting *Kalish v. Ill. Educ. Ass'n*, 510 N.E. 2d 1103, 1106, 157 Ill. App. 3d 696, 971-72 (1st Dist. 1987)). The pending arbitration readily satisfies this analysis. Judge Griffin (Ret.), the arbitrator in the underlying arbitration, possesses all these duties and powers, with his orders being enforced through the Federal Arbitration Act.[5] Leclerc's attempt to punt this issue away as a purported fact dispute fails as a matter of law.

Further, accepting Leclerc's argument would undermine the entire purpose of providing attorneys with an absolute litigation privilege in arbitrations. The resulting exposure would deter attorneys from agreeing to represent clients in arbitrations and interfere with their ability to represent clients zealously in arbitrations. An attorney representing a client in arbitration has, and must have, the same legal protections as an attorney representing a client in litigation. Leclerc should not be permitted to undermine these important protections by advancing a frivolous factual theory regarding the quasi-judicial status of his particular arbitration.

---

[5] To ensure that there is no ambiguity regarding this point, Ogletree has attached JAMS Employment Arbitration Rules and Procedures hereto as Exhibit 1. *See also* note 3 above.

Finally, Leclerc tries to plead around Illinois's absolute litigation privilege by misapplying the "*Erie* doctrine." He alleges that the Illinois Supreme Court has not issued an opinion holding that the absolute litigation privilege "applies to private employment arbitration under circumstances comparable to those present here...." Compl. ¶ 23(d). This argument leads nowhere. "Where the Illinois Supreme Court has not ruled on the issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Kahn v. Walmart Inc.*, 107 F.4th 585, 605 (7th Cir. 2024) (quoting *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015)). There are no indications (persuasive or otherwise) that the Illinois Supreme Court would exempt Leclerc's particular arbitration from Illinois's absolute litigation privilege. The Illinois Appellate Courts have uniformly applied the doctrine to claims brought against counsel that pertain to both judicial and quasi-judicial proceedings.[6] Leclerc's arbitration is not an exception to the general rule.

## III. Leclerc Fails to State a Claim Against Ogletree.

If the Court declines to dismiss the claims against Ogletree based on the foregoing two dispositive arguments, it should dismiss them for failure to state a claim.

### A. Leclerc fails to state a fraud or fraudulent concealment claim (Count I).

Federal Rule of Civil Procedure 9(b) requires fraud claims to be stated with greater "particularity" than other claims; "conclusory" assertions of a fraud scheme are not enough. *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990) ("Plaintiffs must provide more than

[6] In addition to the cases cited in the body of this memorandum, the following the Illinois Appellate Court have applied Illinois's absolute litigation privilege in the following cases: *Rosenbaum v. Samler*, 269 N.E.3d 1141, 1154-56, 2025 IL App (1st) 240039, ¶¶ 51-61; *Kim v. State Farm Mut. Auto. Ins. Co.*, 199 N.E.3d 737, 748-49, 2021 IL App (1st) 200135, ¶ 38; *Fanady v. Israelov*, 2025 IL App (1st) 240419-U, ¶¶ 15-17; *Qualizza v. Freeman*, 2024 IL App (1st) 231534-U, ¶¶ 29-32; *Eagle Tr. Fund v. Miller*, 2022 IL App (5th) 210156-U, ¶¶ 31-34.

conclusory allegations to satisfy rule 9(b)'s requirement that the circumstances of the fraud be pleaded with particularity."). "The elements of a claim for fraudulent misrepresentation are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 969, 351 Ill. App. 3d 752, 761 (1st Dist. 2004).[7]

Leclerc's fraud claim is based on Ogletree's production of a static PDF of the Agreement and Ogletree's statement that Red Bull was not in possession of the Adobe Sign certified package version of the Agreement. These allegations do not state a fraud claim against Ogletree.

First, Leclerc does not allege that Ogletree made a false statement of material fact about the Agreement. He claims that Ogletree's characterization of the static PDF version of the Agreement as a genuine document was false because the PDF lacked the "the digital certificate, tamper-evident seal, and crypto-graphic proof of authenticity that a genuine Adobe Sign certified package would contain." Compl. ¶ 1. The absence of metadata from the PDF version of the Agreement does not mean Ogletree made a false statement of material fact about the document. Production of PDFs in litigation, rather than native versions, is routine. It is not fraud.

