**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES LECLERC | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:26-cv-07715 |
| | ) | |
| RED BULL NORTH AMERICA, INC., | ) | Hon. Sharon Johnson Coleman |
| OGLETREE, DEAKINS, NASH, | ) | |
| SMOAK & STEWART, P.C.; | ) | Magistrate Hon. Karyn L. Bass Ehler |
| KIM BROOKS, individually; and | ) | |
| JUAN C. CASTANEDA, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS KIM BROOKS AND JUAN C. CASTAÑEDA'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants, Kim Brooks ("Brooks") and Juan C. Castañeda ("Castañeda") (collectively, the "Individual Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6), submit this Memorandum in support of their Motion to Dismiss Plaintiff Charles Leclerc's ("Plaintiff") Complaint (the "Complaint"). In support, the Individual Defendants state:

**INTRODUCTION**

As creative as the packaging may be, Plaintiff's Complaint presents nothing but another attempt to dispute his termination and appeal certain discovery rulings from a pending underlying arbitration. Plaintiff's claims fail both procedurally and on the merits. As an initial matter, this Court lacks personal jurisdiction over the Individual Defendants. In any event, Plaintiff's claims are preempted by the Illinois Human Rights Act, and Plaintiff cannot use this forum to challenge matters that he has already relegated to private arbitration. Notwithstanding, Plaintiff does not have standing to bring his claims against the Individual Defendants, either. And, even if he did, those claims would be precluded by the absolute litigation privilege. Finally, Plaintiff fails to meet his

pleading burden for each of his four claims. Plaintiff cannot overcome the litany of defenses to this suit, and this Court should accordingly dismiss the Complaint with prejudice.

## PLAINTIFF'S ALLEGATIONS

Red Bull North America, Inc. ("Red Bull") hired Plaintiff in January 2021. Doc. 11 at ¶ 38. On May 19, 2022, Red Bull retained Castañeda as counsel to conduct an investigation into Plaintiff's employment due to concerns over his racist and unethical behavior. Doc. 11 at ¶¶ 1, 35, 48. Brooks, in-house counsel for Red Bull, executed an engagement agreement with Castañeda to this end (the "Agreement"). Doc. 11 at ¶ 2. The Agreement was executed using an Adobe program owned by Castañeda. Doc. 11 at ¶ 35. Following the investigation, on July 11, 2022, Red Bull terminated Plaintiff's employment. Doc. 11 at ¶ 49. Counsel for Red Bull memorialized this reason in a letter sent to Plaintiff on July 22, 2022 (the "Slater Letter"). Doc. 11 at ¶ 51.

Plaintiff subsequently applied for unemployment benefits, which Red Bull contested based on Plaintiff's misconduct. Doc. 11 at ¶¶ 54, 58, 60-61. On July 28, 2022, Plaintiff also filed a Charge of Discrimination against Red Bull, and he received a Notice of Right to Sue on April 23, 2024. Doc. 11 at ¶ 74. In connection with his employment, Plaintiff executed a Mutual Arbitration Agreement ("MAA") governing all disputes between Plaintiff and Red Bull, as well as related third-party beneficiaries. Doc. 11 at ¶ 71; Ex. 1, MAA. In line with the MAA, Plaintiff filed a demand for arbitration (the "Arbitration") shortly after, where Red Bull was represented by Defendant Ogletree, Deakins, Nash, Smoak & Steward, P.C. ("Ogletree") (with Red Bull, Brooks, and Castañeda, "Defendants"). Doc. 11 at ¶¶ 75-76. Plaintiff's operative arbitration demand alleges approximately twenty claims under various theories of liability, including in pertinent part Title VII and the Illinois Human Rights Act ("IHRA") violations. *See* Doc. 11 at ¶ 75; Ex. 2, Supp. Arb. Demand (Nov. 11, 2024). Plaintiff's claims, and the basis of the Arbitration, stem primarily

from Plaintiff's assertion that he was discriminated and retaliated against for requesting a religious accommodation to Red Bull's COVID-19 testing mandate (an accommodation that Red Bull approved). *See, e.g.*, Doc. 11 at ¶¶ 1, 4, 42; *see also* Ex. 2.

In discovery, Plaintiff requested Red Bull produce the Agreement, which Red Bull did on September 9, 2025. Doc. 11 at ¶¶ 78, 82. The version that Red Bull produced was a "static PDF," as opposed to a "genuine Adobe Sign certified package." Doc. 11 at ¶ 82. However, Red Bull also produced in tandem an audit report verifying the Agreement. Doc. 11 at ¶ 96(a). It is the static PDF that drives Plaintiff's claims before this Court. *See generally* Doc. 11.

Plaintiff alleges a subsequent string of disputes over the static PDF, including purported misrepresentations by Red Bull (through its counsel) to the arbitrator about the nature of the document and whether a "certified" version is still in Red Bull's possession. Doc. 11 at ¶¶ 85, 87-98, 104-07. Ultimately, the arbitrator disagreed with Plaintiff's position. In lieu of Plaintiff's request that Red Bull produce a "certified" version, the arbitrator ruled that Red Bull may submit a certification from a knowledgeable individual attesting to the authenticity of the version of the Agreement produced in the Arbitration. Doc. 11 at ¶¶ 90-92.

