# EXHIBIT 2

Dear Natasha,

I write to formally request a supplementation of the Consolidated Demand for Arbitration to explicitly include claims under the **Illinois Human Rights Act (IHRA)**.

**Reason for Request**

Upon review of the Consolidated Demand for Arbitration, it is evident that claims 1 through 5—pertaining to religious discrimination, retaliation for requesting religious accommodations, perceived disability discrimination, and failure to accommodate under **Title VII** and the **ADA**—align with the protections provided by the IHRA. These protections prohibit similar conduct under Illinois law and were an intended but mistakenly overlooked basis for relief. Also, the original charge of discrimination pertaining to these claims and laws violated was filed with both the EEOC and the Illinois Department of Human Rights.

To ensure all applicable laws governing the alleged conduct are properly considered and to preserve the Claimant's right to the fullest range of remedies available under Illinois law, this request is made in good faith and does not alter the underlying facts or nature of the claims. Rather, it supplements the legal framework with the IHRA.

**Proposed Supplementation**

Claims 1 through 5 in the arbitration demand should now explicitly include:

- **Illinois Human Rights Act (775 ILCS 5/):** Religious Discrimination, Retaliation, and Disability Discrimination, which offer protections and remedies paralleling the federal statutes (Title VII and ADA).

**No Prejudice to Respondent**

This supplementation is procedural and does not introduce new claims, facts, or issues requiring additional discovery or preparation beyond the current case scope. Respondent is already aware of the underlying conduct and legal theories through the original demand and subsequent proceedings.

**Request for Case Manager Action**

Please confirm that the supplementation of claims to explicitly include the IHRA is accepted for consideration by the arbitrator. Should additional documentation or formal amendment filings be required, I am happy to comply promptly.

Thank you for your attention to this matter. Please do not hesitate to reach out if further clarification or action is required.

Attached, please find a revised copy of the Consolidated Demand for Arbitration with the IHRA explicitly supplementing claims 1 through 5.

Sincerely,

Charles Leclerc
+1 (612) 600-4044

## Consolidated Amended Demand for Arbitration

**Claimant:**
Charles Leclerc
400 W Ontario St #603
Chicago, IL 60654

**Respondent:**
Red Bull North America, Inc.
1740 Stewart St
Santa Monica, CA 90404

## Introduction

This Consolidated Amended Demand for Arbitration is submitted by Charles Leclerc ("Claimant") against Red Bull North America, Inc. ("Respondent"), under the Mutual Arbitration Agreement and in accordance with the rules of JAMS. The Claimant seeks redress for various violations including retaliatory actions, discriminatory practices, wrongful termination, fraudulent misrepresentation, deceptive medical practices, antitrust violations, violations of informed consent, and other unlawful conduct. Additionally, the Claimant requests equitable tolling of the statute of limitations for certain claims due to significant delays by the EEOC in issuing the Right to Sue letter and Judicial Estoppel. The submission summarizes the case, outlines the claims, supporting facts, and relief sought by the Claimant.

## Case Summary

Charles was a happy productive employee, and Red Bull valued his contributions to the company. Then suddenly came a health mandate for COVID-19: get experimental therapeutic shots, or submit to experimental weekly nasal swab testing only authorized under emergency use as a condition of employment. This was unacceptable to Charles, because both the shots and testing were dangerous to his health, and in violation of his sincerely held beliefs. He submitted a religious accommodation request, which after several weeks was unjustifiably denied. Charles then discovered an option which had not been suggested by Red Bull, which was a testing system that didn't require putting cancer causing chemicals near his blood-brain barrier via swabs. After more delays, Red Bull eventually consented to the alternative, but a line had been crossed. Charles was now perceived as one who would not submit to unfair and illegal corporate practices, and as such was a threat to corporate power. A reason to fire him was fabricated, and he was fired. In this process, numerous laws were violated including religious discrimination, perceived disability, unlawful medical inquiry, whistleblowing violations, fraudulent misrepresentation, violation of informed consent, and coercion in medical practices, among others.

