**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES LECLERC<br>Plaintiff, | ) | |
| v. | ) | 1:26-cv-07715 |
| RED BULL NORTH AMERICA, INC., OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.; KIM BROOKS, individually; and JUAN C. CASTANEDA, individually, | ) | Hon. Sharon Johnson Coleman<br>Magistrate Hon. Karyn L. Bass Ehler |
| Defendants. | ) | |

**<u>DEFENDANT RED BULL NORTH AMERICA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Defendant Red Bull North America, Inc. ("Red Bull"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), submits this Memorandum in support of its Motion to Dismiss Plaintiff Charles Leclerc's ("Plaintiff") Complaint (the "Complaint"). In support, Red Bull states:

## INTRODUCTION

Plaintiff's Complaint presents nothing but another attempt to dispute the basis for his termination and appeal certain discovery rulings from a pending underlying arbitration. Plaintiff's claims fail both procedurally and on the merits. Plaintiff's claims are preempted by the Illinois Human Rights Act, and Plaintiff cannot use this forum to challenge matters that he has already relegated to private arbitration. Notwithstanding, Plaintiff does not have standing to bring his claims against Red Bull. And, even if he did, those claims would be precluded by the absolute litigation privilege. Finally, Plaintiff fails to meet his pleading burden for each of his four claims. Plaintiff cannot overcome the litany of defenses to this suit, and this Court should accordingly dismiss the Complaint with prejudice.

## PLAINTIFF'S ALLEGATIONS

The pertinent allegations related to Red Bull are similar to the allegations related to defendants Kim Brooks ("Brooks") and Juan C. Castañeda ("Castañeda") (with Brooks, the "Individual Defendants"). Accordingly, Red Bull incorporates as if fully set forth herein the "Plaintiff's Allegations" section, including the definitions, set forth in the Individual Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint (the "Individual Defendants' Memo").

## ARGUMENT

### I. Legal Standards.

Similar to the Individual Defendants, Red Bull moves to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).[1] Red Bull incorporates those standards as set forth in the "Legal Standards" section of the Individual Defendants' Memo.

### II. Plaintiff Cannot Clear Threshold Hurdles that Preclude his Claims.

Plaintiff cannot overcome preliminary barriers to reaching the merits of his claims. First, this Court lacks subject matter jurisdiction because the IHRA preempts Plaintiff's state tort claims. Second, Plaintiff cannot circumvent the Federal Arbitration Act ("FAA") and established arbitration procedures by escalating Arbitration disputes to this Court, which also serves as a basis to strip this Court of subject matter jurisdiction. Third, Plaintiff has not alleged standing related to Red Bull's purported conduct. Lastly, the absolute litigation privilege bars his claims.

#### A. Plaintiff's Claims Are Preempted by the IHRA.

Red Bull incorporates this section of the Individual Defendants' Memo, which applies equally to Plaintiff's claims against Red Bull.

---

[1] Unlike the Individual Defendants, Red Bull is not moving to dismiss under Rule 12(b)(2).

**B. Plaintiff Cannot Use this Suit to Escape his Arbitration Agreement.**

Red Bull incorporates this section of the Individual Defendants' Memo, which applies equally to Plaintiff's claims against Red Bull.

**C. Plaintiff Lacks Standing.**

Plaintiff also cannot maintain his claims against Red Bull because he lacks standing. Article III of the Constitution "confines the federal courts to a properly judicial role" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016). The "irreducible constitutional minimum of standing" requires the plaintiff to demonstrate that he has suffered an injury in fact that is fairly traceable to the defendant's conduct and redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff cannot meet the latter two requirements.

**1. Plaintiff's Injuries Are Not "Fairly Traceable" to Red Bull.**

Plaintiff's primary dispute is that he has not obtained the discovery outcomes in the Arbitration that he desires in order to prove his claims in that forum. *See, e.g.*, Doc. 11 at ¶¶ 1-2, 4, 8-9, 11, 20, 25-27, 29, 87-93. As noted above, the arbitrator retains "broad authority" over "the collection of evidence relevant to the arbitration." *Amgen, Inc. v. Kidney Ctr.*, 95 F.3d 562, 563 (7th Cir. 1996). The arbitrator exercised that authority when he permitted the static PDF Agreement to stand with a verification from Red Bull. *None* of the Defendants, including Red Bull, have control over the arbitrator's decisions. *See Zapata v. C3T, Inc.*, No. 13-CV-600-JPS, 2013 WL 5786579, at *3 (E.D. Wis. Oct. 28, 2013) (acknowledging same and rejecting plaintiff's

interlocutory request in arbitration for lack of standing).[2]

