FILED
10/25/2026
THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT
BC

Case No: 1:26-CV-07715

## TABLE OF CONTENTS

Page

**I. INTRODUCTION** .......... 1

**II. RULE 12 REQUIRES THE COURT TO DECIDE THE CASE AS PLEADED** .......... 3

**III. ARBITRATION-BASED DISMISSAL MUST SATISFY THE FAA AND MAA** .......... 5

A. Dismissal cannot bypass the conditions governing enforcement. .......... 5

B. The pleaded deception materially defeats the promised exchange. .......... 6

C. The qualified delegation clause requires a separate enforcement analysis. .......... 9

D. Resolve material factual disputes before enforcing arbitration. .......... 12

E. Scope and each nonsignatory's entitlement remain separate questions. .......... 13

F. The requested tort relief is not arbitral review. .......... 14

G. Deny enforcement-based dismissal and preserve the proper alternatives. .......... 15

**IV. LITIGATION PRIVILEGE DOES NOT WARRANT DISMISSAL** .......... 15

A. Federal conflict limits immunity against state-law claims. .......... 15

B. Immunity would sustain the pleaded obstruction of federal rights. .......... 17

C. Available procedural powers do not establish correction. .......... 20

D. Illinois scope independently requires an act-specific inquiry. .......... 22

**V. THE IHRA DOES NOT PREEMPT THE PLEADED TORTS** .......... 24

**VI. THE COURT HAS JURISDICTION, AND PLAINTIFF HAS STANDING** .......... 25

**VII. SPECIFIC JURISDICTION OVER BROOKS AND CASTAÑEDA** .......... 27

A. Castañeda directed the challenged investigation into Illinois. .......... 27

B. Brooks's own directions support specific jurisdiction. ....................28

C. The fiduciary shield requires an act-specific inquiry. ....................28

D. Confined discovery should precede any adverse factual ruling. ....................29

**VIII. COUNT I ADEQUATELY PLEADS FRAUD** ....................30

A. The particular false accounts and half-truths are identified. ....................30

B. The allegations identify each Defendant's knowing participation. ....................31

C. Plaintiff's own reliance preceded disclosure of the chronology. ....................33

D. The pleaded loss is a consequence of the induced course. ....................34

**IX. COUNT II ADEQUATELY PLEADS CIVIL CONSPIRACY** ....................35

A. The complementary acts support a common agreement. ....................35

B. Ogletree's later knowing joinder supports responsibility. ....................36

C. The agency objection does not compel dismissal. ....................37

**X. COUNT III PLEADS NEGLIGENT SPOLIATION IN THE ALTERNATIVE** ....................37

A. The Complaint identifies duties to preserve this source. ....................38

B. The pleaded loss impairs proof of a viable underlying claim. ....................40

**XI. COUNT IV ADEQUATELY PLEADS IIED** ....................41

A. The pleaded means and purpose exceed ordinary employment disputes. ....................41

B. Each Defendant's alleged acts support the required state of mind. ....................43

C. The pleaded consequences establish severe and continuing distress. ....................44

**XII. DISMISSAL WITH PREJUDICE IS UNWARRANTED** ....................45

# TABLE OF CASES

Page

*Adcock v. Brakegate, Ltd.*,

164 Ill. 2d 54, 645 N.E.2d 888 (1994) ....................20, 35–37

*Al-Nahhas v. 777 Partners LLC*,

No. 23-2723 (7th Cir. Feb. 19, 2025) ....................10

*Alamo v. Bliss*,

864 F.3d 541 (7th Cir. 2017) ....................3

*Allstate Ins. Co. v. St. Anthony's Spine & Joint Inst., P.C.*,

No. 06-cv-7010, ECF 209 (N.D. Ill. Feb. 10, 2010) ....................33

*Am. Backflow & Fire Prevention, Inc. v. Hincks*,

2025 IL App (2d) 250023 ....................16, 23

*Ansonia Bd. of Educ. v. Philbrook*,

479 U.S. 60 (1986) ....................18

*Anthony v. Fed. Sav. Bank*,

No. 21 C 2509, ECF 74 (N.D. Ill. Mar. 30, 2022) ....................34

*Averbach v. Rival Mfg. Co.*,

879 F.2d 1196 (3d Cir. 1989) ....................34

*Bachman v. Bear, Stearns & Co.*,

57 F. Supp. 2d 556 (N.D. Ill. 1999) ....................33

*Bedgood v. Wyndham Vacation Resorts, Inc.*,

88 F.4th 1355 (11th Cir. 2023) ....................................................................................6

*Benton v. Little League Baseball, Inc.*,

2020 IL App (1st) 190549, 181 N.E.3d 902 ...............................................................45

*Bernal v. Kohl's Corp.*,

No. 24-2806 (7th Cir. May 1, 2026) .........................................................................12

*Blount v. Stroud*,

232 Ill. 2d 302, 904 N.E.2d 1 (2009) .........................................................................24

*Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*,

671 F.3d 635 (7th Cir. 2011) ................................................................................11–12

*Borsellino v. Goldman Sachs Grp., Inc.*,

477 F.3d 502 (7th Cir. 2007) ................................................................................36, 41

*Boyd v. Travelers Ins. Co.*,

166 Ill. 2d 188, 652 N.E.2d 267 (1995) ..................................................................38–40

*Buckner v. Atl. Plant Maint., Inc.*,

182 Ill. 2d 12, 694 N.E.2d 565 (1998) .......................................................................37

*Burger King Corp. v. Rudzewicz*,

471 U.S. 462 (1985)..........................................................................................27, 30

*Burgess v. Lithia Motors, Inc.*,

196 Wash. 2d 187 (2020)..........................................................................................12

*Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53 (2006)..................................................................................................19

*Bushell v. Caterpillar, Inc.*,

291 Ill. App. 3d 559, 683 N.E.2d 1286 (1997) ....................................................15–16

*Camasta v. Jos. A. Bank Clothiers, Inc.*,

761 F.3d 732 (7th Cir. 2014) ....................................................................................3

*Castillo v. Bd. of Educ. of City of Chi.*,

2018 IL App (1st) 171053, 103 N.E.3d 596 ..........................................................39

*Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reins. Co.*,

440 F.3d 870 (7th Cir. 2006) ....................................................................................29

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,

230 F.3d 934 (7th Cir. 2000) ....................................................................................29

*Chapman v. Yellow Cab Coop.*,

875 F.3d 846 (7th Cir. 2017) ....................................................................................45

*Chow v. Aegis Mortgage Corp.*,

185 F. Supp. 2d 914 (N.D. Ill. 2002) .......................................................................34

*Coinbase, Inc. v. Suski*,

602 U.S. 143 (2024)..............................................................................................10–11

*Comein v. City of Country Club Hills*,

No. 11-cv-05766, ECF 139 (N.D. Ill. Dec. 20, 2013) ..............................................40

*Copot v. Stewart Title Guar. Co.*,

No. 19 C 6987 (N.D. Ill. Apr. 13, 2020)..............................................................24–25

*Corinthian Colls., Inc. v. McCague*,

No. 09 C 4899, ECF 21 (N.D. Ill. Mar. 4, 2010) ....................................................14

*Ctr. Partners, Ltd. v. Growth Head GP, LLC*,

2012 IL 113107, 981 N.E.2d 345 ..........8

*Curet v. C&H Exterior Restorations, Inc.*,

2023 IL App (2d) 230030, 239 N.E.3d 751 ..........33

*Curran v. JP Morgan Chase, N.A.*,

633 F. Supp. 2d 639 (N.D. Ill. 2009) ..........42

*Curry v. Revolution Labs., LLC*,

949 F.3d 385 (7th Cir. 2020) ..........27

*Denton v. Ne. Ill. Reg'l Commuter R.R. Corp.*,

No. 02 C 2220, ECF 24 (N.D. Ill. Apr. 23, 2004) ..........40–41

*Deputy v. Lehman Bros., Inc.*,

345 F.3d 494 (7th Cir. 2003) ..........13

*Dustman v. Advocate Aurora Health, Inc.*,

2021 IL App (4th) 210157, 192 N.E.3d 47 ..........11

*EEOC v. Abercrombie & Fitch Stores, Inc.*,

575 U.S. 768 (2015) ..........18

*EEOC v. Day & Zimmermann NPS, Inc.*,

No. 15-cv-1416, ECF 99 (D. Conn. Aug. 22, 2017) ..........20

*EEOC v. Ill. Dep't of Emp. Sec.*,

995 F.2d 106 (7th Cir. 1993) ..........16

*English v. Gen. Elec. Co.*,

496 U.S. 72 (1990) ..........16

*Erie R.R. Co. v. Tompkins*,

304 U.S. 64 (1938)....................16

*Ewing v. 1645 W. Farragut LLC*,

90 F.4th 876 (7th Cir. 2024)....................35

*Farrar v. Bracamondes*,

332 F. Supp. 2d 1126 (N.D. Ill. 2004)....................45

*Felland v. Clifton*,

682 F.3d 665 (7th Cir. 2012)....................27, 30

*Feltmeier v. Feltmeier*,

207 Ill. 2d 263, 798 N.E.2d 75 (2003)....................41, 44

*Femal v. Square D Co.*,

388 Ill. App. 3d 134, 903 N.E.2d 32 (2009)....................28

*Ferri v. Ackerman*,

444 U.S. 193 (1979)....................2, 15, 21, 40

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,

458 U.S. 141 (1982)....................19

*Fifth Third Mortg. Co. v. Kaufman*,

934 F.3d 585 (7th Cir. 2019)....................32–33

*Fletcher v. Doig*,

No. 13-cv-3270, ECF 75 (N.D. Ill. Sept. 30, 2014)....................28

*Frakes v. Peoria Sch. Dist. No. 150*,

872 F.3d 545 (7th Cir. 2017)....................19

*Frazier v. X Corp.*,

No. 24-1948 (2d Cir. Sept. 2, 2025) ....................................................................................12

*G Six Consulting LLC v. Mullett*,

No. 25-cv-2166, ECF 45 (N.D. Ill. Sept. 2, 2025)...................................................................29

*Galesburg Clinic Ass'n v. West*,

302 Ill. App. 3d 1016, 706 N.E.2d 1035 (1999) ......................................................................11

*Geinosky v. City of Chicago*,

675 F.3d 743 (7th Cir. 2012) ....................................................................................................5

*Gerill Corp. v. Jack L. Hargrove Builders, Inc.*,

128 Ill. 2d 179, 538 N.E.2d 530 (1989) ...................................................................................33

*Gilmer v. Interstate/Johnson Lane Corp.*,

500 U.S. 20 (1991)...............................................................................................................9, 38

*Gore v. Alltel Commc'ns, LLC*,

666 F.3d 1027 (7th Cir. 2012) ................................................................................................13

*Graham v. Commonwealth Edison Co.*,

318 Ill. App. 3d 736, 742 N.E.2d 858 (2000) ..........................................................................42

*Groff v. DeJoy*,

600 U.S. 447 (2023)...............................................................................................................18

*Halcon Int'l, Inc. v. Monsanto Austl. Ltd.*,

446 F.2d 156 (7th Cir. 1971) ..................................................................................................10

*Halim v. Great Gatsby's Auction Gallery, Inc.*,

516 F.3d 557 (7th Cir. 2008) ....................................................................................................6

*Hefferman v. Bass*,

467 F.3d 596 (7th Cir. 2006) ....................20, 32, 37

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,

586 U.S. 63 (2019)....................11

*Hooters of Am., Inc. v. Phillips*,

173 F.3d 933 (4th Cir. 1999) ....................6–7

*Horowitz v. Animal Emerg. & Treatment Ctrs. of Chi., LLC*,

No. 12 C 2561, ECF 31 (N.D. Ill. Aug. 20, 2012)....................22

*Howsam v. Dean Witter Reynolds, Inc.*,

537 U.S. 79 (2002)....................11

*Hubert v. Oswego Junction Enters. LLC*,

No. 21 C 3360, ECF 67 (N.D. Ill. Dec. 29, 2022) ....................8–9

*Huizar v. Experian Info. Sols., Inc.*,

No. 4:22-cv-85, ECF 282 (N.D. Ind. Aug. 24, 2026) ....................10

*J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*,

162 Ill. 2d 265, 642 N.E.2d 1215 (1994) ....................5

*Jackson v. Payday Fin., LLC*,

764 F.3d 765 (7th Cir. 2014) ....................7, 13

*Johnson v. Filler*,

2018 IL App (2d) 170923, 109 N.E.3d 370....................37

*Jones v. O'Brien Tire & Battery Serv. Ctr., Inc.*,

374 Ill. App. 3d 918, 871 N.E.2d 98 (2007) ....................39

*Kass v. PayPal Inc.*,

75 F.4th 693 (7th Cir. 2023) ....................................................................................5

*Khan v. Gramercy Advisors, LLC*,

2016 IL App (4th) 150435, 61 N.E.3d 107 ...................................................................29

*Khungar v. Access Cmty. Health Network*,

985 F.3d 565 (7th Cir. 2021) ....................................................................................16

*Kilburg v. Mohiuddin*,

2013 IL App (1st) 113408, 990 N.E.2d 292 ...................................................................38

*Kim v. Jump Trading, LLC*,

No. 25-1964 (7th Cir. Aug. 13, 2026)...........................................................................13

*Kolegas v. Heftel Broad. Corp.*,

154 Ill. 2d 1, 607 N.E.2d 201 (1992) ...........................................................................44

*Kraft Chem. Co. v. Salicylates & Chems. Priv. Ltd.*,

149 F. Supp. 3d 897 (N.D. Ill. 2015) ...........................................................................28

*Krocka v. City of Chicago*,

203 F.3d 507 (7th Cir. 2000) ....................................................................................24

*Lewis v. Kalbhen*,

2025 IL App (1st) 242110, 277 N.E.3d 922 ...................................................................22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

