FILED
10/25/2026
THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT
BC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHARLES LECLERC,
Plaintiff,

v.

RED BULL NORTH AMERICA, INC.;
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.;
KIM BROOKS, individually; and
JUAN C. CASTANEDA, individually,
Defendants.

Case No. 1:26-cv-07715

Case No: 1:26-CV-07715

Judge Sharon Johnson Coleman

# EXHIBIT C

## May 16, 2025 Response

Complete main response and certificate of service; its Exhibits A and B omitted.

### Included materials

May 16 response, source PDF pp. 1-7

Source pagination is preserved. Any references to source PDF pages identify physical page positions in the original file.

**JAMS**

| | |
|---|---|
| CHARLES LECLERC,<br><br>Claimant,<br><br>v.<br><br>RED BULL NORTH AMERICA, INC.<br><br>Respondent. | JAMS Ref. No. 5340001145<br><br>Arbitrator: Hon. Judge John C. Griffin (Ret.) |

**RESPONDENT'S RESPONSE TO CLAIMANT'S MOTION TO COMPEL PRODUCTION OF INVESTIGATION REPORT AND REQUEST FOR ADVERSE FINDINGS**

Respondent, RED BULL NORTH AMERICA, INC. ("Respondent" or "Red Bull"), by its attorneys Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby submits this Response to Claimant's Motion to Compel Production of Investigation Report and Request for Adverse Findings:

## I. BACKGROUND

As way of background, on February 7, 2025, Claimant issued his revised discovery to Respondent, including Claimant's First Request for Production of Documents. (**Exhibit A**). Claimant's Request No. 4 specifically requested, "all documents and communications" related to the investigation involving Claimant, including but not limited to "a complete copy of the investigation report." *Id.*, at 3-4. On March 28, 2025, Respondent submitted its Answers and Responses to Claimant's discovery. (**Exhibit B**). Respondent objected to Response No. 4 in its entirety, as vague and ambiguous, overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and as seeking "documents protected by the attorney-client privilege, the attorney-work product doctrine, or both." *Id.*, at 6. On April 28, 2025, the Parties engaged in a discovery conference with the Arbitrator, during which Claimant raised issue with Respondent's

Response to Request No. 4. Specifically, Claimant asserted that he believed an investigation report existed and that it was not privileged. In response, the Arbitrator informed the Parties that if there was a question as to the privilege of a document, he would hear the parties' arguments. Claimant subsequently filed this Motion to Compel Production of Investigation Report and Request for Adverse Findings ("Claimant's Motion") on May 1, 2025.

## II. ARGUMENT

### A. No Written Investigation Report Exists.

Claimant's Motion should be denied because he is seeking a document that does not exist. In the Spring of 2022, Respondent retained Attorney Juan C. Castaneda, Esq. ("Castaneda") from Castaneda & Heidelman LLP, to conduct an investigation into allegations of misconduct by Claimant and provide legal counsel related to his findings. As part of his investigation, Castaneda interviewed seven (7) witnesses, including Claimant, and prepared notes of his thoughts and mental impressions from each of those interviews. At the conclusion of his investigation, Castaneda provided Kim Brooks ("Brooks"), Senior Legal Counsel, Litigation & Employment, and Stephanie Carter ("Carter"), Talent Business Partner, with a verbal report of his findings and recommendations. Brooks prepared a summary of her thoughts and impressions from this confidential conversation with Castaneda. However, Castaneda did not prepare a formal written report containing his findings and recommendations.

In Claimant's Motion, he asserts that an investigation report must exist, based on the Illinois Department of Employment Security's ("IDES") findings in his unemployment claim. Claimant points to the IDES Administrative Law Judge's ("ALJ") Decision, which states, "The third party prepared ***some form of report*** based on its investigation, which was then converted into ***some form of summary*** which was placed in the employer's business records and relied upon by

the employer's witness at the hearing." (Claimant's Motion at 59). Notably though, the ALJ's Decision did not state that Respondent submitted any documents in support of its decision to the IDES. The ALJ's comment regarding a "summary" which was placed in Respondent's "business records" likely refers to Brooks's notes from Castaneda's verbal report, which are subject to the attorney work product doctrine and the attorney-client privilege, as further discussed below. Respondent contends that Castaneda issued a report on his findings and recommendations, but the report was strictly verbal. Nowhere in his Decision did the ALJ state that Respondent relied on a ***written*** report.

