FILED
10/25/2026
THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT
BC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHARLES LECLERC,
Plaintiff,

v.

RED BULL NORTH AMERICA, INC.;
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.;
KIM BROOKS, individually; and
JUAN C. CASTANEDA, individually,
Defendants.

Case No. 1:26-cv-07715

Case No: 1:26-CV-07715

Judge Sharon Johnson Coleman

# EXHIBIT D

## September 1, 2026 Interrogatory Responses - Selected Pages

Identification and general objections; complete Questions and Answers 10 and 13; signature and service pages. Original intervening pages omitted.

### Included materials

Original pp. 1-2, 9-12, 15; final service page (source PDF p. 16)

Source pagination is preserved. Any references to source PDF pages identify physical page positions in the original file.

**JAMS ARBITRATION**

| | |
|---|---|
| CHARLES LECLERC,<br><br>Claimant,<br><br>v.<br><br>RED BULL NORTH AMERICA, INC.<br><br>Respondent. | JAMS Ref. No. 5340001145<br><br>Arbitrator: Hon. Judge John C. Griffin (Ret.) |

**RESPONDENT'S FIRST AMENDED SUPPLEMENTAL ANSWERS TO CLAIMANT'S FIRST SET OF INTERROGATORIES TO RESPONDENT**

Respondent, RED BULL NORTH AMERICA, INC. ("Red Bull" or "RBNA" or "Respondent"), by its undersigned attorneys, hereby propounds its First Amended Supplemental Answers to Claimant, CHARLES LECLERC's ("Leclerc" or "Claimant"), First Set of Interrogatories, as follows:

***GENERAL OBJECTIONS***

A. Respondent objects to the interrogatories to the extent they purport to impose requirements exceeding those set forth by the JAMS Employment Arbitration Rules & Procedures.

B. Respondent objects to the interrogatories to the extent that they seek production or information protected from disclosure by attorney-client privilege, the attorney work-product doctrine, and/or under any other JAMS Employment Arbitration Rules & Procedures. Respondent will not produce such privileged information, and any inadvertent production thereof shall not be deemed a waiver of any privilege, immunity, prohibition or limitation with respect to such information, documents, or any work-product doctrine that may attach thereto. Nothing contained in these objections is intended as, or shall in any way be deemed, a waiver of any attorney-client privilege, attorney work-product doctrine, or any other applicable privilege, immunity, prohibition or limitation.

C. Respondent objects to the interrogatories to the extent that they seek information that is equally available to Claimant.

D. Respondent objects to the interrogatories to the extent they seek confidential, private, financial, commercial, competitive, or proprietary company information, information that may qualify for trade-secret protection, and/or information the disclosure of which could be harmful to Respondent or its current and/or former employees.

E. Respondent objects to the interrogatories to the extent that they are vague, ambiguous and/or unintelligible, requiring Respondent to speculate as to what information is being requested.

F. Respondent objects to the interrogatories to the extent they seek information that is not in its custody or control or attempt to extend the definition of "custody and control" beyond that required by law.

G. Respondent objects to the interrogatories in their entirety to the extent that they are unduly burdensome and oppressive, voluminous, irrelevant, overlapping, repetitious, and redundant.

H. Respondent objects to the interrogatories to the extent they are overly broad as to time and scope and, thus, are unduly burdensome, oppressive, and harassing.

I. Respondent objects to the interrogatories to the extent they call for information and/or documentation not relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

J. By providing these answers, Respondent does not admit that such information is relevant or admissible in this or any other action. Respondent reserves all of its relevancy and admissibility objections at any hearing, trial, or other proceeding. Respondent also reserves the right to object to further inquiry into any subject matter.

K. Respondent will respond to these interrogatories based on its present knowledge, information, and belief. Respondent's answers are at all times subject to such additional or different information that discovery or further investigation may disclose. Respondent reserves the right to supplement or amend these objections, upon, among other things, discovery of additional facts and materials and other developments or proceedings in this matter. Respondent reserves the right to make use of, or introduce at any hearing or at trial, materials responsive to these interrogatories discovered subsequent to the date of the initial answer to these interrogatories.

L. Each of the foregoing General Objections shall be deemed incorporated into each and every answer to these interrogatories as if repeated in the text of the response. No specific answer hereafter is to be construed as a waiver of any of the foregoing General Objections.

## INTERROGATORIES

**Depositions/Witnesses**

1. Identify all individuals you intend to depose or call as witnesses in this matter, including fact witnesses and expert witnesses. For each individual, provide their full name, job title, employer (if applicable), role within Red Bull North America, Inc. (if applicable), and a summary of their expected testimony. If any expert witnesses are identified, also provide their credentials and a brief description of the subject matter on which they are expected to testify.

