**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES LECLERC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:26-CV-07715 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| RED BULL NORTH AMERICA, INC.; OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.; KIM BROOKS; and JUAN CASTAÑEDA, | ) | Magistrate Judge Karyn L. Bass Ehler |
| | ) | |
| Defendants. | ) | |

**DEFENDANT OGLETREE'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**[1]

Whether written by artificial intelligence, Leclerc, or both, much of Leclerc's Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss ("Response" or "Resp.") is incomprehensible. The actual legal arguments discernable from the Response readily confirm that the Court should grant Ogletree's Motion. Leclerc either admits or does not dispute what the plain language of his Complaint showed: this lawsuit is an improper attempt to circumvent a discovery ruling in a pending arbitration. The proper way to object to an interim arbitration order is to move the arbitrator to reconsider. No law permits a dissatisfied arbitral litigant to challenge an arbitral ruling in this fashion, and Illinois law squarely prohibits suing the lawyer representing the arbitral opposing party. These glaring defects are incurable. The Court should bring a prompt end to Leclerc's detour from a dispute he is compelled to arbitrate and dismiss his three claims against Ogletree with prejudice.

---

1 The Court permitted Leclerc to file one brief that responds to the three motions to dismiss. ECF Dkt. #53. Most of his Response, however, is non-responsive, incomprehensible, or relates to the other three defendants' motions. This reply focuses on the issues that relate to Ogletree.

## **Reply Arguments**

### I. **Leclerc Cannot Rebut the Application of Illinois' Absolute Litigation Privilege.**

Leclerc ignores most of Ogletree's analysis showing that Illinois' absolute litigation privilege bars his tort claims against Ogletree.[2] He disputes neither the cases nor legal principles Ogletree cited. He also abandons the meritless argument in his Complaint that his arbitration is not a quasi-judicial proceeding. Instead, he appears to pivot to federalism, arguing, in Sections III(A)-(C), that "federal law defeats conflicting statutory and common-law defenses," Resp. at 15, because Illinois' absolute litigation privilege supposedly cannot be applied "in a way that frustrates federal law," *Id.* at 17.

Leclerc's argument is frivolous. Nothing in federal law preempts or overrides the application of Illinois' absolute litigation privilege to the Illinois torts Leclerc has pleaded. Leclerc pleads three **Illinois common law** claims: (i) fraud; (ii) conspiracy; and (iii) intentional infliction of emotional distress. No case holds that a federal court should not apply Illinois' absolute litigation privilege to claims that arise under Illinois law. Leclerc cites none.[3]

To the contrary, the absolute litigation privilege cases Leclerc cites acknowledge that, while the privilege does not bar federal law claims, Illinois's absolute litigation privilege bars state law

---

[2] In Section III(D) of the Response, Leclerc argues that the privilege does not apply because the conduct giving rise to the claims does not pertain to the arbitration. He limits his argument, however, to the other three defendants, tacitly conceding pertinence as to Ogletree. He does not and cannot identify a single act or statement of Ogletree that did not pertain to the arbitration. Of course not: Ogletree's only involvement was as Red Bull's arbitration counsel. Compl., ¶¶ 1, 9, 34, 82, 98, 112-114, 124.

[3] Leclerc cites numerous cases that have no relevance to Illinois' absolute litigation privilege. For example, his reliance on *Ferri v. Ackerman*, 444 U.S. 193 (1979), is completely misplaced. In *Ferri*, the Supreme Court held that a federal public defender does not have absolute immunity when he is sued for malpractice by a former client. *Id.* at 205. Illinois' litigation privilege does not protect an attorney from malpractice claims filed by former clients. It does, however, protect counsel from tort claims filed by the opposing party.

claims. In *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998), the Seventh Circuit recognized that Illinois' absolute litigation privilege applied to Illinois state law claims when it declined to extend the privilege to bar federal retaliation claims. And in *Scheib v. Grant*, 22 F.3d 149, 156 (7th Cir. 1994), the Seventh Circuit applied the absolute litigation privilege to claims brought under Illinois' eavesdropping statute. *See also* ECF Dkt. #40, Ogletree's Memorandum in Support of its Motion to Dismiss ("Memorandum" or "Mem.") at 5 (collecting Illinois and Northern District cases applying the litigation privilege to Illinois claims). Thus, the cases in Ogletree's Motion—and the cases noted above cited in Leclerc's Response—establish that Leclerc's claims against Ogletree are barred.[4]

