**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES LECLERC<br>Plaintiff, | ) | |
| v. | ) | 1:26-cv-07715 |
| RED BULL NORTH AMERICA, INC.,<br>OGLETREE, DEAKINS, NASH,<br>SMOAK & STEWART, P.C.;<br>KIM BROOKS, individually; and<br>JUAN C. CASTANEDA, individually, | ) | Hon. Sharon Johnson Coleman<br><br>Magistrate Hon. Karyn L. Bass Ehler |
| Defendants. | ) | |

**DEFENDANTS KIM BROOKS AND JUAN C. CASTAÑEDA'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

The Individual Defendants submit this Reply in support of their Motion to Dismiss Plaintiff's Complaint.[1] In support, the Individual Defendants state:

## INTRODUCTION

In many respects, Plaintiff's Response to the Individual Defendants' Motion (the "Response") is difficult to comprehend. Where the Individual Defendants were able to decipher arguments, they were also able to confirm that none of these arguments can save Plaintiff's Complaint. Plaintiff points to limited connections between the Individual Defendants and Illinois, all of which turn on *Plaintiff's* contact with the State – not the Individuals Defendants'. Either way, the fiduciary shield doctrine precludes personal jurisdiction for this conduct, warranting dismissal with prejudice of the Individual Defendants.

Plaintiff also has not identified an avenue around IHRA preemption, or his improper effort to obtain interim relief in a pending Arbitration that is not going his way. Nor has Plaintiff

[1] The Individual Defendants incorporate the definitions used in their opening Motion and Memorandum. Doc. 42, 43.

demonstrated standing, precisely because his harm is only traceable to the *Arbitrator*, as opposed to the Individual Defendants (neither of whom is a party to the Arbitration). As an additional insurmountable hurdle, the absolute litigation privilege governs Plaintiff's state law claims and is applicable to every action that he associates with the Individual Defendants. Finally, none of Plaintiff's claims are well-pled. His nearly 170 pages of additional materials do not change this fact.

## ARGUMENT

### I. The Response Does Not Provide a Basis for Specific Personal Jurisdiction.[2]

#### A. There Are Insufficient Minimum Contacts between the Individual Defendants and Illinois.

Plaintiff has not identified a sufficient basis for this Court to exercise personal jurisdiction over either Individual Defendant. Plaintiff's sole basis for jurisdiction over Castañeda is that *Plaintiff* was located in Illinois while Castañeda conducted his remote interview from California. As an initial matter, by his own allegations, Plaintiff's claims against Castañeda relate to his Adobe Sign account, *see* Doc. 11 at ¶ 35, which Plaintiff does not connect to Illinois.

Even if Plaintiff's Complaint could be read to assert claims based on Castañeda's investigation conduct, Plaintiff's location is irrelevant. The specific jurisdiction inquiry focuses on the *defendant's* purposeful contact with the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). And as Castañeda noted, all of the work he performed for Red Bull was done from California. Doc. 43-4 at ¶¶ 14-16. A single remote interview, completed from California, does not demonstrate that Castañeda purposefully availed himself of the privilege of conducting activities in Illinois. *E.g.*, *Herron v. Tears of Eden*, No. 1:23-cv-01190-RLY-MJD, 2024 WL 6978156, at

---

[2] Plaintiff did not contest that this Court lacks general jurisdiction over the Individual Defendants, *see generally* Doc. 59 at 25-30—and thus has waived that argument. *Sakwa v. Hartford Life & Accident Ins. Co.*, No. 1:25-cv-04546, 2026 WL 822460, at *3 (Mar. 25, 2026) ("A failure to respond to an argument in opposition to a motion to dismiss constitutes waiver.") (citation omitted).

*12 (S.D. Ind. Mar. 20, 2024) (rejecting notion that videoconference interviews constitute sufficient minimum contacts for specific jurisdiction) (collecting cases); *see also Muckerheide v. International Ctr. for Appropriate & Sustainable Techs.*, No. 25-CV-05331, 2026 WL 892516, at *3 (N.D. Ill. Mar. 31, 2026) (dismissing case for lack of personal jurisdiction where only connection to forum was plaintiff, who worked remotely in forum for defendant employer). Given that the lone connection between Castañeda and Illinois is ultimately *Plaintiff's* location during a one-time interaction in the course of Castañeda's investigation assignment, exercising personal jurisdiction over Castañeda would not comport with due process.

