**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES LECLERC<br>Plaintiff, | ) | |
| v. | ) | 1:26-cv-07715 |
| RED BULL NORTH AMERICA, INC.,<br>OGLETREE, DEAKINS, NASH,<br>SMOAK & STEWART, P.C.;<br>KIM BROOKS, individually; and<br>JUAN C. CASTANEDA, individually, | ) | Hon. Sharon Johnson Coleman<br><br>Magistrate Hon. Karyn L. Bass Ehler |
| Defendants. | ) | |

**DEFENDANT RED BULL NORTH AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Red Bull North America, Inc. ("Red Bull"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), submits this Reply in support of its Motion to Dismiss Plaintiff Charles Leclerc's ("Plaintiff") Complaint (the "Complaint"). In support, Red Bull states:

## INTRODUCTION

Plaintiff's Response only further entrenches his state law claims in his federal law employment claims currently pending in Arbitration. Whether because his claims give rise to IHRA preemption or encroach on the province of the Arbitrator in violation of the FAA, the facts alleged cannot support any cause of action. Notwithstanding, Plaintiff's allegations fall squarely within Illinois's absolute litigation privilege. Plaintiff also lacks standing to bring his claims. And even if he could overcome *all* of these threshold hurdles, he has not adequately pled facts that establish any of his four causes of action. Because Plaintiff should not be permitted to relitigate his termination before this Court, the Complaint should be dismissed with prejudice.

# ARGUMENT

## I. The Response Does Not Negate Additional Threshold Issues for Dismissal.

### A. Plaintiff's Claims Are Preempted by the IHRA.

Red Bull incorporates this section of the Individual Defendants' Reply, which applies equally to Plaintiff's claims against Red Bull.

### B. Plaintiff Cannot Use this Suit to Interfere with the Arbitration.

Red Bull incorporates this section of the Individual Defendants' Reply, which applies equally to Plaintiff's claims against Red Bull.

### C. The Response Does Not Support Standing.

Plaintiff makes little attempt to differentiate between the defendants when he asserts that it is actually Defendants' pre-arbitration "deception" that serves as a basis of relief for his claims, not the Arbitrator's discovery ruling. *See* Doc. 59 at 25. Accordingly, Red Bull incorporates this section of the Individual Defendants' Reply, which applies equally to Plaintiff's claims against Red Bull, as Red Bull also cannot control the Arbitrator's decisions.

### D. The Absolute Litigation Privilege Applies.

Plaintiff's claims are also barred by the absolute litigation privilege. Federal law does not preempt the application of the privilege here, and RBNA's alleged conduct amounts to nothing more than actions taken and statements made in connection with actual or anticipated litigation and quasi-judicial proceedings. *See* Doc. 11 at ¶¶ 23, 48-49, 94-95.

#### 1. Federal Law Does Not Preempt the Privilege over State Law Claims.

In many instances, it is difficult to understand what legal arguments Plaintiff is attempting to make. With respect to the privilege issue, RBNA interprets the Response to assert that the absolute litigation privilege is preempted by federal law because its application would "obstruct" his federal rights. *See* Doc 59 at 17. Plaintiff is correct that *Erie* governs the application of

substantive state law when the court is sitting in diversity, but because state laws creating privilege are substantive, *Erie* requires that the Court apply the privilege here. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Palmer v. Fisher*, 228 F.2d 603, 608 (7th Cir. 1955) ("Federal courts have held that state laws creating a privilege are substantive, and they have followed them in diversity cases.") (collecting cases), abrogated on other grounds by *Carter Prods., Inc. v. Eversharp, Inc*., 360 F.2d 868 (7th Cir. 1966); *see* Doc. 46 at 4, n. 3.

Plaintiff's preemption argument is further undermined by the fact that he has alleged claims only under *state* law – not federal. Red Bull could not identify a single case where a court declined to apply the absolute litigation privilege to *state* law claims due to any perceived conflict with unpled federal claims. Indeed, Plaintiff's own authority confirms that preemption is only applicable to claims pled under federal law. *See E.E.O.C. v. Illinois Dep't of Emp. Sec*., 995 F.2d 106, 107 (7th Cir. 1993) (stating "state privileges are honored in federal litigation . . . when state law supplies the rule of decision"); *Steffes v. Stepan Co*., 144 F.3d 1070, 1074 (7th Cir. 1998) (considering preemption only in context of state privilege preempting federal claims); *EEOC v. Day & Zimmermann NPS*, Inc., No. 15-cv-1416, ECF 99, at 23–26 (D. Conn. Aug. 22, 2017) (same); *Pardi v. Kaiser Found. Hosps*., 389 F.3d 840 (9th Cir. 2004) (same).

