FILED
11/15/2026
THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT
BC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Case No: 1:26-CV-07715

| | | |
|---|---|---|
| CHARLES LECLERC, | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-07715 |
| v. | ) | Judge Sharon Johnson Coleman |
| RED BULL NORTH AMERICA, INC., | ) | Magistrate Judge Karyn L. Bass Ehler |
| et al., | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION PENDING THE COURT'S ARBITRATION ENFORCEMENT DECISION**

## INTRODUCTION

Plaintiff seeks interim relief solely against Defendant Red Bull North America, Inc., the sole JAMS respondent and the only defendant that is a party to the Mutual Agreement to Arbitrate (MAA). Plaintiff asks this Court to stop Red Bull from advancing his pending JAMS employment claims toward a second attempt at summary disposition, a final hearing, or an award while the Court determines whether Red Bull may enforce the MAA despite its alleged material breach. Plaintiff specifically challenges § 11, which assigns enforceability questions to the arbitrator "except as required by applicable law." Red Bull relies on the MAA to seek dismissal here and presses for a merits decision in JAMS on the record its alleged breach has kept incomplete. The Adobe source and custody records bear directly on Red Bull's contractual performance here. Those records and the investigation materials are needed to test the misconduct findings Red Bull says were its sole reason for firing Plaintiff. The proposed order allows production, inspection, preservation, and correction to continue. ECF 11 ¶¶ 13, 18–21; ECF 43-1 §§ 4–5, 11; ECF 46 at 2–3; ECF 59 at 5–13; ECF 60-2 at 3, 5, 7; Supplemental Exs. A, F–G.

The Complaint already identifies the harm from advancing the arbitration while that evidence remains concealed and asks the Court to prevent further prejudice. ECF 11 ¶¶ 13, 18–

21, Prayer VI.D, F. The injunction protects Plaintiff's ability to obtain and use that evidence before the decisions it could affect. That protection serves the relief sought on the existing claims. See De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 220–21 (1945).

**I. RED BULL SEEKS SUMMARY DISPOSITION A SECOND TIME WHILE KEY DISCOVERY REMAINS UNRESOLVED**

In Order 4 (January 13, 2025), Griffin denied without prejudice Red Bull's first request for leave to seek summary disposition of Claims and Legal Foundations VI through XX. The factual basis was too unclear to assess likely success, and substantial briefing would still leave the need for a hearing. Ex. F at 1–3. Red Bull acknowledges that no subsequent dispositive-motion deadline was set. Ex. A at 1 ¶ 3. For nearly six months after Plaintiff's May 14, 2026 request for the source package or a subpoena, the submitted record shows no Red Bull request to move the case to merits briefing or a hearing. Red Bull opposed the request on May 19, 2026 and served amended interrogatory answers on September 1, 2026. Exs. G, L.

On October 29, 2026, Defendants jointly sought fourteen additional days to submit their final replies to their motions to dismiss, through November 23, 2026, citing the scope of Plaintiff's opposition and the complexity of the issues. On October 30, 2026, the Court granted four additional days and set November 13, 2026 as the reply deadline. ECF 62 at 1–2; ECF 65 at 1.

On November 6, 2026, twelve days after Plaintiff filed his federal opposition on October 25, 2026 and one week after the extension order, Red Bull made its second bid for summary disposition by seeking a new merits timetable in JAMS. Red Bull had yet to file its federal reply. ECF 59 at 1; ECF 65 at 1; ECF 68 at 1; Ex. A at 1–2, 6–7. The May 14, 2026 request for leave to seek the source package or a subpoena still awaits a ruling. Red Bull cites age and efficiency, yet

its timetable would advance the employment claims with a long-running authenticity dispute still unresolved. Plaintiff promptly challenged the authenticity and completeness of the purported Castañeda engagement agreement after Red Bull's September 9, 2025 production. ECF 58 ¶¶ 39–43. Red Bull proposes a new December 30, 2026 deadline for written discovery responses, long after the earlier deadlines expired with discovery still incomplete. The proposal provides for a possible summary-disposition motion by February 15, 2027, a ruling by April 23, 2027, and a July 16, 2027 final hearing, without requiring a ruling on the source request or completion of the ordered inspection before the merits advance. Ex. A at 1–2, 6–7; Ex. G at 1–7; Supplemental Declaration ¶¶ 2–3.

