FILED
11/15/2026
THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT
BC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Case No: 1:26-CV-07715

Charles Leclerc v. Red Bull North America, Inc., et al.
Case No. 1:26-cv-07715
Judge Sharon Johnson Coleman

# SUPPLEMENTAL EXHIBIT J

## NAC challenge and clarification record from June 10, 2025 to July 9, 2025

26 source pages follow this identifying cover.

Pages 1–8: June 10, 2025 challenge. Pages 9–16: June 18, 2025 response. Pages 17–18: June 24, 2025 decision. Pages 19–20: June 24, 2025 clarification request. Pages 21–25: June 30, 2025 response. Page 26: July 9, 2025 decision.

Main submissions and decisions are complete. The challenge and June 18, 2025 response attachments are omitted.

This cover is not part of the original document. References to pages of this exhibit exclude this cover.

# FORMAL CHALLENGE TO ARBITRATOR JOHN C. GRIFFIN – APPEARANCE OF BIAS AND PROCEDURAL MISCONDUCT

**Leclerc, Charles vs. Red Bull North America, Inc.**
**JAMS Reference No. 5340001145**

---

## I. INTRODUCTION

This challenge is respectfully submitted pursuant to JAMS Rule 15, seeking the removal of Arbitrator Hon. John C. Griffin from this matter. While the parties have yet to reach the merits stage, the proceedings to date have shown a persistent pattern of procedural irregularities, legal missteps, and one-sided rulings that cumulatively establish credible bias. These concerns are documented below.

Under Rule 15, JAMS must evaluate a challenge based on the "materiality of the facts" and the "prejudice to the Parties." This challenge meets that standard: the facts presented are not only material—they directly affect the fairness and integrity of the arbitration process—but the prejudice is ongoing and accumulative. Claimant has been procedurally disadvantaged at every stage, while the arbitrator's conduct consistently favors Respondent.

## II. REPEATED PROCEDURAL MISCONDUCT AND RULE VIOLATIONS

Griffin has consistently violated his own orders regarding "strictly enforced deadlines" in favor of Respondent, **without requiring good cause** or applying rules uniformly. Key examples include:

- **Instance #1: Summary Disposition Deadline Extension Improperly Granted**
  On or around November 21, 2024, Respondent missed a critical deadline to seek summary disposition. An unauthorized individual (at the time) emailed an informal extension request directly to the Arbitrator. Within 45 minutes—without consulting Claimant or issuing a formal order as required by JAMS Rule 17(a) and Order No. 1—Griffin via his case manager approved a three-week extension via email. Claimant's subsequent objection was overruled despite Griffin acknowledging that Respondent provided no good cause which is necessary under JAMS rules.
- **Instance #2: Discovery Scope Shift After Prior Ruling**
  Prior to formal discovery requests, Claimant asked if there were limits on the number of items—Griffin confirmed there were none beyond JAMS rules. Respondent did not object. After submission, Respondent moved to retroactively impose a limit. In February 2025, Griffin reversed himself and imposed restrictions, siding again with Respondent without procedural justification.
- **Instance #3: Shifting Disclosures and Apparent Institutional Shielding of Respondent's Counsel**
  A major procedural irregularity occurred during the handling of disclosure obligations—not by the Arbitrator himself, but by JAMS administrative staff—undermining the transparency and neutrality required under JAMS's own standards. On August 23, 2024, JAMS issued a Commencement Disclosure Report affirmatively stating that Respondent's counsel, Mr. Rudd, had no prior involvement with JAMS within the five-year reporting window. Yet, during a live

conference on December 2, 2024, Mr. Rudd contradicted that disclosure, stating that he participates in JAMS arbitrations "all the time."

In response to Claimant's inquiry about this contradiction, JAMS case manager Natasha Erese issued a series of shifting and conflicting explanations—initially asserting that disclosures only cover the assigned arbitrator (incorrect), then attributing the omission to Rudd's prior firm affiliation (also incorrect), and finally concluding that his prior JAMS activity was simply irrelevant. These narratives were repeatedly revised over several weeks, without transparency or internal consistency.

The issue was ultimately escalated to JAMS administrator Stephanie Jost, who issued a response on March 26, 2025, admitting that the original disclosure was inaccurate due to a "data entry error" caused by the existence of two separate profiles for Mr. Rudd within JAMS systems. This explanation contradicted earlier confirmations from JAMS that the original disclosure was accurate. The correction occurred only after Claimant persistently documented the inconsistencies and directly requested accountability from senior staff.

Although Arbitrator Griffin did not direct these communications, he did acknowledge that the matter was beyond his authority and stated he had escalated it to JAMS administration. However, no meaningful procedural correction or neutral inquiry followed from that escalation, and no formal mechanism was offered to Claimant to challenge the integrity of the disclosure process. The later issuance of a supplemental disclosure on January 23, 2025, confirming that Arbitrator Griffin is engaged in another arbitration (previously not disclosed) involving Mr. Rudd, only exacerbates the perception that relevant conflicts were not transparently addressed from the outset.

These events, taken together, raise serious concerns about institutional impartiality and suggest that JAMS's internal processes may have prioritized reputational containment over transparency. This undermines fairness and demonstrates the appearance of partiality under JAMS Rule 15.

- **Instance #4: Disclosure of Concurrent Arbitration with Respondent's Counsel**
  On January 23, 2025, Arbitrator Griffin issued a supplemental disclosure stating he is acting as an arbitrator in another active arbitration involving Mr. Rudd, Respondent's lead counsel in our case. This disclosure came months into the current proceeding, with no indication of when that engagement began, whether it overlapped with this arbitration from the start, or whether it involved the same corporate party—Red Bull. No explanation or timeline was provided to allow the parties to meaningfully assess the implications of this concurrent relationship.

