FILED
11/15/2026
THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT
BC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Case No: 1:26-CV-07715

Charles Leclerc v. Red Bull North America, Inc., et al.
Case No. 1:26-cv-07715
Judge Sharon Johnson Coleman

# SUPPLEMENTAL EXHIBIT K

## Order 16 enforcement briefing and orders from January 2, 2026 to February 23, 2026

40 source pages follow this identifying cover.

Pages 1–5: January 2, 2026 operative motion (appended source pages 6–81 omitted). Pages 6–17: complete January 16, 2026 response and log. Pages 18–34: complete January 21, 2026 consolidated reply.

Pages 35–37: Order 33, dated January 28, 2026. Pages 38–40: Order 34, dated February 23, 2026.

This cover is not part of the original document. References to pages of this exhibit exclude this cover.

# CLAIMANT'S EMERGENCY MOTION TO ENFORCE COMPLIANCE WITH ORDER NO. 16, FOR SANCTIONS, AND TO MEMORIALIZE CONTEMPT OF THE TRIBUNAL

**Leclerc, Charles vs. Red Bull North America, Inc.**
**JAMS Reference No. 5340001145**

---

## I. INTRODUCTION

Claimant respectfully submits this **Emergency Motion** to enforce the clear, mandatory directives contained in **Order No. 16 (Sept. 12, 2025)**, which required Respondent Red Bull North America ("Respondent") to produce, or log and submit for *in camera* review, all documents and notes arising from the internal investigation conducted by attorney Castañeda and Red Bull counsel Kim Brooks.

More than **three months** after that order issued, Respondent has done neither. Instead, it has responded with open defiance, asserting there "is no investigation report" and promising it can "complete the privilege log after the holidays." Respondent also misrepresented that this fact had been confirmed by the Arbitrator. This assertion directly contradicts the Arbitrator's findings and mandates in Order No. 16, as well as Respondent's own admissions from the briefing process leading up to Order No. 16 that is on the record. Order No. 16 was the last time this issue was addressed by the Arbitrator. Such conduct is not delay—it is **contempt of the tribunal**.

The Arbitrator's prior orders, taken together, now leave no ambiguity: the materials exist, they were the **sole basis of Claimant's termination**, and Respondent has been ordered to produce or log them. Continued inaction reduces this proceeding to a façade and places it in direct violation of **JAMS Rules 17(a) and 22(d)** and **9 U.S.C. § 10(a)(3)–(4)**.

This motion therefore seeks immediate enforcement, sanctions, and a formal finding of contempt, or, failing that, a clear record confirming the tribunal's refusal to enforce its own order for later judicial review.

## II. PROCEDURAL BACKGROUND

1. **Initial Discovery Request (February 7, 2025).**
   Claimant requested all materials related to the Investigation Report in its Request for Production of Documents. **Respondent failed to comply by its due date of March 27, 2025 per the Arbitrator's Order No. 8.**

2. **Motion to Compel Production of the Investigation Report (May 1, 2025).**
   Claimant moved to compel production of the "investigation report" and related materials that Respondent identified as the **basis for Claimant's termination**. Respondent opposed, claiming that "no report exists" but simultaneously asserting privilege.

3. **Order No. 13 (June 2, 2025).**
   The Arbitrator found that:

- The investigator **interviewed seven witnesses** and took **notes**.
- Counsel **Kim Brooks prepared a written summary** of her "thoughts and impressions." These findings confirm that written documents exist. Nonetheless, the Arbitrator denied production and, **sua sponte**, invoked **820 ILCS 405/1900(B)**—a state evidentiary bar that — to exclude material evidence, despite no party raising or briefing that issue.
  - **Invoking 820 ILCS 405/1900(B) in Order No. 13 also directly contradicts the Arbitrator's rationale in Order No. 7** (March 4, 2025) where he quotes clearly that *"Arbitration is not a judicial proceeding but, rather, an alternative to such a proceeding, given that judicial fact-finding, court proceedings, evidentiary rules, and other characteristics of the judicial process do not apply in the arbitration context."*

4. **Claimant files Formal Challenge to Arbitrator John C. Griffin – Appearance of Bias And Procedural Misconduct (June 10th, 2025).**
   - The Claimant files to have the Arbitrator removed **for cause** by the JAMS National Arbitration Committee (NAC) for a series of biased procedural irregularities always favoring Respondent and for the "smoking gun" misconduct that occurred in Order No. 13. The Arbitrator ruled both sua sponte and illegally by invoking **820 ILCS 405/1900(B)** in a private arbitration (which doesn't apply per both State and Federal Supreme Court precedent) to bar what is arguably the most critical material evidence in this entire case to shield Respondent. No party briefed the applicability of 820 ILCS 405/1900(B) in the ruling of Order No. 13.
   - Respondent responded to Claimant's formal challenge to the NAC, and misrepresented that they did indeed brief 820 ILCS 405/1900(B) when in truth they did not (the record speaks for itself).
   - The JAMS NAC denied Claimant's Formal Challenge and **deliberately remained silent on the misconduct that occurred in Order No. 13** – which Claimant clearly called out as the "smoking gun" (the key cause) in its brief. When Claimant asked for further clarification by asking the question *"does the NAC believe that an arbitrator's decision to independently raise and apply a legal statute—without party input or briefing, and to the benefit of one party—comports with JAMS Rules, the FAA, and the ethical duty of neutrality?"*, the JAMS NAC avoided the question, to clarify, and simply responded with *"Prior to Award, issues with the substance of an arbitrator's rulings may be raised with the arbitrator."* **The JAMS National Arbitration Committee (NAC) has effectively chosen to absolve itself of its duties under Rule 15(i)** by not even addressing the clear misconduct that occurred in Order No. 13, eliminating the only path for relief any given party has when misconduct occurs in JAMS Arbitrations from its "Neutral".

5. **Motion for Reconsideration (August 9, 2025).**
   Claimant moved to amend Order 13, arguing that:
   - The Arbitrator's *sua sponte* invocation of § 1900(B) was **ultra vires** under the **FAA** and **JAMS Rules**, which form the sole procedural law of this arbitration.

- § 1900(B) is not a "law relating to privilege" under **JAMS Rule 20(d)** and is **preempted** by the **FAA** (*AT&T Mobility v. Concepcion*, *Preston v. Ferrer*, *DIRECTV v. Imburgia*).
- The ruling denied Claimant the right to present material evidence, violating **JAMS Rule 22(d)** and **9 U.S.C. § 10(a)(3)**.

6. **Order No. 16 (September 12, 2025).**
The Arbitrator **pivoted the legal framework**, expressly stating that § 1900(B) "does not apply at this time" due to Respondent's explicit admission that materials exist, and ordered:

> "If a privilege is claimed, the party claiming it must provide a privilege log and produce the subject documents for an *in camera* inspection."

This directive is clear, mandatory, and not subject to discretion.

5. **Order No. 20 (October 2025).**
The Arbitrator later admitted that he had invoked § 1900(B) without briefing, but refused to reconcile that ruling with Order 16, leaving both orders unreconciled and creating a procedural contradiction now exploited by Respondent.

6. **Respondent's Noncompliance (December 2025).**
In an email dated December 18, 2025, Respondent stated:

> "The issue of the investigation report has been addressed multiple times by the Arbitrator. There is no investigation report. We can complete our privilege log after the holidays."

This statement is a **knowing violation** of Order 16. The "no report" position contradicts both the Arbitrator's factual findings (that notes and summaries exist) and evidence described below.

## III. EVIDENCE AND THE SWORD-AND-SHIELD WAIVER

**Respondent Has Publicly Relied on the Investigation Results.**
Respondent's counsel admitted in multiple venues—including its **Response to Claimant's Cease-and-Desist Letter** and in sworn **IDES proceedings**—that the "results of the investigation" placed in its business records were the **basis for Claimant's termination**. Having invoked those results as justification, Respondent **waived any privilege** over the underlying factual material. Under the **Sword-and-Shield doctrine**, a party cannot rely on privileged material to justify its actions while simultaneously withholding it from disclosure. (*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992)). The Sword-and-Shield doctrine has already been clearly litigated by Claimant in briefs leading up to both orders 13 and 16 but it has been consistently ignored by the Arbitrator to date.

**The December 17, 2025 Supplemental Production from Respondent Confirms the Connection.**
Respondent's recent supplemental production includes an email script to **Andy Feuerstein**—the executive who executed Claimant's termination—stating unequivocally that **the results of the Castañeda investigation were the reason for Claimant's discharge.** This admission removes any lingering ambiguity: the investigation's content is **central to the claims and defenses** in this arbitration and therefore not shielded by privilege.

**The Arbitrator Has Already Acknowledged These Facts.**
By recognizing in Orders 13 and 16 that the investigator took notes and that Brooks prepared a written

summary, the tribunal has already found these materials exist. Thus, the only remaining issue is enforcement of their compelled production. Continued non-enforcement effectively nullifies both Orders 13 and 16.

## IV. LEGAL ANALYSIS

**Respondent's Refusal Constitutes Contempt and Misconduct.**
Defying a discovery order is not procedural delay—it is contempt. The FAA recognizes that refusing to produce material evidence is **"misconduct"** under **§ 10(a)(3)**.