Second, to state a fraud claim against Ogletree based on the production of a discovery document, Leclerc must allege with particularity both that the document had been manipulated and that Ogletree knew about the manipulation. He has not done so. Leclerc's characterization of

[7] Count I also references fraudulent concealment, which has the same fraud elements above plus the element "that the defendant concealed a material fact when it was under a duty to disclose to the plaintiff." *W.W. Vincent*, 814 N.E.2d at 969, 351 Ill. App. 3d at 762. Because Leclerc cannot even plead fraud, his fraudulent concealment claim fails as well. Additionally, Ogletree owed no duties to Leclerc, who was the opposing party in the arbitration.

the PDF version as "non-genuine" reflects his objection to the production of a static PDF. He has not claimed that the document was changed or back-dated or that any other substantive change had been made to it, let alone that Ogletree was aware of any such manipulation.

Third, Leclerc does not allege that Ogletree intended to induce him to act or that he detrimentally relied upon Ogletree's statements. To the contrary, he alleges that Ogletree made the statements to induce the arbitrator to deny his motion to compel. *See*, *e.g.*, Compl., ¶ 119 ("The Tribunal was induced to deny authentication" of the Agreement in the manner sought in Leclerc's motion to compel.) And Leclerc specifically alleges that he "immediately challenged the authenticity of the Purported Agreement, identifying the absence of the digital certificate." *Id.* ¶ 85. In an obvious attempt to state a sham claim, he alleges that he relied on the truthfulness of Ogletree's statements by "continuing to litigate" his claim against Red Bull unaware of their falsity. *Id.* ¶ 118. This detrimental reliance claim is neither logical nor plausible; Leclerc would surely have continued to arbitrate the legality of his employment termination by Red Bull regardless of the truth or falsity of Ogletree's statements about the Agreement.

Finally, Leclerc alleges no actionable damages resulting from the misrepresentations which, at most, caused the arbitrator to deny his "request for authentication via direct transmission from Adobe Sign." *Id.* ¶ 92. Damages arising out of a discretionary discovery order in a still-pending arbitration are entirely speculative. Leclerc even admits this, speculating that "[h]ad the Tribunal known the genuine package was available and retrievable, there is a reasonable probability it would have ruled differently on authentication and discovery." *Id.* ¶ 119. Even assuming he is right, he can certainly raise this issue with the arbitrator in a motion to reconsider.

Leclerc's "fraud" concerns should be addressed in the arbitration with a motion to reconsider and (if he is correct) a sanctions motion (*see* Exhibit 1, JAMS Rule 29) or by appealing

the final arbitration award pursuant to Section 10(a) of the Federal Arbitration Act, 9 U.S.C. § 10(a)(1) (arbitration award can be vacated when "procured by corruption, fraud, or undue means"). His concerns should not be addressed by suing opposing counsel for fraud in a lawsuit that is, for all intents and purposes, an interlocutory appeal of the arbitrator's discovery order.[8]

**B. Leclerc fails to state a conspiracy claim (Count II).**

A person cannot conspire with himself. Leclerc's conspiracy claim against Ogletree fails for this reason: an agent, such as an attorney, cannot conspire with his or her principal, *i.e.*, the client. *See, e.g.*, Compl. ¶ 8 ("[T]he false statement at the May 12, 2026 hearing was made by counsel for Red Bull"); *id.* ¶ 32 ("Red Bull is vicariously liable for the acts of *its counsel and agents committed within the scope of their authority*" (emphasis added)). In this context, the agent (Ogletree) and principal (Red Bull) are one and the same. *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571, 182 Ill. 2d 12, 24 (Ill. 1998) ("[B]ecause the acts of an agent are considered in law to be the acts of the principal, there can be no conspiracy between a principal and an agent."); *Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 852 (N.D. Ill. 2021) ("Count 2 fails to the extent that it asserts a conspiracy between agents [ ] and their principal [ ], because that is not permitted under Illinois law.") The same is true with respect to Brooks, who is Red Bull's in-house counsel. Leclerc has not even alleged that Ogletree communicated with Castañeda, whose only involvement was years before Ogletree was engaged to represent Red Bull in the arbitration. Compl. ¶¶ 35, 124.