Taking the Agreement dispute to its most extreme bounds, Plaintiff subsequently filed suit in this Court, alleging four causes of action against the Defendants: Fraud (Count I – all Defendants), civil conspiracy (Count II – all Defendants), negligent spoliation of evidence (Count III – Red Bull, Brooks, and Castañeda), and intentional infliction of emotional distress ("IIED") (Count IV – all Defendants). Doc. 11 at ¶¶ 110-36. The crux of Plaintiff's Complaint is that, by virtue of the "missing" certified Agreement, Defendants are engaged in a "fraudulent scheme" to strip Plaintiff of his ability to prove his underlying claims. *E.g.*, Doc. 11 at ¶¶ 1, 4. Namely, Plaintiff asserts that he will be unable to prove in the Arbitration that Red Bull terminated him

under pretext for religious discrimination and retaliation. *See, e.g.*, Doc. 11 at ¶ 70 ("The McDonnell Douglas framework guarantees a meaningful opportunity to prove pretext. The Defendants' fraud denied him that opportunity."). Plaintiff has raised this same pretext argument in the Arbitration. Ex. 2 at 2 (alleging "[a] reason to fire him was fabricated").

## ARGUMENT

### I. Legal Standards.

Where a defendant moves to dismiss under Rule 12(b)(1) based on preemption, it is the plaintiff's burden to establish subject matter jurisdiction. *Center for Derm. & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). To determine whether a plaintiff has met this burden, the court relies on federal pleading standards and must accept as true all well-pleaded facts and draw reasonable inferences in the plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

A motion to dismiss under Rule 12(b)(2) tests whether the court has personal jurisdiction over a defendant. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020). On a Rule 12(b)(2) motion that is resolved without an evidentiary hearing, the plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). The court may consider written submissions from both parties. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

In reviewing a Rule 12(b)(6) motion, this Court accepts all well-pled facts as true and draws all reasonable inferences in the plaintiff's favor. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]llegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch Co., Inc.*, 694

F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II. This Court Lacks Personal Jurisdiction over the Individual Defendants.

As a threshold matter, the Individual Defendants are not subject to personal jurisdiction in Illinois. When a court is sitting in diversity, as here (Doc. 11 at ¶ 36), the court considers the Illinois forum statute, 735 ILCS 5/2-209, to determine whether personal jurisdiction exists. *Tamburo v. Dworkin*, 601 F.3d 693, 697 (7th Cir. 2010). The Illinois forum statute "authorizes jurisdiction to the full extent permitted by the United States Constitution." *Id.* To that end, each defendant must have sufficient minimum contacts with Illinois so as not to "offend traditional notions of fair play and substantial justice." *Id.* at 700-01. Under this standard, personal jurisdiction may be either general or specific. *Id.* at 701-02. Here, Plaintiff cannot establish either form of personal jurisdiction for Brooks or Castañeda.

### A. General Personal Jurisdiction Does Not Apply.

General personal jurisdiction requires the individual to have "continuous and systematic contacts" with Illinois. *Id.* at 701. "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Id.* (citation omitted). Courts will decline to exercise general jurisdiction where a defendant's contacts with the forum state are "isolated or sporadic." *Id.* (holding no general jurisdiction based on occasional visits and limited business in forum state).

Plaintiff has not alleged any facts as to Brooks or Castañeda that would confirm general jurisdiction. *See generally* Doc. 11. Plaintiff acknowledges that both Individual Defendants are residents of California. Doc. 11 at ¶¶ 34-35; *see also* Ex. 3, K. Brooks Decl., ¶ 3; Ex. 4, J. Castañeda Decl., ¶ 3. Neither Individual Defendant currently lives, or has ever lived, in Illinois,

and neither owns property in the forum state. Ex. 3 at ¶¶ 3-4; Ex. 4 at ¶¶ 3-4. Brooks has only ever visited Illinois once or twice per year, primarily for long weekends, over a five-year period. Ex. 3 at ¶¶ 6-7, 9. Her last visit to Illinois was over 2.5 years ago. Ex. 3 at ¶ 10. Similarly, Castañeda has only visited Illinois once per year in the last five years. Ex. 4 at ¶¶ 9-10. Neither is licensed to practice law in Illinois, and both Individual Defendants work outside of Illinois. Ex. 3 at ¶¶ 6-8; Ex. 4 at ¶¶ 5-6, 10. They perform their respective jobs from offices located in California. Ex. 3 at ¶ 5; Ex. 4 at ¶ 5. In fact, Brooks has only traveled to Illinois for business once for a single-day training. Ex. 3 at ¶¶ 6-7. And Castañeda has never traveled to Illinois to perform legal services; his five trips have been limited to engaging with his colleagues. Ex. 4 at ¶¶ 9. Given the above, there is no basis to support general jurisdiction.

**B. Specific Personal Jurisdiction Does Not Apply.**

Nor can Plaintiff establish specific jurisdiction. This type of jurisdiction requires that the defendant purposefully direct the activities at issue in the litigation at the forum state. *Tamburo*, 601 F.3d at 702. "Even when intentionally tortious conduct is alleged, the plaintiff must set forth some litigation-related minimum contacts between the defendant and the forum state." *Kraft Chem. Co. v. Salicylates & Chems. Private Ltd.*, No. 14-C-04186, 2014 WL 11127924, at *2 (N.D. Ill. Oct. 28, 2014). The inquiry focuses on "where the tortious conduct took place." *Id.* It is not enough that the plaintiff feels the "effect" of the defendant's conduct in the forum. *Id.* (citing *Walden v. Fiore*, 571 U.S. 277 (2014)). Rather, "the 'proper question' is 'whether the defendant's conduct connects him to the forum in a meaningful way.'" *Id.* (citation omitted). In assessing specific jurisdiction, the court must also still consider traditional notions of fair play and substantial justice in hailing a foreign defendant into court in the forum. *Tamburo*, 603 F.3d at 702.