An additional aspect to this case relates to the purpose of the mandate in the first place. Why did they do it? Red Bull claimed it was to satisfy the law; but there were no legal mandates nor

was there the legal authority that granted them the right to do so. Red Bull claimed the shots, tests, and masks made the workplace safer; but scientific evidence demonstrates otherwise: none of the manufacturers of the shots claimed, nor even tested, for transmission. Hundreds of scientific studies consistently demonstrate the masks were ineffective. The testing systems were totally unreliable. Many companies had similar mandates as Red Bull, but many other companies had **none**. Why did Red Bull make this decision? It hurt employee morale, it damaged employees' health, and it hurt the Red Bull bottom line. We allege it involved collusion with government, with financial special interests, with media, and with international relations.

## Claims and Legal Foundations

1. **Retaliation for Requesting Religious Accommodation**
   - **Law Violated**: Title VII of the Civil Rights Act of 1964, Illinois Human Rights Act (775 ILCS 5/)
   - **Facts**: Claimant requested an exemption from a health mandate for religious reasons. Although eventually granted after an unduly delayed initial rejection, Claimant faced retaliation in a hostile work environment via fabricated allegations leading to termination.
2. **Discrimination Based on Religious Beliefs**
   - **Law Violated**: Title VII of the Civil Rights Act of 1964, Illinois Human Rights Act (775 ILCS 5/)
   - **Facts**: Claimant faced disparate treatment and unreasonable work requirements following the accommodation request, including threats of termination during the process of requesting for accommodation.
3. **Failure to Reasonably Accommodate Religious Beliefs**
   - **Law Violated**: Title VII of the Civil Rights Act of 1964, Illinois Human Rights Act (775 ILCS 5/)
   - **Facts**: The Claimant requested an exemption from the health mandate due to sincerely held religious beliefs, which was initially delayed and rejected without justification, eventually granted after causing unnecessary hardship including forcing the burden onto the Claimant to suggest an accommodation and subjecting the Claimant to a hostile work environment culminating in wrongful termination via fabricated allegations.
4. **Discrimination Based on Perceived Disability**
   - **Law Violated**: Americans with Disabilities Act (ADA), Illinois Human Rights Act (775 ILCS 5/)
   - **Facts**: Claimant was treated differently and ultimately terminated based on the unjustified perception of being a health risk to the workplace, despite good health.
5. **Unlawful Medical Inquiry Under the ADA**
   - **Law Violated**: Americans with Disabilities Act (ADA), Illinois Human Rights Act (775 ILCS 5/)

- **Facts**: The Respondent's health mandate did not prevent transmission and thus constituted an intrusive medical inquiry rather than a justified health measure, violated ADA guidelines on unnecessary medical inquiries.

6. **Retaliation for Whistleblowing**
    - **Law Violated**: Whistleblower Protection Act; Illinois Whistleblower Act (740 ILCS 174/); Illinois Common Law (Retaliatory Discharge in Violation of Public Policy).
    - **Facts**: The Claimant reported concerns about the legality and safety of the Respondent's health mandate, including issues with lack of legal authority, potential health risks, and coerced compliance. These concerns were communicated in accordance with both federal and Illinois whistleblower protections, which safeguard employees who report unlawful practices. In response, the Claimant faced workplace hostility, false allegations, and was ultimately terminated. Illinois law further recognizes that an employee's termination for opposing illegal activities violates public policy, establishing the Respondent's actions as unlawful retaliation.
7. **Wrongful Termination in Violation of Public Policy**
    - **Law Violated**: Illinois Common Law
    - **Facts**: Termination was in retaliation for asserting legal rights under Title VII, ADA, whistleblowing protections, and informed consent regulations.
8. **Fraudulent Misrepresentation**
    - **Law Violated**: Illinois Common Law
    - **Facts**: Respondent falsely claimed that a health mandate was legally required to force violations of public policy.
9. **Violation of Informed Consent**
    - **Law Violated**: Illinois health care and workplace safety laws
    - **Facts**: Respondent did not provide comprehensive information about the health mandate, misleading employees about their rights and options.
10. **Coercion in Medical Practices**
    - **Law Violated**: Illinois Battery Law; Illinois Negligence Per Se; federal informed consent standards (21 CFR §§ 50.23 and 50.24).
    - **Facts**: The Respondent's health mandate required employees to submit to experimental shots or experimental weekly testing without proper informed consent. Employees were not provided with full disclosure of the risks, benefits, alternatives, or voluntary nature of these interventions, and were led to believe the mandate was legally required. Under Illinois law, non-consensual medical procedures constitute battery, and enforcing health mandates without appropriate consent violates statutory obligations under negligence per se principles. The Claimant and other employees were subjected to these medical interventions under threat of termination, which constituted unauthorized and coercive medical contact.
11. **Deceptive Medical Practices**
    - **Law Violated**: Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA)