**2. This Court Cannot Redress Plaintiff's Injuries.**

Similar to Plaintiff's traceability problem, this Court is precluded from redressing the discovery disputes at the heart of Plaintiff's Complaint. That is a matter for the arbitrator. A plaintiff who asks a district court to intervene in an arbitration on an interlocutory issue lacks standing because "there is no likelihood that a favorable decision by [the] Court would redress his alleged injury." *Zapata*, 2013 WL 5786579 at *3. Where the plaintiff's "issue actually seems to be with the arbitrator's decision," the district court cannot help. *Id.* Even a favorable decision for the plaintiff "would not necessarily bind the arbitrator to act." *Id.* ("In the end, it would be nothing more than an advisory opinion that the standing requirements of Article III are designed to prevent."). Accordingly, for both of these reasons, Plaintiff lacks standing to assert claims against Red Bull here and the Court should dismiss the Complaint with prejudice.

**D. The Absolute Litigation Privilege Precludes Plaintiff's Claims.**

Even if Plaintiff could overcome these threshold issues, his claims against Red Bull would still be precluded under the absolute litigation privilege.[3] The privilege "affords an attorney complete immunity with respect to the communications he makes . . . regardless of the attorney's motives in making that communication and irrespective of the attorney's knowledge of the falsity of it or the unreasonableness of his conduct." *Scarpelli v. McDermott Will & Emery LLP,* 2018 IL App (1st) 170874, ¶ 18, 117 N.E.3d 238, 245-46. The privilege extends to the client on whose behalf the attorney acted. *See Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 15, 7

---

[2] The *Zapata* court couched its standing conclusion as a matter of redressability, which Red Bull addresses *infra*. *See* III.C.2. Because the injury flows from the arbitrator's decision, as opposed to the parties, Red Bull believes this particular point speaks to traceability.

[3] Because this Court's jurisdiction is based on diversity, state law governs the substance of the dispute, and the Illinois absolute litigation privilege applies. *See Village of Schaumburg v. Permasteelisa N. Am. Corp.*, No. 24-1168, 2026 WL 2409840, at *2 (7th Cir. Aug. 18, 2026).

N.E.3d 52, 56-57 (Ill. App. Ct. 2014) (affirming dismissal and applying privilege to both counsel and client). It protects both communications and "conduct performed in the practice of law" "before, during, and after litigation," including quasi-judicial proceedings. *Creative Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 697 (N.D. Ill. Jun. 24, 2022) (citations omitted); *see also Atkinson v. Affronti*, 369 Ill. App. 3d 828, 832, 861 N.E.2d 251, 255 (Ill. App. Ct. 2006); *Hincks*, 2025 IL App (2d) 250023, ¶¶ 28-30 (noting arbitration is quasi-judicial proceeding). Litigation need not be active, and the privilege applies even to conduct taken in response to "potential" litigants. *Atkinson*, 369 Ill. App. 3d at 832, 861 N.E.2d at 255. Because the privilege applies regardless of the attorney's motive, courts have applied it to preclude even intentional torts. *See Creative Supply*, 608 F. Supp. 3d at 697 (collecting cases demonstrating application to fraud, negligence, and IIED claims); *In re Sharif*, 627 B.R. 889, 901 (Bkr. N.D. Ill. 2021) (applying privilege to civil conspiracy).

Here, Red Bull's purported conduct boils down to actions taken and statements made by Red Bull's legal counsel in connection with representing Red Bull in pre-judicial, judicial, or quasi-judicial proceedings.[4] Plaintiff alleges the "fraudulent scheme" began when Red Bull retained Castañeda to investigate Plaintiff's misconduct, an act itself that is cloaked in the privilege. *See Lewis v. Kalbhen*, 2025 IL App (1st) 242110, ¶ 32, 277 N.E.3d 922, 932 (holding privilege extends to individuals retained "to investigate his client's claims"). While Plaintiff takes umbrage with the fact that he had not yet retained counsel himself at the time Red Bull retained Castañeda, Doc. 11 at ¶ 23, that is not the benchmark. Litigation based on information learned during the investigation could have arisen both from Plaintiff himself *or* from those who