572 U.S. 118 (2014)..................................................................................................26

*Livadas v. Bradshaw*,

512 U.S. 107 (1994)..........................................................................................17, 21–22

*Loughnane v. Zukowski Rogers Flood & McArdle*,

No. 19 C 86, ECF 105 (N.D. Ill. Sept. 6, 2019)....................22

*Lujan v. Defenders of Wildlife*,

504 U.S. 555 (1992)....................26

*Ma v. CVS Pharmacy, Inc.*,

No. 20-1500 (7th Cir. Oct. 23, 2020)....................33

*Maksimovic v. Tsogalis*,

177 Ill. 2d 511, 687 N.E.2d 21 (1997)....................24

*Martin v. Keeley & Sons, Inc.*,

2012 IL 113270, 979 N.E.2d 22....................38

*Martinez v. Abbott Labs.*,

356 F. Supp. 2d 898 (N.D. Ill. 2005)....................38, 40

*McClendon v. Ill. Dep't of Transp.*,

64 F. Supp. 3d 1163 (N.D. Ill. 2014)....................21

*McClure v. Owens Corning Fiberglas Corp.*,

188 Ill. 2d 102, 720 N.E.2d 242 (1999)....................36

*McGrath v. Fahey*,

126 Ill. 2d 78, 533 N.E.2d 806 (1988)....................41

*McKenzie v. Ill. Dep't of Transp.*,

92 F.3d 473 (7th Cir. 1996)....................20

*Mem'l Hosp. for McHenry Cnty. v. Shadur*,

664 F.2d 1058 (7th Cir. 1981)....................21

*Morgan v. Sundance, Inc.*,

596 U.S. 411 (2022)....................................................................................................5

*Naeem v. McKesson Drug Co.*,

444 F.3d 593 (7th Cir. 2006) ...........................................................................24–25, 45

*Nash v. Fla. Indus. Comm'n*,

389 U.S. 235 (1967)..................................................................................................17

*Nat'l Cas. Co. v. Cont'l Ins. Co.*,

No. 23-3373 (7th Cir. Nov. 22, 2024)...........................................................................11, 15

*Newman v. Metro. Life Ins. Co.*,

885 F.3d 992 (7th Cir. 2018) ...........................................................................30–31

*O'Callaghan v. Satherlie*,

2015 IL App (1st) 142152, 36 N.E.3d 999 ..................................................................22

*Olson v. Etheridge*,

177 Ill. 2d 396, 686 N.E.2d 563 (1997) .......................................................................13

*Page v. GPB Cars 12, LLC*,

No. 19-11513, ECF 38 (D.N.J. Oct. 17, 2019) ..............................................................6

*Panti v. Jazzberry Digital Sols. Inc.*,

No. 25-cv-01345, ECF 29 (N.D. Ill. Oct. 24, 2025) ...................................................30

*Pardi v. Kaiser Found. Hosps.*,

389 F.3d 840 (9th Cir. 2004) .......................................................................................20

*Passarella v. Aspirus, Inc.*,

108 F.4th 1005 (7th Cir. 2024) .....................................................................................17

*Patten v. Johnson*,

429 S.W.3d 767 (Tex. App. 2014)....................................................................................14

*Pennell v. Glob. Tr. Mgmt., LLC*,

990 F.3d 1041 (7th Cir. 2021) ........................................................................................35

*Perez v. Campbell*,

402 U.S. 637 (1971)..........................................................................................................17

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,

631 F.3d 436 (7th Cir. 2011) ..........................................................................................32

*PML Dev. LLC v. Village of Hawthorn Woods*,

2023 IL 128770, 226 N.E.3d 1163 ..................................................................................11

*Pre-Paid Legal Servs., Inc. v. Cahill*,

786 F.3d 1287 (10th Cir. 2015) ...................................................................................6, 10

*Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133 (2000)..........................................................................................................19

*Rent-A-Center, West, Inc. v. Jackson*,

561 U.S. 63 (2010)............................................................................................................10

*Retzios v. Epic Sys. Corp.*,

126 F.4th 1282 (7th Cir. 2025) ...........................................................................14–15, 45

*Rice v. Nova Biomedical Corp.*,

38 F.3d 909 (7th Cir. 1994) ............................................................................................28

*Richards v. U.S. Steel*,

869 F.3d 557 (7th Cir. 2017) ..........................................................................................24

*Roboserve, Inc. v. Kato Kagaku Co.*,

78 F.3d 266 (7th Cir. 1996) ....................34

*Rodgers v. Peoples Gas, Light & Coke Co.*,

315 Ill. App. 3d 340, 733 N.E.2d 835 (2000) ....................36

*Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*,

No. 05 C 4088 (N.D. Ill. Feb. 23, 2011) ....................39

*Rum Creek Coal Sales, Inc. v. Caperton*,

971 F.2d 1148 (4th Cir. 1992) ....................17, 21–22

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*,

786 F.3d 510 (7th Cir. 2015) ....................45

*Sahadi v. Cont'l Ill. Nat'l Bank & Tr. Co.*,

706 F.2d 193 (7th Cir. 1983) ....................5–6

*Salaita v. Kennedy*,

118 F. Supp. 3d 1068 (N.D. Ill. 2015) ....................41

*Scarpelli v. McDermott Will & Emery LLP*,

2018 IL App (1st) 170874, 117 N.E.3d 238 ....................22–23

*Scheib v. Grant*,

22 F.3d 149 (7th Cir. 1994) ....................21

*Scott v. Chi. Pub. Schs.*,

No. 25-cv-04097 (N.D. Ill. Feb. 27, 2026) ....................3

*Shamim v. Siemens Indus., Inc.*,

854 F. Supp. 2d 496 (N.D. Ill. 2012) ....................42

*Sheehan v. Breccia Unlimited Co.*,

Nos. 21-2946 & 21-2954 (7th Cir. Sept. 7, 2022) ....................................................28

*Short v. MV Transp., Inc.*,

No. 24-CV-3019, ECF 58 (N.D. Ill. Dec. 16, 2025)....................................................10

*Sink v. Aden Enters., Inc.*,

352 F.3d 1197 (9th Cir. 2003) ....................................................................................6

*Smith v. Dart*,

803 F.3d 304 (7th Cir. 2015) ......................................................................................5

*Smith v. Spizzirri*,

601 U.S. 472 (2024)....................................................................................................15

*St. Joseph Hosp. v. Corbetta Constr. Co.*,

21 Ill. App. 3d 925, 316 N.E.2d 51 (1974) ..................................................................34

*Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*,

No. 19 C 64, ECF 35 (N.D. Ill. Mar. 13, 2019) ...........................................................14

*Steffes v. Stepan Co.*,

144 F.3d 1070 (7th Cir. 1998) ....................................................................................20

*Sun v. Xu*,

99 F.4th 1007 (7th Cir. 2024) ..............................................................................43, 45

*Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*,

1 F.3d 639 (7th Cir. 1993) ..........................................................................................13

*Tex. Brine Co. v. Am. Arb. Ass'n, Inc.*,

955 F.3d 482 (5th Cir. 2020) ......................................................................................14

*Thornwood, Inc. v. Jenner & Block*,

344 Ill. App. 3d 15, 799 N.E.2d 756 (2003) ....................................................................20, 37

*Tinder v. Pinkerton Security*,

305 F.3d 728 (7th Cir. 2002) ..................................................................................................13

*Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.)*,

631 F.3d 869 (7th Cir. 2011) ..................................................................................................11

*Ulatowski v. John Sterling Corp.*,

No. 03 C 8847 (N.D. Ill. June 16, 2004)................................................................................24

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,

570 U.S. 338 (2013)................................................................................................................19

*Upjohn Co. v. United States*,

449 U.S. 383 (1981)..................................................................................................................9

*Van Winkle v. Owens-Corning Fiberglas Corp.*,

291 Ill. App. 3d 165, 683 N.E.2d 985 (1997) .........................................................................36

*W. Mich. Debt Collection, Inc. v. Weber*,

No. 17 C 4308, ECF 81 (N.D. Ill. Jan. 17, 2018) ...................................................................37

*Walden v. Fiore*,

571 U.S. 277 (2014)................................................................................................................27

*Walker v. Bank of Am., N.A.*,

No. 21-cv-03589, ECF 63 (N.D. Ill. Mar. 29, 2022) ..............................................................42

*Wallrich v. Samsung Elecs. Am., Inc.*,

106 F.4th 609 (7th Cir. 2024) ...........................................................................................12–13

*Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C.*,

64 F. Supp. 2d 398 (D.N.J. 1999) ....................................................................................16, 21

*Welsh v. Commonwealth Edison Co.*,

306 Ill. App. 3d 148, 713 N.E.2d 679 (1999) ..........................................................................42

*Wofford v. Tracy*,

2015 IL App (2d) 141220, 48 N.E.3d 1109 ..............................................................................39

*Wootten v. Fisher Invs., Inc.*,

688 F.3d 487 (8th Cir. 2012) ....................................................................................................12

*W.W. Vincent & Co. v. First Colony Life Ins. Co.*,

351 Ill. App. 3d 752, 814 N.E.2d 960 (2004) ....................................................................30–31

*Wyeth v. Levine*,

555 U.S. 555 (2009)..................................................................................................................16

*Zapata v. C3T, Inc.*,

No. 13-CV-600-JPS, ECF 14 (E.D. Wis. Oct. 28, 2013)...................................................14, 26

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES LECLERC,<br>Plaintiff,<br>v.<br>RED BULL NORTH AMERICA, INC., et al.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-07715<br>Judge Sharon Johnson Coleman<br>Magistrate Judge Karyn L. Bass Ehler |

**PLAINTIFF'S OMNIBUS MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

## I. INTRODUCTION

Defendants seek dismissal by rewriting the Complaint (ECF 11) as an arbitral-discovery appeal. ECFs 40 at 1; 43 at 1; 46 at 1. The Complaint instead alleges a coordinated fraudulent scheme manufacturing termination pretext and concealing proof needed to test Red Bull's rationale and vindicate Title VII and ADA civil rights. The scheme began in May 2022 or earlier, following Red Bull's unjustified March 18 religious-exemption denial and March 25 termination threat unless Plaintiff submitted to its COVID-19 mandate. Compl. ¶¶ 39–44; Leclerc Decl. ¶ 8(c)–(e). Beginning before reasonable anticipation of litigation, it continues through unemployment proceedings and separate JAMS employment arbitration. Compl. ¶¶ 1, 4, 23, 69–70, 111, 116–117; Leclerc Decl. ¶¶ 54–55. Defendants perpetuate the distortions here. ECFs 43 at 21; 46 at 9. Four Illinois tort counts seek accountability and redress for continuing personal and economic harm and correction of ongoing obstruction; employment termination remedies are currently pursued in JAMS. Compl. ¶¶ 3–5, 120, 127–130, 133–135; Prayer VI.A–D, F.

Dismissal with prejudice cannot bypass the statutory and contractual conditions for enforcing the Mutual Arbitration Agreement ("MAA"). ECFs 43 at 10–14; 46 at 2–3. Federal Arbitration Act ("FAA") § 2 preserves material-nonperformance defenses to the MAA and its § 11 delegation provision. FAA § 3 independently limits enforcement by a defaulting party. 9

U.S.C. §§ 2–3; Compl. ¶¶ 13, 16–20. MAA § 10 adopts the FAA; § 11 qualifies delegation with "Except as required by applicable law." Deny arbitration-based dismissal or permit limited judicial-enforcement discovery. Compl. ¶¶ 13, 20; Prayer VI.D, p. 53.

Illinois litigation privilege must yield where its application conflicts with federal law. *Ferri v. Ackerman*, 444 U.S. 193, 198 (1979). Applying it here would protect concealment of evidence needed to prove Title VII and ADA violations and bar redress for that obstruction. Defendants cannot invoke arbitration to extinguish those remedies. Compl. ¶¶ 23(e), 69–70, 104–108, 117–120. Reject immunity and independently scrutinize the obstruction, antecedent business conduct, and each participant's acts. Compl. ¶¶ 23(a)–(b), 111–120, 123–124.

The Complaint alleges deception, knowing participation, and an extreme and outrageous course of conduct causing personal injury under tort duties independent of the Illinois Human Rights Act ("IHRA"); alternative Count III invokes separately pleaded preservation obligations. Compl. ¶¶ 96, 111–135. It pleads diversity jurisdiction; Plaintiff has standing to recover damages for concrete injuries traceable to Defendants. *Id.* ¶¶ 31–36, 118, 120, 133–135; Prayer VI.A–B.

The individuals' jurisdictional defenses turn on their own Illinois-directed acts. Castañeda knowingly interviewed Plaintiff at his Chicago home and invited his response. Compl. ¶ 48; Leclerc Decl. ¶¶ 11–13. Brooks's engagement role and investigation summary support her alleged participation in the Illinois benefits challenge and Chicago arbitration production. VII.B details those acts and their factual basis. If necessary, confined discovery of her directions, approvals and preservation responsibilities must precede jurisdictional dismissal. VII.D. Decide Plaintiff's pleaded case, not Defendants' rewrite.

## II. RULE 12 REQUIRES THE COURT TO DECIDE THE CASE AS PLEADED

Rule 12(b)(6) tests plausibility, accepting well-pleaded facts and drawing permissible inferences in Plaintiff's favor. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Alamo v. Bliss*, 864 F.3d 541, 548–49 (7th Cir. 2017). As this Court explained, it "tests the sufficiency of the complaint, not its merits." *Scott v. Chi. Pub. Schs.*, No. 25-cv-04097, slip op. at 3 (N.D. Ill. Feb. 27, 2026).