**B. Castaneda's Interview Notes and Brooks' Notes are Subject to the Work Product Doctrine and Attorney-Client Privilege.**

As acknowledged, Respondent retained outside counsel to investigate the allegations against Claimant and to provide legal services in connection with his findings. *In re Allen*, 106 F.3d 582, 604 (4th Cir. 1997) (holding clients often retain lawyers to perform investigative work because they want the benefit of a lawyer's expertise and judgment, and if a client retains an attorney to use her legal expertise to conduct an investigation, that lawyer is performing legal work). As part of his investigation, Castaneda interviewed seven (7) witnesses, including Claimant. During his interviews, Castaneda took notes of his thoughts and mental impressions of each witness. Those notes are protected from disclosure by the attorney work product doctrine. The work product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case. *See* FED.R.CIV. P. 26(b)(3); *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). The work product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding

investigation of their more diligent counterparts. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, 492 (1947). *See also Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir.1970) ("Where an attorney personally prepares a memorandum of an interview of a witness with an eye toward litigation[,] such memorandum qualifies as work product even though the lawyer functioned primarily as an investigator."). *See also Upjohn Co. v. United States*, 449 U.S. at 398–99, 101 S.Ct. 677 ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes...."). At the conclusion of his investigation, Castaneda relayed his findings and recommendations to Brooks and Carter in a private setting. As in-house legal counsel, Brooks then prepared a summary of her personal thoughts and impressions of Castaneda's verbal report, which are also protected by the attorney work product doctrine and the attorney-client privilege. The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice. *See Upjohn Co. v. United States,* 449 U.S. 383, 394–99, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).

Claimant asserts that Respondent "affirmatively invoked the investigation's 'findings' in a legal context," during the IDES hearing and in response to his attorney's cease-and-desist letter, thereby waiving the attorney-client privilege by use. (Claimant's Motion, at 2). Although Castaneda's investigation found that Claimant engaged in conduct that was violative of Respondent's policies, and that was the basis for Respondent's decision to terminate Claimant, Claimant has not presented any evidence to show that Respondent affirmatively disclosed the specifics of Castaneda's witness interview notes or Brooks's notes of Castaneda's verbal summary

to her. As such, Respondent has not waived the privilege of the documents, and they are still subject to the work product doctrine and attorney-client privilege.

Claimant's Motion also cites to *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) to show that a party waives privilege when putting a privileged matter "at issue." However, in *Bilzerian*, the defendant's conversation with his attorney (including whether he understood the law), was ***directly*** at issue, as Defendant needed to prove that he did not have the ***intent*** to violate the law. That is not the case here. Brooks's personal thoughts and impressions from her conversation with Castaneda are not at issue. What is at issue is whether Claimant engaged in misconduct, which will unequivocally be shown at the arbitration hearing through the various witnesses identified in Respondent's Answers to Claimant's First Set of Interrogatories. *Upjohn*, 449 U.S. 396, 101 S.Ct.677 (holding that federal investigators could not force disclosure of the notes and other documents made by the in-house counsel to discover what the employees had said but instead must interview the employees themselves).

In his Motion, Claimant also cites to *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116 (N.D. Ga. 2007), which he states holds that the use of an investigation to justify an employment decision waives privilege. *Id*. In fact, though, the question at issue in *Gibson* pertains to the discovery of vehicle design and malfunction. *Gibson* makes no mention of employment decisions or privilege, and it is in no way relevant to the issue before us.

### C. No Adverse Inference is Warranted and Red Bull Maintains its Termination Rationale.

In his Motion, Claimant requests that if Respondent does not disclose an investigation report or its investigative materials, the Arbitrator should issue an adverse inference that the contents of the investigation are unfavorable to Respondent and support Claimant's assertions that the investigation was pretextual. (Claimant's Motion, at 3). Claimant's request is baseless and

overreaching. If the Arbitrator agrees that Respondent's investigative materials are privileged, it is because sound law recognizes that they are exempt from disclosure. Nowhere does the law dictate that if a party chooses to withhold privileged documents, it subsequently means that disclosure of those documents would be unfavorable to the party withholding.

Finally, in his Motion, Claimant raises the doctrine of judicial estoppel, and requests that Respondent be estopped from asserting a different rationale for its decision to terminate him. Respondent maintains that its decision to terminate Claimant was solely based on its findings that he engaged in misconduct.

## III. CONCLUSION

Claimant's Motion should be denied because no investigation report exists. Further, all other documents related to the investigation into Claimant's conduct are protected by the attorney work product doctrine and the attorney-client privilege.

Dated: May 16, 2025

Respectfully Submitted,

By: /s/ Jeffrey L. Rudd
One of the Attorneys for Respondent

Jeffrey L. Rudd (ARDC No. 6273373)
Amy R. Cortez (ARDC No. 6335725)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone: 312.558.1220
*jeffrey.rudd@ogletreedeakins.com*
*amy.cortez@ogletreedeakins.com*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on May 16, 2025, the foregoing ***Respondent's Response to Claimant's Motion to Compel Production of Investigation Report and Request for Adverse Inference*** was served electronically via JAMS Access upon Claimant and Claimant's Representative.

/s/ Jeffrey L. Rudd
One of the Attorneys for Respondent
**RED BULL NORTH AMERICA, INC.**