**ANSWER:** Without waiving the General Objections, Respondent states as follows:

(d) Respondent refers Claimant to its production of documents, which contains RBNA's COVID-19 policies, including compliance requirements and consequences.

**Financial and Investment Pressures**

9. Describe in detail the extent to which financial institutions, investors, or ESG-related considerations influenced Red Bull North America, Inc.'s decision to implement a Covid-19 vaccine or testing policy. Your response should include:

a. The identity of any investors, lenders, or financial institutions that expressed expectations or requirements regarding ESG compliance or health and safety measures, along with any relevant agreements or communications.
b. Whether Red Bull or its foreign parent company considered investor, lender, or financial pressures when implementing the mandate, including any discussions where ESG performance was tied to financing terms or capital access.
c. Any financial incentives, such as favorable loan terms, reduced interest rates, enhanced credit ratings, or ESG-focused investment opportunities, that were contingent upon adopting a Covid-19 policy.
d. Any negative financial consequences, such as increased borrowing costs, restricted capital access, divestment threats, or reputational risks, that influenced the decision to implement or maintain the mandate.
e. Whether the mandate was part of a broader ESG strategy aimed at satisfying investor, lender, or financial partner expectations, including steps taken to improve ESG ratings or attract socially responsible investment.
f. The extent to which legal risks, stakeholder expectations, or brand reputation considerations played a role in Red Bull's decision to implement, enforce, or later modify its Covid-19 policy.

**ANSWER:** Respondent objects to this Interrogatory as overly broad, conclusory in nature, oppressive, harassing, and argumentative. Respondent further objects to Interrogatory No. 9 to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or both. Subject to and without waiving these objections or the General Objections, Respondent states that financial institutions, investors, or ESG-related considerations did not influence RBNA's decision to implement a Covid-19 vaccine or testing policy.

**Malicious Prosecution**

10. Describe Red Bull North America, Inc.'s actions and decision-making regarding post-employment benefits for Charles Leclerc, including:

a. Whether Red Bull took any action related to benefits after his separation and, if not, the reasons no further action was pursued.
b. Whether Red Bull alleged misconduct as a basis for preventing post-employment benefits and the internal rationale supporting this allegation.

c. Any internal discussions on whether to continue or discontinue further action regarding post-employment benefits, including decisions made and reasons identified.

**ANSWER:** Respondent objects to this Interrogatory as vague, ambiguous, and overly broad. Respondent further objects to Interrogatory No. 10 to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or both. Without waiving these objections or the General Objections, Respondent answers in part that:

(a) Respondent opposed Claimant's application for unemployment benefits;

(b) Respondent opposed Claimant's application for unemployment on the belief that Claimant engaged in misconduct.

**Unauthorized Practice of Medicine**

11. Describe Red Bull North America, Inc.'s qualifications and authority in implementing its health mandate, including:

a. Whether any individuals at Red Bull had specialized training, required licensure, or an understanding of the risks the mandate posed to employees.
b. Whether Red Bull possessed the proper licensure and legal authority to impose the health mandate on its workforce.

**ANSWER:** Respondent objects to the phrase "health mandate" as vague and ambiguous, as Respondent never had a "health mandate." Assuming "health mandate" refers to Red Bull's COVID-19 policies and updates, Respondent further objects to this Interrogatory as overly broad, conclusory in nature, oppressive, harassing, and argumentative. Subject to and without waiving these objections and the General Objections, Respondent answers in part that

(a) No specialized training or licensure was required to develop and implement a COVID-19 policy; and

(b) As an employer, RBNA was authorized to implement health and safety protocols.

**Deceptive Medical Practices**

12. Describe the legal basis, sources, and employee disclosures related to Red Bull North America, Inc.'s health mandate, including: Red Bull North America, Inc.'s qualifications and authority in implementing its health mandate, including:

a. Any federal, state, or local laws that required Red Bull to implement a health mandate.
b. The sources Red Bull relied upon to assess the efficacy and safety of the mandated inoculations and tests.
c. The medical or scientific evidence Red Bull North America, Inc. relied upon to

justify requiring testing only for uninoculated employees while exempting inoculated
employees from the same requirement?

d. Whether employees were informed of potential health risks associated with participation in the health mandate, including experimental drugs (inoculations), testing swabs, and masks, and how this information was communicated.
e. Whether Red Bull informed employees that the mandated inoculations and tests were authorized only under emergency use, requiring informed consent, and that the
inoculations were not fully licensed vaccines.
f. Whether employees were made aware that the mandated inoculations and test kits were not FDA-approved.