Finally, the putative federal claims LeClerc argues are being frustrated are not before this Court. Rather, he contends that the application of Illinois' absolute litigation privilege in this case would frustrate his Title VII claims and ADA claims in the pending arbitration. He even argues that applying Illinois' absolute litigation privilege in this case would "extinguish" his Title VII and ADA claims by allegedly "protect[ing the] concealment of evidence." Resp. at 2. Apart from there being no support in the case law for the notion that a party bringing a federal claim in one forum has a right to sue his opposing counsel under Illinois law in another forum notwithstanding the Illinois absolute litigation privilege, Leclerc's argument admits Ogletree's point, discussed in

---

[4] Even the cases Leclerc cites applying other states' litigation privileges confirm that his claims are barred. *See Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 198 (D. Conn. 2017) ("Connecticut courts have applied the litigation privilege rule only in contexts where a plaintiff brings tort claims, including those for defamation, intentional infliction of emotional distress, and fraud."); *Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C.*, 64 F. Supp. 2d 398, 411 (D.N.J. 1999) ("It cannot be disputed that [defendant's] claim for unfair competition is a state-law claim to which state law [New Jersey's absolute litigation privilege] supplies the rule of decision.").

Section IV below, that Leclerc is doing nothing more than inviting this Court to engage in interlocutory review of discretionary discovery rulings in a pending arbitration.

In short, the absolute litigation privilege unquestionably disposes of all three claims against Ogletree. The Court therefore need not reach the remaining grounds for dismissal, but we briefly address them because they are independently dispositive.

## II. Leclerc's Claims Are Preempted by the Illinois Human Rights Act.

Leclerc argues in Section IV of his Response that the Illinois Human Rights Act ("IHRA") does not preempt his claims because they can allegedly be proven without reference to any legal duties created by the IHRA, citing *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23, 177 Ill. 2d 511, 517 (Ill. 1997). He is wrong. Each of his claims is expressly based on the alleged "scheme" to terminate him due to his request for a religious accommodation to Red Bull's COVID-19 mandate. Compl., ¶¶ 1, 4, 39-43, 111. Red Bull's alleged duties to accommodate his religious accommodation and not to retaliate against him were created by the IHRA. *See*, *e.g.*, 775 ILCS § 5/2-101(F), 775 ILCS § 5/1-102(A), 775 ILCS § 5/6-101(A). Accordingly, his argument against preemption fails.

*Smith v. Chicago School Reform Board of Trustees*, 165 F.3d 1142, 1151 (7th Cir. 1999), controls here. The court held that the IHRA preempts state-law theories that "sound primarily in racial discrimination." It stated that "if the distressing incidents reflected racial (or other) discrimination, the claim must be presented to the Illinois Human Rights Commission rather than to a court." *Id.* Leclerc's claims (fraud, conspiracy, and intentional infliction of emotional distress) unequivocally "sound in" or "reflect" religious discrimination.[5] The alleged religious discrimination is not incidental to any of his claims.

---

5 *See also Ferizovic v. Hilton Hotels Rosemont*, No. 25 C 656, 2025 WL 2962627, at *6 (N.D. Ill. Oct. 20, 2025) (intentional infliction of emotional distress claim preempted by IHRA because the factual basis of the claim (comments about use of a headscarf) is inextricably linked

*...continued on next page*

## III. Leclerc Fails to State a Claim Against Ogletree.

Independent of the dispositive legal defenses discussed above, an element-by-element analysis of each claim shows that Leclerc has failed to state a claim against Ogletree. To avoid restating all arguments in Ogletree's Motion and Memorandum, this reply focuses on the most clearly dispositive issues with respect to each claim Leclerc brought against Ogletree.