Plaintiff fares no better in his argument for personal jurisdiction over Brooks. His argument boils down to where *he* felt the effects of Brooks' alleged conduct – *i.e.*, whether to produce the "static" Agreement. *See* Doc. 59 at 28. Where Plaintiff claims he was injured cannot support exercising jurisdiction over a foreign defendant who did not engage in activities in the forum state. *See* Doc. 43 at 6 (citations omitted). Plaintiff does not, and cannot, contest that Brooks' decisions were all made exclusively in California. Doc. 43-3 at ¶¶ 11-15. Brooks did not represent Red Bull in either the benefits challenge or the arbitration (she is not even licensed to practice in Illinois). And Plaintiff continues to fail to connect the execution of the Agreement to Illinois. Once again, as his own cited authority confirms, Plaintiff's location and the effects of Brooks' purported decision are insufficient. *See* Doc. 59 at 29 (citing *Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, ¶ 133 ("[T]he clear holding of *Walden* is that doing something outside the forum state that has a foreseeable effect on someone inside the forum state does not serve as a minimum contact with the forum state.")).

**B. The Fiduciary Shield Doctrine Provides Another Basis for Dismissal.**

The fiduciary shield doctrine precludes exercising personal jurisdiction over the Individual Defendants. While it is true that a personal motive can destroy the doctrine, *see* Doc. 43 at 8-9,

Plaintiff has not identified any such motive. *See* Doc. 59 at 28-29. Instead, Plaintiff vaguely suggests the Individual Defendants wanted to "conceal" their actions from scrutiny. Scrutiny from whom is unclear. Certainly, Plaintiff does not mean scrutiny from Red Bull, as he repeatedly alleges that the Individual Defendants were acting on Red Bull's behalf for the entire "scheme." *E.g.*, Doc. 11 at ¶¶ 1, 4, 6, 12, 23, 34-35, 112. In any event, this nondescript "motive" does not hold water.

The court considers only whether the individual's "'presence and activity in the state'" – as opposed to every action related to the claims – were connected to work for their principal. Doc. 43 at 8 (citation omitted). Plaintiff has not identified any personal motive that Castañeda could have had to conduct Plaintiff's investigation interview while Plaintiff was in Illinois (and Castañeda was in California). This interview is the only Illinois contact Plaintiff has attributed to Castañeda. Nor has Plaintiff presented any argument that Brooks' alleged actions in making a production decision or reviewing certain internal records are tied to any purported personal gain, particularly where those actions were taken as Red Bull's "legal point of contact." Doc. 11 at ¶¶ 34, 52. Plaintiff's own authority confirms the doctrine applies. *See* Doc. 59 at 28 (citing *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912–14 (7th Cir. 1994) (enforcing doctrine where plaintiff presented no support for conclusion that defendant "was on a frolic of his own")).[3]

Plaintiff also has not created any basis for jurisdictional discovery. His failure to plead any personal motive, or provide any subsequent support for such a motive, means discovery is unnecessary. *G Six Consulting LLC v. Mullett*, No. 2025 CV 2166, 2025 WL 2522757, at *8-9 (N.D. Ill. Sept. 2, 2025) (noting complaint requires allegations that actions were motivated by

[3] Any conclusion to the contrary would also eliminate Plaintiff's respondeat superior theory, as it would require a finding that the Individual Defendants were acting for themselves, as opposed to Red Bull. *See Rice*, 38 F.3d at 913; *see also* Doc. 11 at ¶ 32 (alleging Red Bull is "vicariously liable for the acts of its counsel and agents").

personal interest and granting motion to dismiss where conclusory and speculative motive assertions insufficient to overcome fiduciary shield doctrine) (Johnson Coleman, J.).

## II. The Response Does Not Negate Additional Threshold Issues for Dismissal.

### A. Plaintiff's Claims Are Preempted by the IHRA.

Three of Plaintiff's four causes of action are preempted by the IHRA. Though Plaintiff offers a conclusory assertion that his claims are distinct from IHRA-imposed duties, he provides no explanation capable of supporting that statement. Each of these three claims depends upon a finding that Red Bull, with the help of the other Defendants, constructed a pretextual basis for Plaintiff's termination – *i.e.*, a critical component of determining whether an IHRA civil rights violation has occurred. *See* Doc. 43 at 9-10. The Response makes no effort to separate Counts I, II and IV from Plaintiff's pretextual discrimination and retaliation theory.[4] *See* Doc. 59 at 24-25. Plaintiff cannot escape his own allegations, which confirm his claims are preempted by the IHRA.