Perhaps anticipating that federal preemption does not apply, Plaintiff asserts that his state law claims seek tort remedies "complimentary" with the relief he is simultaneously pursuing in the Arbitration. *See* Doc. 59 at 16. Not so. First, Plaintiff seeks specific evidence—the "genuine Adobe sign certified package"—that he claims no longer exists. Doc. 11 at ¶¶ 82, 126-31. Even if it did, producing it in this case would not change Plaintiff's position in the Arbitration. Plaintiff himself admits that the "package" is essential only to prove the Agreement's authenticity, not to prove his employment claims. *See* Doc. 11 at ¶ 129. Indeed, Plaintiff is already relying on the "static" version of the Agreement to suggest that the investigation was pretextual. *See* Doc. 11 at

¶¶ 4, 10, 25, 44, 115, 124. Additionally, Plaintiff's state law claims before this Court are not based on the investigation file, *see* Doc. 43 at 13, n.1—so his belated reliance on them in the Response makes no difference.[1]

Even if it were true that Plaintiff's federal claims in Arbitration rely on the outcome of his state law claims currently before this Court (they don't), they still would not be preempted. Interrelatedness of federal and state law claims makes no difference. Courts in this Circuit routinely apply the absolute litigation privilege to state law claims, even when those claims arise from the same facts or are brought in the same lawsuit as federal claims. *See Scheib v. Grant*, 22 F.3d 149 (7th Cir. 1994) (applying Illinois absolute litigation privilege to claim under state law, but not to federal claim arising from same incident); *Marchioni v. Bd. of Educ. of City of Chicago*, 341 F. Supp. 2d 1036, 1050-51 (N.D. Ill. 2004) (same); *Rosales v. Weltman, Weinberg & Reis Co.*, No. 15-CV-06943, 2017 WL 1436957, at *5 (N.D. Ill. Apr. 24, 2017) (same).

At bottom, there is no procedural basis on which to reject the absolute litigation privilege.

**2. Red Bull's Conduct Is Protected by the Privilege.**

Nor is there a factual basis. Plaintiff argues that the privilege does not apply to conduct that he asserts did not occur in anticipation of litigation[2]. *See* Doc. 59 at 22-23. Each of the acts alleged in the Complaint fall squarely within the absolute litigation privilege. Any reading to the contrary ignores Plaintiff's own stated purpose for bringing this suit: Defendants' purported efforts to impede his ability to obtain what he views to be critical information in the Arbitration. *See* Doc. 56 at 8-9.

---

[1] In any event, by continuing to insist that his state law claims are inextricably intertwined with his federal claims in Arbitration and/or his employment rights, he only emphasizes for the Court two separate reasons why the Complaint must be dismissed: 1) his claims are preempted by the IHRA, and 2) the Court cannot interfere with the Arbitration before a final award has issued. *See* Doc. 43 Section III(A).

[2] Plaintiff's reliance on the "employment-decision scheme" (Doc. 59 at 23) only proves Defendants' point. *See supra*, at n.1.

Red Bull (keenly) viewed Plaintiff as a potential litigant at the time of its investigation into his misconduct. *See Atkinson v. Affronti*, 369 Ill. App. 3d 828, 832, 861 N.E.2d 251, 255 (Ill. App. Ct. 2006) (holding privilege applies to acts in response to potential litigants); *see also Lewis v. Kalbhen*, 2025 IL App (1st) 242110, ¶ 32, 277 N.E.3d 922, 932 (holding investigation of claims privileged). It then retained counsel to represent it in Plaintiff's employment dispute, including to respond to Plaintiff's cease and desist letters (which were sent by counsel retained by Plaintiff), his IDES hearing, and the Arbitration. *See Richardson v. Dunbar*, 95 Ill. App. 3d 254, 256, 419 N.E.2d 1205, 1208 (Ill. App. Ct. 1981). These acts are plainly protected by the privilege.