**A. Red Bull filed two motions without showing the prior leave it demanded**

Red Bull sought to bar Plaintiff from filing motions without first obtaining leave. It first asked on September 29, 2025, renewed the request on October 1, 2025, and pressed it again on October 27, 2025 after Griffin denied it "at this time" in Order 22 (October 14, 2025). Ex. I at 14, 16–17; Ex. K at 6–7. In Order 25 (October 31, 2025), Griffin imposed the restriction on both sides: "No party shall be allowed to file a motion herein without obtaining prior permission from the Arbitrator." Order 25 requires a letter of no more than two double-spaced pages. Ex. F at 5 ¶ 5. Red Bull knew how the rule worked. Order 28 (November 12, 2025) granted Red Bull leave to file its unilateral confidentiality motion by November 18, 2025. Ex. F at 5–7.

Plaintiff sought leave on December 18, 2025, as Red Bull acknowledges. Ex. K at 6–7. He followed the same procedure on May 14, 2026, seeking leave to obtain the Adobe source package or subpoena Adobe or Castañeda. Red Bull opposed. Plaintiff replied on May 19, 2026. His representative sought a ruling on June 22, 2026 and July 14, 2026. Plaintiff renewed the

request on November 8, 2026 and November 13, 2026. The fully briefed request remains undecided. Ex. G at 1–7; ECF 60-5; Exs. C–D, M; Supplemental Declaration ¶ 2.

On November 6, 2026, Red Bull moved for a merits schedule and unilaterally sought a Second Amended Confidentiality Order. Neither filing identifies a request for leave or an order granting it, and Plaintiff received neither. Plaintiff objected on November 8, 2026 and renewed his objection on November 13, 2026. On this record, both filings are procedurally defective under Order 25. Ex. A at 1–2; Ex. B at 1–4; Ex. C at 1–2; Ex. M at 1–2; Supplemental Declaration ¶ 3.

Plaintiff's evidence of the underlying employment events includes records he obtained before arbitration. Red Bull marked nearly all the documents it produced to him as confidential. The parties exchanged those documents directly, without submitting the exchange to Griffin. Supplemental Declaration ¶ 5. A confidentiality label alone does not establish that a document is proprietary, a trade secret, or otherwise sensitive under JAMS Rule 26(b). Red Bull's proposal would restrict AI-assisted review of its designated production. The restrictions would apply during any challenge to a designation. The proposal separately suspends use of previously produced material upon notice of a privilege claim until the claim is resolved. Red Bull identifies no improper disclosure and no specific record inadequately protected by Order 30 (December 2, 2025). The added limits would burden Plaintiff's review and use of evidence while Red Bull presses for merits dates and the requested source and investigation records remain outstanding. Ex. B at 1–3, 6–7 ¶¶ 1–3, 10–12 ¶¶ 6, 9, 11; Ex. F at 8–9, 12–13.

Red Bull invokes JAMS Rules 16 and 19 for its timetable motion. Ex. A at 1–2. Those scheduling rules supply no exception to Order 25. JAMS Employment Arb. R. 16(d), (f), 19(a). Rule 18 permits a summary-disposition motion only if Griffin finds that Red Bull has shown the

motion is likely to succeed and would dispose of or narrow the issues. Red Bull cites age and efficiency. Its November 6, 2026 filing identifies no evidence or resolved factual issue that addresses Griffin's reasons for denying the first request for leave. On this showing, Red Bull has failed to meet Rule 18's threshold for a second motion. Ex. A at 1–2, 6–7; Ex. F at 2 ¶ 4. The November 11, 2026 conference request and November 13, 2026 scheduling exchange identify no prior permission and show no ruling on the objection. Exs. E, M.