  What followed was a noticeable and troubling shift in Griffin's handling of our case. Shortly after the late disclosure, Griffin began issuing rulings that consistently and disproportionately favored Respondent—procedural extensions granted without cause, evidentiary findings based solely on attorney assertions, and a refusal to hold Respondent to required discovery standards. These included his failure to enforce his own prior discovery orders, his acceptance of privilege assertions without a privilege log, and his refusal to adjudicate Claimant's core argument that the Federal Arbitration Act (FAA) preempts contrary state-law procedural restrictions—despite the issue being fully briefed and central to Claimant's ability to participate in the process.

The combination of an undisclosed concurrent arbitration, a failure to clarify or remedy the conflict, and an acceleration of rulings hostile to Claimant's position strongly supports the conclusion that Arbitrator Griffin's impartiality has been compromised—or at minimum, that the appearance of partiality has become unavoidably credible. Under JAMS Rule 15, disqualification is warranted when a reasonable person would doubt the arbitrator's neutrality. Based on the timeline and demonstrated conduct, that threshold has clearly been crossed here.

- **Instance #5: Ruling on Representation and Procedural Evasion on FAA Preemption and Arbitrator Authority**
  In Order No. 7, the Arbitrator correctly allowed Claimant's representative to continue in that role, citing JAMS Rule 12(a) and distinguishing state UPL cases from this contractual arbitration. However, in Order No. 10, when Claimant sought a formal clarification that federal law (FAA) governs this arbitration—as expressly provided in the parties' Mutual Arbitration Agreement—Griffin refused to rule, calling it an "advisory opinion." This refusal came despite full briefing, a live dispute, and the clear relevance of FAA supremacy to ongoing procedural questions. The Arbitrator's selective engagement with legal arguments—ruling when it favors Respondent, but refusing to rule when it may favor Claimant—undermines confidence in his neutrality and reveals a pattern of procedural avoidance and selective enforcement.

  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983)* – confirming federal substantive law (FAA) preempts contrary state procedural restrictions in arbitrations governed by FAA.

- **Instance #6: Repeated Post-Deadline Discovery Extensions for Respondent**
  On March 3, 2025, Respondent requested a two-week extension to respond to discovery—despite this violating Griffin's prior scheduling orders. Claimant, did not object, and the extension was granted. However, on the day the new deadline expired (March 21, 2025), Respondent requested an additional three-week extension. This time, Claimant objected and no justification or showing of "good cause" was provided. Nonetheless, Arbitrator Griffin granted the second extension, even though it was after the deadline had already lapsed and clearly violated his prior orders on deadline enforcement. Griffin issued no consequence or rebuke to Respondent. This selective leniency further underscores Griffin's procedural bias and unequal application of his own rules.

- **Instance #7: Order No. 13 – Procedural and Substantive Irregularities Reflecting Bias and Overreach (The Smoking Gun)**
  In May–June 2025, Arbitrator Griffin issued Order No. 13, which reflects not only procedural and legal irregularities, but also a **clear overreach of arbitral authority** in violation of the parties' agreement and the JAMS Employment Arbitration Rules:

  - He ruled sua sponte on the applicability of 820 ILCS 405/1900(B) (the IDES confidentiality statute)—an issue neither party raised, violating the party-presentation principle embedded in arbitration law and JAMS Rules.

  - He misapplied the IDES statute by extending it to private arbitration, despite the statute's plain language and interpretive limits under Illinois law. 820 ILCS 405/1900(B) applies to "actions or proceedings," a phrase that Illinois courts have interpreted to

mean formal legal forums such as courts or administrative tribunals—not consensual, contractual arbitrations. It does not reference or extend to private contractual arbitrations, which are consensual, non-judicial forums. See People v. Bryant, 128 Ill. 2d 448 (1989). Courts consistently hold that confidentiality statutes like this do not apply to arbitration unless the statute explicitly includes arbitration (In re Marriage of Newton, 2011 IL App (1st) 090683) or unless the parties have agreed to such limits (Waffle House, 534 U.S. 279 (2002)). Griffin's decision to exclude documents under this statute—without party request, briefing, or statutory basis—was not just procedurally improper but a judicial expansion of law beyond his contractual authority as arbitrator.

  - By invoking this statute sua sponte—without a motion or argument from either party—Griffin misapplied a public-sector confidentiality rule to a private arbitration setting, creating an evidentiary exclusion that has no foundation in the statute's text or any known Illinois precedent. Courts interpreting similar confidentiality statutes have routinely held that such protections do not apply to arbitration absent a clear legislative mandate or party agreement. Griffin's ruling effectively created a new, judge-made evidentiary bar in arbitration where none existed, and in doing so, overstepped the interpretive authority delegated to him by the parties' agreement. This is not simply legal error; it is a substantive overreach that suppresses relevant and potentially exculpatory evidence based on a statutory theory neither party advanced and which Illinois law does not support. The result is not only procedurally improper—it is incompatible with the parties' arbitration agreement, which calls for fair process under the FAA and JAMS Rules, not judicial invention on evidentiary exclusions.

- Arbitrator Griffin's reliance on the IDES statute—an issue not raised by either party—violated fundamental principles of party presentation and arbitration fairness. While JAMS Rule 22 governs the admissibility of evidence and permits arbitrators to consider any material and relevant evidence, it presumes that parties will have the opportunity to present such evidence and address its admissibility. Here, Griffin invoked a legal theory sua sponte, applied a statute that neither party cited, and excluded evidence without giving Claimant an opportunity to brief or argue the issue. This denied Claimant the procedural right to respond to a dispositive legal objection and contravenes the FAA's core protections of arbitral process. Suppressing decisive evidence on grounds never raised by the parties, and without hearing, constitutes both a due process violation and an overreach of arbitral authority under FAA §10(a)(4) and the parties' own agreement.