**Failure to Enforce Order 16 is Ultra Vires.**
Under **JAMS Rule 17(a)** (mutual exchange of relevant documents) and **Rule 22(d)** (right to present evidence), enforcement of discovery orders is not optional. An arbitrator who tolerates defiance of a prior ruling **"exceeds his powers"** within the meaning of **§ 10(a)(4)**.

**No Privilege Applies After the Sword-and-Shield Waiver.**
Respondent's own admissions waive any work-product or attorney-client protection. Privilege cannot be a one-way mirror—invoked to justify termination but denied to the terminated employee seeking the same facts. The privilege log required by Order 16 has never been produced; its absence is itself a violation of **JAMS Rule 20(d)**.

**Nine Months of Delay Violates Fundamental Fairness.**
This proceeding has been in discovery for about a year. Respondent's defiance since March 2025 and the Arbitrator's tolerance of it have prejudiced Claimant's ability to present material evidence—grounds for vacatur under **FAA § 10(a)(3)**.

## V. REQUESTED RELIEF

Claimant respectfully requests that the Arbitrator:

1. **Enforce Order No. 16 Immediately:**
   Require Respondent to produce the investigator's notes, the Kim Brooks summary, and any related materials—or a detailed privilege log and *in camera* submission—within **48 hours** of his Order.

2. **Sanctions:**
   Impose sanctions against Respondent for willful defiance and compensatory costs for Claimant's repeated enforcement motions.

3. **Contempt Finding:**
   Formally memorialize Respondent's conduct as **contempt of the tribunal** and a violation of the tribunal's lawful order.

4. **Preclusion Sanction (If Noncompliance Persists):**
   Preclude Respondent from introducing or referencing any evidence or argument related to the Castañeda investigation at any merits hearing.

5. **Certification for Judicial Review:**
   If the Arbitrator declines to enforce his own order, Claimant requests a written acknowledgment that the tribunal will not enforce Order 16, for preservation under **FAA § 10(a)(3)–(4)**.

## VI. CONCLUSION

The record is binary. Either the Arbitrator enforces Order 16 and upholds his duty under the **FAA** and **JAMS Rules**, or he confirms that the Respondent's disobedience carries no consequence. Respondent has had nearly four months to comply. It has chosen contempt instead.

The integrity of this arbitration depends on immediate enforcement. Claimant respectfully requests that this motion be granted in full.

Respectfully submitted,

**Charles Leclerc**

**Dated:** January 2nd, 2026

**JAMS**

| | |
|---|---|
| CHARLES LECLERC,<br>Claimant,<br>v.<br>RED BULL NORTH AMERICA, INC.<br>Respondent. | JAMS Ref. No. 5340001145<br><br>Arbitrator: Hon. Judge John C. Griffin (Ret.) |

**RESPONDENT'S RESPONSE TO CLAIMANT'S MOTION TO ENFORCE COMPLIANCE WITH ORDER NO. 16, MOTION TO COMPEL OUTSTANDING DISCOVERY, AND MOTION TO RECORD**

Respondent, RED BULL NORTH AMERICA, INC. ("Respondent" or "Red Bull"), by its attorneys Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby submits its Response to Claimant, Charles Leclerc's ("Claimant" or "Leclerc") Motion to Enforce Compliance with Order No. 16, Motion to Compel Outstanding Discovery, and Motion to Record ("Claimant's Motions") as follows:

**BACKGROUND**

On September 29, 2025, Respondent requested that the Arbitrator bar Claimant from filing any subsequent motions absent prior leave from the Arbitrator. Respondent's request was in response to Claimant's pattern of submitting frivolous and lengthy motions in opposition to any rulings that were not in his favor,[1] as Respondent was unnecessarily accumulating excessive costs in preparing thorough responses to each of Claimant's motions. Respondent renewed its request on October 1, 2025, and again on October 27, 2025, in response to two additional motions Claimant filed. On October 31, 2025, the Arbitrator entered an order holding that neither party may file a

[1] By September 29, 2025, Claimant had filed seventeen (17) distinct motions.

subsequent motion without obtaining prior permission from the Arbitrator. [Dkt. #25]. On December 18, 2025, Claimant sought leave to file three separate motions. The Arbitrator asked Respondent if it planned to respond to Claimant's request for leave to file these motions. As the sole purpose of its initial request was to avoid preparing unnecessary responses, and incur further costs, Respondent did not prepare a response to Claimant's requests. Respondent trusted that the Arbitrator would decide on Claimant's request solely on the face of Claimant's written request. However, on December 19, 2025, the Arbitrator entered an order permitting Claimant to file a Motion to Enforce Compliance with Order No. 16 and a Motion to Compel Outstanding Discovery – citing Respondent's lack of response to Claimant's request as his basis for his granting Claimant leave to file these motions. [Dkt. #31 and Amended Dkt. #31]. On December 22, 2025, the Arbitrator entered an order granting Claimant leave to file a Motion to Record, citing the same reason. [Dkt. #32]. On January 2, 2025, Claimant filed his *Emergency Motion to Enforce Compliance with Order No. 16, for Sanctions and to Memorialize Contempt of the Tribunal* (81 pages) and *Motion to Compel Outstanding Discovery and to Enforce Prior Orders* (73 pages), and on January 5, 2026, Claimant filed his *Motion to Record All Future Hearings and Conference or, in the Alternative, for Stenographic Transcription at Respondent's Expense* (4 pages). To minimize the costs associated with addressing three extensive motions, Respondent's Response herein responds to all three of Claimant's motions.

## ARGUMENT

### A. Claimant's Emergency Motion to Enforce Compliance with Order No. 16, for Sanctions, and to Memorialize Contempt of the Tribunal is Fruitless and Should be Denied.

Claimant is persistent that Respondent immediately produce a privilege log, specifically identifying the materials related to Attorney Juan Castañeda's investigation, including Attorney

Castañeda's witness interview notes and in-house counsel, Kim Brooks's, investigation summary. Respondent is producing its privilege log, identifying the requested materials herein.[2] ***See* Exhibit A**. To the extent Order No. 16 requires Respondent to produce the identified materials for the Arbitrator's in-camera inspection, Respondent will await specific orders from the Arbitrator to coordinate an in-camera inspection. Claimant's Motion further requests that the Arbitrator impose sanctions against Respondent and formally memorialize Respondent's conduct as contempt of the tribunal. There is no basis to grant either of these requests, as Respondent is producing a privilege log and willing to comply with an in-camera review. Finally, Claimant requests that the Arbitrator prepare a written acknowledgement that the tribunal will not enforce Order No. 16. This request is not only unnecessary, as Respondent is producing a privilege log, but it is wholly inappropriate. Claimant has no authority to direct the Arbitrator on how to prepare his orders, and there is no reason why the Arbitrator should comply with Claimant's request. For the reasons stated herein, the Arbitrator should deny Claimant's Motion to Enforce Compliance with Order No. 16 in its entirety.

### B. Claimant's Motion to Compel Outstanding Discovery is Premature and Should be Denied.

Claimant filed a 78-page motion, asserting several alleged deficiencies with Respondent's discovery responses. Claimant's Motion inaccurately suggests that Respondent has neglected to adequately respond to Claimant's discovery requests for several months. Claimant fails to acknowledge that Respondent responded to Claimant's amended[3] discovery responses on March 28, 2025, produced seventy-one (71) responsive documents on April 30, 2025, and stated that it

[2] Respondent reserves the right to supplement its privilege log in this matter, as necessary.
[3] On December 13, 2024, Claimant issued Respondent an unduly burdensome number of discovery requests. As such, the Arbitrator entered an order on February 3, 2025, directing Claimant to issue revised discovery requests, limiting them to no more than 30 interrogatories. [Dkt. #6]. On February 7, 2025, Claimant issued revised discovery requests in accordance with the Arbitrator's order.

would produce supplemental responsive documents upon entry of a confidentiality order. As a result of Claimant's persistent objection to the entry of a confidentiality order[4], such order was not entered until December 2, 2025. [Dkt. #30]. Shortly thereafter, on December 17, 2025, Respondent submitted supplemental responses to Claimant's initial discovery requests and produced 1,482 supplemental documents. Respondent also submitted its responses to Claimant's May 1, 2025, supplemental discovery requests. Claimant's assertion that Respondent's supplemental production is a "duplicative, mislabeled, and untraceable 'document dump'" is perplexing. (Claimant's Motion to Compel Outstanding Discovery, at 1). Respondent's production includes all non-privileged, responsive documents in its possession. Claimant also expresses frustration that "documents were produced in bulk, without reference to specific requests, Bates numbering, or custodial attribution." *Id*. However, JAMS Rules do not impose any obligation on parties to specifically identify which documents are responsive to which Requests, let alone identify custodial attribution. In fact, in his March 21, 2025, production, Claimant did not label responsive documents or identify them in his discovery responses. Claimant's instant Motion is yet another one of his attempts to manifest his dissatisfaction with Respondent's responses to his discovery requests and the discovery process.

Furthermore, Claimant has made no attempt to schedule a meet-and-confer with Respondent's counsel, in response to Respondent's December 17, 2025 supplemental responses and production. Preparing a written response to each of the alleged deficiencies outlined in Claimant's 78-page motion would unnecessarily further increase Respondent's costs in this arbitration. In fact, the Arbitrator has repeatedly directed Claimant to meet and confer with Respondent's counsel to resolve any discovery disputes. However, Claimant has failed to do so. If

[4] The parties fully briefed the entry of a confidentiality order on two separate occasions within the last year.