Additionally, Leclerc cannot plausibly allege the elements of a conspiracy. To succeed on a conspiracy claim under Illinois law, "a plaintiff must prove two things: '(1) an agreement

---

[8] Last year, the Seventh Circuit sanctioned a *pro se* litigant who appealed the dismissal of her lawsuit challenging the termination of her employment due to her refusal to be vaccinated for COVID-19 after the district court compelled arbitration, noting that it is inappropriate for a litigant to increase the costs of arbitration by filing meritless collateral lawsuits or appeals. *Retzios v. Epic Sys. Corp.*, 126 F.4th 1282, 1287 (7th Cir. 2025). This is exactly what Leclerc is doing here.

between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.'" *Clay Fin. LLC v. Mandell*, No. 16 C 11571, 2017 WL 3581142, at *6 (N.D. Ill. Aug. 18, 2017) (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007)).

Leclerc's alleged agreement is conclusory and implausible. Ogletree's only involvement was as counsel to Red Bull in the arbitration, yet he contends that Ogletree joined a pre-existing years-long conspiracy to terminate Leclerc due to his objections to Red Bull's COVID-19 vaccination requirements. The Seventh Circuit has affirmed the dismissal of similarly outlandish *pro se* conspiracy claims as frivolous. *Falls v. Paries*, No. 22-2252, 2023 WL 2445682, at *1-2 (7th Cir. Mar. 10, 2023) (affirming the dismissal of a "frivolous" pro se suit against a private attorney accused of conspiring with a state court judge to prevent him "from litigating pro se in state court as the successor in interest to his involuntarily dissolved company"). It is not plausible to suggest that Ogletree entered into an agreement with the other three defendants to defraud Leclerc or the arbitrator by convincing the arbitrator not to order Red Bull to produce the Adobe Sign certified package of the agreement between Red Bull and Castañeda. Indeed, Leclerc's theory proves too much. If a lawyer can be held to have joined a "conspiracy" by defending a client in litigation, then any defense lawyer could be hauled into court as a "co-conspirator." The absolute litigation privilege already bars such chicanery, and it makes no sense as a matter of tort law.

Additionally, Leclerc has not stated a stand-alone tort claim against any of the other defendants for the reasons stated herein as well as in the motions filed by those defendants. The absence of any cognizable tortious act by any of the alleged conspirators defeats this claim.

### C. Leclerc fails to state a claim for intentional infliction of emotional distress (Count IV).

Intentional infliction of emotional distress involves (1) "truly extreme and outrageous" conduct, (2) the intent to "inflict severe emotional distress" or knowledge "that there is a high probability that [the] conduct will cause severe emotional distress," and (3) actual "severe emotional distress in the victim." *Benton v. Little League Baseball, Inc.*, 181 N.E.3d 902, 926-27, 2020 IL App (1st) 190549, ¶ 64. "It is not enough that the defendant acted with a tortious or even criminal intent, that he intended to inflict emotional distress, or that his conduct could be characterized by malice." *Id.* "Given this high standard, a complaint alleging the intentional infliction of emotional distress must be more specific and detailed than normally permissible in pleading a tort action." *Id.* Given this exacting standard,

> Courts may dismiss an IIED claim if the alleged conduct is not sufficiently extreme and outrageous. As the Illinois Supreme Court has explained, to qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society. This is an objective inquiry that looks to all the facts and circumstances of a particular case.

*Gross v. Chapman*, 475 F. Supp. 3d 858, 863-64 (N.D. Ill. 2020) (cleaned up).

Leclerc's allegations against Ogletree flunk this test. A discovery dispute does not inflict severe, intolerably uncivilized emotional distress. And Leclerc does not make any non-conclusory allegations that Ogletree, by advancing its client's discovery position regarding the PDF document, acted with intent to inflict severe distress or knowledge of a high chance that its conduct would cause severe distress. No lawyer would think, let alone intend, that litigating a motion to compel regarding metadata would inflict severe emotional distress on the opposing party. Were the Court to accept his argument, litigants would readily sue their opposing counsel to obtain a litigation advantage whenever they were unhappy with an opponent's legal arguments or strategies.

## **CONCLUSION**

Ogletree respectfully requests that the Court grant this Motion and enter an Order (i) dismissing Leclerc's three claims against Ogletree and (ii) granting Ogletree such other relief as the Court deems just and proper. Leclerc cannot cure these defects through repleading, so the Court should dismiss his claims against Ogletree with prejudice.

Dated: August 31, 2026

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: */s/ Zachary J. Freeman*
One of Its Attorneys

Edward W. Feldman
Zachary J. Freeman
James P. Mooney
MILLER SHAKMAN LEVINE & FELDMAN LLP
(No. 90236)
30 W. Monroe Street, Suite 1900
Chicago, Illinois 60603
(312) 263-3700
efeldman@millershakman.com
zfreeman@millershakman.com
jmooney@millershakman.com