**1. The Complaint Does Not Support Specific Jurisdiction.**

Plaintiff has not alleged facts to support the conclusion that the Individual Defendants directed their allegedly tortious conduct at Illinois. As to Brooks, Plaintiff's claims revolve around a "belief" that Brooks orchestrated producing a static PDF of the Agreement in the Arbitration, reviewed Plaintiff's termination letter, suggested Red Bull challenge Plaintiff's request for unemployment benefits, and retained Ogletree to defend Red Bull. *See* Doc. 11 at ¶ 34. But Brooks lives and works in California. *See* Ex. 3 at ¶¶ 3-5, 11. Even if accurate, the allegations do not set forth that any of the conduct has a meaningful connection with Illinois. In fact, in the scope of her role advising Red Bull on the above matters, Brooks only primarily interacted with other Red Bull employees who were *also* located outside of Illinois. Ex. 3 at ¶¶ 13-15. The fact that Plaintiff may have felt the effects of these decisions in Illinois does not carry his burden. *E.g.*, *Kraft Chem.*, 2014 WL 11127924 at *2-3; *see also Sheehan v. Breccia Unlimited Co.*, 48 F.4th 513, 522-25 (7th Cir. 2022) (collecting cases affirming same principle, further noting that defendant's minimum contacts "must be with the forum itself and not merely with a person who resides there").

As to Castañeda, Plaintiff's claims focus on the assertion that Castañeda owned the Adobe Sign account through which the Agreement was executed, and that he drafted, signed, and sent that Agreement to Brooks. Doc. 11 at ¶ 35. None of these allegations involve Castañeda meaningfully directing activity to Illinois. To the contrary, Castañeda purchased the Adobe Sign account in California and processed the Agreement in California – including sending the Agreement to a California resident, Ex. 3 at ¶¶ 11-12 – and personally executed it in California. Ex. 4 at ¶¶ 11-14. Castañeda performed all of his work for Red Bull from California, and his primary point of contact at Red Bull was Brooks, another California resident. Ex. 4 at ¶ 15.

Nor would it serve the notions of fair play and substantial justice to require California residents to litigate claims in this forum on these facts. Each of the Individual Defendants

performed all of their work outside of Illinois, and that work included routine employment-based conduct, like in-house counsel hiring outside counsel to handle an arbitration for her employer, or outside counsel maintaining an Adobe Sign account on which an engagement letter was signed in California at the direction of his client.

**2. Even So, the Fiduciary Shield Doctrine Precludes Specific Jurisdiction.**

To that end, even if this Court were to consider Plaintiff's allegations to be valid contacts "purposefully directed" at Illinois, specific jurisdiction still does not apply under the fiduciary shield doctrine. This doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal.'" *Benda v. Per-Se Techs., Inc.*, No. 04-C-952, 2004 WL 1375361, at *2 (N.D. Ill. Jun. 16, 2004) (quoting *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994)). The fiduciary shield doctrine recognizes the inherent unfairness of subjecting an individual to the personal jurisdiction of a forum based on contacts that were dictated by the direction of another with control over him. *See id.* The Complaint does not contain any allegations that Brooks or Castañeda engaged in the above actions for personal gain. *See generally* Doc. 11. Rather, it confirms that each of them acted in the course of their employment with Red Bull (Brooks) or scope of their retention by Red Bull (Castañeda). Accordingly, specific personal jurisdiction is precluded over these California residents. *See, e.g.*, *G Six Consulting LLC v. Mullett*, No. 25-CV-2166, 2025 WL 2522757, at *2-4 (N.D. Ill. Sept. 2, 2025) (granting motion to dismiss because individual's "contacts with Illinois were made entirely within the scope of his employment" and "were not made at his discretion or motivated by personal gain"); *Blubaugh v. American Contract Bridge League*, No. IP 01-358-C-H/K, 2002 WL 31040339, at *9-10 (S.D. Ind. Jul. 31, 2002) (granting motion to dismiss individual defendants, who were leaders of defendant organization, for lack of

personal jurisdiction in conspiracy claim, noting minimal contacts with forum state insufficient).

Because this Court does not have personal jurisdiction over the Individual Defendants, it should grant their Motion to Dismiss under Rule 12(b)(2).

## III. Plaintiff Cannot Clear Threshold Hurdles that Preclude his Claims.

In addition to a lack of personal jurisdiction, Plaintiff also cannot overcome preliminary barriers to reaching the merits of his claims. First, this Court lacks subject matter jurisdiction because the IHRA preempts Plaintiff's state tort claims. Second, Plaintiff cannot circumvent the Federal Arbitration Act ("FAA") and established arbitration procedures by escalating Arbitration matters to this Court, which also serves as a basis to strip this Court of subject matter jurisdiction. Third, Plaintiff has not alleged standing related to the Individual Defendants' purported conduct. Lastly, absolute litigation privilege bars his claims.

### A. Plaintiff's Claims Are Preempted by the IHRA.

Under Rule 12(b)(1) and the IHRA, Plaintiff cannot proceed on three of his four claims, namely fraud (Count I), conspiracy (Count II), and IIED (Count IV). The IHRA expressly prohibits courts from exercising jurisdiction "over the subject of an alleged civil rights violation as set forth in th[e] Act." 775 ILCS 5/8-111(D). Thus, preemption applies to state tort claims "that are 'inextricably linked' to a civil rights violation within the meaning of the statute." *Ulatowski v. John Sterling Corp.*, No. 03-C-8847, 2004 WL 1385829, at *5 (N.D. Ill. Jun. 16, 2004) (quoting *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000)). To determine preemption, courts consider whether there exists any "*independent* basis for the action apart from the IHRA itself.'" *Copot v. Stewart Title Guar. Co.*, No. 19-C-6987, 2020 WL 1848204, at *7 (N.D. Ill. Apr. 13, 2020) (emphasis in original) (citing *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017)). If the claim is tied to a "legal dut[y] created by the IHRA," it is preempted. *Id.* (citations omitted).