- **Facts**: Under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), the Respondent engaged in deceptive and unfair practices by misrepresenting the health mandate's legal necessity, efficacy, and safety, coercing employees into compliance. The Respondent's omissions of material facts—including scientific data questioning the effectiveness of certain health measures—constitute an unfair and deceptive practice under Illinois law, harming the Claimant and other employees by influencing critical health-related decisions.

12. **Antitrust Violations and Racketeering**
    - **Law Violated**: Sherman Antitrust Act, Racketeer Influenced and Corrupt Organizations Act (RICO), and supporting Illinois antitrust law.
    - **Facts**: The Respondent's health mandate, which required employees to submit to experimental shots or experimental weekly testing, and masking protocol, was imposed under the pretense of improving workplace safety. However, these measures were not legally mandated, nor were they based on sound scientific evidence supporting their effectiveness in reducing transmission. None of the vaccine manufacturers, for example, claimed or tested their products for transmission prevention, and scientific studies have repeatedly indicated that masks and certain testing methods were ineffective and unreliable.
    - **Purpose and Collusion Allegations**: We allege that the true purpose behind Red Bull's mandate was not workplace safety but rather to align with external interests that did not serve employees or the company's direct business objectives. Red Bull's decision to enforce this mandate involved collusion with various external entities, including government agencies, financial special interests, media, and international organizations, to promote health measures that lacked scientific support. Many companies refrained from imposing similar mandates, and those that did often had evident ties to these external influences.
    - **Anticompetitive Effects and Harm to Employees:** This mandate had significant anticompetitive effects, as it restricted employee autonomy and coerced compliance with health interventions that lacked legal or scientific support. By enforcing these requirements without lawful authority, Red Bull infringed on employees' rights to make independent health choices, undermining workplace morale and health. This policy not only damaged the well-being of employees but also Red Bull's own economic interests, demonstrating a disconnect between the mandate and any legitimate business purpose.
    - **Racketeering Elements:** Red Bull's actions represent a pattern of coercive and fraudulent practices intended to control employees' medical decisions, with repeated acts of misrepresentation about the necessity and efficacy of these measures. By enforcing this mandate across state lines, Red Bull engaged in practices that constitute a pattern of racketeering activity under RICO, as they influenced and coerced employees nationwide to adhere to unproven health standards for profit or external influence.
13. **Coercive Health Mandate as Extreme and Outrageous Conduct (Including Domestic Terrorism and Seditious Conspiracy Elements)**