[4] Both the Arbitration and the IDES hearing are considered quasi-judicial proceedings. *Kaminski v. Roadway Express, Inc.*, No. 94-C-4425, 1995 WL 88918, at *6 (N.D. Ill. Mar. 1, 1995) (applying privilege to arbitration); *see Shaw v. Dep't of Empl. Sec.*, 2013 IL App (1st) 122676, ¶ 24 (referring to IDES as quasi-judicial body) (citing 820 ILCS 405/802; 820 ILCS 405/803).

complained about Plaintiff's "racist, slanderous, and, unethical behavior." Doc. 11 at ¶ 48. In any event, Plaintiff quickly proved correct Red Bull's assessment that Plaintiff would be a "potential" litigant – he retained counsel within six days of learning about the investigation, before Red Bull had even reached an employment decision. Doc. 11 at ¶¶ 48-49.

The remaining conduct—responding to Plaintiff's counsel's letter, engaging in the unemployment benefits proceeding, and all conduct taken during the Arbitration—is likewise covered. *See Atkinson*, 369 Ill. App. 3d at 832, 861 N.E.2d at 255 (holding correspondence prepared to potential litigants protected); *Richardson v. Dunbar*, 95 Ill. App. 3d 254, 256, 419 N.E.2d 1205, 1208 (Ill. App. Ct. 1981) (holding statements made by counsel in quasi-judicial proceedings privileged). This remains true despite Plaintiff's assertions that certain of these statements were false. *See* Doc. 11 at ¶¶ 94-95; *see O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶¶ 29-31, 36 N.E.3d 999, 1009-10 (holding privilege protected litigation misconduct, including violating discovery and evidentiary rules, contriving "bad-faith defense," failing "to properly participate in settlement and mediation," and lying to client). Because the absolute litigation privilege applies to all of the alleged conduct by Red Bull, the Complaint is barred in its entirety.

## III. Plaintiff Has Failed to Plead Any Cause of Action.

In addition to these threshold issues, Plaintiff also has failed to plead any claim against Red Bull under Rule 12(b)(6).

### A. Plaintiff Failed to Plead a Fraud Claim.

Plaintiff's fraud claim is based on his assertion that, when Red Bull submitted a "non-genuine" Agreement in the Arbitration, it "omitted facts necessary to make those representations non-misleading." *See* Doc. 11 at ¶¶ 112, 114. To plead a claim for fraud, Plaintiff must show an

action in reliance on the truth of the statements made, and damages resulting from that reliance. *See In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 864 (N.D. Ill. 2022). Fraudulent concealment additionally requires showing "the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Id.* at 863. Fraud claims must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *PB Lube, Inc. v. Clean Harbors Env't Servs., Inc.*, No. 23 C 16934, 2024 WL 3328161, at *5 (N.D. Ill. Jul. 8, 2024).

Plaintiff's fraud claim fails in part because he affirmatively alleges that he has *never believed* that the static PDF was a genuine document. *E.g.*, Doc. 11 at ¶ 85 ("Plaintiff *immediately* challenged the authenticity of the Purported Agreement[.]") (emphasis added). He repeatedly pressed for a different version of the Agreement, despite Red Bull's statements in the Arbitration. *See* Doc. 11 at ¶¶ 85, 87-98, 104-07 (describing iterations of Plaintiff's challenges). Plaintiff admittedly did not rely to his detriment on Red Bull's statements, which dooms his fraud claim. *See Ma v. CVS Pharmacy, Inc.*, No. 20-1500, 833 Fed. App'x 10, 13-14 (7th Cir. 2020) (affirming dismissal of fraud claim and holding plaintiff's stated disbelief of allegedly fraudulent statement foreclosed claim); *Curet v. C&H Exterior Restorations, Inc.*, 2023 IL App (2d) 230030, ¶¶ 39-41, 239 N.E.3d 751, 760 (Ill. App. Ct. 2023) (dismissing fraud claim and holding no reliance where plaintiff immediately challenged assertions from his employer regarding his employment). While the Complaint contains a conclusory allegation to the contrary, *see* Doc. 11 at ¶ 118, this cannot displace Plaintiff's specific factual allegations that he did not believe the alleged misstatements. *See Bachman v. Bear, Stearns & Co.*, 57 F. Supp. 2d 556, 562-63 (N.D. Ill. 1999) (dismissing fraud claim where it could not be reconciled with plaintiff's "unequivocal . . . rejection" of the truth of allegedly fraudulent statement).