Ogletree's "interlocutory appeal" label ignores the pleaded scheme that began before litigation and caused injuries across proceedings. ECFs 40 at 11; 43 at 1; 46 at 1; Compl. ¶¶ 3–5, 111–120, 133–135. Prayer VI.A–C seeks tort damages and a fraud declaration; VI.D seeks preservation and production for these torts. Complaint ¶¶ 13 and 20 seek limited discovery for the Court's arbitration-enforcement decision. Concealing the investigation files supports fraud, knowing participation, and severe distress, which ECF 43 at 13 n.1 overlooks. Compl. ¶¶ 62–70, 108, 111, 116, 120, 123–124, 133–135; *id.* ¶¶ 110, 122, 126, 132 (incorporation).

ECF 46 at 11 attributes Count IV injuries to "Plaintiff's misconduct"; ECF 43 at 2 describes the investigation as "due to concerns over his racist and unethical behavior." Complaint ¶ 48 reports and disputes those accusations. No adjudicated misconduct finding exists. Red Bull has neither identified which acts it adopted as termination grounds nor produced any contemporaneous evidence substantiating misconduct. Compl. ¶¶ 46–48, 78–79; Leclerc Decl. ¶¶ 20, 27, 55. Defendants cannot defeat fabrication and concealment claims by assuming unsupported and disputed accusations true. Compl. ¶¶ 62, 69–70, 133. The Castañeda engagement was dated May 18 and completed May 19, before the HR complaints "on or about May 24" supposedly prompting retention. The engagement predates its asserted trigger, supporting pretext. Compl. ¶¶ 43–48, 96(a). ECF 43 at 3 calls the testing authorization an

accommodation. It omits the March 18 denial and March 25 termination threat that preceded Plaintiff's forced alternative-testing proposal under duress to comply with its legally unjustified policy. Later authorization cannot erase those events or defeat retaliation. Compl. ¶¶ 39–47, 111.

**Adobe certification and source verification**

A "verifiable Adobe copy" means the completed agreement PDF retaining Adobe's original signing certificate and tamper-evident seal, permitting independent checks of its origin and integrity. Together with its associated audit/transaction records, it forms the "source package." Adobe Documentation at 2–3, 11.

Plaintiff seeks the completed Adobe-generated agreement with its original electronic verification features and associated audit records. They permit independent source verification and comparison with Defendants' copy. That comparison would help establish whether a genuine investigation of Plaintiff was ever commissioned. A witness's assurance cannot supply the records needed to test the copy.

Plaintiff sought source comparison in September 2025. Griffin required written certification but denied direct Adobe authentication. The distinct May 14, 2026 request sought leave to compel Red Bull's production of the source package or subpoena Adobe or Castañeda; Red Bull opposed May 19. Griffin has not ruled despite June 22 and July 14 follow-ups; Red Bull supplied neither the source package nor either certification to this day. Leclerc Decl. ¶¶ 39, 43, 46–54; Essertier Decl. ¶¶ 20–24.

The asserted match supplies no legitimate reason to withhold the verifiable Adobe copy. Production tests the assurance Defendants ask the Court to accept. ECFs 43 at 20–21; 46 at 9.

ECFs 43 at 21 and 46 at 9 claim ¶ 96(a) "affirmatively pleads" authentication and conclude, "This defeats his burden to allege a breach." Paragraph 96(a) identifies transaction

events and access. Complaint ¶¶ 82–85 and 99–103 dispute the produced copy's authenticity, completeness, and provenance. Their "asserts outright" reading omits ¶ 127's allegation of negligent loss "In the alternative." Rule 8(d)(2)–(3) permits concealment and alternative loss allegations; *infra* X.

Defendants overlook pleaded preservation duties and facts supporting years of severe distress. Compl. ¶¶ 96(c), (e), 128, 133; ECFs 43 at 23; 46 at 9, 11–12. See X.A and XI.C.

For Rule 12(b)(6), the declarations and Exhibits A–O elaborate facts consistent with the Complaint. *Smith v. Dart*, 803 F.3d 304, 311–12 (7th Cir. 2015); *Geinosky v. City of Chicago*, 675 F.3d 743, 745–46 n.1 (7th Cir. 2012). Personal jurisdiction and judicial FAA enforcement follow their governing evidentiary standards. Rule 12(d) governs conversion to summary judgment where applicable.

## III. ARBITRATION-BASED DISMISSAL MUST SATISFY THE FAA AND MAA

### A. Dismissal cannot bypass the conditions governing enforcement.

Defendants seek to enforce the MAA, which Plaintiff alleges Red Bull materially breached. Compl. ¶¶ 13, 20; ECFs 43 at 10–14; 46 at 2–3. Knowingly supplying a materially altered or incomplete copy as genuine materially breaches the promised good-faith exchange; later authenticity claims cannot cure it. Arbitration is a contractual defense, not a jurisdictional bar. *Kass v. PayPal Inc.*, 75 F.4th 693, 699–700 (7th Cir. 2023). Complaint ¶ 36 pleads diversity jurisdiction, which arbitration cannot "strip." ECF 46 at 2.

FAA § 2 preserves ordinary defenses; arbitration receives equal treatment. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Illinois implies good faith and fair dealing in performance; material breach permits withholding reciprocal performance. *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill. 2d 265, 642 N.E.2d 1215, 1222 (1994); *Sahadi*

*v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 706 F.2d 193, 196–98 (7th Cir. 1983). No prior fraud judgment is required; tort immunity does not prove contractual performance.

Section 3 requires an application and judicial findings that the issues are referable and the applicant is "not in default in proceeding with such arbitration." A stay lasts until arbitration occurs "in accordance with the terms of the agreement." 9 U.S.C. § 3. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008), looked past the dismissal label. *Page v. GPB Cars 12, LLC*, No. 19-11513, ECF 38, at 6–9 (D.N.J. Oct. 17, 2019), denied dismissal and referral for default and material breach after nonpayment ended arbitration.

*Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1295–99 (10th Cir. 2015), permitted courts to find default after nonpayment ended arbitration without an arbitral declaration. *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1200–01 (9th Cir. 2003), barred renewed compulsion to evade default; *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1362–69 (11th Cir. 2023), upheld statutory default despite enforceability delegation when forum-policy violations barred arbitration, requiring findings for each defendant. Their reasoning supports default: continued arbitration alone cannot cure the alleged denial of essential promised performance.

**B. The pleaded deception materially defeats the promised exchange.**

MAA §§ 4–5 incorporate JAMS procedures and promise reasonable discovery; § 9 requires applicable substantive law. JAMS Rules 17(a), (c) require good-faith exchange and supplementation of relevant nonprivileged documents and electronic information, including relied-on materials in possession or control. Rules 17(d), 22(d) govern discovery rulings, privilege, and work product; Minimum Standards 4–5 protect core exchange and evidence presentation. The arbitrator's discretion does not erase those exchange obligations. *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938, 940–41 (4th Cir. 1999), refused enforcement of

deliberately biased rules materially breaching the employer's fair-arbitration duty. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 779–81 (7th Cir. 2014), citing *Hooters*, refused enforcement where promised rules and oversight did not exist.

Red Bull deemed the engagement agreement nonprivileged, then produced September 2025's static PDF without Adobe's signing certificate or tamper-evident seal. Ex. B at 3; Compl. ¶¶ 82–85. The letter describes representation "in connection with a privileged investigation" without identifying Plaintiff, subject, or work. Slater's "neutral investigation" account cites complaints "on or about May 24," after May 19 execution. Leclerc Decl. ¶¶ 18, 40–43. Comparison would test the claimed assignment to investigate Plaintiff and Slater's account of work, purpose, and timing. Compl. ¶¶ 43–48, 99–108.

Castañeda admits sending and executing the engagement and maintaining the Adobe program; Brooks admits receiving and executing it. ECFs 43-4 ¶¶ 12–13; 43-3 ¶ 12. The Audit Report records creation, transmission to Brooks's Red Bull address, viewing, signature, and May 19, 2022 completion. Compl. ¶ 96(a); Leclerc Decl. ¶¶ 41–43, 59–61. Adobe's documentation describes digitally sealed signed documents sent to all parties. Adobe describes automatic delivery and identifies emailed PDFs as certified copies of the signed server original. Adobe Documentation at 2–3, 11. These facts demonstrate that Castañeda and Brooks received verifiable Adobe copies. Adobe documents agreement and Audit Report downloads. *Id.* at 8–9.

After producing the Audit Report, Ogletree called the PDF complete and authenticated in October–November 2025 and the only engagement-terms document in October. Leclerc Decl. ¶¶ 39–46. Brooks's receipt and client role support her alleged production directions. *Infra* VIII.B. On May 12, 2026, Rudd declined Adobe authentication, saying Red Bull was "not even in possession of the Adobe records" and pointing to outside-firm custody. Tr. 7:7–8:8. Rudd

never explained how Ogletree obtained the Audit Report, what became of Brooks's copy, or which source was compared with the PDF. Production rulings do not verify those accounts. Essertier Decl. ¶¶ 6, 11–12; Leclerc Decl. ¶¶ 60–61.

Order 23, § 4, directed certification of production compliance. Amended Order 35, § 4 (May 14, 2026), requires written certification that the produced agreement is authentic, accurate, and complete. Neither certification has been supplied. Leclerc Decl. ¶¶ 46–49, 54; Essertier Decl. ¶¶ 7–12, 24. The certifier's knowledge and comparison matter. Tr. 4:4–8. The order mandates no oath or penalty-of-perjury declaration; without either, the assurance lacks 28 U.S.C. § 1746's sworn-declaration force.

On May 14, Plaintiff requested leave to compel the source package or subpoena Adobe or Castañeda for comparison. Compl. ¶ 104. Cortez opposed May 19, promised compliance with certification, claimed production of the "entirety," including Adobe metadata, and demanded closure. Ex. F at 3–4. The leave request remains undecided. Amended responses supplied neither source nor investigation records. Leclerc Decl. ¶¶ 51–55; Essertier Decl. ¶¶ 20–24.

Red Bull materially breaches the promised good-faith exchange by withholding discoverable investigation and source records, including the source package. Red Bull admitted seven interviews, Castañeda's notes and verbal report, and Brooks's summary, denying only a formal written report. Red Bull used the investigation to justify termination in Slater's July 22, 2022 letter to Plaintiff's counsel and its May 16, 2025 arbitration response, and to oppose Illinois benefits. Compl. ¶¶ 51, 59–65; Leclerc Decl. ¶¶ 18–23, 28–31. Red Bull's tactical reliance on the investigation waived protection over that subject to the extent fairness requires. *Ctr. Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶¶ 35, 39–40, 62, 65, 981 N.E.2d 345, distinguishes extrajudicial disclosure from tactical court use. *Hubert v. Oswego Junction Enters.*

*LLC*, No. 21 C 3360, ECF 67, at 4–9 (N.D. Ill. Dec. 29, 2022), required unredacted notes and communications; invoking counsel's investigative communications to justify termination waived attorney-client/work-product protection. *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981), protects qualifying communications, not the underlying facts. Assess each category and require nonprivileged facts and nonprivileged or waived records. IV.A–C addresses conflicting state exclusions, including 820 ILCS 405/1900.

Plaintiff's May and August 2025 and January 2026 prior-use waiver arguments remained undecided. Red Bull admitted the notes and Brooks's summary existed. Order 16, § 4. On May 12, Griffin questioned sword-and-shield waiver's relevance without addressing prior uses. Tr. 26:2–6. He said use by Red Bull would require production; Plaintiff identified Slater's letter and the benefits challenge as completed uses. *Id.* 26:15–27:4. Griffin confirmed privilege remained undecided, contradicting Red Bull's counsel. Prior-use waiver still has no ruling. *Id.* 28:15–24. Leclerc Decl. ¶¶ 28–38; Essertier Decl. ¶¶ 4, 18, 27.

Later testimony, exclusion, or conditional sanctions cannot supply the missing records. Tr. 14:9–21; Essertier Decl. ¶¶ 14–15, 28; *infra* IV.C. Withholding these records blocks the comparisons needed to prove federal violations and material nonperformance. Compl. ¶¶ 13, 20–21, 79–108; Leclerc Decl. ¶¶ 59–64. Arbitration must preserve substantive federal rights. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 28, 31 (1991). Federal retention requirements reinforce materiality. Compl. ¶¶ 96(c), 128. MAA §§ 13–15 excuse no material breach.

**C. The qualified delegation clause requires a separate enforcement analysis.**

Plaintiff raises two independent objections: FAA § 3 default and material nonperformance barring MAA § 11 enforcement under FAA § 2. The Court must independently

decide entitlement to a § 3 stay. MAA § 10 adopts the FAA; § 11's "Except as required by applicable law" reservation and JAMS Rule 11(b) preserve that judicial role.

The Court should decide whether ongoing fraudulent material nonperformance bars enforcement: § 11 does not expressly delegate waiver or default. *Pre-Paid Legal* distinguishes judicial § 3 default from arbitral procedure. 786 F.3d at 1295–99. *Al-Nahhas v. 777 Partners LLC*, No. 23-2723, slip op. at 8–9 (7th Cir. Feb. 19, 2025), grounds judicial litigation waiver in § 3, citing *Halcon Int'l, Inc. v. Monsanto Austl. Ltd.*, 446 F.2d 156, 161 (7th Cir. 1971). *Huizar v. Experian Info. Sols., Inc.*, No. 4:22-cv-85, ECF 282, at 6–9 (N.D. Ind. Aug. 24, 2026), held that broad enforceability language did not delegate litigation waiver. *Short v. MV Transp., Inc.*, No. 24-CV-3019, ECF 58, at 4–7 (N.D. Ill. Dec. 16, 2025), involved an express waiver delegation. The litigation-waiver cases concern conduct in court; Plaintiff invokes their reasoning here. Continued JAMS administration does not prove performance, and denying enforcement need not revise Griffin's orders.