**ANSWER:** Respondent objects to the phrase "health mandate" as vague and ambiguous, as Respondent never had a "health mandate." Assuming "health mandate" refers to Red Bull's COVID-19 policies and updates, Respondent further objects to this Interrogatory as overly broad, unduly burdensome, voluminous, oppressive, harassing, and argumentative. Respondent further objects to Interrogatory No. 12 to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or both. Subject to and without waiving these objections or the General Objections, Respondent answers in part that it implemented directives regarding COVID-19 based on guidance from the CDC, OSHA, CrowdRx, and based on federal and local requirements.

**Coercion in Medical Practices**

13. Describe the options available to employees regarding compliance with Red Bull North America, Inc.'s health mandate, including:

a. Whether employees were permitted to opt out without the threat of termination, and if so, how Charles Leclerc could have done so.
b. Whether any FDA-approved products were offered to Charles that would satisfy the health mandate.

**ANSWER:** Respondent objects to the phrase "health mandate" as vague and ambiguous, as Respondent never had a "health mandate." Assuming "health mandate" refers to Red Bull's COVID-19 policies and updates, Respondent further objects to this Interrogatory as vague, ambiguous, overly broad, oppressive, harassing, and argumentative. Subject to and without waiving these objections or the General objections, Respondent states that:

(a) Employees were permitted to request accommodations to Respondent's COVID-19 policy, including that employees could request to submit to alternative weekly COVID-19 testing methods. Respondent considered and in some cases granted requested accommodations related to its COVID-19 policy. Respondent further states that Claimant requested as a religious accommodation an alternative weekly COVID-19 testing method, and Respondent granted this request; and

(b) Claimant requested as a religious accommodation an alternative weekly COVID-19 testing method. Specifically, Claimant requested to submit to weekly saliva-based COVID-19 testing. Respondent granted this request, which complied with its COVID-19 policy.

**Fraudulent Misrepresentation**

14. Did Red Bull North America, Inc. inform employees that the COVID-19 inoculations and tests were only authorized under Emergency Use Authorization (EUA), were not FDA-approved, and that there was no approved alternative accessible? If so, describe how and when this information was communicated. If not, explain why this information was not disclosed. Describe the evidence Red Bull North America, Inc. relied upon to justify its health mandate, including:

a. Any evidence Red Bull used to support that the mandate reduced transmission of any pathogen, and the details of that evidence.
b. Any evidence Red Bull used to support that the mandate prevented any disease, and the details of that evidence.
c. The evidence Red Bull relied upon to determine the accuracy and reliability of the test kits used in its mandate.

**ANSWER:** Respondent objects to this Interrogatory as vague, ambiguous, unduly burdensome, oppressive, harassing, argumentative, and seeking information not in its custody or control. Respondent further objects to the use of the phrase "COVID-19 inoculations" as vague and ambiguous because it is undefined. Subject to and without waiving these objections and the General Objections, Respondent states as follows:

Respondent did not provide employees with information regarding the Emergency Use Authorization or FDA-approval of COVID-19 tests and vaccines because Red Bull did not create and/or administer COVID-19 tests and vaccines. With respect to Interrogatory 14(a)-(b), Respondent states that it relied on federal, state, and local research and public health guidance in developing its COVID-19 policy.

**Privacy Violations - Intrusion Upon Seclusion**

15. Describe how Red Bull North America, Inc. managed the confidentiality of Charles Leclerc's health information related to the health mandate, including:

a. The individuals at Red Bull who had access to Charles' COVID inoculation status.
b. The individuals at Red Bull who had access to Charles' weekly testing results.
c. The specific measures taken to protect the confidentiality of inoculation and testing status from the rest of the Red Bull staff.

**ANSWER:** Respondent objects to the phrase "health mandate" as vague and ambiguous, as Respondent never had a "health mandate." Respondent further objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome to the extent it requires Respondent to search for and compile information unrelated to the claims and issues in this case. Subject to and without

**DATED:** September 1, 2026

Respectfully Submitted,

**GREENBERG TRAURIG, LLP**

*/s/ David J. Stein*

David J. Stein
Addison Schlatter
360 North Green Street, Suite 1300
Chicago, IL 60607
Tel: 312-456-1003
Fax: 312-456-8435
david.stein@gtlaw.com
Addison.schlatter@gtlaw.com

*Attorneys for Respondent*

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on September 1, 2026, the foregoing **RESPONDENT'S FIRST AMENDED SUPPLEMENTAL ANSWERS TO CLAIMANT'S FIRST SET OF INTERROGATORIES** was served on the following parties via the JAMS Electronic Filing System:

Charles Leclerc
400 W Ontario St. #603
Chicago, IL 60654
Charles_leclerc@outlook.com

*Claimant*

Robert Essetier
Vertical Power Systems
3424 Knoll Dr.
Twentynine Palms, CA 92277
essetier@verticalpowersystems.com

*Claimant's Representative*

*/s/ David J. Stein*