### A. Leclerc fails to state a fraud or fraudulent concealment claim (Count I).

Leclerc pleads himself out of court on the required fraud element of detrimental reliance on Ogletree's alleged fraudulent statements. Compl.*,* ¶ 85. Indeed, his whole theory of the case against Ogletree is that he challenged Ogletree's assertions from the get-go. He alleges that, after Ogletree produced the Agreement in the arbitration, he "immediately challenged the authenticity of the Purported Agreement, identifying the absence of the digital certificate" and that he "demanded authentication via direct transmission of the genuine Adobe Sign certified package from Adobe Inc." *Id.* He makes the same argument in his Response, Resp. at 33, and in his Declaration, ECF Dkt. #38, ¶ 43. These admissions of non-reliance defeat his fraud claim.

The only case in the Response that addresses detrimental reliance in the litigation context is *Averbach v. Raval Manufacturing Co.*, 879 F.2d 1196 (3d Cir. 1989). Leclerc cites this case for the proposition that Pennsylvania law "recognized reliance evidence in litigation preparation and

---

to her Title VII religion claims); *Payton v. Delta Air Lines, Inc.,* No. 23 CV 5078, 2024 WL 3201220, at *7 (N.D. Ill. June 27, 2024) (intentional infliction of emotional distress claim preempted by IHRA because it was based on racial discrimination "against her by failing to address her workplace complaints and retaliat[ing] against her by forcing her transfer back to O'Hare"); *Landing v. Titan Steel Corp.*, No. 20 C 3659, 2020 WL 11563946, at *2 (N.D. Ill. Oct. 9, 2020) ("As pleaded, Landing's IIED claim is preempted because it is a civil rights violation disguised as a tort."); *Martin v. Cook Cnty., Ill.*, No. 17 C 2330, 2018 WL 1942654, at *7 (N.D. Ill. Apr. 25, 2018) (intentional infliction of emotional distress claim preempted by the IHRA because it concerns plaintiff's "religious practices and the Probation Department's retaliation against her efforts to obtain appropriate religious accommodations").

foregone inquiries." Resp. at 34. The facts of this non-Illinois case are completely different. After losing a product liability trial and discovering that the defendant had falsely answered an interrogatory answer, the plaintiff filed a fraud claim against the defendant (not against defendant's counsel) alleging that she detrimentally relied on one of defendant's sworn interrogatory answers. *Averbach*, 879 F.2d at 1197. The plaintiff had served discovery asking the defendant to identify similar complaints, and the defendant disclosed one similar complaint when, in fact, there had been over 100 similar complaints. *Id.* at 1198-99. In reliance on that answer, the plaintiff did not seek supplemental discovery regarding similar complaints. *Id.* at 1200. Unlike the plaintiff in *Averbach*, Leclerc was not dissuaded from foregoing discovery regarding the Agreement. Indeed, the Complaint is quite clear that nothing Ogletree said or did could or did dissuade Leclerc from anything. To the contrary, he immediately contested Ogletree's assertion of its client's discovery position and (unsuccessfully) raised the issue with the arbitrator via motion. His problem is with the arbitrator, not Ogletree. Accordingly, his claim rests on the notion that he did *not* detrimentally rely on any statement of Ogletree; he promptly challenged that statement in a legal proceeding. This defect is incurable. The Court should dismiss this fraud claim with prejudice.

**B. Leclerc fails to state a conspiracy claim (Count II).**

If a lawyer can be held to have joined a "conspiracy" by defending a client in litigation, then any defense lawyer could be hauled into court as a "co-conspirator." The absolute litigation privilege already bars such chicanery, but it also fails as a matter of tort law. *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571, 182 Ill. 2d 12, 24 (Ill. 1998) ("[B]ecause the acts of an agent are considered in law to be the acts of the principal, there can be no conspiracy between a principal and an agent."); *Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 852 (N.D. Ill. 2021) ("Count 2

fails to the extent that it asserts a conspiracy between agents [ ] and their principal [ ], because that is not permitted under Illinois law.")

Further, with respect to the elements of conspiracy, Leclerc has failed to allege an actionable agreement with Red Bull separate and apart from Ogletree's agreement to represent Red Bull in the arbitration. And he has failed to allege an independent tortious act, which is also needed to state a conspiracy claim. Ogletree's statements and actions in the arbitration were not remotely tortious. *See* ECF Dkt. #40, Mem. at 8-13.