### B. Plaintiff Cannot Use this Suit to Interfere with the Arbitration.

The Individual Defendants maintain that this lawsuit is also improper because what Plaintiff ultimately seeks is interim relief in the pending Arbitration. Doc. 43 at 10-14. Plaintiff does not dispute either that the FAA precludes courts from reviewing non-final, procedural decisions, or that there is no final award eligible for review here. *Compare* Doc. 43 at 11-12, *with* Doc. 59 at 5-15. To the contrary, he appears to acknowledge this governing principle and corresponding fact. *See* Doc. 59 at 11-12 (citing *e.g.*, *Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869, 873–75 (7th Cir. 2011) (confirming court should not interfere in pending arbitration); *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638–39 (7th Cir. 2011) (same)). Plaintiff also does not contest the rule that this Court must consider the

---

[4] Plaintiff includes Count III in his preemption analysis, Doc. 59 at 25, but the Individual Defendants never argued that his negligent spoliation claim was subject to preemption. Doc. 43 at 9-10.

relationship of his current claims to the Arbitration in order to determine whether he is attempting to circumvent his arbitration obligation – and by extension, the FAA rules applicable to that Arbitration. *Compare* Doc. 43 at 11-12, *with* Doc. 59 at 5-15.[5]

Instead, Plaintiff appears to be arguing that these principles do not matter because the Arbitrator has not ordered Red Bull to give Plaintiff the discovery he wants in the Arbitration. Under Plaintiff's theory, this discovery dispute allegedly amounts to a material breach of the MAA, so the FAA limitations no longer apply to him in the Arbitration.

As an initial matter, Plaintiff has not alleged a contract claim against Red Bull for its purported breach of the MAA. *See* Doc. 11 at ¶¶ 110-36. Nor does he seek to rescind the MAA as applied to the pending Arbitration.[6] Plaintiff cannot insist that the Arbitration continue, while simultaneously asserting that the rules governing that Arbitration no longer apply to him. He cites no authority to support his ability to circumvent federal law in this manner.

To that end, even if such a standard did exist, Plaintiff has not identified a "material breach." Plaintiff couches the alleged breach in terms of what Red Bull has not produced in discovery, *see* Doc. 59 at 5-9, 12-13, 15—*i.e.*, decisions governed *by the Arbitrator*. While the MAA does entitle Plaintiff to "reasonable discovery," it also states that the Arbitrator has the sole discretion to determine "what constitutes reasonable discovery." Doc. 43-1 at ¶ 5. Red Bull could not have "materially breached" the MAA by "withholding" documents that the Arbitrator has not ordered Red Bull to produce. Any ruling to the contrary would turn on its head the FAA's prohibition on interlocutory appeals of an arbitrator's procedural decisions. Absent this limitation, the door would remain open for any individual to void an otherwise binding arbitration agreement

---

[5] *See supra*, at n.2 (noting Plaintiff waived argument not raised in his Response brief).

[6] Ironically, after Plaintiff initially filed the instant case, Red Bull asked Plaintiff if he would like to waive arbitration and proceed on all claims before this Court. Plaintiff declined and has chosen to pursue his claims before the Arbitrator. He must accept the consequences of that decision.

based purely on decisions related to discovery disputes that the arbitrator is entitled to make.

This matter is a far cry from the cases Plaintiff cites, which involved parties who either failed to pay the arbitration fees or violated the arbitral forum's rules, resulting in the *forum* declining to administer the arbitration. *See* Doc. 59 at 6 (citing *Page v. GPB Cars 12, LLC*, No. 19-11513, 2019 WL 5258164 (D.N.J. Oct. 17, 2019); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003); *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1362–69 (11th Cir. 2023)). Here, the Arbitrator is continuing to administer the proceeding. Plaintiff's subjective disagreement with *how* the Arbitrator is doing so does not transform Red Bull's conduct into a material breach of the MAA.

At bottom, what Plaintiff ultimately wants is for this Court to interfere in the Arbitration before a final award has issued. The FAA does not permit such interference and instead requires that the Complaint be dismissed.

**C. The Response Does Not Support Standing.**

The Response also does not cure Plaintiff's lack of standing. Plaintiff ignores his own allegations about his purported harm, which is entirely based on his desire to fill a gap that he believes the Arbitrator left unaddressed or did not resolve in his favor. Doc. 11 at ¶¶ ¶¶ 1-2, 4, 8-9, 11, 20, 25-27, 29, 87-93. Harm based on unfavorable decisions in an arbitration is *not* fairly traceable to the Individual Defendants, who are neither parties to the arbitration nor have any control over the Arbitrator's decisions.