Plaintiff asserts that dismissal is improper because he cannot be expected to anticipate an affirmative defense and preemptively plead facts to defeat it. Doc. 59 at 22. This argument rings hollow when Plaintiff dedicated four pages of his Complaint to exactly that – attempting to plead around the privilege. *See* Doc. 11 at ¶ 23. Further, the Complaint itself ties Red Bull's acts to actual or anticipated judicial or quasi-judicial proceedings. *See* Doc. 11 at ¶¶ 1, 2, 35, 48, 51, 54, 58, 60-61; *c.f. Loughnane v. Zukowski Rogers Flood & McArdle*, No. 1:19-cv-00086, ECF 105, at 12–14 (N.D. Ill. Sept. 6, 2019) ("[T]he Court cannot conclude from [plaintiff's] allegations and the limited information from the [underlying suit] that the actions Defendants allegedly took were sufficiently "related" to that lawsuit to trigger the litigation privilege."). There are no facts Plaintiff could plead, whether preemptively or on amendment, that would defeat the privilege.

## II. Plaintiff Has Not Adequately Pled Any Cause of Action.

### A. Plaintiff Failed to Plead a Fraud Claim.

The Response does not cure the fatal defects of Plaintiff's fraud claim. He still cannot show detrimental reliance. Plaintiff alleges throughout the Complaint that he never believed (and therefore could not have relied upon) the authenticity of the Agreement. *E.g.*, Doc. 11 at ¶¶ 85, 87-98, 104-07.

Plaintiff attempts to pivot the basis of his fraud claim to the investigation materials instead, claiming that he initially believed that his coworkers made complaints against him, and subsequently emailed Castañeda to seek advice on how to "improve or salvage working relationships." *See* Doc. 59 at 33. First, the Complaint contains no such allegations. *See* Doc. 11 at ¶¶ 24-29 (identifying the "fraudulent acts"); *see also* Doc. 46 at 6-8. Second, even if Plaintiff believed Castañeda's statements about the coworker complaints, Plaintiff cannot seriously claim that seeking advice on how to *improve* his relationships with others was to his detriment. Plaintiff's further assertion that he subsequently sought discovery in the Arbitration related to the investigation because he "believe[ed]" in the truth of the termination decision simply does not track with logic or the facts—Plaintiff filed the Arbitration precisely because he believed the "reason to fire him was fabricated." *See* Doc 43, Ex. 2 at 2.

Regardless of which alleged misrepresentation Plaintiff hangs his hat on, he cannot show damages. Litigation costs and emotional distress alone are insufficient to establish injury in fact for common law fraud, and Plaintiff's authority does not say otherwise. *See* Doc. 46 at 8 (citations omitted). The Seventh Circuit has only permitted a party to seek attorneys' fees for time and effort expended navigating fraudulent business deals, *not* fees and costs incurred pursuing the alleged fraud itself.[3] *See* Doc. 59 at 34 (citing *Roboserve, Inc. v. Kato Kagaku Co.,* 873 F. Supp. 1124 (N.D. Ill. 1995) (reducing compensatory damages award, including attorney's fees for year-long effort to secure contract for future business, where majority of award based on loss of future business), *aff'd in part, vacated in part*, 78 F.3d 266 (7th Cir. 1996)). Plaintiff tries to characterize his claimed damages as anything other than "ordinary litigation fees." Doc. 59 at 34. But the

[3] A principal to the contrary would create absurd results. If an individual were able to establish damages from fraud merely by filing suit to pursue that alleged fraud, the damages requirement itself would be nullified. Plaintiff should not be permitted to create and inflate his own damages by filing repetitive meritless actions.

Complaint says otherwise. Doc. 11 at ¶ 120 (seeking fees related to "defen[se] against Red Bull's IDES challenge . . ., arbitration costs, stenographer and transcript expenses, time and resources spent investigating and responding to the concealment"). And Plaintiff certainly cannot claim the litigation was "manufactured" for the purposes of hinging his damages on fees and costs where *he* filed the Arbitration and this case. *See* Doc. 59 at 34 (citing *Anthony v. Fed. Sav. Bank*, No. 1:21-cv-02509, ECF 74 at 11 (N.D. Ill. Mar. 30, 2022) (awarding fees for employee's counterclaim, where employer "manufactured" suit)).