**B. Red Bull seeks a merits timetable before the critical evidence can be tested**

Red Bull remains delinquent in JAMS discovery. Orders 6 (February 3, 2025), 8 (March 6, 2025), and 9 (March 25, 2025) set and extended written discovery response deadlines through March 28, 2025. Order 11 (April 30, 2025) required a response to Plaintiff's document requests by April 30, 2025. Ex. N at 2–3, 5, 7, 9. Red Bull acknowledged incomplete production on April 15, 2025 and later claimed its April 30, 2025 and December 17, 2025 productions completed its obligations. Id. at 10–11, 15; Ex. K at 8–9. Yet Plaintiff still lacks the complete Adobe Sign source package and the underlying investigation records, including the witness notes and Brooks's summary. Red Bull itself said the investigation's misconduct findings were the sole basis for termination. ECF 60-2 at 3, 5, 7; ECF 58 ¶¶ 23, 54–55, 59–64; Supplemental Declaration ¶ 2. Red Bull's September 1, 2026 amended answers also leave material questions on other employment claims unanswered, including who adopted its COVID-19 directives and the requested details on how it stored and protected Plaintiff's health information. Ex. L at 6–7, 13 (Nos. 6, 16).

Order 16 (September 12, 2025) also required Red Bull to submit the materials it claimed were privileged for in-camera review. Eight months later, at the May 12, 2026 hearing, Griffin confirmed he had not seen the materials, and counsel promised delivery. Plaintiff has received no notice of delivery since. ECF 60-7 at 4; ECF 60-4, Tr. 5:21–6:7, 8:9–14, 41:14–18; Supplemental Declaration ¶ 2. Red Bull now seeks a merits timetable without showing it complied with Order 16. Its timetable makes neither a ruling on the May 14, 2026 source request nor completion of the ordered inspection a prerequisite to merits briefing. Ex. A at 6–7.

## II. THE RECORD SUPPORTS THE FRAUD CLAIM AND THE CHALLENGE TO ENFORCEMENT

A preliminary injunction requires a strong showing of likelihood of success on the merits, likely irreparable harm, and an inadequate remedy at law. The Court then weighs the hardships and the public interest. Ill. Republican Party v. Pritzker, 973 F.3d 760, 762–63 (7th Cir. 2020); DM Trans, LLC v. Scott, 38 F.4th 608, 618 (7th Cir. 2022).

### A. Red Bull's own records undermine its account of the investigation

Red Bull's own documents place Castañeda's engagement before the complaints it says prompted his retention. The July 22, 2022 Slater letter links retention to complaints received on or about May 24, 2022. The purported agreement is dated May 18, 2022, and Red Bull's Adobe audit report records completion on May 19, 2022. The agreement refers to a privileged investigation and identifies no investigation of Plaintiff. That chronology supports an inference of knowing deception from the outset. ECF 58 ¶¶ 18, 39–43; ECF 60-1 at 7–11. Plaintiff understood Castañeda's account as reporting actual coworker complaints, responded at his invitation, and pursued supporting records based on the account Red Bull gave him. The later disclosures forced additional investigation and corrective work. ECF 58 ¶¶ 13, 16, 21, 25–28,

65–66; ECF 57 ¶ 29(a). That is evidence of reliance and resulting loss. Newman v. Metro. Life Ins. Co., 885 F.3d 992, 1003–04 (7th Cir. 2018); Roboserve, Inc. v. Kato Kagaku Co., 78 F.3d 266, 274–75 (7th Cir. 1996).