- He refused to enforce his own Order No. 12, which mandated a privilege log for any claims of privilege. Respondent never submitted one, yet Griffin accepted their claims without consequence.

- He treated attorney argument as fact, ruling that no written report existed based on counsel's assertions alone—despite the absence of declarations, affidavits, or other evidence.

- He declined to address Claimant's argument that Red Bull waived privilege by deploying the investigation results at the IDES hearing and in a formal cease-and-desist response letter.

These failures, in isolation, are serious. Taken together, they show that Arbitrator Griffin not only displays clear favoritism but acts outside the scope of his authority under the parties' agreement—which expressly incorporates the Federal Arbitration Act (FAA) and the JAMS Employment Arbitration Rules. By introducing legal defenses on behalf of one party, suppressing key evidence without due process, and substituting unilateral legal conclusions for actual party arguments, Griffin has crossed the line from mistaken interpretation into improper assumption of judicial authority—the very kind of conduct courts have identified as grounds for vacatur or disqualification.

As the parties' arbitration agreement expressly incorporates the FAA, any action by the arbitrator that departs from the terms of that agreement—such as deciding issues never presented or creating evidentiary exclusions not contemplated by statute or contract—violates the FAA's framework and exposes the award to later challenge.

This is not a mere evidentiary ruling or discretionary error—it is a direct and unilateral intervention that created a new legal defense, excluded material evidence, and deprived Claimant of participation. Such action far exceeds an arbitrator's authority under the FAA and cannot be dismissed as harmless or procedural.

***If Arbitrator Griffin were truly acting as a neutral and impartial decision-maker, why would he independently raise and apply a legal statute—never invoked by either party—as the basis to exclude discovery evidence that could be adverse to Respondent? What clearer demonstration of partiality could there be than an arbitrator introducing and applying legal defenses that the Respondent itself never asserted?***

**III. VIOLATION OF JAMS ETHICS GUIDELINES ON IMPARTIALITY, DISCLOSURE, AND EQUAL TREATMENT**

Arbitrator Griffin's conduct—particularly as reflected in Order No. 13 and the surrounding pattern of procedural favoritism—constitutes not only a breach of procedural fairness under JAMS Rule 15(i), but also a violation of the JAMS Arbitrator Ethics Guidelines, which are binding standards of conduct for all JAMS neutrals.

Specifically:

- **Guideline I(A)** requires that "[a]n arbitrator shall act at all times with independence, integrity and impartiality."
- **Guideline I(B)** prohibits conduct that "creates an appearance of bias or impropriety in favor of or against a party."
- **Guideline II(A)** imposes an ongoing duty to disclose "any facts or circumstances that might reasonably cause the arbitrator's impartiality to be questioned, including… relationships with parties or counsel."
- **Guideline VI** emphasizes that arbitrators "shall afford all parties the right to be heard" and must not engage in conduct that deprives a party of "a fair opportunity to present its case."

- **Guideline VIII(A)** further requires that arbitrators "shall comply with applicable law" and apply procedural fairness uniformly.

By sua sponte invoking a legal statute never raised by either party—820 ILCS 405/1900—and using it as the sole basis to exclude potentially material discovery, without briefing or opportunity to respond, Arbitrator Griffin violated Guideline VI. This deprived Claimant of both notice and a fair opportunity to be heard. Moreover, the unilateral creation of a legal defense for Respondent raises serious concerns under Guidelines I and II, which prohibit both actual bias and the appearance thereof.

The broader pattern—including repeated post-deadline extensions granted only to Respondent, ignoring clear violations of discovery orders, and selective enforcement of the arbitration agreement—only amplifies the credibility of this challenge. When considered together with the late disclosure of a concurrent arbitration involving Respondent's counsel, this creates a compounding and credible perception of partiality and institutional unfairness.

**IV. LEGAL MISSTEPS AND SUBSTANTIVE IRREGULARITIES**

Arbitrator Griffin has issued rulings that are legally unsupported, inconsistent, and one-sided, including:

- Invoking a statutory confidentiality provision never raised by either party.
- Blocking evidence without hearing or briefing, violating due process.
- Applying state statutes in arbitration in a way that conflicts with FAA supremacy.
- Ignoring briefing on FAA preemption.
- Refusing to enforce discovery or privilege compliance while accepting legal claims unsupported by evidence.

These are not merely differences in judgment—they show misapplication of law that consistently favors one side.

**V. INCOMPETENCE AND DELAY THROUGHOUT THE PROCEEDING**

- Claimant has met every deadline, often submitting ahead of schedule.
- Griffin has been slow to issue rulings and has approved every delay requested by Respondent, including several made after deadlines expired.
- He has repeatedly emphasized the seriousness of deadlines to the parties, yet applies no such standard to Respondent.
- Discovery has been delayed more than seven months, with no meaningful production—Griffin accepted "we're still searching" as sufficient. Griffin demanded Respondent to at least answer a simple series of "Yes/No" questions forthwith, but Respondent ignored this demand, and there has been no consequence, yet more than a month has lapsed.
- This arbitration is now **11 months** in, and discovery is still not complete with no foresight that it ever per the rules of JAMS. Claimant has waited nearly 3 years since his wrongful termination, doing everything to expedite justice.

Griffin's conduct has allowed, and even encouraged, these delays—further compromising fairness.

**VI. CONSISTENT FAVORITISM AND APPEARANCE OF BIAS**

Across every category—deadlines, discovery, evidence, legal interpretation—Griffin has ruled in favor of Respondent. This is not accidental or isolated; it reflects a sustained pattern of partiality:

- Respondent's delays are always granted without good cause.
- Respondent's legal theories are accepted and even embellished by the Arbitrator *sua sponte*, whereas Claimant's are either outright ignored or selectively applied at best.
- Respondent is unjustifiably shielded from scrutiny, while Claimant faces procedural roadblocks at every step.