Claimant wishes to raise concerns with Respondent's discovery responses and production to date, he must request a meet-and-confer with Respondent's counsel, before asking the Arbitrator to rule on his concerns. For these reasons, Claimant's Motion to Compel Outstanding Discovery and to Enforce Prior Orders should be denied.

**C. Claimant's Motion to Record all Future Hearings and Conferences or, in the Alternative, for Stenographic Transcription at Respondent's Expense is Nonsensical and Should be Denied.**

There is no legitimate reason to grant Claimant's request to record or transcribe hearings in this matter, as the contents of hearings have never been at issue. Immediately following each conference or hearing with the parties, the Arbitrator issues an order outlining the key items discussed during the hearing. To date, Claimant has never objected to the items summarized in any one of the Arbitrator's orders or asserted that the Arbitrator misrepresented a fact from a hearing. Thus, there is no basis for Claimant's request to add a layer of authentication to any future hearings. If Claimant has an issue with the Arbitrator's "enforcement" of his orders, or alleged "ultra vires acts to date," (Claimant's Motion to Record, at 3) he may address it with the JAMS National Arbitration Committee ("NAC"), which he has previously done. However, there is no legitimate reason for the Arbitrator to grant Claimant's motion to record or transcribe future hearings.

Claimant's request would be costly and time-consuming, whether it involves recording the hearings or obtaining stenographic transcriptions of the hearings. The burden of having to coordinate an authenticated recording or stenographic transcription would also inevitably delay the scheduling of future hearings, as the Arbitrator's case manager would need to coordinate availability amongst the Arbitrator and the parties, as well as an authorized court reporter. Further, despite Claimant being the party making this request, he asserts that *Respondent* should bear the costs. There is no basis for this request. Claimant, not Respondent, has requested the recording or

transcription of hearings, and any such recording or transcription is unnecessary. Therefore, Respondent should not bear the financial or time-related costs associated with Claimant's request. For all the reasons stated herein, Claimant's Motion to Record should be denied in its entirety.

## CONCLUSION

Claimant's three instant motions further demonstrate his unwillingness to accept any aspect of this arbitration that may not proceed in his favor. Consequently, Respondent has incurred additional, unwarranted legal fees and arbitration costs in responding to these three lengthy and unnecessary motions. Respondent requests that moving forward, the Arbitrator decide whether to grant a party leave to file a motion solely on the face of the party's written request, rather than on the opposing party's response to such request, or lack thereof. As it relates to Claimant's three instant motions, for the reasons stated herein, Respondent respectfully requests that the Arbitrator deny these motions in their entirety.

Dated: January 16, 2026

Respectfully Submitted,

By: /s/ Jeffrey L. Rudd
One of the Attorneys for Respondent

Jeffrey L. Rudd (ARDC No. 6273373)
Amy R. Cortez (ARDC No. 6335725)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone: 312.558.1220
*jeffrey.rudd@ogletreedeakins.com*
*amy.cortez@ogletreedeakins.com*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on January 16, 2026, the foregoing ***Respondent's Response to Claimant's Motion to Enforce Compliance with Order No. 16, Motion to Compel Outstanding Discovery, and Motion to Record*** was served electronically via JAMS Access upon Claimant and Claimant's Representative.

/s/ Jeffrey L. Rudd
One of the Attorneys for Respondent
**RED BULL NORTH AMERICA, INC.**

# EXHIBIT A

**JAMS**

| | |
|---|---|
| CHARLES LECLERC,<br><br>Claimant,<br><br>v.<br><br>RED BULL NORTH AMERICA, INC.<br><br>Respondent. | JAMS Ref. No. 5340001145<br><br>Arbitrator: Hon. Judge John C. Griffin (Ret.) |

**RESPONDENT'S PRIVILEGE LOG**

| | Document Date | Title of Document / Subject Line of Email | Author | To | CC | Description | Category of Privilege |
|---|---|---|---|---|---|---|---|
| 1 | 5-31-2022 | Interview Notes: Leslie Newlee, VP of Insights | Juan C. Castañeda, Esq. | Client | | These are Attorney Castaneda's notes and mental impressions from his investigatory interview with Leslie Newlee. | Attorney-Client Privilege and Work-Product |
| 2 | 6-01-2022 | Interview Notes: Eric Jacobson, Sr. Director Safeway Albertsons | Juan C. Castañeda, Esq. | Client | | These are Attorney Castaneda's notes and mental impressions from his investigatory interview with Eric Jacobson. | Attorney-Client Privilege and Work-Product |
| 3 | 6-01-2022 | Interview Notes: Nickole Herhold, Category Development Manager | Juan C. Castañeda, Esq. | Client | | These are Attorney Castaneda's notes and mental impressions from his investigatory interview with Nickole Herhold. | Attorney-Client Privilege and Work-Product |
| 4 | 6-01-2022 | Interview Notes: Karishma Dayanand, Sr. Director Category Development Manager | Juan C. Castañeda, Esq. | Client | | These are Attorney Castaneda's notes and mental impressions from his investigatory interview with Karishma Dayanand. | Attorney-Client Privilege and Work-Product |
| 5 | 6-02-2022 | Interview Notes: Nour Abusaad, Category Development Manager | Juan C. Castañeda, Esq. | Client | | These are Attorney Castaneda's notes and mental impressions from his investigatory interview with Nour Abusaad. | Attorney-Client Privilege and Work-Product |
| 6 | 6-02-2022 | Interview Notes: Mark Andrade, Regional Account Manager | Juan C. Castañeda, Esq. | Client | | These are Attorney Castaneda's notes and mental impressions from his investigatory interview with Mark Andrade. | Attorney-Client Privilege and Work-Product |
| 7 | 6-30-2022 | Interview Notes: Charles Leclerc, Regional Account Manager | Juan C. Castañeda, Esq. | Client | | These are Attorney Castaneda's notes and mental impressions from his investigatory interview with Charles Leclerc. | Attorney-Client Privilege and Work-Product |
| 8 | 7-01-2022 | Verbal Update re Leclerc Investigation – July 2022 | Kim Brooks | Internal File | | These are Kim Brooks's notes from her and Stephanie Carter's confidential conversation with Independent Investigator, Juan Castañeda, Esq., regarding his findings and recommendation from the investigation into Claimant's conduct. | Attorney-Client Privilege and Work-Product |

By: /s/ Jeffrey L. Rudd
One of the Attorneys for Respondent
**RED BULL NORTH AMERICA, INC.**

Jeffrey L. Rudd (ARDC No. 6273373)
Amy R. Cortez (ARDC #6335725)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
155 N. Wacker Drive, Suite 4300
Chicago, IL 60606-1731
*jeffrey.rudd@ogletree.com*
*amy.cortez@ogletree.com*
(312) 558-1220
Firm ID: 37976

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on January 16, 2026, the foregoing ***Respondent's Privilege Log*** was served electronically via JAMS Access upon Claimant and Claimant's Representative.

/s/ Jeffrey L. Rudd
One of the Attorneys for Respondent
**RED BULL NORTH AMERICA, INC.**

# CONSOLIDATED REPLY IN FURTHER SUPPORT OF CLAIMANT'S THREE MOTIONS FROM JANUARY 2-5, 2026

**Leclerc, Charles vs. Red Bull North America, Inc.**
**JAMS Reference No. 5340001145**

---

## I. INTRODUCTION

Claimant respectfully submits this consolidated reply in response to Respondent's January 16, 2026 opposition, which purports to address the three most recent motions now pending before the Tribunal:

1. *the Emergency Motion to Enforce Compliance with Order No. 16, for Sanctions, and to Memorialize Contempt of the Tribunal;*
2. *the Motion to Compel Outstanding Discovery and to Enforce Prior Orders;* and
3. *the Motion to Record All Future Hearings and Conferences, or, in the Alternative, for Stenographic Transcription at Respondent's Expense.*

**Respondent's opposition does not rebut a single one of Claimant's core arguments.** It instead confirms the consistent and well-documented pattern of procedural irregularity, noncompliance, and bad faith that has characterized this arbitration from its inception.

The opposition continues this pattern in three critical respects:

a. Respondent belatedly produces a "privilege log" under duress for the first time, four months after the issuance of Order No. 16—an implicit admission of prior defiance and contempt of that Order;
b. Respondent asserts full discovery compliance while conceding that its submissions consist of vague, non-indexed "document dumps" despite being unrelated to Claimant's specific discovery requests; and
c. Respondent opposes Claimant's reasonable and cost-free request for authenticated recordation of hearings, thereby seeking to preserve a lack of transparency in a proceeding already marked by procedural controversy.

Collectively, these actions—and the Tribunal's continued failure to enforce its own Orders or adhere to the procedural boundaries of the **Mutual Arbitration Agreement ("MAA")**, the **Federal Arbitration Act ("FAA")**, and the **JAMS Employment Arbitration Rules (2021)**—have created a proceeding that is no longer consistent with the essential standards of fairness required under **FAA §§10(a)(1)–(4)**.