Courts have previously applied IHRA preemption to dismiss state tort claims like fraud, conspiracy, and IIED – even when those tort claims were alleged against individuals, as opposed to a corporate entity. *Ulatowski*, 2004 WL 1385829 at *1, 5 (holding state tort claims tied to discrimination claims, including fraud, conspiracy, and IIED, preempted by IHRA and collecting cases holding same) (dismissing tort claims as to human resources employee); *Copot*, 2020 WL 1848204 at *7 (dismissing conspiracy claims tied to discrimination retaliation allegations).

IHRA preemption applies to Plaintiff's fraud, conspiracy, and IIED claims. Plaintiff's fraud claim revolves around the purported "pretextual justification" that prompted Defendants' alleged misstatements. Doc. 11 at ¶¶ 111-21 (alleging "fraudulent scheme began" when Defendants allegedly attempted to "create a pretextual justification" for his termination). The same is true of Plaintiff's conspiracy claim. Doc. 11 at ¶¶ 123-25 (alleging conspiracy was to enact purported fraudulent scheme to construct "pretextual justification" for his termination). Plaintiff's IIED claim also hinges on establishing that his termination was pretextual. Doc. 11 at ¶¶ 133-36 (alleging emotion distress was product of "extreme and outrageous" "fraudulent scheme" to establish pretextual justification for his termination). Because each of these claims are dependent on Plaintiff proving a critical prong of his religious discrimination and retaliation claims in the Arbitration – *i.e.*, that Red Bull's stated reason for termination was pretextual – this Court lacks subject matter jurisdiction, and these claims should be dismissed with prejudice.

**B. Plaintiff Cannot Use this Suit to Escape his Arbitration Agreement.**

This Court also lacks subject matter jurisdiction based on the FAA. Plaintiff attempts to cast all of his claims as freestanding allegations distinct from the Arbitration. *See* Doc. 11 at ¶¶ 1, 3. However, the ultimate dispute in the Complaint makes clear that Plaintiff asks this Court to circumvent the arbitrator's authority on both procedural and merits issues that fall directly within

the arbitrator's purview. This Plaintiff cannot do.

### 1. The FAA Imposes Relevant Arbitration Principles.

The Supreme Court has confirmed that arbitration agreements are to be considered as enforceable as any other contract. *E.g.*, *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Plaintiff inherently acknowledged this premise when he initiated the Arbitration in line with the MAA. Because of this, Plaintiff is bound by certain principles embodied in the Federal Arbitration Act (the "FAA") and supporting authority.

First, courts have limited ability to review an arbitrator's decisions, including on procedural matters before the arbitrator enters an award. *See* 9 U.S.C. § 10(a) (noting district court may only vacate "awards" under limited circumstances). Consequently, courts routinely dismiss requests from parties who ask a district court to intervene in an arbitrator's procedural decisions. *E.g.*, *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Admins., Inc.*, No. 19-CV-64, 2019 WL 1168109, at *2-3 (N.D. Ill. Mar. 13, 2019); *Corinthian Coll., Inc. v. McCague*, No. 09-C-4899, 2010 WL 918074, at *1-3 (N.D. Ill. Mar. 4, 2010). Indeed, a district court cannot review an arbitrator's decision until the arbitrator "has completed his assignment," *id.* at *2, and entered a final decision. *Corinthian Coll.*, 2010 WL 918074 at *3. If "[f]urther proceedings are plainly required," then the district court cannot intervene. *Id.* (dismissing plaintiff's petition seeking relief on arbitrator's procedural, non-merits decision). To the extent there are "procedural shortcomings" in the arbitration, that is an issue for the arbitrator to decide. *ADM Inv. Servs., Inc. v. Investors Equity Life Ins. Co. of HI, Ltd.*, 904 F. Supp. 816, 817 (N.D. Ill. 1995) (citation omitted). Plaintiff even addresses this limitation in the Complaint, acknowledging that the FAA would permit him to challenge an "award [] procured by corruption, fraud, or undue means[.]" Doc. 11 at ¶ 18.

This limitation serves an important function: "If decisions of [a procedural] nature were to

be deemed an appealable award, then the Court would be flooded with 'interlocutory appeals' of this sort, depriving the FAA of its power." *Zapata v. C3T, Inc.*, No. 13-CV-600-JPS, 2013 WL 5786579, at *4 (E.D. Wis. Oct. 28, 2013) (rejecting plaintiff's request to intervene on arbitrator's procedural decision); *see also Herrington v. Waterstone Mortg. Corp.*, No. 11-cv-779-bbc, 2012 WL 12995757, at *3-4 (W.D. Wis. Dec. 3, 2012) (highlighting impropriety of interlocutory appeals in arbitration, pointing to inefficiency and destruction of arbitration's purpose) (citing *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011)).

Second, courts regularly reject attempts by plaintiffs to reframe their claims in an effort to avoid arbitration. *See, e.g.*, *Goeben v. Morgan Stanley DW Inc.*, No. 06-C-319, 2006 WL 2711802, at *1-2 (E.D. Wis. Sept. 21, 2006) (noting plaintiff "implicitly" sought to vacate arbitrator's decision through subsequent federal complaint and holding court lacked subject matter jurisdiction). As the Seventh Circuit has noted, courts have "routinely held that a party may not avoid a contractual arbitration clause merely by 'casting its complaint in tort.'" *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993) (citations omitted). To determine whether a claim is arbitrable, the court focuses on "'the relationship of the claim to the subject matter of the arbitration clause. Were the rule otherwise, a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims.'" *Gore v. Alltel Comms., LLC*, 666 F.3d 1027, 1036 (7th Cir. 2012) (citation omitted).

**2. Plaintiff Attempts to Defy these Principles in this Suit.**

Plaintiff attempts to circumvent both of these underlying principles by filing the instant action. Throughout the 54-page Complaint, Plaintiff makes clear that he is ultimately only asking this Court to entertain two key issues, both of which are precluded under the FAA and the MAA.