- **Law Violated**: Sections of the Patriot Act and Illinois Common Law for Intentional Infliction of Emotional Distress (IIED).
- **Facts**: The Respondent implemented a health mandate requiring employees to submit to experimental shots and weekly testing, even though these measures lacked legal mandates, scientific support, or proven safety benefits. The mandate posed substantial health risks, coercing employees into accepting experimental medical interventions under threat of losing their livelihoods. Red Bull's actions forced employees into involuntary compliance with interventions that may cause serious health complications, without fully disclosing known risks or providing scientifically validated efficacy.
- **Psychological and Emotional Impact on Employees:** Red Bull's health mandate was presented as an essential safety measure but, in reality, served as an extreme and invasive action that disregarded employee well-being. The mandate imposed substantial psychological pressure by creating an atmosphere of fear and compulsion. Employees faced continuous threats to their health autonomy and personal beliefs, especially those with religious or health concerns about the interventions. The cumulative impact of these actions caused severe emotional distress, anxiety, and feelings of powerlessness, as employees felt coerced into potentially dangerous health measures against their will.
- **Extreme and Outrageous Conduct under IIED Standards:** Illinois law recognizes a claim for Intentional Infliction of Emotional Distress (IIED) when an employer's conduct is extreme, outrageous, and intolerable to a civilized society. Red Bull's mandate meets this threshold by imposing invasive health interventions without providing employees with meaningful choice or safety assurances. The coercive and retaliatory nature of the mandate, combined with its lack of scientific foundation and disregard for employee autonomy, qualifies as extreme and outrageous conduct designed to pressure employees into compliance at any cost.
- **Additional Allegations under the Patriot Act:** The Respondent's conduct also reflects elements of coercion and reckless disregard for health safety standards that align with concepts under the Patriot Act related to domestic terrorism and seditious conspiracy. While not necessarily prosecutable under this act, these elements emphasize the grave impact of Red Bull's actions on employees' sense of safety and well-being, as the mandate exposed employees to unverified health risks and coerced compliance through psychological intimidation and physical health threats.

14. **Privacy Violations Based on Intrusion Upon Seclusion and Breach of Fiduciary Duty**
    - **Intrusion Upon Seclusion:** The Respondent's actions constitute an unreasonable invasion of the Claimant's privacy, specifically an intrusion upon seclusion. By requiring disclosure of private health information without clear legal authority, necessity, or adequate safeguards, the Respondent intruded into matters that employees have a reasonable expectation to keep private. This claim is actionable under Illinois law, which recognizes that individuals have the right to

protection against unauthorized or coercive demands for personal information, particularly concerning sensitive health data.

- **Breach of Fiduciary Duty:** Furthermore, by mandating the collection and handling of sensitive health information, the Respondent assumed a responsibility akin to a fiduciary duty to protect the Claimant's private information. The Respondent breached this duty by failing to implement proper privacy protections and by utilizing this information without sufficient authorization, potentially exposing the Claimant and other employees to privacy risks. Illinois law supports claims for breach of fiduciary duty in contexts where trust and confidentiality are implicitly required.
- **Lack of Choice or Alternatives:** Red Bull required health information disclosure as a condition of employment, without allowing employees to opt-out or providing clear privacy protections.

15. **False Accusations and Defamation**
    - **Law Violated**: Common Law Defamation
    - **Facts**: Claimant was falsely accused of misconduct, damaging reputation.
16. **Malicious Prosecution**
    - **Law Violated**: Illinois Common Law
    - **Facts**: Respondent falsely alleged reasons for termination and pursued legal actions to bar post-employment benefits to invoke financial and civil harm.
17. **Intentional Infliction of Emotional Distress (IIED)**
    - **Law Violated**: Illinois Common Law
    - **Facts**: Respondent's extreme and outrageous actions caused significant emotional distress to Claimant.
18. **Breach of Implied Covenant of Good Faith and Fair Dealing**
    - **Law Violated**: Illinois Common Law
    - **Facts**: Respondent's actions undermined the employment relationship, violating the promise of fair treatment in good faith, especially under the lens of its own philosophies, values, promises and standards as to how it treats its employees per its code of conduct, employee handbook and "Flight Book".
19. **Equitable Tolling Due to EEOC Delay**
    - **Facts**: The Claimant was terminated on July 11, 2022, and promptly filed a charge with the EEOC on July 28, 2022. The EEOC then transferred the charge of discrimination for workload redistribution multiple times from Chicago to Houston, to New Orleans, and ultimately to the Louisiana Commission on Human Rights in Baton Rouge. Despite diligent follow-ups, the Right to Sue letter was not issued until April 23, 2024, over 1 year and 9 months later. During this period, several of the Claimant's valid claims may have expired per their respective statutes of limitations.
    - **Arguments**:
        1. **Fairness Principle**: The principle of fairness dictates that the Claimant should not be penalized for delays caused by the EEOC. He acted diligently by filing the charge immediately and consistently followed-up. Equitable tolling ensures that procedural delays do not result in injustice.