Finally, Plaintiff does not allege qualifying damages. To be sure, Plaintiff cannot do so without alleging reliance, but the specific types of damages he asserts do not satisfy the injury element for fraud. *See* Doc. 11 at VI.A. Fees and costs incurred in pursuing litigation do not qualify and, in fact, are not even available to a prevailing party on a fraud claim. *See Chow v. Aegis Mortg. Corp*., 185 F. Supp. 2d 914, 917-19 (N.D. Ill. 2002). Nor does emotional distress count in the fraud context. *See Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021).

**B. Plaintiff Failed to Plead a Conspiracy Claim.**

Plaintiff also has not adequately pled conspiracy. Plaintiff's pleading deficiencies as to Red Bull are identical to the deficiencies for the Individual Defendants. Accordingly, Red Bull incorporates this section of the Individual Defendants' Memo.

**C. Plaintiff Failed to Plead a Negligent Spoliation Claim.**

The Complaint acknowledges that Plaintiff does not have a viable negligent spoliation claim. Negligent spoliation requires a plaintiff to prove that: (i) the defendant owed the plaintiff a duty to preserve the evidence; (ii) the defendant breached that duty by losing or destroying the evidence; (iii) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (iv) as a result, the plaintiff suffered actual damages. *See Martin v. Keeley & Sons, Inc*., 2012 IL 113270, ¶ 27, 979 N.E.2d 22, 27. Plaintiff fails to plead all four elements here.

First, the Complaint does not establish that Red Bull owed Plaintiff a duty to preserve the "certified" Agreement. "The general rule in Illinois is that there is no duty to preserve evidence." *Id.* (citation omitted). Such a duty arises under only limited circumstances, requiring the plaintiff to meet a two-pronged test. *Id.* First, the plaintiff must show "an agreement, contract, statute, special circumstance, or voluntary undertaking has given rise to" a defendant's duty to preserve

evidence. *Id.* And second, the plaintiff must show that "'a reasonable person in the defendant's position should have foreseen that the [specific] evidence [at issue] was material to a potential civil action.'" *Id.* (citation omitted).

The Complaint does not meet either prong. Plaintiff's status as a potential litigant against Red Bull at the time Red Bull executed the Agreement does not qualify as a special circumstance imposing the duty to preserve the "certified" Agreement. *See id.* at 32. Nor does his status as a Red Bull employee impose such a duty. *Id.* And the Complaint includes no other basis under any agreement, statute, or voluntary undertaking that would otherwise bind Red Bull. Moreover, it was not foreseeable that the "certified" Agreement would be any more relevant to future litigation than the static PDF that has already been produced – indeed, because it is not. *See Castillo v. Bd. of Educ. of City of Chicago*, 2018 IL App (1st) 171053, ¶¶ 27-28, 103 N.E.3d 596, 602 (Ill. App. Ct. 2018) (holding no duty to preserve documents with no apparent evidentiary worth). That Plaintiff merely *wants* this information does not make its relevance to the dispute foreseeable.

Next, Plaintiff has not alleged any actual spoliation. He asserts outright that the evidence *still exists* but simply has not yet been produced. *See* Doc. 11 at ¶ 127. He also affirmatively pleads that the "Final Audit Report" authenticates the Agreement, closing the gap about which he seems so concerned. *See* Doc. 11 at ¶ 96(a). This defeats his burden to allege a breach. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 510 (7th Cir. 2007) (affirming dismissal of spoliation claim with prejudice and declining to "stack inference upon inference" in light of weak surrounding claims where plaintiffs received other relevant documents).

Third, because Plaintiff alleges only that the "missing" evidence is preventing him from "proving the authenticity" of the Agreement – as opposed to the merits of his underlying claim – he cannot establish causation. *See* Doc. 11 at ¶ 129. The Complaint does not explain why this

specific document is critical to establishing the merits of his Arbitration claims. *See generally* Doc. 11; *see also Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1089 (N.D. Ill. 2015) (dismissing negligent spoliation claim where conclusory allegations regarding interference with "ability to prove his claims . . . causing him further damages" was insufficient). To that end, Plaintiff filed the Arbitration before ever learning that metadata related to the Agreement existed. "Presumably, Plaintiff[] believed—at that time—that [he] could succeed on [his ]claims without such evidence." *See Denton v. Ne. Illinois Reg'l Commuter R.R. Corp.,* No. 02 C 2220, 2004 WL 1005790, at *4 (N.D. Ill. Apr. 26, 2004) (denying leave to amend spoliation claim based on futility).