The separate § 11 challenge targets Red Bull's alleged deception impairing the enforceability decision. FAA § 2 preserves ordinary material-breach defenses. MAA §§ 4–5 and JAMS Rule 17(a) require reasonable discovery and reciprocal good-faith exchange for that decision. Source records and comparison history test Red Bull's completeness and possession claims. Knowingly concealing them through false accounts materially defeats the promised exchange and impairs Plaintiff's material-breach defense before the arbitrator, excusing submission to § 11. Compl. ¶¶ 82–103; Leclerc Decl. ¶¶ 43–54, 59–64. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–74 (2010), requires a specific challenge and explains how shared discovery restrictions could impair gateway adjudication. *Coinbase, Inc. v. Suski*, 602

U.S. 143, 150–51 (2024), requires judicial consideration even when that challenge also reaches the broader agreement.

Continuing in JAMS alone does not establish that Plaintiff knowingly surrendered his nonperformance defense. He sought production, reconsideration, enforcement, sanctions, subpoenas, and institutional review. Leclerc Decl. ¶¶ 27–38(b), 51–54; III.B; IV.C. *PML Dev. LLC v. Village of Hawthorn Woods*, 2023 IL 128770, ¶¶ 50–58, 226 N.E.3d 1163, requires resolving disputed election facts. *Galesburg Clinic Ass'n v. West*, 302 Ill. App. 3d 1016, 1019–20, 706 N.E.2d 1035 (1999), held performance under protest did not waive breach; *Dustman v. Advocate Aurora Health, Inc.*, 2021 IL App (4th) 210157, ¶ 39, 192 N.E.3d 47, reserves objections to further breach. Plaintiff promptly challenged September's production and October–November assurances while source and custody facts remained hidden. Later alleged breaches followed: Rudd denied Red Bull's possession of Adobe records on May 12, 2026; Cortez claimed full production May 19, prompting Plaintiff's immediate objection. Plaintiff preserved objections during ordered discussions and opposed arbitrating these torts. Leclerc Decl. ¶¶ 4–6, 43, 45, 48, 50, 52–54, 59–64.

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–86 (2002), and *Nat'l Cas. Co. v. Cont'l Ins. Co.*, No. 23-3373, slip op. 4–6 (7th Cir. Nov. 22, 2024), presumptively assign procedure to the arbitrator; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69, 71–72 (2019), enforces effective delegation. They do not resolve statutory default or the specific challenge to § 11 enforcement.

This discovery serves judicial enforcement, not supervision of JAMS. *Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869, 873–75 (7th Cir. 2011), bars interruption to revise confidentiality, evidence, or production decisions; *Blue Cross Blue Shield of Mass., Inc.*

*v. BCS Ins. Co.*, 671 F.3d 635, 638–39 (7th Cir. 2011), examines the actual relief requested. *Bernal v. Kohl's Corp.*, No. 24-2806, slip op. 8–16 (7th Cir. May 1, 2026), and *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 620–22 (7th Cir. 2024), reject § 4 procedural supervision.

Plaintiff opposes § 11 enforcement against these torts for material nonperformance. *Frazier v. X Corp.*, No. 24-1948, slip op. at 26–32 & n.10 (2d Cir. Sept. 2, 2025), rejects § 4 compulsion of JAMS procedure, leaving open whether fee refusal permits resort to court. *Burgess v. Lithia Motors, Inc.*, 196 Wash. 2d 187 (2020), slip op. 3, 6–13, rejected vacating discovery rulings or terminating ongoing arbitration based on alleged breach. *Wootten v. Fisher Invs., Inc.*, 688 F.3d 487, 493–94 (8th Cir. 2012), enforced delegation and found no waiver after continued participation, substantial document production, and employee depositions. Here, source and investigation records remain withheld.

**D. Resolve material factual disputes before enforcing arbitration.**

First require production of the source package for independent comparison with the September 2025 PDF. III.B warrants this discovery before MAA or § 11 enforcement. Leclerc Decl. ¶¶ 51–54, 59–64; Essertier Decl. ¶¶ 7–12, 20–24.

If material enforcement facts remain disputed, permit focused custodian responses and existing records identifying the PDF's source; custodians and retrieval rights at production and challenged dates; delivery, download and transfer records tracing May 2022 access; who compared which documents and source, when and with what results; any certification's source, date, personal-knowledge basis and sworn/§ 1746 status; and nonprivileged support for completeness and possession statements. Seek search, preservation or transaction-status records and information about the acknowledged investigation materials' custody, disclosure and use

only where material to those disputes. If enforcement turns on prior use, permit targeted discovery of retained IDES recordings, existing transcripts and relevant records, plus a supplemental response before ruling; otherwise preserve tort discovery. Fed. R. Civ. P. 26(d)(1), 45, 81(a)(6)(B); infra IV.A.

Apply the safeguards for FAA formation disputes: require specific evidence of genuinely disputed material facts and draw justifiable inferences for the arbitration opponent. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Wallrich*, slip op. at 12. *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 509–11 (7th Cir. 2003), required limited signature discovery; *Jackson*, 764 F.3d at 768, 770, examined whether the promised arbitration mechanism existed. On Rule 12(d) conversion, permit necessary Rule 56(d) discovery and a response. Leclerc Decl. ¶¶ 23(a)–(c), 59–64.

**E. Scope and each nonsignatory's entitlement remain separate questions.**

Section 1's broad coverage does not decide performance or § 11 enforceability. *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993), and *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1036 (7th Cir. 2012), address contractual coverage. The Court must decide whether each defendant can enforce delegation. *Kim v. Jump Trading, LLC*, No. 25-1964, slip op. 5–7 (7th Cir. Aug. 13, 2026). Section 1 names employees, contractors, and agents; Brooks as employee/contractor, Castañeda as investigator, and Ogletree as counsel must each establish a right to enforce § 11 under the contract or Illinois law. Compl. ¶¶ 33–35, 112–114, 124. A beneficiary's rights remain subject to material-breach defenses. *Olson v. Etheridge*, 177 Ill. 2d 396, 404–05, 686 N.E.2d 563 (1997). Section 4 provides a substitute forum if one is unavailable; it does not excuse a party's nonperformance.

**F. The requested tort relief is not arbitral review.**

Plaintiff seeks distinct tort relief here; employment remedies are currently pursued in JAMS. Compl. ¶¶ 3–5. His opposition to splitting proceedings, *id.* ¶ 16, does not make the claims identical. Nor does overlap with amended-demand Claims 8, 13, and 15–17. ECFs 43 at 14; 43-2 at 5, 7–8. Sections VIII–XI explain these torts, including alternative source loss. Compl. ¶¶ 69–70, 108, 111–135; *infra* VIII–XI. Shared evidence can prove termination pretext, these torts, and MAA nonperformance. The July 2024 demand preceded September 2025's source disclosures and May 2026's challenged statements. Leclerc Decl. ¶¶ 3–6, 26, 39–43, 48, 52, 65–66. ECF 56 corrects ECF 55 without deciding claim identity or arbitrability.

*Tex. Brine Co. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 487–90 (5th Cir. 2020), and *Patten v. Johnson*, 429 S.W.3d 767, 779–81 (Tex. App. 2014), rejected damages claims attacking arbitration itself. The alleged deception induced Plaintiff's July 1, 2022 email to Castañeda and later pursuit of investigation records, causing wasted work apart from any arbitral ruling. Compl. ¶¶ 111, 116, 118, 120; Leclerc Decl. ¶¶ 13, 21, 65–66; *infra* VIII.C–D. Paragraph 119's JAMS consequences do not replace Plaintiff's own injury and reliance.

Plaintiff pleads diversity and tort injury. He seeks neither confirmation nor vacatur of a partial award. *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, No. 19 C 64, ECF 35, at 4–6 (N.D. Ill. Mar. 13, 2019), and *Corinthian Colls., Inc. v. McCague*, No. 09 C 4899, ECF 21, at 4–7 (N.D. Ill. Mar. 4, 2010), dismissed premature award review without prejudice. *Zapata v. C3T, Inc.*, No. 13-CV-600-JPS, ECF 14, at 1, 5–8 (E.D. Wis. Oct. 28, 2013), dismissed a shareholder's appeal of a corporate-counsel order for standing and jurisdictional defects. *Retzios v. Epic Sys. Corp.*, 126 F.4th 1282, 1285–86 (7th Cir. 2025), rejected Title VII scope and

consideration objections; Plaintiff's defense concerns express performance promises and nonperformance.

Prayer VI.A–C seeks tort damages and a fraud declaration. VI.D seeks preservation and production of source and investigation records for these torts, or limited discovery before judicial FAA enforcement. ECF 43 at 13 & n.1; ECFs 40 at 1; 46 at 3–4. Shared evidence does not transform tort relief or judicial-enforcement discovery into arbitral review. Production objections cannot justify dismissing viable tort claims with prejudice or foreclose authorized enforcement discovery.

**G. Deny enforcement-based dismissal and preserve the proper alternatives.**

Deny arbitration-based dismissal for FAA § 2 material nonperformance, including the specific MAA § 11 challenge, and FAA § 3 default. Alternatively, permit discovery of disputed facts material to judicial enforcement before ruling. Any stay for an arbitrator's gateway decision must preserve a return to Court. Only if the Court rejects those objections and finds a gateway issue or claim referable does Plaintiff request § 3's mandatory stay, with nonreferable claims assessed separately. *Smith v. Spizzirri*, 601 U.S. 472, 475–78 (2024). Unlike Nat'l Cas., slip op. 3–4, Plaintiff expressly requests that conditional stay; he continues JAMS and is not in default. Arbitration cannot support dismissal with prejudice.

## IV. LITIGATION PRIVILEGE DOES NOT WARRANT DISMISSAL

**A. Federal conflict limits immunity against state-law claims.**

Illinois law governs the torts; federal law defeats conflicting statutory and common-law defenses. *Ferri*, 444 U.S. at 198. Here, immunity would bar actionable Illinois claims and protect concealment of evidence needed to prove federal violations. Compl. ¶ 23(e); ECFs 40 at 5–8; 43 at 16–17; 46 at 4–6. Coverage under *Bushell v. Caterpillar, Inc.*, 291 Ill. App. 3d 559, 562–63,

683 N.E.2d 1286 (1997), and *American Backflow & Fire Prevention, Inc. v. Hincks*, 2025 IL App (2d) 250023, ¶¶ 28–31, does not resolve that conflict. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), governs the prediction of Illinois law. Federal-conflict analysis also applies to exclusivity, agency and evidence-access rules. *Infra* V, IX.C, X.A.

*Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C.*, 64 F. Supp. 2d 398, 412–14 (D.N.J. 1999), applied immunity to a state unfair-competition claim after examining its actual effect on federal rights. The patent-notice letters supplied no proof of patent validity, enforceability or noninfringement, and immunity advanced federal notice rights. Here, immunity would defeat complementary tort remedies preserved by Title VII and the ADA and protect concealment of evidence needed to prove their violations.

Congress preserved compatible state liabilities under Title VII and equal or greater protection under the ADA. 42 U.S.C. §§ 2000e-7, 2000h-4, 12201(b). Detailed federal remedies alone do not displace complementary state torts. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79, 87–90 (1990). *Wyeth v. Levine*, 555 U.S. 555, 578–79 (2009), recognizes torts' complementary disclosure and compensation functions. These torts expose concealed evidence and compensate resulting harm. *EEOC v. Ill. Dep't of Emp. Sec.*, 995 F.2d 106, 107–09 (7th Cir. 1993), required an IDES hearing transcript for a Title VII investigation despite Illinois confidentiality. The same federal-conflict principle bars using § 1900 to shield the preexisting investigation records and continuing concealment detailed in IV.B–C.

*Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 576 (7th Cir. 2021), rejected IDES findings as pretext proof. Plaintiff relies on non-IDES admissions and his own knowledge of warnings and communications. Leclerc Decl. ¶¶ 10–12, 20, 23. If discoverable and authorized for use, he expects IDES records to corroborate the investigation's use and lack of prior HR or

management warnings or communications identifying any alleged misconduct. Id. ¶¶ 23(a)–(c). Section 1900 must yield as applied to this evidence of pretext and tactical use supporting complementary tort remedies. Supra III.D; infra XII.

A legitimate state purpose cannot justify withdrawing protection in a way that frustrates federal law. *Perez v. Campbell*, 402 U.S. 637, 649–52 (1971). *Nash v. Fla. Indus. Comm'n*, 389 U.S. 235, 238–40 (1967), invalidated benefits denial for filing NLRB charges. *Livadas v. Bradshaw*, 512 U.S. 107, 116–20, 130 (1994), barred withholding an independent wage remedy because a collective agreement contained arbitration. It approved *Rum Creek Coal Sales, Inc. v. Caperton*, 971 F.2d 1148, 1153–55 (4th Cir. 1992), where withheld police protection obstructed an employer's federally protected resistance to a strike. *Livadas*, 512 U.S. at 119 n.13, 130.

**B. Immunity would sustain the pleaded obstruction of federal rights.**

Plaintiff's February 23, 2022 request explained his Christian body-temple duty and his conviction that COVID-19 vaccination or ethylene-oxide-treated nasal swabs posed risks outweighing their benefits. Religious Accommodation Form Questions, answers 4–7; Leclerc Decl. ¶ 8. Health concerns do not strip a request of its religious character. *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009–10 (7th Cir. 2024). It expressly called mandatory weekly testing "discriminatory in violation of Title VII." Religious Accommodation Form Questions, answers 3, 6. Title VII protects religious accommodation and prohibits retaliation for opposing religious discrimination. 42 U.S.C. §§ 2000e(j), 2000e-2(a), 2000e-3(a).