Finally, Leclerc's reliance on *Thornwood v. Jenner & Block*, 799 N.E.2d 756, 344 Ill. App. 3d 15 (1st Dist. 2003), a non-conspiracy case, is also misplaced. Resp. at 37. The plaintiff in *Thornwood* brought an aiding and abetting breach of fiduciary duty claim against his business partner's attorneys. *Thornwood*, 799 N.E.2d at 759-61, 344 Ill. App. 3d at 18-20. The attorneys had advised the plaintiff's partner in connection with the settlement of the partnership dispute. *Id.* The claims in *Thornwood* did not arise out of litigation, so they necessarily did not include a conspiracy claim like the one Leclerc filed against Ogletree, *i.e.*, a conspiracy claim against opposing counsel that (i) claims opposing counsel joined the pre-existing conspiracy that was the basis of the litigation and (ii) relies solely on opposing counsel's defense of its client as evidence of the purported conspiracy. As stated above, this type of conspiracy claim is not actionable under Illinois law. *Buckner*, 694 N.E.2d at 571, 182 Ill. 2d 12, 24; *Beaulieu*, 529 F. Supp. 3d at 852. Moreover, unlike Jenner's client in *Thornwood*, Ogletree's litigation client, Red Bull, owed no fiduciary duties to its former employee and arbitral opponent, Leclerc.

### C. Leclerc fails to state a claim for intentional infliction of emotional distress. (Count IV).

Leclerc's defense of his intentional infliction of emotional distress claim barely mentions Ogletree. He claims that Ogletree's actions in the arbitration—describing the static PDF produced

in discovery as genuine—prolonged the supposed distress caused by the other defendants. Resp. at 43. Actionable conduct, however, must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Gross v. Chapman*, 475 F. Supp. 3d 858, 863-64 (N.D. Ill. 2020). The notion that losing a discovery dispute can form the basis of an emotional distress claim is beyond frivolous.

## IV. <u>Ogletree's Motion Complies With Federal Rule of Civil Procedure 12(b)(6).</u>

Section II of the Response appears to (i) set forth Leclerc's view of the applicable legal standards, and (ii) argue that Ogletree's Motion fails to comply with those standards. He does not, however, dispute the well-established, applicable legal standard set forth in Ogletree's Memorandum at 4. Rather, he quibbles over Ogletree's characterization of this lawsuit as an "interlocutory appeal," contending that Ogletree ignores the actual "scheme" pled in his Complaint. Resp. at 3. Such semantics cannot salvage the claims he has alleged.

Leclerc's Complaint rebuts his arguments. The Complaint alleges that his claims arise directly out of Judge Griffin's discovery ruling in the arbitration. His Complaint contains extensive details regarding the arbitration, *see, e.g.*, Compl., ¶¶ 1-4, 25-27, 71-108, and he attached voluminous arbitration-related materials to his Response, *see* Resp. at 64-65 (Index of Supporting Declarations and Exhibits). Furthermore, the primary injunctive relief he seeks at Section VI(D) of his Complaint is the type of relief one might seek in an interlocutory appeal of a lower court's ruling:

> An order compelling Defendants to immediately produce the genuine Adobe Sign certified package for the Castaneda Engagement Agreement, including all metadata, digital certificates, audit trails, and the complete electronic document package.

This is the precise discovery he claims the arbitrator should have ordered Red Bull to produce. Compl., ¶¶ 91-93. More importantly, his allegations against Ogletree arise out of that ruling. *Id.*,

¶¶ 1, 9, 34, 82, 98, 112-114, 124. Ogletree's characterization of Leclerc's lawsuit as an improper interlocutory appeal is, thus, entirely fair. The bottom line is that this lawsuit seeks discovery that the arbitrator refused. Call that what you want, but no law permits this, and Leclerc cites none.

Similarly, Leclerc's attempt to distinguish the "scheme" alleged in this Complaint from the employment claims he is arbitrating against Red Bull fails. His Complaint alleges the conclusion that "[t]his lawsuit is not about Plaintiff's employment termination." *Id.*, ¶ 3. Yet his Complaint expressly and repeatedly alleges facts stating otherwise: that the "scheme" "began when Red Bull decided to terminate [his] employment and engaged Casteneda to create a pretextual justification." *Id.*, ¶ 116; *see also id.* ¶¶ 1, 4, 12, 23, 24, 43, 111, 123, 133.