Attempting to avoid this outcome, Plaintiff asserts that the Arbitrator's discovery rulings "could not cause" injuries preceding the arbitration. Doc. 59 at 26. Here, Plaintiff gives away the game. In his Complaint, Plaintiff goes to great lengths to distinguish his injuries in this case from his injuries related to the reason for his termination. *See, e.g.*, Doc. 11 at ¶¶ 3 ("Plaintiff alleges the scheme corrupted the arbitration . . . and caused concrete injury independent of any

employment remedy."). The Response reaffirms that any pre-arbitration injury is the byproduct of the alleged pretextual discriminatory conduct – an issue that is already before the Arbitrator in connection with Plaintiff's employment claims. Any supposed pre-arbitration harm does not serve as basis for relief before this Court. *See supra*, at II.B.

**D. The Absolute Litigation Privilege Applies.**

Plaintiff's claims against the Individual Defendants are also barred by the absolute litigation privilege. Plaintiff attempts to avoid this outcome by suggesting the privilege is preempted. Plaintiff is wrong. The Individual Defendants incorporate Red Bull's Reply on this issue. *See* Red Bull Reply at I.D.1. (filed contemporaneously with this Reply).

Because the privilege is not preempted, it applies to the Individual Defendants. In the Response, Plaintiff makes no effort to identify any conduct by either Brooks or Castañeda that would not fall under the privilege. Nor could he based on his own allegations. *See* Doc. 43 at 17 (identifying conduct alleged, all of which is privileged). Plaintiff's reliance on conduct that predated his termination or his cease-and-desist letter does not change the fact that he remained a potential litigant. *See Atkinson v. Affronti*, 369 Ill. App. 3d 828, 832, 861 N.E.2d 251, 255 (Ill. App. Ct. 2006). This is only further underscored given that Plaintiff's dispute materialized only six days after Brooks retained Castañeda on Red Bull's behalf. Accordingly, the claims should be dismissed with prejudice based on the absolute litigation privilege.

**III. Plaintiff Has Not Adequately Pled Any Cause of Action.**

The Response fares no better in addressing the ill-pled allegations of the Complaint.

**A. Plaintiff Failed to Plead a Fraud Claim.**

Plaintiff continues to ignore the requirements of this claim in the Response. Nowhere does Plaintiff identify a single allegation involving a false statement by either Individual Defendant *to Plaintiff* on which Plaintiff detrimentally relied. *See* Doc. 59 at 30-35. He points to no statements

by Brooks to him. And the only "false" statement he connects to Castañeda are coworker complaints that Castañeda relayed to Plaintiff. Doc. 59 at 33. Not only did he not allege anything to this effect (*see* Doc. 11 at ¶¶ 24-29 (identifying the "fraudulent" acts)), but he also cannot claim he relied on these complaints *to his detriment*. The only action he claims to have taken in response was asking how he could improve his work relationships. Doc. 59 at 33. There is no harm in seeking advice on how to improve.

Every other alleged "detriment" he identifies is directly tied to actions he took in furtherance of his employment claims – *i.e.*, his *disbelief* in the motivation for the investigation and the basis for his termination. *See* Doc. 59 at 33-35. That is not reliance.

The Response also does not support the missing damages from Plaintiff's Complaint. Because this argument is identical amongst Defendants, the Individual Defendants incorporate this portion of Red Bull's Reply. *See* Red Bull Reply at II.A.

**B. Plaintiff Failed to Plead a Conspiracy Claim.**

Plaintiff did not meaningfully distinguish his arguments as to each Defendant. *See* Doc. 59 at 35-37. Accordingly, the Individual Defendants incorporate this portion of Red Bull's Reply. *See* Red Bull Reply at II.B.

**C. Plaintiff Failed to Plead a Negligent Spoliation Claim.**

The Response also cannot save his negligent spoliation claim. Though Plaintiff attempts to identify duties for the Individual Defendants, these "duties" are nonexistent. For Castañeda, Plaintiff references a "seven-year post-closure retention" period by Castañeda's firm. Doc. 59 at 39. But Plaintiff mistakes policy with duty. And he provides no compelling reason why a commitment to retain *client* documents results in an actionable duty to *Plaintiff* – a third party whom Castañeda never represented. In any event, Castañeda has complied with this policy: he retained the Agreement. *See* Doc. 59 at 40 (acknowledging Agreement has been produced).