**B. Plaintiff Failed to Plead a Conspiracy Claim.**

The Response similarly fails to save Plaintiff's conspiracy claim because he does not allege facts sufficient to infer an agreement, or a tortious act committed in furtherance of that agreement.

Plaintiff's own authority confirms that mere complimentary acts are not enough to infer knowledge, even if they can serve as circumstantial evidence of conspiracy. *See* Doc. 59 at 36 (citing *McClure v. Owens Corning Fiberglas Corp*., 188 Ill. 2d 102, 137, 720 N.E.2d 242, 259 (1999) (noting "proof of mere parallel conduct is insufficient")). Plaintiff must point to some other evidence of agreement, in addition to complimentary acts, to prove conspiracy. *See McClure*, 188 Ill. 2d at 142-42, 720 N.E.2d at 262-63. Here, he does not. Plaintiff cannot fill the gaps with conclusory allegations regarding Defendants' intent: he must plead actual facts demonstrating agreement. *See* Doc. 59 at 45 (citing *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 92, 181 N.E.3d 902, 935 (Ill. App. Ct. 2020)).

The Response similarly fails to logically identify the "unlawful purpose" that Defendants supposedly aimed to achieve. Where Plaintiff himself has acknowledged that the "certified" Agreement serves no purpose aside from showing that the static version is authentic, it simply does not track that Defendants' efforts to "conceal" the certified version serves any unlawful purpose. *See* Doc. 11 at ¶ 129; Doc. 43 at 19-20. Plaintiff instead pivots to the

"manufactured . . . termination rationale" to support his conspiracy claim, Doc. 59 at 35-36—despite the fact that these allegations are absent from the Complaint. *See* Doc 11 at ¶¶ 122-125.

Even if Plaintiff could show agreement to achieve an unlawful purpose, he abandons the remaining elements of his claim. Plaintiff makes no effort to point to an unlawful or tortious act committed by Defendants in furtherance of the conspiracy, instead directing the court to his IIED claim. Merely bringing another tort claim does not suffice when that claim is also ill-pled. *See Chadha v. N. Park Elementary Sch. Ass'n*, 2018 IL App (1st) 171958, ¶ 76, 123 N.E.3d 519, 541 (holding conspiracy claim failed because plaintiff could not establish underlying tortious conduct). *See infra*, at II.D. As a result, Plaintiff's conspiracy claim must be dismissed.

**C. Plaintiff Failed to Plead a Negligent Spoliation Claim.**

Plaintiff's negligent spoliation claim must be dismissed because he cannot plead facts sufficient to show that Red Bull owed him a duty to preserve the Agreement, loss or destruction of the agreement, or inability to prove his Arbitration claims as a result.

Plaintiff claims the duty for Red Bull to preserve an internal contract governing the terms of the legal engagement of outside counsel derives from 29 C.F.R. § 1602.14. Doc. 59 at 38. This section requires employers to preserve personnel and employment records for one year. The Agreement is not an employment record and would not be kept in the ordinary course of business with Plaintiff's personnel file. *See, e.g.*, 820 ILCS 40/2(a)(2) (noting contracts subject to personnel record review include only those between the employer and the employee). Plaintiff's own cited authority supports this reading. *See* Doc. 59 at 38 (citing *Martinez v. Abbott Lab'ys*, 356 F. Supp. 2d 898, 903 (N.D. Ill. 2005) (involving work order that was not a personnel record and not examined in connection with termination)).

Plaintiff then attempts to point to JAMS discovery rules as a source of Red Bull's duty, which he claims requires "reasonable retention of existing source material." *See* Doc. 59 at 38. To

be sure, neither the JAMS rules nor the Arbitration Agreement have any retention requirement. But even if they did, there was no Arbitration at the time the Agreement was executed and thus no governing JAMS rules. And the Agreement has no relevance to any potential civil litigation, foreseeable or otherwise, as required to support a duty here. *See* Doc. 59 at 39 (citing *Castillo v. Bd. Of Educ. of City of Chicago*, 2018 IL App (1st) 171053, ¶¶ 27-28, 103 N.E.3d 596, 602 (Ill. App. Ct. 2018)). The Response does not cure this defect. *See* Doc. 59 at 39.