Red Bull's production compounded the deception alleged here. In communications dated October 1, 2025 and November 6, 2025, counsel vouched for the static PDF's completeness and authenticity. At the May 12, 2026 hearing, counsel denied that Red Bull possessed the Adobe records and pointed to the outside firm when asked about access. On May 19, 2026, counsel again claimed that Red Bull had produced the "entirety," including metadata, and insisted the issue "must be closed." ECF 58 ¶¶ 39–45, 47–54, 59–64; ECF 60-1 at 3, 7–11; ECF 60-4, Tr. 7:7–8:8; ECF 60-5 at 3–4. The report identifies the Adobe transaction and the Red Bull recipient who viewed and signed the agreement. Yet Red Bull's representations supply no source comparison, and the original transaction and retrieval records remain unavailable to Plaintiff. The shifting accounts and resistance to comparison support the inference of alteration or material incompleteness. If the original is no longer retrievable, the custody record bears on the alternative claim of loss or destruction. ECF 11 ¶¶ 82–85, 99–108, 127–131; ECF 58 ¶¶ 59–64.

Litigation privilege cannot shield every act in this sequence. The business investigation and Castañeda's July 1, 2022 presentation preceded Plaintiff's retention of counsel, demand for relief, and administrative charge. Those facts support treating the investigation as business conduct outside the privilege. ECF 58 ¶¶ 9–19; O'Callaghan v. Satherlie, 2015 IL App (1st) 142152, ¶¶ 25, 27, 36 N.E.3d 999. Applying the privilege to the continuing conduct would leave the obstruction of Plaintiff's Title VII and ADA proof in place while withdrawing his state-law remedy for the deception. The same concealment impairs his ability to prove why correction is needed. Livadas v. Bradshaw, 512 U.S. 107, 116–20, 130 (1994), and Rum Creek Coal Sales,

Inc. v. Caperton, 971 F.2d 1148, 1154 (4th Cir. 1992), explain why courts examine the practical conflict when state protection is withdrawn. ECF 11 ¶ 23(e); ECF 59 at 15–24.

**B. The FAA governs the delegation challenge and the default objection**

Defendants treat the absence of an order requiring source production as an answer to material breach. ECF 67 at 6. The MAA incorporates JAMS Rule 17's duty to exchange and supplement relevant nonprivileged information in good faith. ECF 43-1 §§ 4–5; JAMS Employment Arb. R. 17(a), (c). Red Bull produced the engagement document as nonprivileged. ECF 60-1 at 3. The evidence supports Plaintiff's contention that Red Bull materially breached that agreement by presenting a misleading substitute as genuine and using false completeness and custody accounts to block source comparison. Illinois's implied covenant of good faith and fair dealing protects the benefit of the parties' bargain. J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc., 162 Ill. 2d 265, 278, 642 N.E.2d 1215, 1222 (1994). That covenant applies to Red Bull's performance of the exchange it promised in §§ 4–5 and Rule 17. A ruling on the scope of discovery cannot establish the truth of Red Bull's completeness and custody representations. The outstanding Order 16 submission is a separate failure. ECF 59 at 5–11.

MAA § 10 makes the FAA govern enforcement. Section 11 delegates enforceability "except as required by applicable law." JAMS Rule 11(b) also recognizes limits imposed by governing law. ECF 43-1 §§ 10–11; JAMS Employment Arb. R. 11(b). FAA § 2 preserves generally applicable contract defenses to enforcement. 9 U.S.C. § 2. The FAA places arbitration agreements on the same footing as other contracts. Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022). Under Illinois law, material breach can excuse reciprocal performance, subject to the injured party's election. PML Dev. LLC v. Vill. of Hawthorn Woods, 2023 IL 128770, ¶¶ 50–52, 226 N.E.3d 1163.