Griffin's concurrent arbitration with Respondent's counsel—disclosed only mid-proceeding—amplifies the appearance of bias, especially when every legal procedure reflects that very favoritism.

**VII. PROCEDURAL POSTURE AND TIMING**

Importantly, this challenge comes before any ruling on the merits of the case. The arbitration remains firmly within the discovery stage, with the parties still exchanging requests and responses and litigating procedural motions. As such, granting this challenge would not cause material disruption to the process. No hearings on liability or damages have occurred, and no final disclosures or witness lists have been submitted. This is precisely the moment at which a correction can be made with minimal prejudice to either party—preserving fairness without causing delay.

JAMS has the opportunity to intervene at a point where trust can still be restored and the appearance of bias can still be remedied before final outcomes are tainted by structural unfairness. Allowing this challenge to proceed now is not only feasible—it is essential to ensuring the legitimacy of the proceeding going forward.

**VIII. CLOSING AND SUMMARY**

Arbitrator Griffin's continued involvement threatens the fairness and integrity of this proceeding. The procedural violations, legal missteps, unexplained delays, and consistent pattern of bias—when combined with an overlapping engagement with Respondent's counsel—form a compelling basis for disqualification under JAMS Rule 15.

It is arbitrations like this, and arbitrators like this, that erode public trust in arbitration generally, including JAMS specifically.

This is not merely an appearance of bias. At this point, bias has manifested through concrete rulings and procedural conduct. The arbitrator's selective application of deadlines, legal standards, and evidentiary requirements not only undermines confidence in this arbitration but threatens the enforceability of any eventual award. The Arbitrator's conduct to date raises not only serious questions under JAMS standards, but would likely be grounds for vacatur under FAA §10(a)(4) for exceeding arbitral authority.

At this stage, the arbitration has taken on the unmistakable character of two against one, with both the arbitrator's procedural discretion and Respondent's conduct aligning in ways that consistently disadvantage Claimant. This is antithetical to the principle of neutrality that JAMS promises and parties

rely on. The process no longer reflects an impartial forum for resolving disputes—it increasingly resembles a system where one side enjoys informal procedural cover while the other is left to navigate shifting standards and ignored objections.

Claimant respectfully requests that JAMS immediately reassign this matter to a new arbitrator to protect the neutrality, credibility, and integrity of the process.

**IX. SUPPORTING LEGAL AUTHORITY ON ARBITRATOR DISQUALIFICATION**

- *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278 (5th Cir. 2007)
    - The Fifth Circuit affirmed that evident partiality may be shown when a reasonable person would have to conclude that an arbitrator was partial to one party.
- *Burlington N. R. Co. v. TUCO, Inc.*, 960 S.W.2d 629 (Tex. 1997)
    - An award was vacated when an arbitrator failed to disclose material connections with one party's counsel, affirming that impartiality includes avoiding both actual and apparent bias.
- *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)
    - Arbitrators may not impose substantive decisions not grounded in contract or party agreement.

**X. EXHIBITS**

- All motions and orders are available to be chronologically investigated in the case docket via JAMS access.
- Relevant emails demonstrating procedural impropriety are attached.

**Dated:** June 10th, 2025

Respectfully Submitted,

Hon. Robert P. Essertier

**JAMS**

| | |
|---|---|
| CHARLES LECLERC,<br><br>Claimant,<br><br>v.<br><br>RED BULL NORTH AMERICA, INC.<br><br>Respondent. | JAMS Ref. No. 5340001145<br><br>Arbitrator: Hon. Judge John C. Griffin (Ret.) |

**RESPONDENT'S RESPONSE TO CLAIMANT'S FORMAL CHALLENGE TO ARBITRATOR JOHN C. GRIFFIN – APPEARANCE OF BIAS AND PROCEDURAL MISCONDUCT**

Respondent, RED BULL NORTH AMERICA, INC. ("Respondent" or "Red Bull"), by its attorneys Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby submits its Response to Claimant, Charles Leclerc's ("Claimant" or "Leclerc") Formal Challenge to Arbitrator John C. Griffin – Appearance of Bias and Procedural Misconduct ("Claimant's Challenge") as follows:

## I. BACKGROUND

Claimant filed his initial demand for arbitration on July 14, 2025. On August 23, 2024, JAMS provided the parties with a list of arbitrators and directed them to submit their strike and rank lists. Based on the parties' lists and arbitrator availability, JAMS appointed Judge David H. Coar ("Arbitrator Coar") to this Arbitration on September 9, 2024. Claimant immediately filed an objection to Arbitrator Coar's appointment, alleging concerns of unfairness and bias. Red Bull did not respond to Claimant's objections because it felt there was little value in filing a response to Claimant's concerns regarding how Judge Coar was appointed, as JAMS's decision was internal and solely based on the parties' respective rank and strike lists, as well as arbitrator availability. JAMS ultimately found there was insufficient evidence to warrant the disqualification of Arbitrator Coar. JAMS specifically noted that the mere fact that Arbitrator Coar

previously handled cases involving a particular law firm does not, by itself, constitute sufficient evidence of bias to justify disqualification under Rule 15. Nonetheless, because the case was in its early stages, JAMS agreed to remove Arbitrator Coar from this proceeding and appoint a new arbitrator, again, based on the parties' strike and rank lists and arbitrator availability. On October 2, 2024, JAMS appointed Judge John C. Griffin ("Arbitrator Griffin") as the new arbitrator in this matter.