Each motion before this Tribunal arises from a distinct but related violation of Claimant's rights under **FAA §10(a)(3)**, which guarantees each party "the opportunity to be heard and to present evidence material to the controversy." Taken together, these motions form a unified response to an arbitration that has been characterized by:

- **systematic noncompliance** with discovery orders,
- **arbitral inaction and ultra vires invention of procedure,** and

- **a growing pattern of opacity inconsistent with the rule of law.**

These motions are not redundant, nor "frivolous." They are procedural safeguards, compelled by necessity, to preserve a fair record and ensure that the arbitration remains subject to lawful judicial review under the **FAA**. Far from multiplying proceedings, Claimant's filings serve only to preserve due process in the face of a process that has strayed far from the principles of neutrality, transparency, and enforceability that the FAA demands.

## II. BACKGROUND: A RECORD OF SYSTEMIC OBSTRUCTION AND ABUSE OF DISCRETION

**This arbitration has been marked by a persistent pattern of procedural irregularities, unaddressed violations of arbitral orders, and unilateral actions taken without proper legal foundation or contractual authority.** The cumulative record now demonstrates not a single isolated error but a systemic breakdown in arbitral administration and compliance.

**Claimant has never filed a frivolous motion.** Every submission has been necessitated by Respondent's continued disregard of arbitral orders, discovery obligations, and procedural fairness. Respondent's conduct throughout this proceeding has been defined by obstruction, delay, and procedural abuse, including but not limited to:

- **Improper Dispositive Motion (frivolous):** Respondent prematurely sought summary disposition of fact-intensive claims, contrary to JAMS Rule 18, which restricts such motions to narrow legal questions. The Arbitrator denied that motion in full.

- **Improper Attempt to Disqualify Representative (frivolous):** Respondent moved to disqualify Claimant's chosen representative solely because he is not an attorney, despite **JAMS Rule 12(b)** expressly authorizing party representation by non-lawyers. The motion was denied in full.

- **Repeated Violations of Tribunal Orders:** Respondent has failed to comply with multiple binding directives—such as **Orders Nos. 12, 13, and 16** among others—each of which imposed specific discovery demands and deadlines. These deadlines were violated without sanction or enforcement.

- **Bad-Faith "Document Dumps":** Respondent's discovery "productions" consist of unsorted, duplicative document dumps that bear no relationship to Claimant's targeted Requests for Documents or Interrogatories. This practice violates **JAMS Rules 17(a)** and **22(d)** and renders discovery nonfunctional. Discovery has not been reasonably satisfied, and the *Motion to Compel Outstanding Discovery and to Enforce Prior Orders* surgically demonstrates why.

- **Resistance to Transparency:** Respondent opposes Claimant's request for a complete and authentic record of hearings, despite the fact that modern arbitration platforms (including Zoom) allow **recording at no cost**. This resistance serves no purpose other than to preserve opacity and undermine reviewability.

**The Arbitrator's conduct has not remedied these deficiencies; it has compounded them.**

- The Tribunal has never enforced its own deadlines against Respondent, despite repeated violations.

- The Tribunal has issued orders that were later contradicted or ignored without enforcement.

- The Tribunal has misapplied state legal statutes sua sponte to exclude material evidence, disregarding federal preemption under the **Supremacy Clause** and misapplying 820 ILCS 1900(b), which has no legal force in arbitration.
- The Tribunal has adopted **extra-contractual procedures**, including a "pre-motion permission" requirement and a **confidentiality order copied verbatim from Respondent's own draft**, neither of which are authorized by the **Mutual Arbitration Agreement ("MAA")**, the **Federal Arbitration Act ("FAA")**, or the **JAMS Employment Arbitration Rules (2021)**.
- The Tribunal has **failed to issue authentication** of Respondent's purported *Engagement Agreement* with attorney Castaneda—an evidentiary submission that does not meet the legal definition of a contract in any jurisdiction. Authentication is a fundamental procedural right and essential to determining admissibility, yet this issue has remained unresolved for over two months despite full briefing.

When Claimant sought review under **JAMS Rule 15(i)**—which allows parties to request oversight by the **JAMS National Arbitration Committee ("NAC")** for procedural violations—the Committee failed to address the issue, effectively absolving itself of its responsibility to ensure compliance with JAMS' own rules and stated ethical standards.

These cumulative irregularities have produced an objectively reasonable expectation that **judicial review will be necessary** to ensure compliance with the **FAA** and due process principles recognized by the **U.S. Supreme Court** in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), and *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013). Both decisions distinguish between legitimate interpretation of an arbitration agreement and **the invention of procedures not grounded in contract or rule.** Where an arbitrator creates or applies procedures not authorized by the parties' agreement, those acts exceed arbitral power under **FAA §10** and are subject to vacatur.

In light of these precedents, it is not speculative—but **objectively reasonable**—for Claimant to anticipate judicial review under **FAA §10**. The foreseeability of judicial review justifies procedural safeguards that preserve an accurate record. Hence, Claimant's request to record or transcribe all future hearings is not extraordinary relief but **the minimum procedural measure necessary** to ensure this arbitration remains reviewable and legally valid.

The cumulative effect of Respondent's obstruction, the Arbitrator's ultra vires conduct, and JAMS' failure to exercise oversight has deprived Claimant of his rights to a fair and lawful arbitration. The proceeding, as presently administered, reflects the very kind of procedural invention and disregard for legal limits that *Stolt-Nielsen* and *Oxford Health* explicitly condemned as exceeding arbitral authority.

## III. ORDER NO. 16: ENFORCEMENT, CONTEMPT, AND TACIT ADMISSION OF MISCONDUCT

The procedural history around the 'Casteneda Investigation' represents the single most consequential procedural inflection point in this arbitration. It is the point at which the Arbitrator's authority, Respondent's candor, and the integrity of the process itself all converge. The record establishes continuing defiance, bad faith, and arbitral misconduct that collectively violate both the letter and the spirit of the FAA and JAMS procedural safeguards.

### A. Procedural History

1. **Initial Discovery Request (February 7, 2025).**
   Claimant requested all materials related to the *Castaneda investigation* in his Request for Production of Documents, including the alleged "results" upon which Respondent based its decision to terminate Claimant.
   Respondent failed to comply by the March 27, 2025 deadline established under **Order No. 8**, providing no production, privilege log per JAMS rules, or statement of compliance.

2. **Motion to Compel Production of the Investigation Report (May 1, 2025).**
   Claimant moved to compel production of the results and related materials, which Respondent itself identified as the justification for Claimant's termination. In response, Respondent claimed that *"no report exists,"* yet simultaneously asserted privilege over the same materials—a logical impossibility and a violation of **Fed. R. Civ. P. 26(b)(5)(A)**, **JAMS Rule 17(b)**, and the most basic principles of good faith discovery.

3. **Order No. 13 (June 2, 2025).**
   The Arbitrator's findings in Order No. 13 contradict Respondent's "no report" position. The Arbitrator found that:

   - Investigator **Castaneda interviewed seven witnesses** and took notes; and
   - Counsel **Kim Brooks prepared a written summary** of her "thoughts and impressions." These findings confirm that documentary materials exist. Nevertheless, the Arbitrator denied production and, **sua sponte**, invoked **820 ILCS 405/1900(B)**—a state evidentiary bar inapplicable to private arbitrations—to exclude material evidence. No party raised or briefed this issue.

   The Arbitrator's reliance on §1900(B) directly contradicts his own prior ruling in **Order No. 7 (March 4, 2025)**, where he stated:

   > "Arbitration is not a judicial proceeding but, rather, an alternative to such a proceeding, given that judicial fact-finding, court proceedings, evidentiary rules, and other characteristics of the judicial process do not apply in the arbitration context."

   The Arbitrator's sua sponte invocation of §1900(B) was therefore ultra vires, inconsistent, legally indefensible and preempted by the Federal Arbitration Act, which occupies the entire field of arbitral procedure and expressly precludes the imposition of state evidentiary barriers

4. **Formal Challenge to Arbitrator Griffin – Appearance of Bias and Procedural Misconduct (June 10, 2025).**
   Claimant filed a formal challenge with the **JAMS National Arbitration Committee ("NAC")** pursuant to **JAMS Rule 15(i)**, detailing the Arbitrator's pattern of procedural bias and the "smoking gun" misconduct of Order No. 13.

   - Respondent's opposition to the challenge **falsely represented** that it had briefed §1900(B), which it had not—the record speaks for itself.
   - The NAC denied the challenge without addressing the misconduct. When Claimant asked whether **an arbitrator may independently raise and apply a legal statute—without**

**party briefing and to one party's benefit**—the NAC refused to answer, responding only that "issues with the substance of rulings may be raised with the arbitrator."

- By refusing to address the clear procedural violation, JAMS **absolved itself of oversight responsibility**, effectively nullifying the safeguard established by Rule 15(i).

5. **Motion for Reconsideration (August 9, 2025).**
   Claimant sought amendment of Order No. 13, arguing that:

   - The Arbitrator's **sua sponte** invocation of §1900(B) was **ultra vires** under the **FAA** and **JAMS Rules**, which form the sole procedural law of this arbitration;
   - §1900(B) is not a "law relating to privilege" within the meaning of **JAMS Rule 20(d)** and is preempted by the **FAA** (*AT&T Mobility LLC v. Concepcion*, *Preston v. Ferrer*, *DIRECTV, Inc. v. Imburgia*); and
   - The ruling denied Claimant the right to present material evidence, in violation of **FAA §10(a)(3)** and **JAMS Rule 22(d)**.

6. **Order No. 16 (September 12, 2025).**
   The Arbitrator pivoted on his prior position, stating that §1900(B) "does not apply at this time" (when it never actually applies) due to Respondent's own admission that responsive materials exist, and ordered:

   > "If a privilege is claimed, the party claiming it must provide a privilege log and produce the subject documents for in camera inspection."