First, Plaintiff wants this Court to intervene in the arbitrator's authority to manage

Plaintiff's discovery dispute over the "static PDF" Agreement. *E.g.*, Doc. 11 at ¶¶ 1-2, 4, 8-9, 11, 20, 25-27, 29, 87-93. But this Court's ability to interfere in the Arbitration is limited only to vacating an "award" under certain circumstances. *See* 9 U.S.C. § 10. Plaintiff cannot escape the plain language of the statute. This discovery dispute is not an "award;" it is a procedural decision that does not offer the "finality" required for this Court to engage in Plaintiff's inquiry. *See Corinthian Coll.*, 2010 WL 918074 at *3. And the arbitrator is granted "broad authority" regarding "the collection of evidence relevant to the arbitration," *Amgen, Inc. v. Kidney Ctr.*, 95 F.3d 562, 563 (7th Cir. 1996) – authority that he exercised in addressing Plaintiff's concerns in the Arbitration. Though Plaintiff dresses up his dispute as one in tort, it is ultimately an arbitral discovery issue, as is made plain from Plaintiff's own requested relief. *See* Doc. 11 at VI.D. (requesting injunction requiring Defendants to produce alternate version of Agreement). Plaintiff's request that this Court grant him relief associated with the discovery proceedings in the Arbitration is prohibited by the FAA. If he is displeased with the arbitrator's discovery decisions, and if an award is *eventually* entered against him (a fact that remains to be seen), only then may he put his purported fraud concerns before this Court.[1]

Second, Plaintiff asks this Court to enter a dispositive ruling that Defendants acted with pretext in terminating his employment. *E.g.*, Doc. 11 at ¶¶ 1, 6, 12, 23, 43-48. Three of Plaintiff's four claims all hinge on this finding. *See* Doc. 11 at ¶¶ 110-25, 132-36. But that legal issue has already been relegated to the arbitrator by virtue of Plaintiff's employment claims. *See* Ex. 2 at 3-4 (alleging claims incorporating whether employer's decision to terminate was pretextual).

---

[1] It does not appear that Plaintiff bases his four causes of action on the discovery dispute related to the investigation file. *See* Doc. 11 at ¶¶ 110-36. To the extent Plaintiff claims otherwise, *see* Doc. 11 at ¶ 108, sect. IV.D. (requesting injunction requiring Defendants to produce investigation materials), the same assessment rings true. Any such relief associated with the discovery dispute over the investigation file is beyond this Court's province.

Plaintiff already agreed to arbitrate that issue, and he cannot recast his concerns about an allegedly pretextual termination through his tort claims. *See Sweet Dreams*, 1 F.3d at 643. In addition to implicating IHRA preemption concerns,[2] a ruling otherwise would also result in the exact contradictory proceeding conundrum against which Plaintiff himself warned. *See* Doc. 11 at ¶ 16 (highlighting concerns regarding "inconsistent rulings on same core facts" if related issues were to proceed simultaneously in both arbitration and federal court). To that end, the solution to this concern is *not* to allow Plaintiff to avoid his agreement to arbitrate the issue of pretext, abdicate the arbitrator's authority in contravention of the FAA, and disregard IHRA preemption problems. The solution is to dismiss the Complaint.[3]

**C. Plaintiff Lacks Standing.**

Plaintiff also cannot maintain his claims against the Individual Defendants because he lacks standing. Article III of the Constitution "confines the federal courts to a properly judicial role" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016). The "irreducible constitutional minimum of standing" requires the plaintiff to demonstrate that he has suffered an injury in fact that is fairly traceable to the defendant's conduct and redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff cannot meet the latter two requirements.

**1. Plaintiff's Injuries Are Not "Fairly Traceable" to the Individual Defendants.**

Plaintiff's primary disputes are that he has not obtained the discovery outcomes in the Arbitration that he want to prove his claims in that forum. *See, e.g.*, Doc. 11 at ¶¶ 1-2, 4, 8-9, 11,

---

[2] *See supra*, at III.A.

[3] Courts have gone so far as to issue sanctions against *pro se* litigants who attempt similar baseless tactics challenging arbitration. *See Retzios v. Epic Sys. Corp.*, 126 F.4th 1282, 1286-87 (7th Cir. 2025).

20, 25-27, 29, 87-93. But Plaintiff does not, and cannot, allege that these outcomes are the result of the Individual Defendants' conduct. The Individual Defendants are not parties to the Arbitration and have no obligation or authority to produce documents therein. While Plaintiff implies that the Individual Defendants are involved in Red Bull's production decisions in the Arbitration, he did not and cannot allege that they are responsible for or control the decisions of the corporate entity.

In any event, as noted above, the arbitrator retains "broad authority" over "the collection of evidence relevant to the arbitration." *Amgen, Inc.*, 95 F.3d at 563. The arbitrator exercised that authority when he permitted the static PDF Agreement to stand with a verification from Red Bull. *None* of the Defendants, including the Individuals Defendants not named in the Arbitration, have control over the arbitrator's decisions. *See Zapata*, 2013 WL 5786579 at *3 (acknowledging same and rejecting plaintiff's interlocutory request in arbitration for lack of standing).[4]

**2. This Court Cannot Redress Plaintiff's Injuries.**

Similar to Plaintiff's traceability problem, this Court is precluded from redressing the discovery disputes at the heart of Plaintiff's Complaint. That is a matter for the arbitrator. A plaintiff who asks a district court to intervene in an arbitration on an interlocutory issue lacks standing because "there is no likelihood that a favorable decision by [the] Court would redress his alleged injury." *Zapata*, 2013 WL 5786579 at *3. Where the plaintiff's "issue actually seems to be with the arbitrator's decision," the district court cannot help. *Id.* Even a favorable decision for the plaintiff "would not necessarily bind the arbitrator to act." *Id.* ("In the end, it would be nothing more than an advisory opinion that the standing requirements of Article III are designed to prevent.").