2. **Unreasonable Burden**: Requiring the Claimant to file multiple arbitration demands to preserve his claims while waiting for the EEOC's Right to Sue letter imposes an unreasonable and inefficient burden. This expectation undermines the purpose of the administrative process and imposes undue hardship on claimants, contrary to the fairness that equitable tolling aims to protect.
3. **Mutual Arbitration Agreement Support:**
   - **Broad Scope of Arbitration (Section 1):** The MAA mandates that any disputes, claims, or controversies arising out of or relating to the employment relationship between Charles Leclerc and Red Bull North America, Inc. are to be resolved through final and binding arbitration, not limited to those included in the EEOC charge. This inherently implies that related claims should be consolidated to be efficiently resolved in one proceeding.
   - **No Requirement for Filing with Other Authorities (Section 2):** The MAA specifies certain claims that are not subject to arbitration, such as workers' compensation and unemployment insurance, but it does not state that non-EEOC claims must be filed with another authority. Therefore, the MAA supports handling all relevant employment-related disputes, including those beyond the EEOC charge, within the arbitration framework.
   - **Procedure and Single Arbitrator (Section 4):** the MAA outlines that any arbitration will be filed with and conducted by JAMS and will follow the JAMS Employment Arbitration Rules and Procedures in effect at the time the demand for arbitration is filed. The JAMS rules, which are referenced in this section, include provisions for managing multiple claims efficiently within a single arbitration process.
   - **Exclusive Authority of Arbitrator (Section 11):** The arbitrator has the exclusive authority to decide all issues related to the interpretation and application of the MAA, including equitable tolling and the scope of claims.
4. **JAMS Rules on Consolidation:** The JAMS Employment Arbitration Rules referenced in the MAA allow for the consolidation of claims that have common issues of fact or law. Specifically, JAMS Rule 6(e) states that if arbitrations have common issues, they may be consolidated into a single arbitration proceeding.
5. **Federal Arbitration Act (FAA) 9 U.S.C. § 2**: The FAA establishes the enforceability of arbitration agreements and supports resolving disputes in a streamlined manner, implying that related claims should be consolidated to avoid prolonged litigation processes.
6. **No Reason to File Non-EEOC Claims with the EEOC:** Charles had no reason to file his non-EEOC claims in his Charge of Discrimination to the

EEOC. The EEOC's jurisdiction is specifically limited to investigating violations of certain federal laws, such as Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA), which focus on discrimination based on race, color, religion, sex, national origin, age, disability, and genetic information.

- **EEOC's Limited Jurisdiction:** The EEOC does not have jurisdiction over claims such as whistleblowing retaliation, violations of state law, common law torts, or other federal statutes unrelated to employment discrimination, such as the Federal Trade Commission Act or the Sherman Antitrust Act. Filing non-EEOC claims with the EEOC would be inappropriate and outside the scope of the EEOC's authority.
- **Mutual Arbitration Agreement (MAA):** The MAA is specifically designed to cover all employment-related disputes, ensuring they are resolved through arbitration rather than requiring filing with multiple authorities. There is no legal or procedural requirement under the MAA, the rules of JAMS, or the laws of the United States and Illinois that all claims in the Amended Demand for Arbitration be included in the EEOC charge. The MAA's broad scope includes handling disputes that go beyond the EEOC's purview