Finally, because Plaintiff cannot plead breach or causation, he cannot establish damages. *Salaita,* 118 F. Supp. 3d at 1089. Accordingly, his negligent spoliation claim fails on all fronts.

### D. Plaintiff Failed to Plead an IIED Claim.

Plaintiff's final count for IIED also fails. An IIED claim requires the plaintiff to show that: (i) the defendant's conduct was extreme and outrageous; (ii) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (iii) the defendant's conduct actually caused severe emotional distress. *See Shamim v. Siemens Indus., Inc*., 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012).

Plaintiff has not pled extreme and outrageous conduct. The standard for IIED is high. It "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Curran v. JP Morgan Chase, N.A*., 633 F. Supp. 2d 639, 643 (N.D. Ill. 2009) (internal quotations omitted). Rather, "a defendant's conduct must be so extreme as to go beyond all possible bounds of decency" and must be regarded as intolerable in a civilized community." *Id*. (internal quotations and citations omitted). Plaintiff does not meet this mark.

Here, Plaintiff alleges only that Red Bull hired counsel to assist with his termination,

disputed his claim for unemployment benefits, and "forced" him to litigate (in an arbitration he initiated) against what he believes to be a "non-genuine document." *See* Doc. 11 at ¶ 133. Especially in the employer-employee context, courts require truly egregious conduct based in the improper or coercive exercise of power or authority over the employee. *Welsh v. Commonwealth Edison Co*., 306 Ill. App. 3d 148, 154, 713 N.E.2d 679, 684 (Ill. App. Ct. 1999) ("[I]n the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for [IIED]."); *Shamim v. Siemens Indus., Inc*., 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012) (collecting cases).

To this end, terminating Plaintiff – even for an allegedly pretextual purpose – does not qualify. *See Curran*, 633 F. Supp. 2d at 643. Nor does challenging his unemployment benefit request, an action that employers are entitled to take, meet the mark. *See* 802 ILCS 405/702n. Plaintiff's IIED allegations against Red Bull are nothing more than the consequences flowing from Plaintiff's misconduct during his employment. *See* Doc. 11 at ¶ 133. This is not the type of harassing, abusive, or hostile action that warrants an IIED claim, and courts have dismissed cases involving far worse. *See Shamim*, 854 F. Supp. 2d at 512 (dismissing IIED claim where defendant subjected plaintiff to outbursts of yelling, profanity and insults about his religion and ethnicity . . . [and] made false comments to others about Plaintiff"); *Walker v. Bank of Am*., No. 21-CV-03589, 2022 WL 910585, at *8 (N.D. Ill. Mar. 29, 2022) (dismissing IIED claim based on alleged intentional false statements).

In any event, Plaintiff has also failed to plead *severe* emotional distress, alleging only that he has purportedly suffered "anxiety, humiliation, and mental anguish." *See* Doc. 11 at ¶ 136. Courts do not permit IIED claims based solely on "'mental anguish,'" which would "'encourage

neurotic overreactions to trivial hurts.'" *Farrar v. Bracamondes*, 332 F. Supp. 2d 1126, 1131 (N.D. Ill. 2004) (holding stress and anxiety insufficient) (collecting cases); *Woods v. Clay*, No. 01-C-6618, 2005 WL 43239, at *17 (N.D. Ill. Jan. 10, 2005) (holding shame, depression, and humiliation insufficient). Accordingly, for the reasons set forth herein, the Complaint is deficient on numerous grounds, and the Court should dismiss it with prejudice.

WHEREFORE, Defendant Red Bull North America, Inc. respectfully requests this Court its Motion to Dismiss, Dismiss Counts I-IV with prejudice, and grant any other relief this Court deems equitable and proper.

Dated: August 31, 2026

Respectfully submitted,

**RED BULL NORTH AMERICA, INC.**

*/s/ David J. Stein*

David J. Stein (6307086)
Kara E. Angeletti (6329388)
Addison Schlatter (6348632)
GREENBERG TRAURIG, LLP
360 North Green, Suite 1300
Chicago, Illinois 60607
T: (312) 456-1003
F: (312) 456-8435
David.Stein@gtlaw.com
Angelettik@gtlaw.com
Addison.Schlatter@gtlaw.com

*Attorneys for Defendants Red Bull North America., Inc.*

## CERTIFICATE OF SERVICE

I, David J. Stein, hereby certify that on August 31, 2026, a true and correct copy of **DEFENDANT RED BULL NORTH AMERICA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** was served electronically on all counsel through the Court's ECF system. record.

*/s/ David J. Stein*