On February 25, Red Bull promised individual review and barred in-person work during review. On March 18, it denied exemption, invoked prior tests, uniform policy, and left Plaintiff to propose an alternative. On March 25, it required Color to receive his nasal-swab test by April 1, threatening termination April 4, citing noncompliance and no alternative proposal. Plaintiff

raised alternative testing that day to keep his job. On March 30, Red Bull temporarily authorized his weekly spit-test kit and reimbursement, requiring first results April 8. Compl. ¶¶ 39–42; Leclerc Decl. ¶¶ 8(b)–(g); Ex. I at 7–10.

Slater's "neither contested" account contradicts the March 18 exemption denial and March 25 termination ultimatum. Slater Letter at 3. Red Bull's JAMS discovery answers say employees could request alternative weekly testing; Plaintiff's saliva testing "complied with its COVID-19 policy." Sept. 1, 2026 Interrog. Answers 13(a)–(b), at 11–12. The requested exemption remained denied absent any legal justification. Leclerc Decl. ¶¶ 8(a)–(g). *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68–69 (1986), requires reasonable accommodation of religious conflict; uniform policy alone cannot fulfill it. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015). Red Bull's general safety assertions neither answered that conflict nor showed substantial increased costs from exemption in its particular business. *Groff v. DeJoy*, 600 U.S. 447, 470–73 (2023). Plaintiff mostly worked remotely; Red Bull required exclusively remote participation during review. Leclerc Decl. ¶¶ 7, 8(b). Its duty preceded his proposal. Later authorization excuses neither the denial and ultimatum nor the alleged retaliatory investigation and July termination. Compl. ¶¶ 43–49, 69–70, 111; ECF 43-2 at 4, Claims 1–3.

The concealed records would test whether Red Bull retaliated. Red Bull still has not identified to Plaintiff which acts it adopted as termination grounds. Leclerc Decl. ¶ 20. The original complaints would establish when the allegations arose. Interview records, notes and contrary information would test the accusations and termination account. Brooks's summary and transmission records would show what decisionmakers knew. The verifiable Adobe copy would test whether the claimed investigation was actually commissioned, its terms, purpose and timing. Custody, delivery and comparison records would test Defendants' later claims about

authenticity, completeness and possession. Compl. ¶¶ 44, 59, 62, 69–70, 82–108; Leclerc Decl. ¶¶ 59–64; Essertier Decl. ¶¶ 15, 28. A false employer explanation plus the prima facie case can support a discrimination finding. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–49 (2000). These records would test whether the misconduct rationale concealed retaliation, addressing causation under *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Title VII § 709(c), incorporated by ADA § 107(a), authorizes employment record retention; 29 C.F.R. § 1602.14 requires preservation of covered personnel records, including accommodation and termination records, and charge-relevant records until final disposition. 42 U.S.C. §§ 2000e-8(c), 12117(a). Valid regulations carry preemptive force against conflicting state common law. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153–54 (1982). The July 28, 2022 charge followed the July 11 termination within the mandatory retention period. Compelled arbitration cannot extinguish preservation duties for this unresolved federal dispute. Compl. ¶¶ 53, 74, 96(c), 128. Section X applies those record categories, dates and duties to alternative Count III.

Title VII protects remedial access beyond the workplace against retaliation that could deter a reasonable worker. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63–64, 68–69 (2006). Concealing central evidence to defeat a worker's claims burdens that protected access. The ADA independently prohibits interference. 42 U.S.C. § 12203(b). *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017), requires protected activity and exercise of ADA rights, interference on account of that activity, and discriminatory intent. Plaintiff pursues ADA claims in JAMS; Red Bull defended them through Ogletree, which made the challenged source representations. ECF 43-2 at 4–5, Claims 4–5; Leclerc Decl. ¶ 3. Brooks allegedly coordinated that litigation and production of its evidence. Compl. ¶¶ 34, 62, 112, 124.

The alleged purpose was deprivation of central evidence. *Id.* ¶¶ 70, 117, 123–124. Ogletree's persistence in its claims about the source and completeness of production, despite specific challenges, supports an inference of knowing, discriminatory interference with Plaintiff's ADA claims. Leclerc Decl. ¶¶ 39–52.

Red Bull commissioned and ratified the scheme; Brooks coordinated the engagement, investigation and litigation; Castañeda created the transaction and presented the investigation; Ogletree supplied the disputed production and maintained its claims about completeness and possession. Compl. ¶¶ 34–35, 43–48, 52, 59, 62, 69–70, 77–108, 111–120, 124; Leclerc Decl. ¶¶ 29, 31, 39–52. Sections VIII–IX detail their acts and knowledge under Illinois's rules on agreement, knowing joinder and substantial assistance. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62–64, 645 N.E.2d 888 (1994); *Hefferman v. Bass*, 467 F.3d 596, 601–02 (7th Cir. 2006); *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27–29, 799 N.E.2d 756 (2003).

**C. Available procedural powers do not establish correction.**

*Steffes v. Stepan Co.*, 144 F.3d 1070, 1074–77 (7th Cir. 1998), rejects state litigation privilege against federal ADA and Title VII retaliation claims. It treated ordinary litigation obstruction as correctable within the proceeding and affirmed because no misrepresentation of medical restrictions or disparagement was alleged. *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 485–86 (7th Cir. 1996), rejected Title VII liability for withheld coworker assistance inseparable from the discrimination suit. See also *EEOC v. Day & Zimmermann NPS, Inc.*, No. 15-cv-1416, ECF 99, at 23–26 (D. Conn. Aug. 22, 2017) (rejecting state privilege against ADA claims). *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850–51 (9th Cir. 2004), likewise rejected state privilege against federal ADA retaliation involving an employer's allegedly retaliatory handling of investigation and personnel records.

*Scheib v. Grant*, 22 F.3d 149, 156–57 (7th Cir. 1994), upheld Illinois immunity for using recordings in litigation, noting courts could suppress evidence and discipline misconduct. JAMS authorizes discovery, lawful summons, evidence assessment, expenses and sanctions, including exclusion and adverse inferences; counsel are covered. JAMS Rules 1(e), 17, 21, 22, 24(g), 29. Those powers secured neither acknowledged records nor a prior-use waiver ruling. JAMS denied removal and clarification, declared its challenge decision final, and referred substantive issues to Griffin. Leclerc Decl. ¶ 38(a).

Red Bull identifies Castañeda's findings as its sole termination basis and admits opposing benefits on a belief in misconduct. May 16, 2025 Resp. at 4, 6; Sept. 1, 2026 Answers 10(a)–(b), at 10. Together they demonstrate continued use of its investigation rationale. Red Bull's prior tactical uses waived attorney-client and work-product protection to the extent fairness demands. Griffin left both waiver and privilege undecided. Tr. 26:7–28:24. Excluding evidence or taking later testimony cannot supply the contemporaneous accounts and Brooks's summary needed to test decisionmakers' knowledge and pretext. The certification order does not establish what was compared. Leclerc Decl. ¶¶ 45, 48, 52, 60–63; *supra* III.B.

Immunity would bar Illinois remedies for ongoing deception impairing proof of federal violations, including hiding whether and how records were retrieved and compared. Unlike *Waterloov*, these investigation and engagement records directly test Red Bull's rationale. 64 F. Supp. 2d at 412–14. On federal claims, *Shadur* rejected an evidentiary exclusion effectively immunizing participants in allegedly sham proceedings; *McClendon* required records to test termination pretext. *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1062–63 (7th Cir. 1981); *McClendon v. Ill. Dep't of Transp.*, 64 F. Supp. 3d 1163, 1168–69 (N.D. Ill. 2014). Under *Ferri*, state defenses yield to conflicting federal law. As in *Livadas* and *Rum Creek*,

withdrawing state protection would obstruct federal rights. Compl. ¶¶ 23(e), 104–108, 117–120. Neither arbitral sanctions nor eventual award vacatur decides the additional Defendants' tort liability. These claims would expose deception, remedy its harm and permit authorized correction. Prayer VI.A–D, F.

Immunity cannot bar Counts I, II and IV. Later correction cannot erase completed harm. Nor does immunity establish contractual performance or bar III.D's enforcement inquiry. See III.F (remedies); X (Count III preservation and federal conflict).

**D. Illinois scope independently requires an act-specific inquiry.**

Illinois privilege requires conduct related to proposed or pending proceedings and furthering representation. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶¶ 25, 27–31, 36 N.E.3d 999. Applying *Scarpelli*, *Loughnane v. Zukowski Rogers Flood & McArdle*, No. 19 C 86, ECF 105, at 12–14 (N.D. Ill. Sept. 6, 2019), denied dismissal because pleadings and noticed records, including a later protective order, failed to establish the litigation nexus. *Horowitz v. Animal Emerg. & Treatment Ctrs. of Chi., LLC*, No. 12 C 2561, ECF 31, at 7–8 (N.D. Ill. Aug. 20, 2012), likewise rejected immunity absent established good-faith litigation contemplation; plaintiffs need not anticipate that affirmative defense. An attorney's title and later proceedings cannot retroactively turn earlier business acts into litigation representation. ECFs 43 at 16–17; 46 at 5–6; Compl. ¶¶ 23(a)–(b), 35, 43–48, 111, 116.

*Lewis v. Kalbhen*, 2025 IL App (1st) 242110, ¶¶ 21–23, 32–35, 277 N.E.3d 922, protected an investigator serving counsel in pending divorce and contemplated dissipation litigation. But ¶ 32 requires conduct to "pertain to the litigation"; retention alone establishes no privilege. ECF 46 at 5. *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶¶ 27–31, 117 N.E.3d 238, concerned investigation and settlement of a defined dispute over

missing trust assets. *Hincks* identified formal complaints initiating certification proceedings, planned injunctions and an existing NLRB dispute. 2025 IL App (2d) 250023, ¶¶ 31, 34–36. Those connections distinguish this internal employment-decision scheme. Litigation that "could have arisen" from Plaintiff or coworkers does not establish this investigation's litigation purpose. ECF 46 at 5–6. Nor does Red Bull connect it to accommodation litigation; Slater calls the matters "Entirely separate." Slater Letter at 2–3.

ECF 46 at 6 places counsel's retention "before Red Bull had even reached an employment decision." Even Slater dates Talent's initial termination decision "on or about" July 1, the same day Castañeda interviewed Plaintiff, before July 6's retention; unanimous agreement by July 7 morning preceded the letter. Slater Letter at 3. Red Bull threatened termination and hired Castañeda. Plaintiff's later response cannot supply the May engagement's missing litigation purpose. Compl. ¶¶ 43–49; Leclerc Decl. ¶¶ 9–16, 19.

Castañeda's completed May 19 engagement predates Slater's stated trigger: the "nature and number" of complaints "on or about May 24." Slater Letter at 2; Compl. ¶¶ 44–47, 96(a). Red Bull's own log dates notes "from" Plaintiff's interview June 30—a day before the interview actually occurred on July 1. Ex. O, log at 2, entry 7; Compl. ¶ 48. These contradictions undermine Red Bull's investigation account and, with the surprise interview, lack of any management misconduct warnings and withheld records, reinforce the alleged pretext for predetermined termination. Compl. ¶¶ 35, 43–48, 59, 62, 69–70, 111, 116. Before learning the engagement chronology, Plaintiff denied the accusations but relied on the inquiry's stated origin in his invited response, cease-and-desist demand, and initial record development. That reliance delayed his chronology challenge and caused additional investigative work. *Id.* ¶¶ 118, 120; Leclerc Decl. ¶¶ 13, 16, 21, 25–28, 65–66; *infra* VIII–IX.

The early sham inquiry and knowingly false accusations of racist, slanderous and unethical conduct also support IIED. Those responsible allegedly knew severe distress was likely, and Plaintiff suffered it from the scheme's inception. Compl. ¶¶ 48, 70, 133–135; Leclerc Decl. ¶¶ 11–16, 67–68; *infra* XI. Brooks's responsibility rests on direction, approval, agreement and knowing assistance; Ogletree's later participation receives the federal-conflict analysis above. Compl. ¶¶ 34, 52, 59, 112–114, 123–124.

## V. THE IHRA DOES NOT PREEMPT THE PLEADED TORTS

Employment motive alone does not make a tort duty dependent on the IHRA. ECFs 43 at 9–10; 40 at 4; 46 at 2. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517–18, 687 N.E.2d 21 (1997), preserves torts whose elements are independent of IHRA-created duties. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602–05 (7th Cir. 2006), applies that rule to overlapping discrimination and IIED claims. *Blount v. Stroud*, 232 Ill. 2d 302, 314–15, 904 N.E.2d 1 (2009), preserved retaliatory discharge for refusing perjury in a coworker's federal discrimination case under Illinois's independent anti-perjury public policy.

Defendants invoke "inextricably linked," asserting that Counts I, II, and IV necessarily require proof of discriminatory termination pretext. ECF 43 at 9–10. But *Krocka v. City of Chicago*, 203 F.3d 507, 516–17 (7th Cir. 2000), recognizes independently actionable torts; its dismissed claim concerned comments offensive only by reference to disability. *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017), rejects factual overlap as the test. None of these claims depends on an IHRA-created duty.

Defendants' district court cases establish no categorical bar. *Ulatowski v. John Sterling Corp.*, No. 03 C 8847, § III (N.D. Ill. June 16, 2004), addressed tort claims tied to ADA rights without an independent tort basis. *Copot v. Stewart Title Guar. Co.*, No. 19 C 6987, slip op. at

14–15 (N.D. Ill. Apr. 13, 2020), preserved conspiracy alleging retaliation over non-gender-based sick-leave complaints while preempting the sex-discrimination branch.