Finally, Leclerc gets nowhere by attaching to his Response two lengthy declarations and voluminous exhibits, ostensibly pursuant to the limited flexibility provided by the Seventh Circuit to oppose a Rule 12(b)(6) motion with facts consistent with the allegations in the Complaint in support of plausibility. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Neither 50 pages nor 5,000 pages of additional facts create a plausible claim against Ogletree, which is alleged to have done nothing more than represent a client in an arbitration. And the declarations confirm that the dismissal should be with prejudice because their allegations establish that Leclerc cannot cure his Complaint's fatal defects through repleading.

## V. Leclerc's Material Breach Argument Is Wrong and Irrelevant to Ogletree's Motion.

Section III of the Response appears to argue that Leclerc's Mutual Arbitration Agreement ("MAA") with Red Bull is unenforceable because Red Bull materially breached it by not producing the Adobe Sign certified package of the Castañeda engagement agreement in the arbitration. Resp. at 5-15. At the outset, that does not advance his claim against Ogletree, which did not contract with Leclerc. In any event, Leclerc cites no case holding that a party is released

from its contractual obligation to arbitrate due to alleged discovery misconduct in the underlying arbitration.[6] Such a result would allow any party to bypass arbitration via mere allegations of discovery abuse by the opposing party. This is particularly true here because the MAA states that "the arbitrator shall have the authority to determine what constitutes reasonable discovery." ECF Dkt. #43-1, ¶ 5. Furthermore, the MAA expressly allocates all questions relating to arbitrability to the arbitrator:

> Except as required by applicable law, the arbitrator shall have the exclusive authority and jurisdiction to decide all issues arising out of or relating to the formation, interpretation, or application of this Agreement, including without limitation the enforceability, revocability or validity of this Agreement or any portion of it.

*Id.*, ¶ 11. The only issue that must be decided by a Court, prior to enforcing the broad delegation clause in the MAA, would have been contract formation. *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) ("But, if there is a contract, then an arbitration clause may delegate all other issues, including defenses, to the arbitrator, [citation omitted]—and Snapchat's terms include a broad delegation clause."). That should have occurred when the arbitration commenced, not when the arbitrator issued a discovery order that Leclerc dislikes. Regardless, there is no dispute that the

---

[6] In his Complaint, Leclerc argued that the claims he filed against Ogletree are "independent torts, not employment disputes subject to the MAA." Compl., ¶ 13. The scope of arbitrable claims under the MAA, however, is far broader. It covers, in relevant part:

> **all disputes, claims or controversies of any kind or nature**, including but not limited to such matters arising from, related to or in connection with Employee seeking employment with Company, Employee's employment by Company and/or the termination of Employee's employment with Company **that** either **Employee may have against Company and/or the past and present** employees, independent contractors, owners, managers, **agents**, officers, directors, board members, shareholders, assigns, benefit plans and sponsors, fiduciaries, alleged joint employers, administrators, or insurers **of Company** and/or Company's predecessor and/or successor companies….

ECF Dkt. #43-1, ¶ 1 (emphasis added to show claims against Ogletree are within scope of MAA).

MAA is a binding, enforceable contract that includes a broad delegation clause like the one discussed by the Seventh Circuit in *K.F.C.*

Accordingly, Leclerc's argument that his claims are either outside the scope of the MAA or that the MAA is not enforceable provide no basis to deny Ogletree's Motion.

**Conclusion**

For the reasons stated in Ogletree's Motion and Memorandum and in this Reply, the Court should grant Ogletree's Motion to Dismiss, enter an order dismissing all three claims Leclerc filed against it with prejudice, and award Ogletree any additional relief that the Court deems just and proper.

Dated: November 13, 2026

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: /s/ *Zachary J. Freeman*
One of Its Attorneys

Edward W. Feldman (efeldman@millershakman.com)
Zachary J. Freeman (zfreeman@millershakman.com)
James P. Mooney (jmooney@millershakman.com)
MILLER SHAKMAN LEVINE & FELDMAN LLP (# 90236)
30 W. Monroe Street, Suite 1900
Chicago, Illinois 60603
(312) 263-3700