Plaintiff's allegations as to Brooks's duty similarly miss the mark. *See* Doc. 59 at 39. Absent specific terms to the contrary, signing a contract does not create a duty to preserve that contract. Even if it did, Plaintiff is not a party to the Agreement, so he does not benefit from any duty it may have created. *See Dardeen v. Kuehling*, 213 Ill. 2d 329, 336-37 821 N.E.2d 227, 231-32 (2004) ("When we said . . . that a duty to preserve evidence could arise by an agreement or contract, we meant an agreement or contract *between the parties* to the spoliation claim.") (emphasis added).

Plaintiff cites to *Jones*, suggesting Brooks' duty arose as a "voluntary undertaking" because Plaintiff was the subject of the investigation. *See* Doc. 59 at 39 (citing *Jones v. O'Brien Tire & Battery Serv. Ctr., Inc*., 374 Ill. App. 3d 918, 927-28, 871 N.E.2d 98, 107-08 (2007)). But *Jones* turned on an insurance company's express instruction to its insured to preserve physical evidence. *Id.* By doing so, the insurance company had voluntarily undertaken to preserve the evidence for its own benefit if litigation were to ensue between it and its insured, which thus extended the duty to preserve to other potential litigants – including the plaintiff, who was a third party in an accident involving the vehicle that the company insured. *Id.* No such "voluntary undertaking" exists here, and Plaintiff does not allege any.

Plaintiff further fails to identify any facts regarding the Individual Defendants' spoliation of the certified Agreement, or why only the certified version (as opposed to the static version) is capable of proving his employment claims. Because these arguments are identical as to all Defendants, the Individual Defendants incorporate Red Bull's Reply on this point. *See* Red Bull Reply at II.C.

**D. Plaintiff Failed to Plead an IIED Claim.**

Plaintiff's IIED claim also does not pass muster, despite his pleas of "outrageousness" in the Reply. The Individual Defendants incorporate Red Bull's Reply on this point. *See* Red Bull

Reply at II.D.

They further note that Plaintiff still has not identified any conduct by either Brooks or Castañeda that extends beyond the bounds of their standard employment duties. *See* Doc. 43 at 23. At most, Plaintiff now asserts (without factual support) that Castañeda "accused Plaintiff of racist, slanderous, and unethical conduct." Doc. 59 at 41-42. Not only do the allegations refute this, *see* Doc. 11 at ¶¶ 43-48, 70 (noting that Castañeda only asked Plaintiff "questions" about statements from coworkers)—but even if true, insults occurring on a single occasion do not meet the high bar for IIED. *See* Doc. 43 at 22-23.

## IV. The Response Provides No Basis for Amendment.

Any dismissal should be with prejudice. Plaintiff suggests he can cure the myriad defects through his thirty pages of declaration assertions and fifteen exhibits, totaling approximately 170 pages. *See* Doc. 59 at 45-46. But even if this Court were to consider these materials (which Plaintiff presents largely without explaining their importance), they do not move the needle. Any amendment to reflect these facts would be futile, as they do not change the crux of Plaintiff's requested relief – interference with a pending Arbitration and pursuit of claims that are primarily preempted by the IHRA. *See Panjwani v. Holder*, No. 10-C-4961, 2011 WL 2470445, at *2-3 (N.D. Ill. Jun. 20, 2011) (denying amendment based on futility). They also do not alter the jurisdictional analysis, as noted above. Accordingly, any dismissal should be with prejudice. Such a dismissal would not preclude Plaintiff from challenging any eventual *final* award under the appropriate procedures set forth by the FAA.

WHEREFORE, Defendants Kim Brooks and Juan Castañeda respectfully request this Court grant their Motion to Dismiss, dismiss the Complaint with prejudice, and grant any other relief this Court deems equitable and proper.

Dated: November 13, 2026

Respectfully submitted,

**KIM BROOKS AND JUAN C. CASTAÑEDA**

By: _/s/ David J. Stein_

David J. Stein (6307086)
Kara E. Angeletti (6329388)
Addison Schlatter (6348632)
GREENBERG TRAURIG, LLP
360 North Green, Suite 1300
Chicago, Illinois 60607
T: (312) 456-1003
F: (312) 456-8435
David.Stein@gtlaw.com
Angelettik@gtlaw.com
Addison.Schlatter@gtlaw.com

*Attorneys for Defendants Kim Brooks & Juan C. Castañeda*

## CERTIFICATE OF SERVICE

I, David J. Stein, hereby certify that on November 13, 2026, a true and correct copy of **DEFENDANTS KIM BROOKS AND JUAN C. CASTAÑEDA'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** was served electronically on all counsel through the Court's ECF system. record.

*/s/ David J. Stein*