Plaintiff also fails to identify any facts regarding Red Bull's spoliation of the Agreement, asking the Court to draw the attenuated inference that an alternative version of the Agreement (a) exists and (b) was destroyed because he believes that to be the case. *See* Doc. 59 at 41 (citing *Borsellino v. Goldman Sachs Grp., Inc*., 477 F.3d 502, 510 (7th Cir. 2007) (rejecting claim where defendants produced other responsive records)). Red Bull has produced the Agreement and supporting Adobe Sign data. Plaintiff has acknowledged the production of these materials. *See* Doc. 59 at 40. The inquiry ends here.

Finally, Plaintiff still fails to establish why an alternative version of the Agreement is essential to the merits of his Arbitration claims. Plaintiff asserts that a "chronology and the alleged manufactured rationale" would allow him to prevail on his Title VII claims but does not allege how the certified Agreement (as opposed to the static version) is foreseeable evidence of that rationale. *See* Doc. 59 at 40. Plaintiff admits that alleged spoliation of the certified version at most "foreclose[s] independent comparison . . . with the produced copy." *See* Doc. 59 at 40; *see also* Doc. 11 at ¶ 129. But the Agreement, in any condition, is simply nonessential. Plaintiff presumably agreed at one point, considering he filed the Arbitration before he knew the Agreement existed. *See Denton v. Ne. Illinois Reg'l Commuter R.R. Corp*., No. 02 C 2220, 2004 WL 1005790, at *4 (N.D. Ill. Apr. 26, 2004). Without drawing a coherent, let alone plausible, line between the Agreement and the merits of his Arbitration claims, Plaintiff cannot establish negligent spoliation.

### D. Plaintiff Failed to Plead an IIED Claim.

Plaintiff's IIED claim must also be dismissed because he cannot plead facts supporting "extreme or outrageous conduct" by Red Bull. To avoid this outcome, Plaintiff points the Court back in time to his initial request for a religious accommodation, the investigation into his misconduct, and subsequent termination – then asks the Court to consider these events in association with the discovery dispute over the certified Agreement. *See* Doc. 56 at 41-42. By doing so, Plaintiff admits his IIED claim is derived in whole or in part from the same conduct underlying his federal employment claims currently pending in Arbitration. Plaintiff only digs himself deeper by citing discrimination and retaliation IIED case law. *See* Doc. 59 at 42. Even if the Court were to cut away the allegations regarding acts already being litigated in the Arbitration, the claim still fails. Especially in the employer-employee context, the threshold for extreme and outrageous conduct is incredibly high. *See* Doc. 59 at 42 (citing *Curran v. JP Morgan Chase,* N.A., 633 F. Supp. 2d 639, 643 (N.D. Ill. 2009)). The Complaint's allegations that Red Bull "forced" Plaintiff to pursue his claims, or produced what he believes to be a fake document, does not meet the mark. *See* Doc. 11 at ¶ 133; *see* Doc. 46 at 11-12.

## III. The Response Provides No Basis for Amendment.

Red Bull incorporates this section of the Individual Defendants' Reply, which applies equally to Plaintiff's claims against Red Bull.

## CONCLUSION

WHEREFORE, Defendant Red Bull North America, Inc. respectfully requests this Court its Motion to Dismiss, Dismiss Counts I-IV with prejudice, and grant any other relief this Court deems equitable and proper.

Dated: November 13, 2026

Respectfully submitted,

**RED BULL NORTH AMERICA, INC.**

*/s/ David J. Stein*

David J. Stein (6307086)
Kara E. Angeletti (6329388)
Addison Schlatter (6348632)
GREENBERG TRAURIG, LLP
360 North Green, Suite 1300
Chicago, Illinois 60607
T: (312) 456-1003
F: (312) 456-8435
David.Stein@gtlaw.com
Angelettik@gtlaw.com
Addison.Schlatter@gtlaw.com

*Attorneys for Defendants Red Bull North America., Inc.*

## CERTIFICATE OF SERVICE

I, David J. Stein, hereby certify that on November 13, 2026, a true and correct copy of **DEFENDANT RED BULL NORTH AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** was served electronically on all counsel through the Court's ECF system. record.

*/s/ David J. Stein*