Plaintiff directs that defense to § 11 itself. The source, custody, and comparison records Red Bull allegedly withheld through false accounts are the evidence Plaintiff needs to prove nonperformance in the very gateway proceeding Red Bull seeks to require. The alleged breach thus undermines the exchange promised for the delegated decision itself. Plaintiff raises it as a defense to enforcing § 11 against the federal tort claims. Under the applicable law preserved by § 11, the Court must decide that defense before enforcing delegation. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70–74 (2010) (discussing how discovery limits could be challenged as applied to the delegated inquiry). ECF 59 at 9–13; ECF 58 ¶¶ 59–64.

FAA § 3 separately governs a stay of this federal action. On application, it requires a referable issue and an applicant who is not in default in proceeding with that arbitration. The stay lasts until arbitration has been had in accordance with the agreement. 9 U.S.C. § 3. Plaintiff contends Red Bull's alleged obstruction of the promised exchange amounts to default despite continued JAMS administration. ECF 11 ¶¶ 13, 20; ECF 59 at 5–6, 9–11. Courts have enforced the default condition where a party's failure to perform ended arbitration or prevented its administration. See Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1295–99 (10th Cir. 2015); Bedgood v. Wyndham Vacation Resorts, Inc., 88 F.4th 1355, 1362–69 (11th Cir. 2023). Their reasoning supports examining Red Bull's own performance even while JAMS continues to administer the case.

Defendants seek arbitration-based dismissal. ECF 67 at 5–7; ECF 68 at 2. Plaintiff conditionally requested a § 3 stay if the Court rejects his objections and finds an issue referable. ECF 59 at 15. A qualifying application requires a stay and precludes dismissal based solely on arbitrability. Smith v. Spizzirri, 601 U.S. 472, 475–78 (2024). The temporary restraint directed to Red Bull in JAMS rests on Rule 65.

**C. Plaintiff kept the source request alive and challenged Red Bull's performance**

The contemporaneous record defeats Red Bull's inference from the July 27, 2026 exchange. On July 1, 2026, Plaintiff filed his independent tort claims and expressly challenged enforcement of the MAA against them. ECF 11 ¶¶ 3–5, 13–14, 20. On July 27, 2026, Stein proposed discussing dismissal of the employment arbitration without prejudice and a mutual waiver of arbitration. The proposal left terms open and provided no commitment to resolve the pending source request or complete the ordered inspection. Plaintiff replied, "At this time, I do not intend to dismiss the arbitration." The parties reached no agreement. Ex. H at 1. Red Bull treats that response as an election to proceed despite the alleged breach. ECF 67 at 6 n.6. ECF 68 at 2.

On May 14, 2026, Plaintiff sought leave to obtain the Adobe source package or a subpoena. In his May 19, 2026 reply, he expressly alleged that Red Bull's statement about its ability to retrieve the package amounted to fraud on the tribunal. ECF 60-5 at 2–3. Plaintiff kept JAMS open to obtain source and custody evidence before deciding where to pursue his employment claims. His representative's June 22, 2026 and July 14, 2026 follow-ups sought a ruling on the same request and expressly preserved judicial review. Between the May 19, 2026 reply and Red Bull's November 6, 2026 filings, Plaintiff sought no merits schedule or merits ruling in JAMS. Ex. G at 1–7. Supplemental Declaration ¶¶ 3–4.

On November 6, 2026, Red Bull made its second bid for summary disposition by proposing a schedule for a renewed motion. On November 8, 2026, Plaintiff objected under Order 25 and asked JAMS to suspend merits adjudication of the employment claims pending this Court's enforcement ruling. He expressly excepted a ruling on the source request, implementation of any resulting relief, and evidence preservation. Ex. A at 6–7; Exs. C–D.

Under Illinois law, election turns on what the party knew and how it acted after the alleged breach. PML Dev. LLC v. Vill. of Hawthorn Woods, 2023 IL 128770, ¶¶ 55–59, 226 N.E.3d 1163. The July 27, 2026 response preserved the pending avenue for obtaining the evidence Plaintiff needed to test Red Bull's performance. It did nothing to remedy Red Bull's alleged default or breach. The Court should resolve Plaintiff's enforcement objections, including his specific challenge to delegation, on the evidence of Red Bull's performance.