## II. ARGUMENT

### A. This is Claimant's Second Challenge to JAMS's Arbitrator Selection.

Claimant's September 9, 2024, objection to Judge Coar was meritless. The basis for Claimant's objection to Arbitrator Coar was that Arbitrator Coar previously served as a neutral arbitrator in three cases (now closed) with Ogletree Deakins, raising concerns of impartiality and unfairness. Ogletree Deakins is a nationally recognized law firm with over 1,000 attorneys in 60 offices, representing employer interests. JAMS too, provides comprehensive arbitration and mediation services nationwide, with several of its cases falling within the Labor & Employment sector. Arbitrator Coar, an experienced litigator, arbitrator, and mediator, has served as an arbitrator for JAMS since 2011. It is therefore unsurprising that he was selected as the initial arbitrator in this matter. Nonetheless, Claimant asserted that Arbitrator Coar's appointment to this arbitration was unfair and prejudicial. Despite wholly disagreeing with Claimant's assertions, JAMS appointed a new arbitrator to this matter. Claimant now brings this Challenge to Arbitrator Griffin on similar grounds.

### B. Claimant's Argument of Repeated Procedural Misconduct and Rule Violations is Meritless.

In his Challenge, Claimant raises seven instances of alleged procedural misconduct committed by Arbitrator Griffin. The first instance alleges that Arbitrator Griffin improperly granted

Respondent's extension request to file a Motion for Leave to File Summary Disposition, as Respondent's request was inconsistent with JAMS's rules, and Arbitrator Griffin had already entered a deadline for Respondent to file its Motion. (Instance #1). When Arbitrator Griffin granted Respondent's extension request, Claimant filed a Formal Objection to Respondent's Extension Request expressing his concerns. In response, Arbitrator Griffin held a conference with the parties during which he acknowledged that JAMS committed a mistake in granting the extension[1], apologized to Claimant, and assured both parties that such an occurrence would not happen again. Arbitrator Griffin's decision to grant Respondent's request was the result of an honest miscommunication between Arbitrator Griffin and his case administrator, for which Arbitrator Griffin took full accountability. Notably, Respondent's Motion for Leave to File Summary Disposition was ultimately denied, in its entirety.

The remaining instances noted in Claimant's Challenge are baseless. Claimant raises issue with JAMS's disclosures regarding Respondent's counsel's (Attorney Jeffrey L. Rudd) prior involvement in JAMS proceedings and Arbitrator Griffin's concurrent involvement in an unrelated JAMS arbitration with Mr. Rudd (Instances #3 and #4). However, JAMS already issued a final decision on both matters. (Exhibit A). Notably, in his instant Challenge, Claimant acknowledges that Arbitrator Griffin was not involved in the decision-making process for either of these instances, as both concerns were escalated to JAMS administration for a final decision. As such, neither instance implies bias or unfairness on the part of Arbitrator Griffin, warranting his removal from this matter. Nonetheless, as JAMS administration already held, Mr. Rudd's prior involvement with JAMS is irrelevant to this matter. Further, Arbitrator Griffin's concurrent involvement in an

[1] During the conference, Arbitrator Griffin acknowledged that Respondent's extension request, made via email directly to Arbitrator Griffin, was inconsistent with JAMS's rules, calling for extension requests to be uploaded via JAMS Access, and therefore should not have been granted.

unrelated arbitration with Mr. Rudd does not raise an issue of bias or unfairness to Claimant in this matter.

Claimant's Challenge also raises concern with Arbitrator Griffin's decisions related to discovery in this arbitration. (Instances #2 and #6). JAMS rules clearly grant the arbitrator authority to decide any discovery disputes. (JAMS Comprehensive Arbitration Rules and Procedures, Rule 17(d)). While JAMS rules do not impose a limit on the number of discovery requests a party may issue, Arbitrator Griffin agreed that Claimant's initial discovery to Respondent was unduly burdensome and unnecessary to the merits of this case. As such, he directed Claimant to limit his discovery to no more than thirty (30) interrogatories. [Dkt. 6]. As the Federal Rules of Civil Procedure limit the number of interrogatories a party may issue to twenty-five (25), Arbitrator Griffin's decision to limit Claimant to thirty (30) interrogatories was fair. As it relates to Claimant's issue with Arbitrator Griffin granting Respondent's two extension requests, Respondent highlights that Claimant agreed to Respondent's first extension request, for which he too was granted an extension to respond to Respondent's discovery. (Exhibit B). Furthermore, the arbitrator has repeatedly explained to the parties that discovery is a "process" which takes time and is seldom completed in one initial phase. Although Claimant's Challenge asserts that Respondent's second extension request was untimely, Respondent, prior to the deadline, asked Claimant if he was agreeable to mutual one-week extension. At that time, Respondent also informed Claimant that if he did not agree, it would proceed with filing a formal motion for a one-week extension. Claimant objected to Respondent's request and submitted its responses. As such, prior to the deadline, Respondent filed its Motion for a one-week extension, which the Arbitrator granted. Again, per Rule 17(d), the Arbitrator has authority to decide these types of discovery disputes. Less than one week after its second extension request, Respondent

responded to Claimant's discovery with several responsive documents and Answers responsive to Claimant's Interrogatories. However, Claimant's discovery seeks information and materials related to a wide array of information, surrounding Claimant's twenty-one (21) pending claims. As Respondent has repeatedly explained to Claimant and the Arbitrator, Red Bull is conducting an e-discovery search for responsive, relevant information and records. Arbitrator Griffin acknowledged the time it takes to review the thousands of records that may result from an electronic search and directed Respondent to continue providing responsive information and records to Claimant's discovery on a rolling basis, which Respondent has done and will continue to do.