   The directive was **clear, mandatory, and nondiscretionary** under **JAMS Rule 24(e)**.

7. **Order No. 20 (October 2025).**
   The Arbitrator later admitted that he had invoked §1900(B) without briefing, yet refused to reconcile that admission with the language of Order No. 16, leaving both rulings in conflict. This unresolved contradiction has since been exploited by Respondent to justify noncompliance.

8. **Respondent's Continued Noncompliance (December 2025).**
   On December 18, 2025, Respondent's counsel wrote:

   > "The issue of the investigation report has been addressed multiple times by the Arbitrator. There is no investigation report. We can complete our privilege log after the holidays."

   This statement constitutes a **knowing and deliberate violation** of Order No. 16. It also contradicts the Arbitrator's factual findings and Respondent's own prior admissions.

9. Only after Claimant filed the **Emergency Motion to Enforce Order No. 16** did Respondent, under duress, submit a belated "privilege log" on **January 16, 2026**. That act is not compliance; it is an **admission of prior contempt**. The log lists *Castaneda interview notes* and a *Kim Brooks "verbal findings memorandum"*—precisely the documents Respondent previously swore did not exist.

10. Because the production occurred only after months of defiance, and because the documents remain withheld, the violation of Order No. 16 is **ongoing**. The matter is therefore **not moot**. A

party cannot purge contempt simply by partial, belated production once prejudice has attached. (See *Roadway Express v. Piper*, 447 U.S. 752 (1980)).

**B. Respondent's Late Privilege Log Confirms Prior Contempt**

1. Respondent's opposition includes, for the first time, a **purported privilege log**—produced only after Claimant filed his **Emergency Motion to Enforce Order No. 16**.

2. This constitutes a **tacit admission of prior contempt** and a concession that Respondent had defied a standing order for over four months.

3. The log identifies both **Castaneda's interview notes** and a **Kim Brooks "Verbal Update" memorandum**—materials previously denied to exist. This new admission directly contradicts Respondent's long-standing "no report" representation and proves that responsive evidence has been withheld.

4. Because the production occurred only after months of defiance, and because the documents remain withheld, the violation of Order No. 16 is **ongoing**. The matter is therefore **not moot**. A party cannot purge contempt simply by partial, belated production once prejudice has attached. (See *Roadway Express v. Piper*, 447 U.S. 752 (1980)).

5. None of the listed documents are privileged under **Fed. R. Civ. P. 26(b)(5)(A)** or **JAMS Rule 17(b)**. They consist of factual interview summaries and internal notes, not protected attorney–client communications or core attorney work product. These materials go to the **heart of Respondent's stated justification for termination** and are indispensable to the merits under the **McDonnell Douglas** burden-shifting framework.

**C. The Sword-and-Shield Doctrine Applies Fully to Arbitration**

The sword-and-shield doctrine is not a discretionary principle—it is a fundamental rule of fairness applied uniformly across jurisdictions to prevent evidentiary manipulation.

1. Respondent's entire termination defense rests on the **Castaneda investigation**. By invoking that investigation as its *affirmative justification* for firing Claimant, Respondent has **waived any privilege** concerning its contents. A party may not simultaneously (1) rely upon a document or investigation to prove a claim or defense, yet (2) withhold the underlying evidence on grounds of privilege. This is the classic *sword-and-shield* scenario rejected by every major court to address it. See *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).

2. In arbitration governed by the FAA and JAMS Rules, the same fairness principle applies. JAMS Rule 17(b) requires the arbitrator to "balance the need for production against any claimed privilege." Once a party affirmatively places privileged material at issue, the balance ends—the privilege is waived as a matter of law.

3. The Arbitrator's continuing refusal to apply this well-established doctrine and Respondent's non-acknowledgement of it—despite full briefing—constitutes both **misconduct** under **FAA §10(a)(3)** and an **exceeding of powers** under **§10(a)(4)**.

4. Moreover, the unauthenticated *(and potentially fraudulent)* Castaneda "Engagement Agreement" submitted by Respondent **does not meet the legal definition of a contract** under any applicable jurisdictional standard for lacking the essential elements. Therefore, any claim of privilege flowing from it collapses. There is no valid attorney-client or work-product relationship to protect.

5. Therefore, Order No. 16 compliance cannot be deemed "moot" because *no valid privilege ever existed.* The required *in camera* production has not occurred, and the Tribunal has an ongoing duty to enforce its own order.

**D. Arbitrator's Failure to Enforce**

The Arbitrator's ongoing failure to enforce Order No. 16 and his tolerance of Respondent's open defiance have rendered the order meaningless. Under **JAMS Rule 24(e)**, the Arbitrator has express authority to compel compliance and impose sanctions for willful noncompliance. His failure to do so for more than four months constitutes **misconduct** and **evident partiality** under **FAA §10.** No fair or lawful arbitration can persist where one party's obligations are optional and the Tribunal refuses to act.

When a tribunal issues a mandatory discovery order and later refuses to enforce it, the result is a *structural denial of due process*. Claimant has been prevented from obtaining or presenting the very evidence Respondent uses as its defense. Such one-sided enforcement is the hallmark of *misconduct* under FAA §10.

The record leaves no ambiguity: Respondent has willfully defied a binding order, and the Tribunal's continued inaction has permitted that defiance to stand.

**E. Requested Relief**

Claimant respectfully requests that the Tribunal:

1. **Enforce Order No. 16 immediately** and compel Respondent to produce the Castaneda notes, the Brooks memorandum, and ANY related materials within 48 hours;

2. **Impose sanctions** under **JAMS Rule 29** for bad-faith noncompliance and contempt of tribunal orders;

3. **Preclude Respondent** from introducing any evidence or testimony relating to the Castaneda investigation at the hearing; and

4. **If the Tribunal continues to ignore the necessary enforcement of Order No. 16,** issue a written acknowledgment that the Order will not be enforced, to preserve Claimant's rights for **judicial review and vacatur under the FAA**.

5. Memorialize the Tribunal's findings regarding privilege and enforcement in writing, with explicit identification of the materials withheld, to ensure transparency for judicial review.

## IV. MOTION TO COMPEL OUTSTANDING DISCOVERY: NONCOMPLIANCE AND FRAUDULENT PRETEXT

**A. Respondent's "Document Dump" Is Noncompliant and Nonresponsive**

1. Respondent claims that its December 17, 2025 production of **1,482 pages** fully satisfies its discovery obligations. This assertion is demonstrably false.

2. **Claimant has reviewed the entirety of Respondent's submission.**

    - The 1,482 pages fails to satisfy Claimant's 26 interrogatories or 13 requests for production ("RFPs").

    - The submission consists almost entirely of irrelevant materials—documents that Claimant never requested, duplicative copies of multiple documents, bearing no discernible relationship to any discovery request or issue in dispute.

3. This pattern constitutes **deliberate obfuscation**, not compliance. A "document dump" that lacks mapping, specificity, or explanatory indexing is *nonresponsive* under **JAMS Rules 17(a)** (requiring good faith cooperation in discovery) and **22(d)** (requiring that each party be given an adequate opportunity to present material evidence).

4. Claimant's Motion to Compel (January 2, 2026) specifically listed each interrogatory and RFP, detailed every deficiency, and restated exactly what was sought. Respondent's January 16, 2026 opposition **did not address or even acknowledge** those specific deficiencies. The failure to engage with the substance of Claimant's discovery motion confirms that no good-faith compliance has occurred.

5. Under **Rule 17(b)**, the burden rests on the responding party to demonstrate good cause for withholding or limiting discovery. Respondent has made no such showing—only post hoc excuses inconsistent with the record and the Tribunal's prior orders.

**B. Respondent's "Meet-and-Confer" Excuse Is Meritless**

1. Respondent argues that Claimant failed to meet and confer after its December 17, 2025 production. This is false and misleading.

    - A prior **meet-and-confer session** was held earlier in 2025. It was entirely unproductive and ended with Respondent's counsel promising production, but failing to meet its promises. No documents were submitted as a result of the meet-and-confer.

    - Given Respondent's history of noncompliance and misrepresentation, another meeting would have been **futile**.

2. **JAMS Rule 17(d)** provides that the Arbitrator may compel discovery and enforce prior orders *without further meet-and-confer* where delay, obstruction, or bad faith is evident. That threshold has long been surpassed in this case.

3. The record clearly demonstrates that **Respondent has used procedural delay as a tactic**, not as a necessity. This is not a discovery dispute—it is a discovery default.

**C. Respondent Has No Substantive Evidence to Support Its Termination Justification**

1. Despite nearly a year of Discovery and multiple orders compelling production, **Respondent has not produced a single piece of evidence substantiating its stated reason for terminating Claimant.**

2. Under the **McDonnell Douglas** burden-shifting framework:
   - Claimant has established a prima facie case of discrimination and retaliation.
   - The burden then shifts to Respondent to articulate and produce evidence of a legitimate, non-discriminatory reason for termination.
   - Respondent has failed to meet this burden entirely.
3. This absence of evidence confirms that Respondent's justification for termination—the purported *Castaneda investigation* and its result—was **pretextual and fraudulent**. Respondent continues to rely on an "investigation" that:
   - Is unsupported by any verifiable or authenticated agreement with Castaneda;
   - Has never been produced or authenticated despite repeated orders; and
   - Has been inconsistently described by Respondent as both "nonexistent" and "privileged."
4. The logical conclusion is inescapable: Respondent never possessed a valid investigative record or lawful basis for its employment action. The ongoing concealment of the underlying materials is both a discovery violation and a substantive admission of pretext.