---

[4] The *Zapata* court couched its standing conclusion as a matter of redressability, which the Individual Defendants address *infra*. *See* III.C.2. Because the injury flows from the arbitrator's decision, as opposed to the parties, the Individual Defendants believe this particular point speaks to traceability.

### D. The Absolute Litigation Privilege Precludes Plaintiff's Claims.

Even if Plaintiff could overcome the above threshold issues, his claims against the Individual Defendants would still be precluded under the absolute litigation privilege.[5] The privilege "affords an attorney complete immunity with respect to the communications he makes . . . regardless of the attorney's motives in making that communication and irrespective of the attorney's knowledge of the falsity of it or the unreasonableness of his conduct." *Scarpelli v. McDermott Will & Emery LLP,* 2018 IL App (1st) 170874, ¶ 18, 117 N.E.3d 238, 245-46. It protects both communications and "conduct performed in the practice of law" "before, during, and after litigation," including quasi-judicial proceedings. *Creative Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 697 (N.D. Ill. Jun. 24, 2022) (citations omitted); *see also Atkinson v. Affronti*, 369 Ill. App. 3d 828, 832, 861 N.E.2d 251, 255 (Ill. App. Ct. 2006) (noting quasi-judicial proceeding rule and holding correspondence prepared to potential litigants protected); *Hincks*, 2025 IL App (2d) 250023, ¶¶ 28-30 (noting arbitration is quasi-judicial proceeding). Litigation need not be active, and the privilege applies even to conduct taken in response to "potential" litigants. *Atkinson*, 369 Ill. App. 3d at 832, 861 N.E.2d at 255.

The privilege extends to both in-house counsel and outside counsel. *Creative Suppl*, 608 F. Supp. 3d at 697-98 (dismissing complaint with prejudice as to in-house and outside counsel). The privilege likewise extends to investigations. *Lewis v. Kalbhen*, 2025 IL App (1st) 242110, ¶¶ 30-33, 277 N.E.3d 922, 932 (Ill. Ct. App. 2025) (extending privilege to investigator retained "to investigate his client's claims"). Because the privilege applies regardless of the attorney's motive, courts have applied it to preclude even intentional torts. *See Creative Supply*, 608 F. Supp. 3d at

---

[5] Because this Court's jurisdiction is based on diversity, state law governs the substance of the dispute, and the Illinois absolute litigation privilege applies. *See Village of Schaumburg v. Permasteelisa N. Am. Corp.*, No. 24-1168, 2026 WL 2409840, at *2 (7th Cir. Aug. 18, 2026).

697 (collecting cases demonstrating application to fraud, negligence, and IIED claims); *In re Sharif*, 627 B.R. 889, 901 (Bankr. N.D. Ill. 2021) (applying privilege to civil conspiracy).

Plaintiff does not allege a single act by either Individual Defendant that would not be covered by the absolute litigation privilege. Each of the actions that Plaintiff alleges Brooks took was in furtherance of her role as Red Bull's in-house counsel and relate to steps taken before and during a quasi-judicial proceeding.[6] *See* Doc. 11 at ¶ 34 (noting Brooks' involvement in retaining Castañeda to investigate Plaintiff, reviewing the Slater Letter, participating in the unemployment benefits hearing decisions, engaging in document production strategies). Similarly, Castañeda's conduct was done in furtherance of his role as outside counsel to Red Bull in the investigation. *See* Doc. 11 at ¶ 35. Accordingly, all of Plaintiff's claims are barred against the Individual Defendants based on the absolute litigation privilege.

## IV. Plaintiff Has Not Adequately Pled Any Cause of Action.

In addition to these threshold issues, Plaintiff also has failed to plead any claim against the Individual Defendants under Rule 12(b)(6).

### A. Plaintiff Failed to Plead a Fraud Claim.

Plaintiff's fraud claim is based on his assertion that, when Red Bull submitted a "non-genuine" Agreement in the Arbitration, it "omitted facts necessary to make those representations non-misleading." *See* Doc. 11 at ¶¶ 112, 114. He alleges that Brooks "produced, directed, approved, or participated in the production" of the static PDF, though he does not allege she made any statements (or omissions) related to it. Doc. 11 at ¶ 112. Plaintiff does not connect Castañeda to Red Bull's production representations in the Arbitration. *See generally* Doc. 11 at ¶¶ 111-21.

---

[6] Both the Arbitration and the IDES hearing are considered quasi-judicial proceedings. *Kaminski v. Roadway Express, Inc.*, No. 94-C-4425, 1995 WL 88918, at *6 (N.D. Ill. Mar. 1, 1995) (applying privilege to arbitration); *see Shaw v. Dep't of Empl. Sec.*, 2013 IL App (1st) 122676, ¶ 24 (referring to IDES as quasi-judicial body) (citing 820 ILCS 405/802; 820 ILCS 405/803).

To plead a claim for fraud, Plaintiff must show an action in reliance on the truth of the statements made, and damages resulting from that reliance. See *In re Boeing 737 MAX Pilots Litig*., 638 F. Supp. 3d 838, 864 (N.D. Ill. 2022). Fraudulent concealment additionally requires showing "the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Id*. at 863. Fraud claims must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *PB Lube, Inc. v. Clean Harbors Env't Servs., Inc*., No. 23 C 16934, 2024 WL 3328161, at *5 (N.D. Ill. Jul. 8, 2024).

Plaintiff does not allege that either of the Individual Defendants made any statements (or omissions) on which Plaintiff relied to his detriment. Plaintiff's entire fraud theory revolves around Red Bull's production efforts in the Arbitration, in which neither Individual Defendant is a party. *See* Doc. 11 at ¶¶ 112-20 (repeatedly referring to submitting document to the "tribunal," *i.e.*, arbitrator). Though Plaintiff does assert (on "information and belief") that Brooks may have been involved in producing the static PDF, Doc. 11 at ¶ 112, he does not identify any statement or omission by Brooks individually directed at Plaintiff. With no statement from either Individual Defendant, Plaintiff has no fraud claim as to Brooks or Castañeda – particularly under Rule 9(b)'s heightened pleading standard.