7. **No Need to Bring Non-EEOC Claims to Attention Prior to Demand for Arbitration:** Charles did not need to bring attention to his non-EEOC claims prior to his Demand for Arbitration for several reasons.
    - **MAA Coverage:** The MAA mandates that all employment-related disputes, regardless of their nature, be resolved through arbitration. This includes non-EEOC claims, which the agreement explicitly encompasses.
    - **Efficiency and Consolidation:** Bringing all claims together in one arbitration proceeding promotes efficiency and avoids the unnecessary burden of multiple filings. This is consistent with the principles of arbitration and the intent of the MAA.
    - **Legal Basis for Equitable Tolling to Non-EEOC Claims:** Equitable tolling should apply to non-EEOC claims as well, given that the procedural delay caused by the EEOC affected the timing and ability to file all related claims together. This ensures a fair and just resolution process.
8. **Requirement to File EEOC Claims Before Arbitration:** Under federal law, specifically Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA), Charles was required to file his discrimination claims with the EEOC before pursuing arbitration. This is part of the administrative exhaustion process, which ensures that the EEOC has the

opportunity to investigate and potentially resolve the dispute before it moves to arbitration. By complying with this legal requirement, Charles ensured that all his claims could be addressed in a single arbitration proceeding, as encouraged by the MAA, JAMS rules, and the Federal Arbitration Act. This strategic approach avoids piecemeal litigation and supports the efficient and comprehensive resolution of all employment-related disputes.

9. **Legal Basis for Claimant's Position:** Legally, there is nothing that bars Charles's claims per his MAA, the rules of JAMS, and the law in the United States and the state of Illinois in general. The MAA is designed to cover all employment-related disputes in a single arbitration process, ensuring that claims are addressed efficiently and fairly without the need for filing with multiple authorities or engaging in multiple arbitration proceedings.

- **Legal Precedents:**
    1. **Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985)**: The Supreme Court emphasized the importance of arbitration as a means to resolve disputes efficiently and economically, supporting the consolidation of related claims to achieve these goals.
    2. **Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002)**: The Supreme Court held that procedural questions that grow out of the dispute and bear on its final disposition should be left to the arbitrator, supporting the arbitrator's authority to manage claims within a single proceeding.
    3. **Burnett v. New York Central Railroad Co., 380 U.S. 424 (1965):** Equitable tolling applied due to administrative delay.
    4. **Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982):** Filing a timely charge with the EEOC is a prerequisite, and delays should not bar the claim.
    5. **Patterson v. McLean Credit Union, 491 U.S. 164 (1989):** Reinforces the requirement of exhausting administrative remedies by filing with the EEOC before seeking judicial or arbitral relief.
    6. **McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)**: Established the burden-shifting framework for proving discrimination under Title VII, which is also applicable to ADA claims. The case underscores the necessity of filing with the EEOC as part of the initial steps in the litigation process.
    7. **Maynard v. Pneumatic Products Corp., 256 F.3d 1259 (11th Cir. 2001)**: Clarifies that the administrative exhaustion requirement applies to ADA claims, reiterating that plaintiffs must file a charge with the EEOC before pursuing a lawsuit.
    8. **Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990):** Equitable tolling allowed for procedural delays outside the claimant's control**.**

20. **Unauthorized Practice of Medicine**
    - **Law Violated**: Illinois Medical Practice Act; Illinois Battery Law; Negligence Per Se.

- **Facts**: The Respondent mandated the use of experimental drugs or devices without proper licensure, authority, and informed consent. The staff enforcing these mandates lacked the medical credentials and understanding of the associated risks, effectively assuming the role of medical professionals, which constitutes the unauthorized practice of medicine under Illinois law. Employees, including Claimant, were not fully informed about the risks, benefits, and alternatives, nor were they given the option to refuse without facing retaliation. Under Illinois law, enforcing medical mandates without consent qualifies as battery, and the failure to adhere to medical practice standards constitutes negligence per se.