Count I alleges false accounts about the investigation, authenticity and source access, and material omissions from affirmative representations. Those deceptions induced Plaintiff's conduct and additional investigative work. Compl. ¶¶ 111–120; Leclerc Decl. ¶¶ 65–66. Those fraud elements require no IHRA violation. Count II alleges agreement and overt acts advancing that fraud. Independently pleaded IIED supplies an additional tortious basis. Compl. ¶¶ 120–125, 133–135; *supra* IV.B; *infra* VIII–IX, XI. Count IV alleges a sham investigation and false accusations, financial pressure impairing access to counsel, and prolonged evidentiary deception. It alleges knowledge of likely severe consequences and resulting distress—including fear of financial ruin and losing Plaintiff's home. Compl. ¶¶ 133–135; Leclerc Decl. ¶¶ 67–68. Those ordinary IIED elements require no IHRA violation. *Naeem*, 444 F.3d at 604–05; *infra* XI. Alternative Count III invokes federal and engagement-based retention duties independent of the IHRA. Compl. ¶¶ 96(c), 96(e), 128; *infra X.*

An IHRA bar would extinguish independent tort remedies for concealment that obstructs proof and pursuit of Title VII and ADA claims. It would obstruct federal preservation duties and protected access to relief. Federal law independently defeats that bar. *Supra* IV.A–C.

## VI. THE COURT HAS JURISDICTION, AND PLAINTIFF HAS STANDING

The Complaint pleads complete diversity and over $75,000 in controversy, exclusive of interest and costs. Plaintiff is an Illinois citizen; Brooks and Castañeda are California citizens; Red Bull is incorporated and has its principal place of business in California; Ogletree is a South Carolina professional corporation with its principal place of business there. Compl. ¶¶ 31–36; 28 U.S.C. § 1332(a), (c)(1).

Plaintiff alleges that Defendants' deception caused lost time and resources, reputational injury, and severe continuing distress. Compl. ¶¶ 118, 120, 133–135; Leclerc Decl. ¶¶ 65, 68; Essertier Decl. ¶ 29. These concrete personal injuries satisfy the injury requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), requires injury, fair traceability, and likely redressability. Defendants attribute these injuries to Griffin's decisions instead of their own conduct. ECFs 43 at 14–15; 46 at 3–4; 40 at 4.

Griffin's discovery rulings could not cause July 2022 injuries preceding the July 14, 2024 JAMS demand. Castañeda's investigation account and Slater's response, allegedly approved by Brooks, induced Plaintiff's preparation and pursuit of records. Brooks's production directions and coordination with Ogletree, followed by Ogletree's source representations, required additional corrective work. Red Bull's repeated use of the sham account, Brooks's alleged benefits directions, and continued participation caused reputational harm and severe distress. Compl. ¶¶ 32, 34–35, 48, 52, 111–120, 124, 133–135; Leclerc Decl. ¶¶ 3, 11–16, 21, 25–28, 65–66, 68; *infra* VIII.B–D, XI.

Brooks's and Castañeda's admitted roles in the engagement support causation through their pleaded directions and acts. ECFs 43-3 ¶¶ 12–13; 43-4 ¶¶ 12–15; 43 at 15. If the source cannot be retrieved, alternative Count III attributes costs of secondary evidence to Red Bull's, Castañeda's, or Brooks's failure to preserve it. Compl. ¶¶ 127–130. Article III traceability does not require tort proximate causation. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014).

*Zapata* concerned a corporate shareholder whose requested declaration would not necessarily bind the arbitrator. ECF 14 at 5–6. Damages against the alleged tortfeasors redress

Plaintiff's completed injuries without revising an arbitral ruling. Prayer VI.A–B. A limitation on production relief does not eliminate that separately pleaded damages remedy. *Supra III.F.*

## VII. SPECIFIC JURISDICTION OVER BROOKS AND CASTAÑEDA

Specific jurisdiction requires each claim to arise out of or relate to the individual's own purposeful Illinois contacts; physical entry is unnecessary. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Without an evidentiary hearing, Plaintiff must make a prima facie showing; supported factual conflicts favor him. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392–93 (7th Cir. 2020).

### A. Castañeda directed the challenged investigation into Illinois.

Defendants' account of Castañeda's California work and Adobe transaction omits his Illinois communication. ECF 43 at 7. On July 1, 2022, he interviewed Plaintiff by video while Plaintiff was home in Chicago, was expressly told that location, presented the investigation accusations, and invited Plaintiff's response. Plaintiff emailed that response the same evening. Compl. ¶ 48; Leclerc Decl. ¶¶ 11–13, 16. Castañeda's declaration denies neither the interview nor notice of Plaintiff's location. ECF 43-4 ¶¶ 14–16.

Counts I, II, and IV challenge that contact as part of the misleading investigation, participation in the scheme, and distress-causing accusations. Compl. ¶¶ 35, 48, 111, 116, 123–124, 133. *Felland v. Clifton*, 682 F.3d 665, 675–77 (7th Cir. 2012), considers forum-directed communications integral to fraud beyond its out-of-state origin. Count III concerns preservation of the engagement source for this Illinois investigation. Castañeda created the Adobe transaction, maintained the program, and allegedly assumed retention duties. Compl. ¶¶ 35, 96(e), 127–128; ECF 43-4 ¶¶ 12–13; Leclerc Decl. ¶¶ 41, 44.

**B. Brooks's own directions support specific jurisdiction.**

Brooks executed the engagement, provided legal consultation and recommendations, and was Castañeda's primary client contact. ECFs 43-3 ¶¶ 12–13; 43-4 ¶ 15. Red Bull identified her investigation summary. Leclerc Decl. ¶¶ 29, 31. Plaintiff's counsel sent her the July 7, 2022 cease-and-desist letter enclosing the Chicago-addressed accommodation letter. *Id.* ¶ 15. These facts support her pleaded approval of Slater's neutral-investigation account, direction of the Illinois benefits challenge, retention of Ogletree, and coordination of the challenged Chicago production strategy. Compl. ¶¶ 34, 37, 52, 54–60, 112, 124.

Brooks denies knowingly communicating with an Illinois-based employee. She does not deny directing acts concerning the Illinois agency or Chicago arbitration. ECF 43-3 ¶¶ 13–15. Counts I, II and IV relate to those alleged directions; Count III separately concerns her preservation responsibility for that Illinois-directed matter. Her alleged directions supply the defendant-forum connection required by *Kraft Chemical*. They differ from the foreign foreclosure and ministerial notices in *Sheehan*. *Kraft Chem. Co. v. Salicylates & Chems. Priv. Ltd.*, 149 F. Supp. 3d 897, 902 (N.D. Ill. 2015); *Sheehan v. Breccia Unlimited Co.*, Nos. 21-2946 & 21-2954, slip op. at 17–20 (7th Cir. Sept. 7, 2022); ECF 43 at 6–7.

**C. The fiduciary shield requires an act-specific inquiry.**

A personal motive defeats the shield when it drives the challenged harm. The motive may be nonfinancial; its precise nature need not be pleaded. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912–14 (7th Cir. 1994). A disputed motive to avoid "embarrassment over his own mistakes" required a hearing. *Femal v. Square D Co.*, 388 Ill. App. 3d 134, 903 N.E.2d 32, 37–38 (2009). The shield applied when plaintiffs conceded defendants acted solely for the client. *Fletcher v. Doig*, No. 13-cv-3270, ECF 75, at 27–30 (N.D. Ill. Sept. 30, 2014). Title and ordinary pay alone

establish no personal interest. *G Six Consulting LLC v. Mullett*, No. 25-cv-2166, ECF 45, at 4–6 (N.D. Ill. Sept. 2, 2025).

Concealment allegedly shields Castañeda's engagement and investigation, and Brooks's summary and strategy, from scrutiny. That supports a personal motive for concealment. Compl. ¶¶ 34–35, 111–124. The shield does not protect Castañeda's work as an admitted partner and partial owner of the firm whose engagement and source records are challenged. ECF 43-4 ¶¶ 5, 12–13; Compl. ¶ 35; *Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, ¶ 85, 61 N.E.3d 107. Brooks's consulting role does not negate the pleaded motive to conceal her conduct. ECF 43-3 ¶ 13. The fourth request in VII.D would test her personal interest. Those interests, Illinois-directed acts and the need to prove federal violations (IV.B) defeat equitable shielding.

**D. Confined discovery should precede any adverse factual ruling.**

Those contacts and roles make a colorable showing for discovery. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reins. Co.*, 440 F.3d 870, 877–78 (7th Cir. 2006), required discovery where facts supported jurisdictional inferences a defense declaration left unresolved. Brooks's admitted role and alleged directions warrant inquiry. Plaintiff seeks nonprivileged records identifying actors, dates, recipients, directions and responsibilities in four areas: (1) who directed or approved the Illinois benefits challenge (Brooks and Red Bull's legal or benefits custodians); (2) who supplied and approved the September 2025 production and later statements about access to the source, and Brooks's preservation responsibilities for the Chicago arbitration (Brooks, Red Bull's production custodians and Ogletree's receiving custodians); (3) records of transmission, retention and responsibility connecting the source to the Illinois investigation and dispute (Castañeda and his firm's file custodian); and (4), if material to the

shield, facts and records showing a distinct personal interest in those directions or approvals. Leclerc Decl. ¶ 62 identifies the internal facts Plaintiff lacks.

Fairness favors jurisdiction. California residence and work establish no compelling burden defeating purposeful Illinois contacts. ECF 43 at 7–8. Illinois's interest in the interview and benefits proceeding, effective relief, and efficient resolution favor this forum. *Burger King*, 471 U.S. at 477–78; *Felland*, 682 F.3d at 677–78. Deny dismissal or permit specified discovery before resolving material facts adversely. Jurisdictional dismissal itself decides neither that defendant's merits nor claims against others. *Panti v. Jazzberry Digital Sols. Inc.*, No. 25-cv-01345, ECF 29 at 6 (N.D. Ill. Oct. 24, 2025).

## VIII. COUNT I ADEQUATELY PLEADS FRAUD

Defendants isolate the disputed PDF from the investigation account it sustained, treating Plaintiff's challenge as disbelief in all earlier representations. ECFs 40 at 8–10; 43 at 17–18; 46 at 6–8. Count I pleads Illinois's fraud elements: material misrepresentations, knowing or reckless falsity, intended influence, justifiable reliance, and resulting loss. Compl. ¶¶ 111–120; *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 761, 814 N.E.2d 960 (2004); *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018).

### A. The particular false accounts and half-truths are identified.

The alleged deception concerns historical facts: Castañeda's assignment, the investigation, and Defendants' accounts of the engagement and records. Compl. ¶¶ 44–48, 51–52, 82–98, 111–116. On July 1, 2022, Castañeda described investigating accusations; Slater's July 22 response invoked a neutral investigation prompted by complaints "on or about May 24." September 2025 production disclosed May 19 completion. The agreement identifies neither Plaintiff nor an assignment to investigate him. Leclerc Decl. ¶¶ 16, 18–21, 39–43. That

chronology supports pretext and prompted this separate tort action. Compl. ¶¶ 3–5, 111. The completed source's terms, subject, incorporated material, and execution history test whether a genuine investigation of Plaintiff was ever commissioned, what Castañeda was retained to do, and whether production was complete. *Supra* II, III.B.

Ogletree's routine-PDF defense ignores the pleaded misrepresentations and concealed factual basis. ECF 40 at 9; Compl. ¶¶ 113–115. Matching copies establish neither the complaint-driven assignment challenged in Paragraph 115 nor the investigation's factual foundation. Authentication requires evidence sufficient to support a finding that the item is what its proponent claims; knowledgeable testimony may suffice. Duplicates require accurate reproduction; a genuine dispute about original authenticity or unfairness can bar admission. Fed. R. Evid. 901(a), (b)(1), 1001(d)–(e), 1003. III.B identifies the contractual exchange obligation and custodians.

Affirmative half-truths require disclosure of material facts needed to prevent an assertedly complete account from misleading. *Newman*, 885 F.3d at 1004; *Vincent*, 351 Ill. App. 3d at 762. Ogletree called the production a "complete and authenticated copy" on October 1 and November 6, 2025; Cortez represented on May 19, 2026 that its "entirety," including Adobe metadata, had been produced. Leclerc Decl. ¶¶ 45, 52. Complaint ¶ 114 charges Red Bull and Ogletree with withholding qualifying source and engagement facts while making those representations. No fiduciary relationship is required, defeating the no-duty objection. ECFs 40 at 9 n.7; 43 at 18; 46 at 7. Any professional-status immunity is independently subject to IV.A–C.

**B. The allegations identify each Defendant's knowing participation.**

Red Bull commissioned and advanced Castañeda's account. Castañeda created and executed the engagement and presented that account July 1. Brooks signed as primary client

contact; according to Red Bull, she received Castañeda's findings and recommendations and prepared the summary. Brooks's roles support her alleged drafting, review or approval of Slater's response and direction or approval of production. Compl. ¶¶ 32–35, 44–48, 51–52, 62, 82, 96(a), 112; Leclerc Decl. ¶¶ 16, 18, 29, 41; ECF 43-4 ¶ 15. Castañeda's account refutes "no statement from either Individual Defendant"; Plaintiff's response supplies reliance. ECF 43 at 18; *infra* VIII.C.