## III. THE PROPOSED TIMETABLE THREATENS PLAINTIFF'S ABILITY TO PRESENT HIS EMPLOYMENT CLAIMS

If Griffin grants leave, the proposed timetable would require Plaintiff's opposition by March 12, 2027, even if the May 14, 2026 source request and Order 16 inspection remain unresolved. Ex. A at 6–7. Plaintiff could have to answer Red Bull's termination account before obtaining the Adobe Sign source package, witness notes, or Brooks summary. The source package bears on when and why Castañeda was retained. The investigation records would let Plaintiff compare what witnesses reported, what Castañeda recorded, what Brooks summarized, and what decisionmakers received. Excluding undisclosed material from Red Bull's presentation would still leave Plaintiff without the contemporaneous records needed to test the misconduct findings Red Bull says were the sole basis for his termination. ECF 60-2 at 7; ECF 60-4, Tr. 14:9–21, 40:14–43:15. ECF 58 ¶¶ 34–38, 59–64; Supplemental Declaration ¶ 7.

The arbitration's course makes that sequence likely. Plaintiff filed his October 28, 2025 motion seeking direct Adobe authentication. Griffin did not decide the request until May 12, 2026, more than six months after filing. Amended Order 35 (May 14, 2026) memorialized the denial of direct transmission and required written certification. Ex. O at 1–5; Ex. K at 35–40; ECF 60-4, Tr. 4:4–8, 5:8–11; ECF 60-7 at 9. Plaintiff filed a separate request for leave on May

14, 2026 to compel source production or subpoena Adobe or Castañeda. The parties finished briefing on May 19, 2026. The request remained undecided through November 13, 2026 despite the June 22, 2026 and July 14, 2026 follow-ups. On November 11, 2026, Red Bull requested a conference on the November 6, 2026 procedurally invalid motions and the November 8, 2026 objection and stay request. JAMS offered dates on November 13, 2026. Exs. E, G, M; Supplemental Declaration ¶¶ 2–3. Red Bull's proposed timetable would move merits briefing forward even if the source request and ordered inspection remain unresolved. Ex. A at 6–7.

Earlier efforts to enforce the evidence orders likewise left Plaintiff without the records. Plaintiff sought sanctions on January 2, 2026 for alleged noncompliance with Order 16, and the record shows no sanction for that alleged noncompliance. At the May 12, 2026 hearing, Griffin addressed what Red Bull would have to produce if it used the investigation materials. Plaintiff's sword-and-shield argument addressed Red Bull's prior reliance on the investigation in its July 22, 2022 cease-and-desist response and in opposing benefits. Griffin did not resolve whether those prior uses waived privilege. Ex. K at 1–5, 35–40; ECF 58 ¶¶ 29–38(b); ECF 60-2 at 3, 5, 7; ECF 60-4, Tr. 26:7–27:4, 28:15–24. The requested restraint would preserve the opportunity to obtain and use the evidence while the source request and inspection proceed.

In this Court, the same records bear on falsity, knowledge, and participation in the alleged fraud. The Adobe source and custody history also bear directly on whether Red Bull concealed evidence of its nonperformance in the very proceeding where it says that challenge must be heard. ECF 11 ¶¶ 18–21, 111–120; ECF 58 ¶¶ 59–64.

Damages and preservation cannot restore the chance to present the evidence before an employment decision. If Plaintiff must seek relief from an adverse award under 9 U.S.C. § 10, the same missing records would impede proof of what Red Bull withheld or misrepresented and

how it affected the presentation. The transcript and correspondence document the requests and responses. They cannot show what the withheld evidence would have revealed. See DM Trans, LLC v. Scott, 38 F.4th 608, 618 (7th Cir. 2022).