The remaining instances noted in Claimant's Challenge are merely Claimant's disagreement with Arbitrator Griffin's legal findings and holdings. (Instances #5 and #7). Again, the arbitrator has final authority to decide disputes between the parties – that is what has occurred here. Despite Respondent's position that Claimant's representative, a non-attorney, should not be allowed to represent Claimant in a legal proceeding, Arbitrator Griffin held that JAMS rules state otherwise. Although Respondent was surprised and disappointed in the arbitrator's decision, it respected and continues to abide by it, actively communicating and collaborating with Claimant's representative. Claimant, on the other hand, has pushed back on any of the Arbitrator's holdings which do not fully align with his claims. Specifically, in this Challenge, Claimant contests one of Arbitrator Griffin's orders, which states that Claimant's Motion for Clarification of Governing Law sought an advisory opinion on the applicability of federal law in this arbitration. Claimant's Challenge argues that the arbitrator's decision should have been identified as a legal ruling, rather than an advisory opinion. (Instance #5). Claimant also challenges Arbitrator Griffin's holding that the Illinois Department of Employment Security ("IDES") prevents the disclosure of information used

in an IDES hearing which, contrary to Claimant's allegation in the Challenge, was specifically raised by Respondent in its Responses to Claimant's First Request for Production. *See* Exhibit C, at 12. (Instance #7). Claimant fails to understand and acknowledge that many of his arguments are simply inconsistent with applicable law, and **that** is the reason Arbitrator Griffin did not rule in his favor – not due to bias. Claimant's Challenge is his latest objection to this arbitration not proceeding with his expectations.

**C. Any Delays Are a Result of Claimant's Continued Challenges.**

As stated, Claimant filed his initial arbitration demand on July 14, 2024. After several amendments to the demand, Claimant filed his final arbitration demand, Claimant's Consolidated Amended Demand for Arbitration, on November 4. 2024. Respondent was therefore unable to file its Motion for Leave to File Summary Disposition until it reviewed Claimant's final demand. As stated herein, Claimant then issued an unduly burdensome amount of discovery to Respondent, which he was directed to revise and narrow – resulting in a delay to discovery proceedings. Claimant has filed numerous other motions and challenges throughout this arbitration proceeding, including the previously mentioned Formal Challenge to Appointment of Arbitrator (September 9, 2024). Additionally, Claimant has filed a Formal Request for Clarification, Further Disclosure, and Resolution of Concerns Prior to Arbitration (October 2, 2024); Formal Response to JAMS Regarding Appearance of Bias, Transparency, and Enforceability of the Mutual Arbitration Agreement (October 14, 2024); Motion to Address Misrepresentation by Respondent (January 23, 2025); Motion for Clarification of Governing Law and Arbitrator's Authority (March 9, 2025); Motion to Compel Discovery (April 9, 2025); Motion to Compel Production of Investigation Report and Request for Adverse Inference (May 1, 2025); and the instant Formal Challenge to Arbitrator John C. Griffin-Appearance of Bias (June 10, 2025). The parties have fully briefed most

of these challenges, further delaying the arbitration proceeding. Thus, Claimant's frustration with the continued delay is primarily due to his own ongoing challenges to Respondent's, Arbitrator Griffin's, and JAMS's processes throughout the arbitration.

## III. CONCLUSION

Claimant's Challenge should be denied because he has not offered any concrete evidence of bias, unfairness, or favoritism on the part of Arbitrator Griffin.

Dated: June 18, 2025

Respectfully Submitted,

By: /s/ Jeffrey L. Rudd
One of the Attorneys for Respondent

Jeffrey L. Rudd (ARDC No. 6273373)
Amy R. Cortez (ARDC No. 6335725)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone: 312.558.1220
*jeffrey.rudd@ogletreedeakins.com*
*amy.cortez@ogletreedeakins.com*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 18, 2025, the foregoing ***Respondent's Response to Claimant's Formal Challenge to Arbitrator John C. Griffin – Appearance of Bias and Procedural Misconduct*** was served electronically via JAMS Access upon Claimant and Claimant's Representative.

/s/ Jeffrey L. Rudd
One of the Attorneys for Respondent
**RED BULL NORTH AMERICA, INC.**

NOTICE TO ALL PARTIES June 24, 2025

**RE: Leclerc, Charles vs. Red Bull North America, Inc. – 5340001145**

Dear Parties:

Pursuant to JAMS Employment Arbitration Rules 1(c) and 15(i), the JAMS National Arbitration Committee (NAC) has received and reviewed Claimant's challenge to the continued service of Hon. John C. Griffin (Ret.) as arbitrator, and Respondent's response thereto.

Claimant bases his challenge on what he describes as "a persistent pattern of procedural irregularities, legal missteps, and one-sided rulings that cumulatively establish credible bias." Challenge, p. 1.

As a preliminary matter, adverse rulings *per se* do not constitute evidence of bias or otherwise support arbitrator disqualification. Moreover, the NAC notes that the arbitrator appears to have ruled in Claimant's favor at least twice, denying Respondent's petition to file a Motion for Summary Disposition (Order No. 4) and denying Respondent's request to disqualify Claimant's counsel (Order No. 7).

The arbitrator has the authority to establish or extend deadlines as he or she deems appropriate to facilitate a fair and expeditious proceeding. The arbitrator has the authority to resolve discovery disputes (JAMS Rule 17), disputes about the conduct of the proceeding (JAMS Rule 11(a)), and jurisdictional or arbitrability disputes, including disputes over the interpretation or scope of the arbitration agreement (JAMS Rule 11(b)). The NAC does not believe the arbitrator's conduct in exercising his authority in this arbitration reveals bias. Nor does the NAC see a lack of diligence or promptness on the part of the arbitrator.

Regarding what the instant challenge terms "[a] major procedural irregularity," the NAC refers the parties to the March 26, 2025, letter of JAMS associate Stephanie Jost, which explains an administrative error in connection with an institutional disclosure report. The letter further advises that "as previously indicated, the error did not affect the arbitrator's disclosures in this case." Neither the error nor the subsequently provided corrected report provides a basis for arbitrator disqualification.