**D. Arbitrator's Failure to Enforce Discovery Orders Constitutes Misconduct**

1. **Orders Nos. 12 and 16** (among others) each required production, privilege logs, or compliance with discovery obligations. None have been enforced.
2. The Tribunal's continued inaction effectively nullifies its own orders, depriving Claimant of any opportunity to obtain or present material evidence. This is the definition of **misconduct** under **FAA §10(a)(3)**, which authorizes vacatur where arbitrators are "guilty of misconduct in refusing to hear evidence pertinent and material to the controversy."
3. The FAA does not require bad intent—only a record showing that a party was denied the opportunity to present evidence material to its case. Here, the denial is chronic, systemic, and unremedied.
4. The Arbitrator's persistent refusal to enforce discovery obligations also violates **JAMS Rule 24(e)**, which expressly authorizes enforcement and sanctions for discovery noncompliance. Failure to exercise that authority constitutes **an abuse of discretion and ultra vires conduct** under **FAA §10(a)(4)**.

**E. Requested Relief**

Claimant respectfully requests that the Tribunal:

1. **Compel immediate, complete production** of all outstanding discovery and interrogatory responses identified in Claimant's Motion to Compel;

2. **Impose sanctions or adverse inferences** under **JAMS Rule 29** for Respondent's willful obstruction, including a finding that all withheld materials would be adverse to Respondent's position;

3. **Preclude Respondent** from introducing any evidence or testimony not timely produced or disclosed in accordance with with prior orders; and

4. **If the Tribunal again deflects its duty to enforce discovery,** issue a written acknowledgment that enforcement is denied, to preserve the record for **judicial review and vacatur under the FAA**.

## V. MOTION TO RECORD OR TRANSCRIBE ALL FUTURE HEARINGS

### A. Recording Is an Essential Safeguard of Fair Process

1. Recording is not a discretionary luxury—it is a fundamental safeguard when the procedural integrity of an arbitration has already been called into question. Courts routinely emphasize that where later judicial review under the **Federal Arbitration Act ("FAA")** may be necessary, the ability to reconstruct an accurate and authenticated record of proceedings is essential to preserving due process and the right to meaningful appellate review.

2. **JAMS Rule 22(k)** expressly authorizes hearings to be recorded "by stenographic or other reliable means," reflecting the expectation that arbitral proceedings, especially those involving contested evidentiary and procedural issues, must be memorialized in a verifiable format.

3. Recording ensures that all statements, rulings, and evidentiary determinations are preserved in their original form. Without a recording or transcript, no reviewing court can meaningfully assess whether the arbitrator exceeded his powers (**FAA §10(a)(4)**) or engaged in misconduct by refusing to hear material evidence (**FAA §10(a)(3)**).

4. This arbitration has already demonstrated a sustained pattern of procedural irregularities—including inconsistent rulings, unenforced orders, and extra-contractual procedures—that make the preservation of an accurate record indispensable. In such a context, recording is not merely prudent; it is **procedurally mandatory** to ensure a fair and reviewable proceeding.

### B. Respondent's Objections Are Baseless and Pretextual

1. **Cost:** Respondent's claim that recording would be costly is objectively false. Modern videoconference platforms such as **Zoom**, already used for these proceedings, include integrated recording functionality that can be activated at no cost. The act of pressing the "Record" button imposes zero financial burden.

2. **Delay:** Respondent's suggestion that recording would "delay scheduling" lacks any factual basis. Recording commences automatically when a session begins; it has no impact on hearing logistics or timing. If anything, it promotes efficiency by ensuring that disputes about what occurred do not later require re-litigation.

3. **Redundancy:** Respondent's argument that recording is "redundant" because orders and summaries already exist is incorrect. Arbitral orders are summaries drafted after the fact, not contemporaneous transcripts, and are inherently unauthenticated. They cannot substitute for a verbatim record. **Without an authentic record, the accuracy of those summaries cannot be**

**verified—especially when past orders have already contained omissions or procedural contradictions.**

4. In reality, Respondent's opposition to recording has only one logical explanation: it wishes to preserve the opacity that has enabled procedural irregularities to go uncorrected. A refusal to record benefits only the party that seeks concealment, not transparency.

**C. Necessity Given the Ongoing Procedural Irregularities**

1. This arbitration has been marked by sustained irregularities that have repeatedly prejudiced Claimant:
   - The Arbitrator has **failed to enforce multiple of his orders** onto Respondent.
   - Respondent has **violated discovery deadlines** with impunity.
   - The Tribunal has adopted **extra-contractual procedures**, including an ultra vires confidentiality regime and a "motion-gate" system requiring permission to file motions, both unsupported by the MAA or JAMS Rules, and never textually justified by the Arbitrator despite it being required under Supreme Court precedent to avoid invention.
   - The Arbitrator has **sua sponte applied inapplicable state law (§1900(B))** to shield Respondent from discovery, despite no briefing from either party.
2. These actions collectively constitute **ultra vires conduct**, exceeding the Tribunal's authority under **FAA §10(a)(4)**.
3. In light of these cumulative procedural failures, recording all future hearings is not extraordinary—it is the **only remaining mechanism** to ensure that the record is complete, authentic, and available for judicial review.
4. Denying this request would effectively institutionalize secrecy, preventing any meaningful oversight and precluding judicial correction of procedural misconduct. Such denial would itself violate **FAA §10(a)(3)** (misconduct in refusing to hear material evidence) and **§10(a)(4)** (exceeding arbitral powers by adopting extra-contractual limitations).
5. As the Supreme Court held in **Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 (2010)**, an arbitrator's role is to interpret and apply the agreement—not to invent new procedural constructs. The refusal to record, despite contractual and procedural authority to do so, would be precisely such an invention.

**D. Alternative Relief and Preservation of Appellate Rights**

1. **If the Tribunal declines to permit recording,** Claimant requests, in the alternative, that all future hearings be transcribed stenographically at Respondent's expense. This request is supported by **Section 8 of the Mutual Arbitration Agreement ("MAA")**, which provides that **the employer bears all arbitration costs other than attorney representation.**
2. The cost of transcription is a natural and necessary incident of the arbitration process, directly tied to maintaining the fairness and integrity that the MAA guarantees.

3. **If both requests are denied,** Claimant respectfully requests that the Tribunal issue a **written acknowledgment** expressly stating that it declines to record or transcribe proceedings, so that this refusal can be preserved for **judicial review under the FAA**.

4. This record of refusal will be essential in demonstrating the denial of procedural safeguards and substantiating vacatur under **FAA §§10(a)(3)–(4)**.

**E. Requested Relief**

Claimant respectfully requests that the Tribunal:

1. **Order that all future hearings, conferences, and procedural sessions be recorded** using the integrated Zoom recording function, with access provided to both parties;

2. **Alternatively**, order that all hearings be **stenographically transcribed at Respondent's expense** pursuant to **MAA §8**; and

3. **If both requests are denied,** issue a written acknowledgment memorializing such refusal to preserve the record for judicial review.

## VI. CUMULATIVE RECORD SATISFIES ALL FOUR GROUNDS FOR VACATUR UNDER FAA §10

The cumulative record now demonstrates that this arbitration satisfies **all four independent statutory grounds for vacatur** under **9 U.S.C. §10(a)(1)–(4)**. These violations are not speculative—they are documented, unremedied, and ongoing. Each ground, standing alone, justifies vacatur. Taken together, they establish a proceeding that has forfeited its essential character as a fair arbitration.

**A. FAA §10(a)(1) – Award Procured by Corruption, Fraud, or Undue Means**

Section 10(a)(1) provides for vacatur when an award is "procured by corruption, fraud, or undue means." Both Respondent's and the Arbitrator's conduct fall squarely within this definition.

1. **Fraudulent Concealment and False Representations Regarding the Investigation:** Respondent's entire defense rests on a fabricated premise—that a legitimate "investigation" occurred justifying Claimant's termination. Respondent has represented, alternately, that **no report exists** and that its existence is protected by **privilege**—positions that are inherently contradictory. The Arbitrator's own findings in Orders 13 and 16 confirm that **written notes and summaries do exist**. **There is no privilege warranting concealment; the Sword and Shield Doctrine apply squarely in this arbitration, but have been deliberately ignored by both Respondent and the Arbitrator.** Respondent's repeated misrepresentation of this fact and the Arbitrator's convenient avoidance to confront the Sword and Shield Doctrine constitute *undue means* within the meaning of §10(a)(1).

2. **Submission of a Document That Does Not Meet the Legal Definition of a Contract:** To date, Respondent has produced a document purporting to be an "Engagement Agreement" between Respondent and attorney Castaneda, allegedly authorizing the investigation at issue.

   - The document **lacks multiple essential elements of a contract** under any pertinent jurisdiction – rendering it legally invalid.

- Respondent has refused to authenticate the document, directly transmitted through Adobe Sign, the custodian, despite multiple requests and the Arbitrator's authority to compel authentication.