Finally, Plaintiff does not allege qualifying damages. To be sure, Plaintiff cannot do so without connecting the Individual Defendants to the purported misstatements, but the specific types of damages he asserts do not satisfy the injury element for fraud. *See* Doc. 11 at VI.A. Fees and costs incurred in pursuing litigation do not qualify and, in fact, are not even available to a prevailing party on a fraud claim. *See Chow v. Aegis Mortg. Corp*., 185 F. Supp. 2d 914, 917-19 (N.D. Ill. 2002). Nor does emotional distress count in the fraud context. *See Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021).

**B. Plaintiff Failed to Plead a Conspiracy Claim.**

Plaintiff also has not adequately pled conspiracy. To do so, Plaintiff must allege (1) an agreement to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means; (2) a tortious act committed in furtherance of that agreement; and (3) an injury caused by the defendant. *See LaPorta v. City of Chicago,* 102 F. Supp. 3d 1014, 1031 (N.D. Ill. 2015). Plaintiff fails to plead two of the three elements.

First, Plaintiff's only allegations as to the agreement between Defendants to engage in the "fraudulent scheme" are conclusory. *See* Doc. 11 at ¶ 123 (mirroring language of element in allegation). This falls short of Plaintiff's pleading requirements. *See LaPorta,* 102 F. Supp. 3d at 1031 (dismissing civil conspiracy claim where plaintiff alleged only that defendants "individually, jointly, and in conspiracy among themselves . . . attempted to cover-up and/or suppress" party's liability); *see also Benton v. Little League Baseball, Inc*., 2020 IL App (1st) 190549, ¶ 92, 181 N.E.3d 902, 935 (Ill. App. Ct. 2020) ("Conclusory allegations that the defendants agreed to achieve some illicit purpose and the mere characterization of a combination of acts as a conspiracy are insufficient to withstand a motion to dismiss."). The Complaint does not include any factual allegations that the Individual Defendants (or any Defendants, for that matter) reached a meeting of the minds regarding Red Bull's production decisions in the Arbitration. *See* Doc. 11 at ¶ 124. And even if he had adequately alleged facts to support an agreement, agents (Brooks and Castañeda) cannot conspire with their principal (Red Bull). *E.g.*, *Buckner v. Atlantic Plant Maintenance*, 182 Ill. 2d 12, 23-24 (1998) (dismissing conspiracy claim on this basis). Ultimately, it is *Plaintiff's lawsuit* that is the real "conspiracy" theory.

In any event, Plaintiff's suspicion that the purpose of Defendants "concealing" the Adobe-certified version of the Agreement to preclude Plaintiff from obtaining "material evidence" is

nonsensical. *See* Doc. 11 at ¶ 123. It does not stand to reason that the same Agreement, with a signature certification, would somehow materially alter Plaintiff's ability to prove pretext or any of his other claims in the Arbitration. The content remains the same, and Plaintiff has not alleged any basis to suggest that some other, substantively different, version of the Agreement exists. To the contrary, Plaintiff implies that the version of the Agreement he already has was *intentionally* drafted in a vague manner to facilitate the allegedly pretextual investigation. *See* Doc. 11 at ¶ 124.

Nor has Plaintiff alleged that the Individual Defendants (or any other Defendant) engaged in any tortious act in furtherance of the so-called conspiracy. Civil conspiracy is not a standalone claim; it depends on underlying tortious conduct. *E.g.*, *Wilson v. City of Chi*, No. 13-L-10790, 2014 Ill. Cir. LEXIS 4223, at *4-5. Because Plaintiff has not adequately alleged any supporting tort,[7] his conspiracy claim fails as a matter of law. *Id.* at *4-8 (dismissing conspiracy claim where plaintiff failed to adequately plead underlying claim).

**C. Plaintiff Failed to Plead a Negligent Spoliation Claim.**

The Complaint acknowledges that Plaintiff does not have a viable negligent spoliation claim. Negligent spoliation requires a plaintiff to prove that: (i) the defendant owed the plaintiff a duty to preserve the evidence; (ii) the defendant breached that duty by losing or destroying the evidence; (iii) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (iv) as a result, the plaintiff suffered actual damages. *See Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 27, 979 N.E.2d 22, 27. Plaintiff fails to plead all four elements here.

First, the Complaint does not establish a duty as to the Individual Defendants. "The general rule in Illinois is that there is no duty to preserve evidence." *Id.* (citation omitted). Such a duty

[7] *See supra*, at IV.A. (discussing ill-pled fraud claim); *see infra*, at IV.C. (discussing ill-pled negligent spoliation), IV.D. (discussing ill-pled IIED claim).

arises under only limited circumstances, requiring the plaintiff to meet a two-pronged test. *Id.* First, the plaintiff must show "an agreement, contract, statute, special circumstance, or voluntary undertaking has given rise to" a defendant's duty to preserve evidence. *Id.* And second, the plaintiff must show that "'a reasonable person in the defendant's position should have foreseen that the [specific] evidence [at issue] was material to a potential civil action.'" *Id.* (citation omitted).

Here, the Complaint does not allege any basis to support a duty for the Individual Defendants to preserve the evidence, and no such basis exists. Nor could it have been foreseeable to the Individual Defendants that the "genuine certified package" version of the Agreement would be any more relevant to future litigation than the static PDF that has already been produced – indeed, because it is not. *See Castillo v. Bd. of Educ. of City of Chicago*, 2018 IL App (1st) 171053, ¶¶ 27-28, 103 N.E.3d 596, 602 (Ill. App. Ct. 2018) (holding no duty to preserve documents with no apparent evidentiary worth). That Plaintiff merely *wants* this information does not make its relevance to the dispute foreseeable.