**21. Judicial Estoppel**

- **Law Violated:** Federal Judicial Estoppel Doctrine
- **Facts:** In response to Charles Leclerc's cease and desist letter, Red Bull issued a formal, documented explanation detailing specific reasons for Charles's termination, focused solely on alleged behavioral and compliance issues. This response served as Red Bull's definitive stance, intended to resolve or clarify any questions about the grounds for termination. As such, Charles reasonably relied on this explanation as Red Bull's official position when deciding to initiate arbitration and shape his claims.
- **Rationale:** Judicial estoppel is warranted here to prevent Red Bull from shifting its stance by introducing new or contradictory justifications in arbitration. Allowing Red Bull to alter its termination rationale would create an unfair advantage, enabling Red Bull to sidestep liability by inconsistently reshaping its explanation depending on the forum. The federal judicial estoppel doctrine supports barring such tactics, ensuring consistency and preserving fairness in the proceedings. Given that Red Bull's response to the cease and desist letter provided a conclusive basis for termination, this explanation should be treated as their only legitimate rationale for termination in this arbitration. This is crucial especially in cases that must use the established burden-shifting framework for proving discrimination under Title VII and the ADA.
- **Legal Precedent:**
  1. **Alternative System Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23 (1st Cir. 2004):** The First Circuit held that judicial estoppel could apply based on statements made in letters outside of formal litigation. When a party asserts a definitive position in correspondence, the court may bind them to it, especially if the opposing party relies on it. This case supports the argument that Red Bull's response to the cease and desist letter is a binding stance that should not shift in arbitration.
  2. **Reynolds v. Commissioner of Internal Revenue, 861 F.2d 469 (6th Cir. 1988):** The Sixth Circuit applied judicial estoppel to positions taken in informal and administrative contexts, emphasizing that a party's statements outside of formal proceedings can estop them if those statements were definitive and intended to influence the opposing party.

This precedent supports holding Red Bull to its cease and desist response as its official position.

3. **Masayesva for and on Behalf of Hopi Indian Tribe v. Hale, 118 F.3d 1371 (9th Cir. 1997):** The Ninth Circuit recognized judicial estoppel for statements made outside of court, finding that consistency is required when a party's statements impact the other party's legal actions. This case underscores that Red Bull should be estopped from altering its termination rationale, as it would undermine Charles's reliance on their original explanation.
4. **Glenn v. USAA Casualty Insurance Co., 450 F. Supp. 3d 739 (E.D. Ky. 2020):** A federal district court ruled that judicial estoppel could apply to out-of-court statements, including letters, if they present a clear, binding position. Here, Red Bull's explanation in the cease and desist response letter constitutes a binding termination rationale, preventing them from introducing inconsistent reasons in arbitration.

## Relief Sought

1. **Equitable Tolling of Statutes of Limitations**
   - Tolling the statute of limitations for all claims affected by the EEOC delay.
2. **Judicial Estoppel**
   - The Claimant requests that the arbitrator enforce judicial estoppel, precluding Red Bull from asserting any alternative or additional justifications for Charles' termination beyond those outlined in their response to the cease and desist letter. This order will protect the integrity of the arbitration process, prevent unfair prejudice to the Claimant, and hold Red Bull accountable to its officially stated position.
3. **Compensatory Damages**
   - Lost wages and benefits due to wrongful termination.
   - Emotional distress and suffering caused by Respondent's actions.
   - Legal fees and costs associated with pursuing the claims.
4. **Punitive Damages**
   - To punish Respondent for reckless actions and deter similar conduct in the future. Given Respondent's (Red Bull GmbH, parent of Red Bull North America, Inc.) annual revenue of approximately $11.5 billion, a significant punitive damage award is sought.
5. **Declaratory Relief**
   - A declaration that Respondent's actions were illegal and violated Claimant's rights.
6. **Injunctive Relief**
   - Preventing Respondent from enforcing unlawful health mandates and retaliating against employees.
7. **Additional Relief for Malicious Prosecution**

- Compensation for harm caused by Respondent's attempts to bar post-employment benefits.
- Legal fees and costs associated with defending against Respondent's false claims.

## Conclusion

The Claimant respectfully requests that the arbitrator find in favor on all claims and grant the relief sought due to the significant harm caused by the Respondent's actions.