Ogletree at the latest held Slater's account by March 21, 2025 via Plaintiff's production; Plaintiff's May 1 motion explained reliance. Leclerc Decl. ¶¶ 27–28. The September 9, 2025 Audit Report disclosed May 19, 2022 completion, five days before the complaints Slater identified as prompting retention. *Id.* ¶¶ 39, 41. Ogletree nevertheless gave its October 1 and November 6, 2025 completeness assurances. *Id.* ¶ 45. Rudd denied Red Bull had Adobe records May 12, 2026; Cortez attended, reaffirmed completeness May 19, and left those representations uncorrected despite Plaintiff's immediate demonstration of falsity. Compl. ¶ 94; Leclerc Decl. ¶¶ 48, 52. That sequence supports knowing or reckless concealment. Compl. ¶¶ 7–12, 94–98, 112–114.

Rule 9(b) permits general allegations of knowledge and factually grounded allegations on information and belief about inaccessible approvals. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442–43 (7th Cir. 2011). The transaction, signatures, summary, and communications provide that factual basis. Plaintiff alleges knowing, substantial assistance: Castañeda created and presented the pretext; Brooks approved its account and production; Ogletree sustained it, prolonging concealment and causing additional work and loss. Compl. ¶¶ 34–35, 48, 52, 111–118, 120. An actor need not utter every falsehood to be liable for that assistance. *Hefferman*, 467 F.3d at 601–02. *Fifth Third Mortg. Co. v. Kaufman*, 934 F.3d

585, 589 (7th Cir. 2019), found the argument waived and rejected attorney-client status as a bar to knowing-assistance liability.

**C. Plaintiff's own reliance preceded disclosure of the chronology.**

Plaintiff disputed misconduct but believed Castañeda reported actual coworker feedback: his invited July 1, 2022 email asked how to improve or salvage working relationships. Leclerc Decl. ¶¶ 13, 16, 21. Slater's later account that complaints prompted the investigation shaped his July 2024 demand and record requests. Believing an actual complaint-driven investigation produced the stated rationale, he sought its underlying records to test pretext under Title VII and the ADA. The February 2025 requests, May 1 motion and amended demand documented reliance before production. *Id.* ¶¶ 25–28; ECF 43-2 at 12, item 21. September's production first disclosed the challenged engagement chronology and terms. Plaintiff immediately disputed the PDF's authenticity, completeness, and provenance. Leclerc Decl. ¶¶ 26–28, 39–43, 66. Compl. ¶¶ 111, 118, 120.

Plaintiff reasonably relied on internal facts he could not independently verify. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 195, 538 N.E.2d 530 (1989). Later objections do not erase earlier reliance; suspicion alone does not prove disbelief of those representations. In *Allstate*, knowledge of the specific fraud remained disputed, defeating summary judgment. *Allstate Ins. Co. v. St. Anthony's Spine & Joint Inst., P.C.*, No. 06-cv-7010, ECF 209, at 35–37 (N.D. Ill. Feb. 10, 2010). A plaintiff who admitted disbelief could not rely on the agency's acceptance. *Ma v. CVS Pharmacy, Inc.*, No. 20-1500, slip op. at 4 (7th Cir. Oct. 23, 2020) (nonprecedential disposition). Rejected assertions did not induce the claimed loss in *Curet v. C&H Exterior Restorations, Inc.*, 2023 IL App (2d) 230030, ¶¶ 38–41, 239 N.E.3d 751 (after trial), and *Bachman v. Bear, Stearns & Co.*, 57 F. Supp. 2d 556, 562–64 (N.D. Ill. 1999).

Plaintiff's induced actions supply reliance; Complaint ¶ 119 describes the tribunal's separate response. Applying Pennsylvania law, *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1200–02 (3d Cir. 1989), recognized reliance evidence in litigation preparation and foregone inquiries. Counsel may convey the inducing representation. *St. Joseph Hosp. v. Corbetta Constr. Co.*, 21 Ill. App. 3d 925, 954–55, 316 N.E.2d 51 (1974). Castañeda's invitation and Slater's response to counsel allegedly induced Plaintiff's response and evidence pursuit. Compl. ¶¶ 48, 51, 115, 117–118; Leclerc Decl. ¶¶ 13, 16, 21, 25–28.

**D. The pleaded loss is a consequence of the induced course.**

Reliance caused additional work reconstructing the concealed engagement chronology, comparing it with Defendants' account, and pursuing investigation-record motions, source requests, conferences, and follow-ups. Truthful disclosure at the outset would have avoided reconstructing and repeatedly pursuing that history. Count I seeks compensation for that work, resources, and actual expenses. Compl. ¶¶ 118, 120; Prayer VI.A; Leclerc Decl. ¶¶ 25–31, 65–66; Essertier Decl. ¶ 29(a); supra VIII.C. *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 274–75 (7th Cir. 1996), recognizes "reasonable compensation for the time and effort wasted in reliance upon misrepresentations," separately compensating employee effort and legal expenses. That principle supports compensation for Plaintiff's induced work, not pro se attorney fees. *Anthony v. Fed. Sav. Bank*, No. 21 C 2509, ECF 74 at 6–11 (N.D. Ill. Mar. 30, 2022), sustained a fraud counterclaim for induced employee work and resources defending the resulting manufactured lawsuit. It excluded calls made after the truth was known but allowed defense costs caused by earlier reliance. *Chow v. Aegis Mortgage Corp.*, 185 F. Supp. 2d 914, 917–18 (N.D. Ill. 2002), involved ordinary litigation fees without underlying fraud loss.

Ogletree conflates pursuing employment claims with the extra work Defendants' alleged deception caused. ECF 40 at 10; supra VIII.A, VIII.C.

Plaintiff alleges concealment designed to exhaust his resources and indefinitely prevent proof of Title VII and ADA violations. Compl. ¶¶ 117–120, 123, 133. The verifiable Adobe package tests whether a genuine investigation was commissioned; contemporaneous records test the claimed interviews, corroboration, findings, and what decisionmakers received. Later testimony cannot supply the withheld source or replace those comparisons. Leclerc Decl. ¶¶ 29, 35, 55, 59–63. The alleged scheme caused reliance losses while continuing to obstruct vindication of federal rights. Supra II, III.B, IV.A–C.

The pleaded pecuniary loss supports consequential emotional damages. *Ewing v. 1645 W. Farragut LLC*, 90 F.4th 876 (7th Cir. 2024), slip op. at 11 (approving an emotional-distress instruction for fraud involving economic loss). *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021), concerns FDCPA standing, not Illinois fraud damages. Incurred loss does not await an arbitration award.

## IX. COUNT II ADEQUATELY PLEADS CIVIL CONSPIRACY

Count II alleges knowing agreement to create and sustain the fraudulent investigation account, tortious acts advancing it, and resulting injury. Compl. ¶¶ 122–125. Agreement and acceptance of its objective may be implicit. *Adcock*, 164 Ill. 2d at 62–64. VIII and XI identify actionable fraud, including VIII.C–D's reliance and loss, and independently pleaded IIED as tortious acts furthering the agreement.

### A. The complementary acts support a common agreement.

Paragraphs 123–124 connect the participants' complementary acts, detailed in VIII.B. Brooks arranged the inquiry; Red Bull authorized, ratified, and benefited from the scheme. Those

coordinated acts advance one alleged objective: manufacture and use a termination rationale, then conceal the evidence that would expose it. Compl. ¶¶ 111–120, 123–124. Those particulars answer the agreement objection. ECFs 40 at 12; 43 at 19; 46 at 8; *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507, 509 (7th Cir. 2007).

Coordinated use of that account and its documentary support exceeds mere knowledge, association, or parallel conduct. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133–35, 720 N.E.2d 242 (1999). *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 350, 733 N.E.2d 835 (2000), sustained conspiracy pleading where an employer and investigators allegedly manufactured criminal conduct to create discharge grounds, recognizing agreement inferred from complementary acts. *Rodgers* involved malicious prosecution; VIII and XI identify this case's independent tort predicates. Defendants cannot establish futility by withholding that comparison and declaring the contents identical. ECF 43 at 20; *supra* II, VIII.A.

**B. Ogletree's later knowing joinder supports responsibility.**

Ogletree says Castañeda's involvement ended years earlier, ignoring his alleged continuing custody and source access. ECF 40 at 11–12; Compl. ¶¶ 35, 124. A later participant may answer for earlier tortious acts if it knowingly approves them and joins the same objective. *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 174–76, 683 N.E.2d 985 (1997). *Adcock* permits implicit joinder without contact with every original participant. Paragraph 123's objective includes post-termination concealment of the genuine engagement and material evidence. Ogletree allegedly persisted despite conflicting accounts and specific challenges. That supports knowing approval of the earlier deception and agreement to continue it, beyond defense of a completed employment decision. *Supra* VIII.B; Leclerc Decl. ¶¶ 27–28,

39–45, 48, 52. Ogletree's continuation independently caused additional corrective work and aggravated distress. Compl. ¶¶ 112–120, 123–124, 133–135; *supra* VIII.C–D; *infra* XI.B–C.

**C. The agency objection does not compel dismissal.**

Defendants argue that Red Bull and its agents are one actor and cannot conspire. ECFs 40 at 11; 43 at 19; *Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 23–24, 694 N.E.2d 565 (1998). *Thornwood*, 344 Ill. App. 3d at 27–29, recognizes attorney-client conspiracy and knowing, substantial assistance claims. *W. Mich. Debt Collection, Inc. v. Weber*, No. 17 C 4308, ECF 81 at 5 & n.3 (N.D. Ill. Jan. 17, 2018), declined agency-based dismissal where attorneys allegedly designed and executed fraudulent transfers, under *Thornwood*, reserving agency for later review.

Plaintiff alleges: Castañeda created and presented the false account; Brooks approved it and production; Ogletree maintained completeness assurances despite knowing Slater's account and the contrary Audit Report chronology. *Supra* VIII.B. Under *W. Michigan*, those allegations support agreement and defeat dismissal. They exceed routine drafting on constructive knowledge rejected in *Johnson v. Filler*, 2018 IL App (2d) 170923, ¶¶ 18–24, 109 N.E.3d 370. Complaint ¶ 32's vicarious-liability allegations do not settle each actor's conduct or capacity. IV.A–C independently bars agency immunity for concealing evidence to obstruct Title VII and ADA remedies.

A knowing conspirator need not commit every predicate act. *Adcock*, 164 Ill. 2d at 64. The agency objection to conspiracy does not dispose of direct fraud, *Hefferman* knowing assistance, or Count IV's IIED. Assistance requires no conspiracy agreement. *Supra* VIII.B.

**X. COUNT III PLEADS NEGLIGENT SPOLIATION IN THE ALTERNATIVE**

If the completed Adobe package or transaction record is no longer retrievable, Count III alternatively pleads negligent loss by Red Bull, Castañeda, and/or Brooks after preservation

duties arose. Compl. ¶¶ 127–131. Rule 8(d)(2)–(3) permits both alternatives: the source was retained but concealed, or it was lost. The completed transaction and identified participants provide factual support beyond Plaintiff's nonreceipt. Compl. ¶¶ 35, 96, 127; Leclerc Decl. ¶ 64. *Kilburg v. Mohiuddin*, 2013 IL App (1st) 113408, ¶¶ 34–36, 990 N.E.2d 292, rejected dismissal where an uncertain loss period encompassed a preservation duty.

**A. The Complaint identifies duties to preserve this source.**

Illinois recognizes preservation duties from statutes, contracts, special circumstances, or affirmative undertakings when the evidence's materiality is foreseeable. *Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 195, 652 N.E.2d 267 (1995); *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶¶ 27–29, 979 N.E.2d 22. Red Bull's statutory duty arises under 29 C.F.R. § 1602.14, issued under Title VII § 709(c) and incorporated through ADA § 107(a). Compl. ¶¶ 96(c), 128; 42 U.S.C. §§ 2000e-8(c), 12117(a). *Martinez v. Abbott Labs.*, 356 F. Supp. 2d 898, 903–04 (N.D. Ill. 2005), recognized the duty but excluded an original not considered for termination. Red Bull relied on the investigation to justify termination; the engagement's completed terms and integrity records directly test that account and are relevant to the charge. Compl. ¶¶ 44, 69–70, 96.

The July 28, 2022 charge followed termination within the one-year retention period. The EEOC issued its right-to-sue notice April 23, 2024; Plaintiff demanded JAMS arbitration July 14, 2024; mandatory arbitration remains pending. Compl. ¶¶ 53, 74, 96(c); Leclerc Decl. ¶¶ 3, 5, 24, 56. The regulation's final-disposition protection should extend through mandatory arbitration, which changes the forum, not substantive federal protection. *Gilmer*, 500 U.S. at 26; *supra* IV.B. Independently, MAA §§ 4–5 and JAMS Rule 17(a), (c) promise reasonable discovery, good-faith exchange of nonprivileged materials, and supplementation. Compl. ¶¶ 71–73, 126. Those contractual promises independently require reasonable retention of existing

material source records within Red Bull's possession or control throughout arbitration, supplying a preservation duty under *Boyd*. For litigation-related matters, the produced engagement's § 8 directs Red Bull to suspend retention policies risking destruction, deletion, or alteration of potentially discoverable information. Compl. ¶ 96(e); Leclerc Decl. ¶ 44.

Castañeda allegedly took affirmative responsibility for the engagement file and Adobe transaction he created and administered. His firm's seven-year post-closure retention provisions reinforce that duty and expressly survive termination of representation. Compl. ¶¶ 35, 96(e), 128. Brooks executed and coordinated the engagement, prepared the investigation summary, and allegedly directed production. Those acts support an inference that she undertook to maintain the records she arranged for presentation. *Id.* ¶¶ 34, 62, 96, 128. Each duty extends to the preservation task actually assumed. An undertaking for one's own benefit can protect foreseeable litigants. *Jones v. O'Brien Tire & Battery Serv. Ctr., Inc.*, 374 Ill. App. 3d 918, 927–28, 871 N.E.2d 98 (2007). Those responsibilities go beyond passive possession or merely conducting an investigation. *Wofford v. Tracy*, 2015 IL App (2d) 141220, ¶¶ 57–58, 48 N.E.3d 1109.