Trustmark involved alleged withholding in an earlier arbitration. The court held that arbitration expense and loss of a preferred forum did not establish irreparable harm. Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.), 631 F.3d 869, 871–72 (7th Cir. 2011). Here, the injury is losing the use of identified evidence before JAMS decides the employment claims. Red Bull's November 6, 2026 scheduling motion places that risk before the Court while the means of obtaining the evidence remain stalled. The requested injunction rests on that harm, the existing fraud claim, and the pending enforcement issues. It leaves the Order 25 objection, the source request, and inspection for JAMS to address.

## IV. THE ORDER PAUSES THE EMPLOYMENT MERITS AND ALLOWS EVIDENCE WORK TO CONTINUE

The proposed order protects the pending decision on Red Bull's right to enforce the MAA in this case and Plaintiff's opportunity to use the missing evidence before JAMS decides his employment claims. It would stop Red Bull from seeking or implementing a merits timetable, pursuing its second attempt at summary disposition, or pursuing a final hearing or award in JAMS. It would also bar Red Bull from seeking a JAMS ruling on Plaintiff's specific challenge to enforcing § 11 against the federal tort claims. Red Bull would notify JAMS and request a pause within two business days. It could neither demand covered submissions nor seek adverse relief for their absence.

JAMS could decide and implement any relief on the May 14, 2026 source-production or subpoena request and carry out the ordered inspection. Red Bull would preserve the identified

Adobe and investigation records within its possession, custody, or control. The pause would end when this Court decides the pending grounds for enforcing the MAA raised in the dismissal briefing and the related request for protection, unless the Court orders otherwise. An order rejecting the specific § 11 challenge and directing arbitration would also end the pause unless the Court orders otherwise. The Court would review the need for the pause about thirty days after entry.

This Court has diversity jurisdiction over the pleaded controversy. ECF 11 ¶¶ 31–36; Supplemental Declaration ¶ 8. The Seventh Circuit recognizes party-directed relief in arbitration-enforcement disputes. Duthie v. Matria Healthcare, Inc., 540 F.3d 533, 536–37, 542 (7th Cir. 2008).

The balance favors a defined pause. Red Bull can preserve and exchange evidence and continue preparing its case. Plaintiff gains a chance to obtain and use the proof before a merits decision. The public interest favors deciding the dispute on a reliable record. Plaintiff requests an expedited response from Red Bull alone and targeted source and custody discovery on the issues this Court retains. Fed. R. Civ. P. 26(b)(1), (d)(1). Plaintiff requests waiver of security if the Court finds no danger of incremental monetary loss, or security supported by the record. Fed. R. Civ. P. 65(c); Habitat Educ. Ctr. v. U.S. Forest Serv., 607 F.3d 453, 458–59 (7th Cir. 2010).

Plaintiff requests submission and decision on the written record after Red Bull has an opportunity to respond. Fed. R. Civ. P. 65(a)(1), 78(b). N.D. Ill. LR 78.3. He will be abroad and unavailable to appear from November 19, 2026, through December 1, 2026, and asks the Court to excuse his appearance on this motion during that period. Supplemental Declaration ¶ 9. The Court can address the requested interim relief on the parties' written submissions without delaying consideration until Plaintiff returns.

**CONCLUSION**

Plaintiff requests entry of the proposed injunction pausing merits proceedings on the employment claims in JAMS while production, inspection, preservation, and correction continue. Plaintiff asks the Court to promptly decide the pending dispute over Red Bull's right to enforce the Mutual Agreement to Arbitrate in this case, including the specific § 11 challenge, and the related request for protection.

Dated: November 15, 2026

Respectfully submitted,

/s/ Charles Leclerc

Charles Leclerc

Plaintiff, Pro Se

400 W. Ontario St., #603

Chicago, IL 60654

Tel: (612) 600-4044

Email: charles_leclerc@outlook.com