As the challenge notes, on January 23, 2025, the parties received a supplemental disclosure advising that Judge Griffin had been selected to serve as a neutral arbitrator in another matter

involving Mr. Jeffery Rudd and the firm of Ogletree Deakins. Judge Griffin did not receive an offer to serve as an arbitrator in the new case. Rather, JAMS included his name in a list of available arbitrators and, pursuant to the rules applicable to the new case, directed the parties to strike and rank the names on the list according to preference. Judge Griffin was not informed that his name was included in the list prior to his selection. Judge Griffin was appointed as the arbitrator in the new matter by way of this strike and rank process. The disclosure in this matter was provided the day of his appointment in the new matter—January 23, 2025. The disclosure identified all parties, lawyers, and law firms in common between the two arbitrations (there are no parties in common). Service as a dispute resolution neutral in one new matter involving a lawyer to a party in the present matter does not undermine the appearance of impartiality or otherwise support arbitrator disqualification. Moreover, any objection to the arbitrator based on a notice provided in January is now waived under JAMS Rule 27(b), which provides, "If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator."

The NAC understands that Claimant does not agree with all of the arbitrator's decisions to date. However, the NAC does not believe that Claimant's challenge gives rise to justifiable doubt as to the arbitrator's impartiality or independence. Nor does the NAC find evidence of bias, arbitrator misconduct, or other grounds to support arbitrator disqualification. Taking into account the materiality of the facts and any prejudice to the parties, the NAC hereby denies Claimant's challenge.

Sincerely,

*/s/ Sheri Eisner*

Sheri Eisner
Executive Vice President, General Counsel
Co-Chair, JAMS National Arbitration Committee

# REQUEST FOR CLARIFICATION REGARDING NAC REVIEW

**Leclerc, Charles vs. Red Bull North America, Inc.**
**JAMS Reference No. 5340001145**

---

Dear Members of the National Arbitration Committee,

I am writing to respectfully request clarification regarding your recent decision in response to my **Formal Challenge to Arbitrator John C. Griffin**, submitted on June 10, 2025.

In particular, I seek clarity regarding the **NAC's treatment (or lack thereof) of Instance #7**, which concerns **Order No. 13**, issued by the arbitrator. As explained in my motion, this ruling involved more than a simple evidentiary judgment—it reflected a **sua sponte legal intervention** that implicated both due process and arbitral impartiality.

**Summary of Concern**

In Order No. 13, Arbitrator Griffin:

- Invoked and applied **820 ILCS 405/1900(B)**, a statutory provision regarding IDES confidentiality.
- Did so **without either party having cited or raised the statute**.
- Relied solely on this statute to exclude evidence adverse to Respondent.
- Gave **no notice or opportunity for briefing or argument** before issuing the exclusion.
- Did not allow Claimant a chance to respond under JAMS Rule 22(d).

This **unprompted and unilateral legal ruling** formed the **sole basis** for excluding potentially case-altering discovery material. It effectively manufactured a legal defense for one party—**without that party even requesting it**—which raises substantial concerns about both **neutrality** and **procedural fairness**.

**Governing Standards Violated**

1. **JAMS Rule 22(d)** requires that:

"All Parties are afforded the opportunity to present material and relevant evidence."

This rule presupposes fair notice and participation in evidentiary decisions, especially when exclusion is based on legal privilege or statutory interpretation.

2. **Case law confirms that this conduct exceeds permissible bounds**:

    - *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289, 1295 (9th Cir. 1987): Arbitrators must act within the issues and legal theories framed by the parties.
    - *Totem Marine Tug & Barge v. North American Towing*, 607 F.2d 649, 651 (5th Cir. 1979): Arbitral decisions that deny a party the opportunity to be heard must be vacated.

- *Brabham v. A.G. Edwards & Sons*, 376 F.3d 377, 386 (5th Cir. 2004): An arbitrator's award is unenforceable where one party is deprived of the right to present evidence or respond.

3. **JAMS Ethical Guidelines for Arbitrators** also emphasize impartiality, independence, and transparency. An arbitrator unilaterally generating legal arguments to benefit one party risks breaching Guideline I(A):

"A neutral shall act at all times with independence, integrity, and impartiality."

**Clarification Requested**

The NAC's letter did not address this pivotal issue—**that the statute was never raised by either party** and was used by the arbitrator to unilaterally alter the scope of evidence.

Therefore, I respectfully request the following clarification:

**Does the NAC believe that an arbitrator's decision to independently raise and apply a legal statute—without party input or briefing, and to the benefit of one party—comports with JAMS Rules, the FAA, and the ethical duty of neutrality?**

I thank you for the time and attention given to my challenge and respectfully ask that this issue, which sits at the very core of the dispute, receive a direct response or acknowledgment for the record.

You are also encouraged to revise your decision.

Sincerely,
**Charles Leclerc**

**Dated:** June 24th, 2025

**JAMS**

| | |
|---|---|
| CHARLES LECLERC,<br>Claimant,<br>v.<br>RED BULL NORTH AMERICA, INC.<br>Respondent. | JAMS Ref. No. 5340001145<br><br>Arbitrator: Hon. Judge John C. Griffin (Ret.) |

**RESPONDENT'S RESPONSE TO CLAIMANT'S REQUEST FOR CLARIFICATION REGARDING NAC REVIEW**

Respondent, RED BULL NORTH AMERICA, INC. ("Respondent" or "Red Bull"), by its attorneys Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby submits its Response to Claimant, Charles Leclerc's ("Claimant" or "Leclerc") Request for Clarification Regarding NAC Review ("Claimant's Request") as follows:

## I. BACKGROUND

On June 10, 2025, Claimant submitted a Formal Challenge to Arbitrator John C. Griffin-Appearance of Bias and Procedural Misconduct ("Claimant's Challenge"), and on June 18, 2025, Respondent submitted its response to Claimant's Challenge. On June 24, 2025, the JAMS National Arbitration Committee ("NAC") issued its findings, denying Claimant's Challenge. That same day, Claimant filed a Request for Clarification Regarding NAC Review, specifically pertaining to Instance #7 raised in Claimant's Challenge.