- Considering that what Respondent submitted as the purported contract doesn't legally meet the legal definition of a contract in any pertinent jurisdiction, directly transmitting its authentication via Adobe Sign of the entire package (if one even exists) is the only way to determine whether or not it is genuine, fraudulent, and/or even legally applicable.

3. **Arbitrator's Refusal to Enforce Authentication — A Procedural Due Process Violation:**
The Arbitrator's ongoing and unexplained refusal to order authentication of this document—**a procedural step fundamental to evidentiary fairness**—constitutes procedural misconduct and tacit endorsement of fraud. Authentication is not discretionary; it is a threshold requirement for admitting any document into evidence.
The Arbitrator's silence on Claimant's motion to authenticate, despite full briefing over two months ago, demonstrates not neutrality but **abdication of procedural duty**, amounting to *undue means* under §10(a)(1).

4. **Fraudulent Pretext as the Substantive Basis of Termination:**
Under the *McDonnell Douglas* framework, Respondent bears the burden to articulate a legitimate, non-discriminatory reason for termination. Having relied on a purported "investigation" grounded in an unauthenticated, legally void document, Respondent cannot meet that burden. The entire justification is a **fraudulent pretext**, and the Arbitrator's refusal to enforce authentication further compounds the deception.

**B. FAA §10(a)(2) – Evident Partiality**

Vacatur is required under §10(a)(2) when the record reflects **evident partiality**—a consistent pattern of one-sided rulings, tolerance of misconduct, or disregard for equality of process.

1. **Consistent Non-Enforcement Against Respondent:**
The Arbitrator has consistently refused to enforce his own Orders to the benefit of the Respondent while Claimant has sustained a pristine procedural record out of respect to the integrity of these proceedings. This asymmetry constitutes "evident partiality" under *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968).

2. **Adoption of Respondent's Proposed Procedures and Orders:**
The Arbitrator has adopted procedures **verbatim from Respondent's submissions**, including a confidentiality order and a "motion-gate" process requiring pre-approval for motions. These inventions appear nowhere in the MAA, JAMS Rules, or FAA, confirming deference to Respondent's unilateral procedural agenda.

3. **Cumulative Appearance of Bias:**
Even if no single act alone sufficed, the aggregate of procedural indulgence toward Respondent—non-enforcement of orders, silence on authentication, tolerance of discovery violations, and invention of procedures favorable to Respondent—creates the "reasonable impression of partiality" that mandates vacatur under §10(a)(2).

**C. FAA §10(a)(3) – Misconduct or Refusal to Hear Material Evidence**

Section 10(a)(3) requires vacatur when arbitrators engage in misconduct or "refuse to hear evidence pertinent and material to the controversy." This standard is unequivocally satisfied here.

1. **Refusal to Enforce Discovery Orders and Compel Authentication:**
Orders 12, 13, and 16 all required production and privilege logs; none were enforced. The continued refusal to authenticate the Castaneda document further denies Claimant access to material evidence. Authentication is a minimal evidentiary safeguard, not an optional procedural courtesy.

2. **Failure to Provide Mechanisms for Evidentiary Preservation:**
Refusal to record or transcribe hearings obstructs the creation of an authentic record—depriving Claimant of the means to preserve testimony and rulings for judicial review. Without an authentic record, evidentiary misconduct cannot be corrected, rendering appellate oversight meaningless.

3. **Cumulative Deprivation of the Right to Be Heard:**
Each act—failure to compel discovery, failure to authenticate, and refusal to record—denies Claimant the right "to be heard, to present material evidence, and to ensure a fair proceeding," in direct violation of JAMS Rule 4(b) and FAA §10(a)(3). Together they constitute procedural misconduct of the gravest kind: a proceeding stripped of the ability to test or preserve its own fairness.

**D. FAA §10(a)(4) – Exceeding Powers**

Section 10(a)(4) mandates vacatur where arbitrators "exceed their powers" or "so imperfectly execute them that a mutual, final, and definite award … was not made." That threshold has already been crossed.

1. **Creation of an Unauthorized "Motion-Gate" Process:**
The Arbitrator unilaterally created a rule requiring parties to seek permission before filing motions. This procedural invention appears nowhere in the MAA or JAMS Rules and directly restricts Claimant's contractual right to file motions—a clear excess of authority under *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010).

2. **Issuance of an Ultra Vires Confidentiality Order:**
The Arbitrator's confidentiality order, adopted verbatim from Respondent's proposal without any textual justification, conflicts with the law, the MAA and JAMS Rules. This order imposes limitations not authorized by contract, rule, or law, exceeding arbitral powers.

3. **Misapplication of 820 ILCS 405/1900(B):**
The Arbitrator's sua sponte invocation of §1900(B)—a state unemployment statute—was an ultra vires act, both procedurally and legally. No party briefed its applicability, and it isn't even applicable to private arbitrations for the reasons rationalized by the arbitrator in Order No. 7. This act alone constitutes "dispensing his own brand of justice" under *Stolt-Nielsen* and *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013).

4. **Refusal to Authenticate Core Evidence:**
The Arbitrator's refusal to enforce authentication of the Castaneda "contract" exceeds arbitral

powers by effectively redefining evidentiary standards without authority. Authentication is a procedural necessity in every judicial and arbitral forum. The Arbitrator's inaction rewrites that rule by omission, an impermissible exercise of discretion beyond his contractual mandate.

**E. Cumulative Impact: A Proceeding Devoid of Due Process**

1. Each of these categories—fraud, partiality, misconduct, and excess of power—is independently dispositive. Collectively, they demonstrate a process that has **departed entirely from the parties' agreed framework** under the MAA and JAMS Rules.
2. This arbitration now embodies every defect the Supreme Court has warned against:
   - The Arbitrator has **invented rules**, contrary to *Stolt-Nielsen*;
   - **Ignored procedural fairness**, contrary to *Oxford Health*; and
   - **Tolerated fraud and concealment**, contrary to the FAA's core guarantee of a fundamentally fair process.
3. The Tribunal's refusal to enforce authentication of Respondent's purported contract is not a minor oversight—it is the lynchpin of procedural fairness. Without authentication, there is no verified evidence supporting Respondent's justification for termination, and the entire proceeding collapses under its own procedural illegitimacy.
4. Under **FAA §§10(a)(1)–(4)**, the Arbitrator's inaction now satisfies every statutory ground for vacatur. The Tribunal must either **enforce its own orders and procedural duties** or acknowledge its refusal in writing to preserve the record for judicial review.

**Summary Table of Statutory Violations**

| FAA Provision | Violation Established on Record |
|---|---|
| **§10(a)(1)** – Fraud or undue means | Concealment of investigation evidence; false "no report" representation; submission of unauthenticated and legally invalid "contract"; Arbitrator's refusal to compel authentication |
| **§10(a)(2)** – Evident partiality | One-sided enforcement; adoption of Respondent's procedures; tolerance of discovery violations; selective inaction on authentication |
| **§10(a)(3)** – Misconduct / refusal to hear material evidence | Failure to enforce discovery orders; refusal to authenticate evidence; denial of recording; cumulative deprivation of fair hearing |
| **§10(a)(4)** – Exceeded powers | Creation of "motion-gate"; ultra vires confidentiality order; sua sponte invocation of §1900(B); refusal to authenticate key evidence |

**F. Requested Relief**

Claimant respectfully requests that the Tribunal:

1. **Immediately enforce authentication of the Castaneda "Engagement Agreement/Contract"** and all related discovery orders;

2. **Impose sanctions** for Respondent's bad-faith conduct and discovery obstruction;
3. **Vacate or amend all ultra vires orders** inconsistent with the MAA and JAMS Rules; and
4. If the Tribunal again declines enforcement, **issue a written acknowledgment** of such refusal to preserve the record for judicial review and vacatur under the FAA.

## VII. CONCLUSION

Respondent's **January 16, 2026 opposition** does not rebut or remedy its misconduct—it confirms and compounds it. After nearly a year of procedural stagnation, discovery abuse, and defiance of orders, Respondent's opposition serves not as a defense, but as a written confession of noncompliance and bad faith.

The opposition itself establishes the following:

- **Belated compliance under duress:** The "privilege log" was produced only after many months of defiance and solely in response to Claimant's Emergency Motion. And still, there remain many other discovery items where privilege is claimed with NO provided log. Discovery was due in March of 2025.
- **Continuing noncompliance:** Respondent's document dump remains unindexed, nonresponsive, and devoid of the materials requested. No meaningfully valid discovery has ever been provided.
- **Resistance to transparency:** Respondent opposes simple, cost-free recording of hearings—an objection with no legal basis, revealing its intent to keep the process opaque to support the ongoing misconduct.
- **Absence of substantive defense:** Respondent's filing does not rebut a single factual or legal argument raised by Claimant.

The **Arbitrator's continued refusal** to enforce discovery, compel authentication, or ensure record integrity has transformed procedural discretion into **procedural abdication**. The tribunal's inaction has itself become the most significant source of prejudice, violating fundamental fairness under **FAA §10**.

To date, **Respondent has not produced a single authenticated piece of evidence** supporting its purported justification for Claimant's termination.

- The so-called *Castaneda "contract"* fails to meet the legal definition of a contract under any jurisdiction.
- Respondent's continued reliance on this unauthenticated document, and the Arbitrator's refusal to enforce its authentication, together destroy the evidentiary foundation of the entire defense.
- The result is not a legitimate arbitration, but a process in which one party's procedural misconduct has been ratified through silence.