Next, Plaintiff has not alleged any actual spoliation. He asserts outright that the evidence *still exists* but simply has not yet been produced. *See* Doc. 11 at ¶ 127. He also affirmatively pleads that the "Final Audit Report" authenticates the Agreement, closing the gap about which he seems so concerned. *See* Doc. 11 at ¶ 96(a). This defeats his burden to allege a breach. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 510 (7th Cir. 2007) (affirming dismissal of spoliation claim with prejudice and declining to "stack inference upon inference" in light of weak surrounding claims where plaintiffs received other relevant documents).

Third, because Plaintiff alleges only that the "missing" evidence is preventing him from "proving the authenticity" of the Agreement – as opposed to the merits of his underlying claim – he cannot establish causation. *See* Doc. 11 at ¶ 129. The Complaint does not explain why this

specific document is critical to establishing the merits of his Arbitration claims. *See generally* Doc. 11; *see also Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1089 (N.D. Ill. 2015) (dismissing negligent spoliation claim where conclusory allegations regarding interference with "ability to prove his claims . . . causing him further damages" was insufficient). To that end, Plaintiff filed the Arbitration before ever learning that metadata related to the Agreement existed. "Presumably, Plaintiff[] believed—at that time—that [he] could succeed on [his ]claims without such evidence." *See Denton v. Ne. Illinois Reg'l Commuter R.R. Corp.,* No. 02 C 2220, 2004 WL 1005790, at *4 (N.D. Ill. Apr. 26, 2004) (denying leave to amend spoliation claim based on futility).

Finally, because Plaintiff cannot plead breach or causation, he cannot establish damages. *Salaita,* 118 F. Supp. 3d at 1089. Accordingly, his negligent spoliation claim fails on all fronts.

**D. Plaintiff Failed to Plead an IIED Claim.**

Plaintiff's final count for IIED also fails. An IIED claim requires the plaintiff to show that: (i) the defendant's conduct was extreme and outrageous; (ii) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (iii) the defendant's conduct actually caused severe emotional distress. *See Shamim v. Siemens Indus., Inc*., 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012).

Plaintiff has not pled extreme and outrageous conduct. The standard for IIED is high. It "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Curran v. JP Morgan Chase, N.A*., 633 F. Supp. 2d 639, 643 (N.D. Ill. 2009) (internal quotations omitted). Rather, "a defendant's conduct must be so extreme as to go beyond all possible bounds of decency" and must be regarded as intolerable in a civilized community." *Id*. (internal quotations and citations omitted). Plaintiff does not meet this mark for either of the Individual Defendants.

As to Brooks, Plaintiff asserts she participated in both retaining Castañeda by signing the Agreement and contesting Plaintiff's request for unemployment benefits, *see* Doc. 11 at ¶¶ 34, 133 – both of which are standard practices for employment-based in-house counsel. As to Castañeda, Plaintiff asserts that Red Bull retained him to conduct the investigation before his termination. Doc. 11 at ¶¶ 35, 133. While Plaintiff characterizes that investigation as pretextual, nowhere in the Complaint does Plaintiff allege facts to suggest that Brooks knowingly requested, or that Castañeda knowingly accepted, an assignment to establish a fabricated outcome supporting termination – or that either Individual Defendant made the termination decision. *See generally* Doc. 11.[8] Thus, according to Plaintiff's allegations, the only actions either of the Individual Defendants took were executing standard job duties. This is far from "extreme" or "outrageous."

In any event, Plaintiff has also failed to plead *severe* emotional distress, alleging only that he has purportedly suffered "anxiety, humiliation, and mental anguish." *See* Doc. 11 at ¶ 136. Courts do not permit IIED claims based solely on "'mental anguish,'" which would "'encourage neurotic overreactions to trivial hurts.'" *Farrar v. Bracamondes*, 332 F. Supp. 2d 1126, 1131 (N.D. Ill. 2004) (holding stress and anxiety insufficient) (collecting cases); *Woods v. Clay*, No. 01-C-6618, 2005 WL 43239, at *17 (N.D. Ill. Jan. 10, 2005) (holding shame, depression, and humiliation insufficient). Accordingly, for the reasons set forth herein, the Complaint is deficient on numerous grounds, and the Court should dismiss it with prejudice.

WHEREFORE, Defendants Kim Brooks and Juan Castañeda respectfully request this Court grant their Motion to Dismiss, dismiss the Complaint with prejudice, and grant any other relief this Court deems equitable and proper.

---

[8] Even if they had, termination, even where wrongful or discriminatory, does not give rise to a claim for IIED. *Curran*, 633 F. Supp. 2d at 643 (N.D. Ill. 2009).

Dated: August 31, 2026

Respectfully submitted,

**KIM BROOKS AND JUAN C. CASTAÑEDA**

By: *<u>/s/ David J. Stein</u>*

David J. Stein (6307086)
Kara E. Angeletti (6329388)
Addison Schlatter (6348632)
GREENBERG TRAURIG, LLP
360 North Green, Suite 1300
Chicago, Illinois 60607
T: (312) 456-1003
F: (312) 456-8435
David.Stein@gtlaw.com
Angelettik@gtlaw.com
Addison.Schlatter@gtlaw.com

*Attorneys for Defendants Kim Brooks & Juan C. Castañeda*

## CERTIFICATE OF SERVICE

I, David J. Stein, hereby certify that on August 31, 2026, a true and correct copy of **DEFENDANTS KIM BROOKS AND JUAN C. CASTAÑEDA'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS** was served electronically on all counsel through the Court's ECF system. record.

*/s/ David J. Stein*