The pending claims and source challenge made the engagement's evidentiary importance clear: its completed terms would test Red Bull's investigation-based termination account. Compl. ¶¶ 96, 108, 128; Leclerc Decl. ¶¶ 59–63. *Castillo v. Bd. of Educ. of City of Chi.*, 2018 IL App (1st) 171053, ¶¶ 27–28, 103 N.E.3d 596, found no pleaded foreseeable evidentiary significance. In Rule 37 sanctions, *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, slip op. at 16, 21–22 (N.D. Ill. Feb. 23, 2011), recognized counsel's duty to verify metadata and the importance of preserving the source. Any Illinois rule excluding § 1602.14 as a source of preservation duties must yield where Red Bull's loss of covered evidence impairs the viable federal claim. It would bar liability for loss that violated federal preservation requirements and

prevented proof of pretext. Written certification and procedural powers cannot restore the lost comparison. *Ferri*, 444 U.S. at 198; *supra* IV.A–C; *infra* X.B. Federal law removes only that exclusion; Illinois supplies the tort and remaining elements.

**B. The pleaded loss impairs proof of a viable underlying claim.**

*Boyd* requires a viable underlying action and a reasonable probability of success absent loss. The loss must prevent proof of the action; Plaintiff need not first lose it or establish the lost record's exact contents. 166 Ill. 2d at 196–98 & 196 n.2. Paragraph 126 incorporates religious-accommodation and opposition activity, the ensuing alleged pretextual investigation, and termination. Compl. ¶¶ 39–49, 69–70; *supra* IV.B. That chronology and the alleged manufactured rationale support a reasonable probability of success on the Title VII retaliation claim absent loss. Defendants controlled the completed source needed to test their account of the assignment. Its loss would foreclose independent comparison of the executed terms with the produced copy. Plaintiff needs that comparison to prove Red Bull knowingly manufactured its rationale. Surviving chronology supports retaliation but cannot restore the agreement's full contents or that direct means of proving pretext. Leclerc Decl. ¶¶ 59–60, 63.

The Audit Report records transaction events, not completed terms. Neither the disputed copy nor Defendants' accounts can restore a definitive comparison with the executed agreement; that loss impairs pretext proof beyond authentication. *Supra* II, III.B. *Martinez* concerned a failure to undermine the decisionmaker's honest reliance on a copy. Here, Plaintiff challenges how Defendants constructed the rationale itself. 356 F. Supp. 2d at 903–04. *Comein v. City of Country Club Hills*, No. 11-cv-05766, ECF 139 at 6–7 (N.D. Ill. Dec. 20, 2013), permitted spoliation allegations concerning the real termination reason. It distinguished unexplained causation in *Denton v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 02 C 2220, ECF 24 at 7–8 (N.D.

Ill. Apr. 23, 2004). Plaintiff's earlier arbitration filing does not resolve the engagement's significance, first disclosed in September 2025. Leclerc Decl. ¶¶ 39–43, 66.

*Borsellino*, 477 F.3d at 510, involved speculative additional records. *Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1088–89 (N.D. Ill. 2015), involved conclusory impairment. Plaintiff identifies the transaction, what comparison would test, how loss impairs proof, and costs of secondary evidence, distinct from concealment injury. Compl. ¶¶ 96, 126–131. Deny dismissal.

## XI. COUNT IV ADEQUATELY PLEADS IIED

Count IV alleges a sustained course of knowingly manufactured accusations, targeted financial pressure, and concealment of evidence needed to answer that account. Compl. ¶¶ 132–135. IIED requires extreme and outrageous conduct, intent to cause severe distress or knowledge of a high probability of that result, and resulting severe distress. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 269–70, 798 N.E.2d 75 (2003).

### A. The pleaded means and purpose exceed ordinary employment disputes.

Assess outrageousness cumulatively: a pattern can satisfy the standard although an individual act would not. *Feltmeier*, 207 Ill. 2d at 274–75. Power over another's interests and legitimacy of purpose inform that assessment; even a legitimate objective does not authorize outrageous means. *McGrath v. Fahey*, 126 Ill. 2d 78, 86–90, 533 N.E.2d 806 (1988). Neither known medical vulnerability nor coercion to illegal conduct is required.

March 25's Color-testing ultimatum threatened termination after legally unjustified religious exemption denial and before Plaintiff's saliva-testing proposal. Compl. ¶¶ 39–42; Leclerc Decl. ¶ 8(d)–(g); *supra* IV.B. The alleged scheme then used a predetermined investigation to manufacture a termination rationale: the engagement preceded its purported triggering complaints, and Castañeda accused Plaintiff of racist, slanderous, and unethical

conduct. Compl. ¶¶ 43–48, 70. Red Bull repeatedly invoked Slater's ostensibly neutral, corroborated account while withholding its records. *Id.* ¶¶ 51–62, 69–70. Paragraph 133 alleges Red Bull's benefits challenge (IV.C) sought to exhaust Plaintiff's resources, impair access to counsel and hinder defense of his reputation. Knowing concealment then sustained that account. Those deceptive means, coercive aims and continuing harms support outrageousness. The statutory right to contest benefits cannot shield knowing deception burdening Plaintiff's pursuit of federal relief. ECF 46 at 11; *supra* IV.A–C.

The alleged wrong is knowingly manufacturing and using an investigation for an improper purpose. *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 742 N.E.2d 858, 868–69 (2000), supplies the pertinent analogy. Its majority, over a dissent, sustained IIED allegations of a knowingly sham retaliatory investigation and expressly distinguished *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 154–55, 713 N.E.2d 679 (1999). *Curran v. JP Morgan Chase, N.A.*, 633 F. Supp. 2d 639, 643–44 (N.D. Ill. 2009), and *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 511–13 (N.D. Ill. 2012), found their pleaded workplace mistreatment insufficient. Complaint ¶ 133 adds the specific combination of investigative deception, reputational leverage, resource pressure, and continuing control of essential evidence. ECF 46 at 11 again assumes the disputed misconduct. *Supra* II.

The same particulars answer *Walker v. Bank of Am., N.A.*, No. 21-cv-03589, ECF 63 at 16–17 (N.D. Ill. Mar. 29, 2022), where the allegations lacked facts supporting coercive power and the requisite severe-distress intent or awareness. Plaintiff alleges that Defendants knowingly used employer and evidentiary control to deceive him, exhaust his resources, and impair his livelihood, reputation, and pursuit of relief. Compl. ¶¶ 32–35, 124, 133.

**B. Each Defendant's alleged acts support the required state of mind.**

The inquiry is individual. Paragraph 133 alleges awareness of likely reputational damage, resource exhaustion, impaired access to counsel and evidence, and severe distress, plausibly supported by each Defendant's acts and purposes. *Sun v. Xu*, 99 F.4th 1007 (7th Cir. 2024), slip op. at 7–13, sustained IIED liability for knowingly fabricated, publicly disseminated accusations while reversing as to a participant whose protective belief the trial record did not undermine.

Red Bull's alleged design, authorization, and repeated use of the pretextual investigation, followed by benefits pressure to disadvantage Plaintiff's pursuit of relief, support knowledge of a high probability of severe distress. Compl. ¶¶ 32, 43–48, 59–60, 70, 124, 133. Brooks signed the engagement and prepared the summary. She allegedly arranged the investigation, approved Slater's account, directed the benefits challenge, and coordinated litigation strategy and production. Those acts connect her to the account's creation and substance and support the same inference. Leclerc Decl. ¶¶ 29, 31, 41; *supra* VIII.B.

Castañeda allegedly knowingly accepted the pretextual assignment and personally accused Plaintiff of misconduct, inviting a response on matters affecting workplace relationships and reputation. Compl. ¶¶ 35, 44–48, 70, 124, 133; Leclerc Decl. ¶¶ 11–16. His presentation of fabricated accusations to justify termination supports the severe-distress inference. Final termination authority does not determine liability for his own alleged conduct. ECF 43 at 23.

Ogletree possessed the Slater account and Plaintiff's reliance explanation. It then repeatedly maintained completeness, authenticity, and source representations despite demonstrated falsity, as VIII.B and IX.B detail. That knowing obstruction kept Plaintiff confronting the narrative without evidence to test it, allegedly prolonging and aggravating his distress. Together with ¶ 133's resource-depletion and impaired-relief allegations, those acts

support awareness that prolonging Plaintiff's predicament carried a high probability of severe distress. Ogletree's metadata label ignores the alleged scheme's purpose and continuing harm. ECF 40 at 13.

**C. The pleaded consequences establish severe and continuing distress.**

Defendants isolate symptom labels and cite ¶ 136, which addresses punitive relief. ECFs 43 at 23; 46 at 11–12. Paragraphs 133 and 135 instead allege years of severe distress, reputational harm, resource depletion, impaired access to counsel, and fear of financial ruin and losing Plaintiff's home. Under *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 24–25, 607 N.E.2d 201 (1992), sufficiently extreme alleged circumstances support the severe-distress allegation without evidentiary measurement at pleading. *Feltmeier*, 207 Ill. 2d at 276–77, likewise considers intensity and duration.

After termination, Plaintiff endured about a year's unemployment without health insurance, prolonged isolation and food-bank reliance; depleted resources forced him to proceed pro se and left him fearing loss of his home. Being uninsured aggravated his distress. Leclerc Decl. ¶ 67. In October 2022, Michelin's Talent Management Director and VP of Sales each said its close Red Bull partnership dissuaded hiring him. *Id.* ¶ 67(a). Accusations, financial pressure and inability to test records caused severe anxiety, humiliation and anguish. Suicidal thoughts during unemployment and isolation have, he believes, passed. Prolonged inability to obtain evidence and advance his claims aggravated continuing distress and serious career and relationship effects. *Id.* ¶ 68. Essertier independently observed distress during regular contact since July 2024 over prolonged barriers to evidence and a merits determination. Essertier Decl. ¶ 29. These accounts link continuing conduct to harm beyond termination.

*Farrar v. Bracamondes*, 332 F. Supp. 2d 1126, 1131 (N.D. Ill. 2004), found testimony of only "some emotional distress" insufficient at summary judgment; Plaintiff provides the concrete account above. Psychiatric treatment and outside corroboration are not prerequisites. *Naeem*, 444 F.3d at 606; *Sun*, slip op. at 13–14. Federal Rule 8's plausibility standard governs; *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 64, 181 N.E.3d 902, does not import heightened state pleading requirements. *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848–49 (7th Cir. 2017). Section VIII applies Rule 9(b) to the incorporated fraud.

Section IV.D independently addresses the antecedent investigation and accusations; V establishes independent Illinois duties. IIED rests on actionable conduct and its own elements. Plaintiff can suffer severe distress from Defendants' knowing use of accusations he disbelieved. A fraud-specific reliance or pecuniary-loss defect therefore cannot dispose of IIED.

## XII. DISMISSAL WITH PREJUDICE IS UNWARRANTED

Deny ECFs 39, 42, and 44. Any jurisdictional dismissal decides no merits. Rule 41(b). *Retzios* sanctions analogies establish no futility. ECFs 40 at 11 n.8, 14; 43 at 14 n.3, 23; 46 at 12; *supra* III.F.

Alternatively, grant Rule 15(a)(2) leave, without conceding deficiency, to plead the declarations' additional facts. Leclerc Decl. ¶¶ 11–16, 21, 25–31, 39–45, 59–68; Essertier Decl. ¶ 29. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–23 (7th Cir. 2015). Amendment would also detail III.C's specific § 11 enforcement challenge. Permit Rule 15(d) supplementation of post-filing conduct. Leclerc Decl. ¶¶ 53–55. Permit amendment of Complaint ¶¶ 56 and 63 for court-authorized IDES access and use under IV.A; independent proof supports the claims.

Dated: October 25, 2026

Respectfully submitted,

/s/ Charles Leclerc

Charles Leclerc

Plaintiff, Pro Se

400 W. Ontario St., #603

Chicago, IL 60654

Tel: (612) 600-4044

Email: charles_leclerc@outlook.com

## INDEX OF SUPPORTING DECLARATIONS AND EXHIBITS

Supporting declarations and exhibits cited in Plaintiff's consolidated opposition.

| Attachment | Document | Pages |
|---|---|---|
| Declaration | Declaration of Charles Leclerc | 22 |
| Declaration | Declaration of Robert Essertier | 9 |
| Exhibit A | July 22, 2022 Slater letter | 5 |
| Exhibit B | September 9, 2025 production, static agreement, and Final Audit Report | 11 |
| Exhibit C | May 16, 2025 response | 8 |
| Exhibit D | September 1, 2026 interrogatory responses: selected complete Q/A 10 and 13 | 9 |
| Exhibit E | May 12, 2026 hearing transcript and reporter certification | 50 |
| Exhibit F | Complete May 15-19, 2026 email exchange | 6 |
| Exhibit G | October 1 and November 6, 2025 responses | 9 |
| Exhibit H | Orders 16, 23, and Amended 35 | 9 |
| Exhibit I | Religious accommodation request and four employer letters | 10 |
| Exhibit J | July 1, 2022 email to Juan C. Castaneda | 2 |
| Exhibit K | July 7, 2022 cease-and-desist letter; enclosures omitted | 6 |
| Exhibit L | Signed EEOC charge; full date of birth redacted | 2 |

| Attachment | Document | Pages |
|---|---|---|
| Exhibit M | Adobe Acrobat Sign documentation | 13 |
| Exhibit N | JAMS Employment Arbitration Minimum Standards | 7 |
| Exhibit O | January 16, 2026 privilege log; complete log, signature, and service certificate | 5 |

Exhibit page counts include one identifying cover each.