## II. ARGUMENT

### A. Claimant's Motion to Compel Investigation Report and Request for Adverse Findings Specifically Raised the Parties' IDES Unemployment Hearing.

In his Challenge and Request for Clarification, Claimant alleges that Arbitrator Griffin made an overreaching ruling on Claimant's Motion to Compel Production of Investigation Report

and Request for Adverse Inference ("Claimant's Motion") by introducing an issue that neither party raised. Specifically, Claimant raises concern with Arbitrator Griffin's ruling that the Unemployment Insurance Act ("the Act") states that Illinois Department of Employment Security ("IDES") hearings are confidential and therefore prevents information from IDES hearings to be used in other matters. [Dkt. #13]. However, the core of Claimant's Motion argued that based on Respondent's statements during the parties' IDES hearing and the IDES Administrative Law Judge's Decision, he believes an investigation report exists. Thus, Claimant himself raised the issue of whether information from an IDES hearing may be considered in this arbitration proceeding.

Furthermore, Claimant's allegation that Respondent did not raise this issue is also incorrect. As stated in Respondent's Response to Claimant's Challenge, Respondent previously raised the IDES confidentiality objection in its Response to Claimant's Request for Production. (Respondent's Response to Claimant's Formal Challenge, at 5-6). It is for this reason, also, that Arbitrator Griffin appropriately ruled that the parties may not rely on information from their IDES hearing in this arbitration proceeding. Because Respondent had already raised a confidentiality objection in its Response to Claimant's Request for Production, it found no value in reiterating the same argument in its Response to Claimant's Motion.

**B. Arbitrator Griffin Appropriately Construed the Unemployment Insurance Act.**

Claimant's Challenge and Request for Clarification also assert that Arbitrator Griffin misapplied the Act by extending it to this arbitration proceeding. In his Formal Challenge, Claimant cites to an Illinois Supreme Court case, *People v. Bryant*, which he alleges holds that the Act does not extend to private contractual arbitrations. (Claimant's Challenge, at 4). However, *Bryant* is in no way related to the Unemployment Insurance Act, let alone the forums in which it

may be applied.[1] Claimant's Challenge also references *In re Marriage if Newton*,[2] and *EEOC v. Waffle House, Inc.*,[3] which he claims hold that confidentiality statutes do not apply to arbitrations unless the statutes explicitly include arbitration or the parties have agreed to such limits. *Id*. Again, neither of these cases relate to the applicability of confidentiality statutes in an arbitration forum.

Nonetheless, even if Respondent had not already raised the confidentiality objection in its Response to Claimant's Request for Production, the Arbitrator was authorized to independently raise the Act in his ruling, as it was relevant to the dispute at issue and fell within the scope of applicable law. In contrast to Claimant's view, this arbitration is considered a "proceeding" and is therefore subject to the Act. *See Bushell v. Caterpillar, Inc.*, 291 Ill. App. 3d 559 (1997) (holding that arbitration proceedings constitute quasi-judicial proceedings).

## III. CONCLUSION

For the reasons stated herein, and in Respondent's Response to Claimant's Formal Challenge to Arbitrator, Respondent maintains that Claimant's Instance #7 does not imply any evidence of bias, unfairness, or favoritism by Arbitrator Griffin.

Dated: June 30, 2025

Respectfully Submitted,

By: /s/ Jeffrey L. Rudd
One of the Attorneys for Respondent

Jeffrey L. Rudd (ARDC No. 6273373)
Amy R. Cortez (ARDC No. 6335725)

[1] The primary holding in *People v. Bryant* is that the Illinois Vehicle Code is intended to prohibit all persons, not just organized vehicle motor thieves, from possessing stolen vehicles. *People v. Bryant*, 128 Ill. 2d 448 (1989).
[2] The primary holding in *In re Marriage of Newton* states that two attorneys' retainer agreement with a client was void ab initio because it violated 750 ILCS 5/508(c)(3) about written agreement to retain counsel since the agreement ran afoul of Illinois Supreme Court Rule of Professional Conduct 1.9 against allowing conflicts of interest. *Newton v. Newton*, 955 N.E.2d 572, 2011 Ill. App. LEXIS 715, 2011 IL App (1st) 090683, 353 Ill. Dec. 105.
[3] The primary holding in *EEOC v. Waffle House, Inc.* states that the parties' arbitration agreement did not limit the remedies available to the EEOC because the text of the applicable statutes did not authorize courts to balance competing policies of the ADA and FAA or to second-guess the EEOC's judgment concerning which of the remedies authorized by law that it was to seek in any given case. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 282–83, 298, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone: 312.558.1220
*jeffrey.rudd@ogletreedeakins.com*
*amy.cortez@ogletreedeakins.com*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 30, 2025, the foregoing ***Respondent's Response to Claimant's Request for Clarification Regarding NAC Review*** was served electronically via JAMS Access upon Claimant and Claimant's Representative.

/s/ Jeffrey L. Rudd
One of the Attorneys for Respondent
**RED BULL NORTH AMERICA, INC.**

NOTICE TO ALL PARTIES July 9, 2025

**RE: Leclerc, Charles vs. Red Bull North America, Inc. – 5340001145**

Dear Parties:

The JAMS National Arbitration Committee (NAC) has received Claimant's "Request for Clarification Regarding NAC Review," and the parties' related submissions. Claimant's request is denied. The NAC's denial of Claimant's challenge to the continued service of Hon. John C. Griffin (Ret.) is final. See JAMS Rule 15(i). Prior to Award, issues with the substance of an arbitrator's rulings may be raised with the arbitrator.

Sincerely,

*/s/ Jonathan Williams*

Jonathan Williams
Legal Operations Manager
On Behalf of the JAMS National Arbitration Committee