Claimant reiterates that **he has never filed a frivolous motion.** Every submission has been compelled by Respondent's noncompliance and the Arbitrator's failure to enforce his own orders, the MAA, JAMS rules, and applicable law. To the contrary, it is Respondent who has acted frivolously—filing premature dispositive motions, misrepresenting facts, and seeking to exclude Claimant's lawful representation in

violation of **JAMS Rules 4 and 26**. The record now unmistakably shows that Claimant's diligence is the only reason this arbitration retains even a semblance of procedural integrity.

**Accordingly, Claimant respectfully renews all requested relief:**

- **Immediate enforcement** of all outstanding Orders, including authentication of all documents central to Respondent's defense;
- **Sanctions and adverse inferences** against Respondent for deliberate discovery obstruction, false representations, and defiance of prior orders;
- **Recording or stenographic transcription** of all future hearings and conferences, at Respondent's expense pursuant to **MAA §8** (recording via Zoom is free); and
- **Written memorialization** of any further refusal to enforce, authenticate, or record, to preserve the record for judicial review under the **Federal Arbitration Act**.

Anything less would **ratify a proceeding that is procedurally unsalvageable, legally voidable, and incompatible with the FAA's requirement of a fundamentally fair hearing.** The Tribunal stands at a procedural fork:

- Either enforce the rules, the orders, and the law that bind this arbitration; or
- Leave a record that confirms every element necessary for vacatur under **FAA §10(a)(1)–(4)**.

The **integrity of this arbitration** now depends entirely on whether the Arbitrator fulfills his duty to enforce compliance and preserve fairness. If he does not, the record will speak for itself—and it will speak in the clear language of procedural nullity.

Respectfully submitted,

**Charles Leclerc**

**Dated:** January 21st, 2026

| | | |
|---|---|---|
| **IN RE THE MATTER OF:** | ) | |
| | ) | |
| **Charles Leclerc,** | ) | |
| | ) | |
| **Claimant,** | ) | **JAMS Ref. No. 5340001145** |
| | ) | |
| **vs.** | ) | **Arbitrator: Hon. John C. Griffin (Ret.)** |
| | ) | |
| **Red Bull North America, Inc.,** | ) | |
| | ) | |
| **Respondent.** | ) | |

# ORDER NO. 33 – RULING ON CLAIMANT'S MOTION TO RECORD ALL FUTURE HEARINGS AND CONFERENCES OR, IN THE ALTERNATIVE, FOR STENOGRAPHIC TRANSCRIPTION AT RESPONDENT'S EXPENSE

Claimant filed the above stated Motion. The Respondent filed a Response, and the Claimant filed a Reply. The Arbitrator has reviewed all these filings, the Parties' agreement, and the various rules involved.

1. Parties and Counsel: The parties to this arbitration are identified in the caption and are represented as indicated on the service list available on JAMS Access.

2. Arbitrator:

   Hon. John C. Griffin (Ret.)
   71 S. Wacker Drive, Suite 2400
   Chicago, IL 60606
   312-655-0555
   jgriffin@jamsadr.com

3. Case Manager:

   Natasha Erese
   71 S. Wacker Drive, Suite 2400
   Chicago, IL 60606
   312-766-5184
   nerese@jamsadr.com

4. **Claimant's Motion to Record**

JAMS Employment Arbitration Rules & Procedures, Rule 22(k) states as follows:

> (k) Any Party may arrange for a stenographic record to be made of the Hearing and shall inform the other Parties in advance of the hearing. No other means of recording the proceeding shall be permitted absent agreement of the Parties or by direction of the Arbitrator.

Respondent filed a Response and did not agree to "other means of recording" and requested that Claimant's motion be denied. Therefore, pursuant to the applicable rule and JAMS' policy, Claimant's motion to record is denied. If the Parties come to an agreement in the future and notify the Case Manager, the Arbitrator will reconsider this ruling.

5. **Claimant's Motion for Stenographic Transcription at Respondent's Expense**

The JAMS Employment Rules and Procedures Rule 22(k) further states as follows:

> (i) "The requesting party shall bear the cost of such stenographic record."

Claimant states that the Respondent must pay for the stenographic record pursuant to Paragraph 8 of the Parties' Mutual Agreement to Arbitrate which states as follows:

> 8. **Arbitration fees and costs**. The Company agrees to pay all of the fees and costs that are unique to arbitration, including arbitration administration fees, arbitration hearing fees and arbitration compensation fees. The parties to the arbitration shall be responsible for their own attorney's fees. Any controversy regarding the payment of fees and costs under this agreement shall be decided by the arbitrator.

Pursuant to JAMS Rules and common practice, stenographic fees are not required or unique to arbitration.

JAMS Rule 22(k)(ii) specifically states that parties may agree to share the cost of these fees. Once again, the Respondent objected to the payment of stenographic fees. Obviously, the rules allow the Claimant to obtain stenographic recordings at his expense.

On July 29, 2024, JAMS sent a Notice to All Parties, a copy of which is in JAMS Access. This Notice stated that "JAMS has determined that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness applies". Attached to said Notice is a copy of said Policy. Standard No. 6 states as follows:

> **Costs and Location Must Not Preclude Access to Arbitration**
> An employee's access to arbitration must not be precluded by the employee's inability to pay any costs… The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services…

Both parties are asked to briefly address this Standard and its applicability, if any, to the payment of the stenographic fees. The parties should also discuss whether Illinois courts would provide and employ a stenographer in a case such as this one if it was pending in court. Claimant shall file a letter no longer than 3 pages in length within seven days of the entry of this order, Respondent shall file a response of similar length seven days thereafter and Claimant file a reply seven days thereafter.

The Arbitrator shall rule on this matter at that time and set the remaining two motions for oral argument at a time agreed upon by the parties

DATED: **January 28, 2026**

ENTERED:

John C. Griffin

**Hon. John C. Griffin (Ret.)**
JAMS Arbitrator

**IN RE THE MATTER OF:**

**Charles Leclerc,**

**Claimant,**

**vs.**

**Red Bull North America, Inc.,**

**Respondent.**

**JAMS Ref. No. 5340001145**

**Arbitrator: Hon. John C. Griffin (Ret.)**

**ORDER NO. 34 – RULING ON CLAIMANT'S MOTION STENOGRAPHIC TRANSCRIPTION AT RESPONDENT'S EXPENSE AND PROCEDURAL DISCUSSION REGARDING DISCOCERY RELATED MOTIONS**

As requested by the Arbitrator, Claimant filed a submission regarding JAMS minimum standards, and court treatment of stenographic records. The Respondent filed a Response, and the Claimant filed a Reply. The Arbitrator has reviewed all these filings, and the various rules involved.

1. Parties and Counsel. The parties to this arbitration are identified in the caption and are represented as indicated on the service list available on JAMS Access.

2. Arbitrator:
   Hon. John C. Griffin (Ret.)
   71 S. Wacker Drive, Suite 2400
   Chicago, IL 60606
   312-655-0555
   jgriffin@jamsadr.com

3. Case Manager:
   Natasha Erese
   71 S. Wacker Drive, Suite 2400
   Chicago, IL 60606
   312-766-5184
   nerese@jamsadr.com

4. Discussion:

"JAMS has determined that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness applies". Standard No. 6 states as follows:

> **Costs and Location Must Not Preclude Access to Arbitration**
>
> An employee's access to arbitration must not be precluded by the employee's inability to pay any costs… The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services…

JAMS policy in a situation such as this is to determine whether a civil trial court would provide a stenographer at no cost to the litigants. Claimant states that his claim is significantly based on federal law and the Federal Courts provide stenographers at no cost to the litigants. Therefore, if a stenographer is employed in this matter, the Respondent will be required to pay the costs.

Order 33 contained the following regarding the Claimant's request to make a video and audio recording of all hearings and conferences, using standard teleconference or video meeting functions:

> "JAMS Employment Arbitration Rules & Procedures, Rule 22(k) states as follows:
>
> (k) Any Party may arrange for a stenographic record to be made of the Hearing and shall inform the other Parties in advance of the hearing. No other means of recording the proceeding shall be permitted absent agreement of the Parties or by direction of the Arbitrator.

Respondent filed a Response and did not agree to "other means of recording" and requested that Claimant's motion be denied. Therefore, pursuant to the applicable rule and JAMS' policy, Claimant's motion to record is denied. If the Parties come to an agreement in the future and notify the Case Manager, the Arbitrator will reconsider this ruling."

Unless a party makes a convincing objection, the Arbitrator will direct all further proceedings recorded by JAMS in accordance with Claimant's request, at no cost to any party.

5. Motions regarding discovery:

The parties shall meet and confer regarding the disputes involving the discovery motions and their resolution. If the parties cannot come to an agreement regarding the discovery issues, the parties shall meet and confer to agree on a time and date when these motions can be argued before the Arbitrator, remotely, via Zoom.

The Claimant has indicated that he will not participate in any oral arguments. The Arbitrator has reviewed the materials and determined that such arguments are necessary to decide the disputes. This procedure is typical in discovery disputes and is called for in JAMS Rule 17(d). The Claimant may choose to participate or not.

Please contact my Case Manager and advise her as to the status of the discovery disputes.

DATED: **February 23, 2026**

ENTERED:

John C. Griffin

**Hon. John C. Griffin (Ret.)**
JAMS Arbitrator